ALEX G. TSE (CABN 152348)
United States Attorney
SARA WINSLOW (DCBN 457643)
Chief, Civil Division
ELLEN LONDON (NYRN 4605671)
Assistant United States Attorney

   450 Golden Gate Avenue, Box 36055
   San Francisco, California 94102
   Telephone: (415) 436-7288
   Facsimile: (415) 436-7169
   E-mail: ellen.london@usdoj.gov

Attorneys for Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN SMALL BUSINESS LEAGUE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE AND UNITED STATES DEPARTMENT OF JUSTICE,<br><br>　　　　　　Defendants. | CASE NO.  CV 18-1979 WHA<br><br>**MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date: January 24, 2019<br>Time: 8:00 a.m.<br>Location:  Courtroom 12, 19th floor |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………… iii

NOTICE OF MOTION AND MOTION ........................................................................................1

RELIEF SOUGHT ........................................................................................................................1

ISSUE TO BE DECIDED .............................................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

I.      INTRODUCTION ..............................................................................................................1

II.     FACTS ...............................................................................................................................2

      A.      Subcontracting Plans and the Test Program .........................................................2

      B.      Plaintiff's FOIA Request and Documents Released and Withheld........................4

      C.      DOD's Search for Responsive Records ................................................................6

      D.      DOJ's Search for Responsive Records .................................................................6

III.    ANALYSIS ........................................................................................................................7

      A.      Standard of Review ...............................................................................................7

      B.      DOD's and DOJ's Searches Were Adequate. ......................................................7

      C.      The Redacted Information is Exempt Under 5 U.S.C. § 552(b)(3)........................9

          1.      The Procurement Integrity Act is within the meaning of Exemption 3. ..................9

          2.      The redacted information is within the scope of the Procurement Integrity Act. ...................................................................................................10

      D.      The Redacted Information is Exempt Under 5 U.S.C. § 552(b)(4). .............................12

          1.      Release of the Information Would Harm the Government. ...............................12

          2.      Release of the Information Would Harm Lockheed and GE. .............................13

      E.      The Redacted Information is Exempt Under 5 U.S.C. § 552(b)(5) .................................16

          1.      Legal Framework ...........................................................................17

          2.      DOJ Properly Withheld Privileged Material Pursuant to Exemption 5....................20

              a.      The Attorney-Client Privilege Was Properly Applied .............................21

              b.      The Work Product Doctrine Was Properly Applied ...............................21

      F.      The Redacted Information is Exempt Under 5 U.S.C. § 552(b)(6) ................................21

IV.    CONCLUSION .................................................................................................................23

# TABLE OF AUTHORITIES

Cases                                                                                           Page(s)

*Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*,
   74 F. Supp. 3d 158 (D.D.C. 2014) .................................................................... 9, 10, 11

*Am. Civil Liberties Union of N. Calif. v. U.S. Dep't of Justice*,
   880 F.3d 473 (9th Cir. 2018) ................................................................................ 16, 17

*Am. Small Bus. League v. Dep't of,*
   *Def.*, 674 F. App'x 675 (9th Cir. 2017) ....................................................................... 13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ....................................................................................................... 7

*Bowen v. FDA*,
   925 F.2d 1225 (9th Cir. 1991) ...................................................................................... 13

*Cameranesi v. Dep't of,*
   *Def.*, 856 F.3d 626 (9th Cir. 2017) ............................................................................... 22

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ....................................................................................................... 7

*Citizens Comm'n on Human Rights v. Food & Drug Admin.*,
   45 F.3d 1325 (9th Cir. 1995) .......................................................................................... 7

*Citizens Progressive All. v. U.S. Bureau of Indian Affairs*,
   241 F. Supp. 2d 1342 (D.N.M. 2002) ........................................................................... 17

*Critical Mass Energy Project v. Nuclear Regulatory Comm'n*,
   975 F.2d 871 (D.C. Cir. 1992) ...................................................................................... 12

*Democracy v. Fed. Trade Comm'n*,
   189 F. Supp. 3d 151 (D.D.C. 2016) ......................................................................... 12, 13

*Dep't of Justice v. Reporters Comm. for Freedom of Press*,
   489 U.S. 749 (1989) ................................................................................................. 21, 22

*Dep't of the Interior v. Klamath Water Users Prot. Ass'n*,
   532 U.S. 1 (2001) .......................................................................................................... 18

*F.T.C. v. Grolier Inc.*,
   462 U.S. 19 (1983) ........................................................................................................ 21

*Frontier Found. v. Office of Dir. of Nat. Intelligence*,
   No. C 08-01023 JSW, 2009 WL 3061975 (N.D. Cal. Sept. 24, 2009) ..................... 17, 18

*Garcia v. U.S. Dep't of Justice*,
   181 F. Supp. 2d 356 (S.D.N.Y. 2002) ............................................................................ 8

*GC Micro Corp. v. Def. Logistics Agency*,
   33 F.3d 1109 (9th Cir. 1994) .................................................................... 2, 12, 13, 14

*General Elec. Co. v. Dep't of Air Force*,
648 F. Supp. 2d 95 (D.D.C. 2009) .......................................................................................... 14

*Ground Saucer Watch v. CIA*,
692 F.2d 770 (D.C. Cir. 1981) ................................................................................................. 8

*Gulf & W. Indus. v. United States*,
615 F.2d 527 (D.C. Cir. 1980) ............................................................................................... 14

*Hamdan v. U.S. Dep't of Justice*,
797 F.3d 759 (9th Cir. 2015) ................................................................................................... 8

*Hiken v. Dep't of,*
*Def.*, 872 F. Supp. 2d 936 (N.D. Cal. 2012) ......................................................................... 22

*Hunton & Williams v. U.S. Dep't of Justice*,
590 F.3d 272 (4th Cir. 2010) ................................................................................. 17, 18, 19, 20

*Lahr v. NTSB*,
569 F.3d 964 (9th Cir. 2009) ................................................................................................... 7

*Legal & Safety Employer Research, Inc. v. Dep't of the Army*,
No. CIV.S001748WBS/JFM, 2001 WL 34098652 (E.D. Cal. May 4, 2001) .................................. 9, 11

*LLC v. Dep't of Justice*,
248 F. Supp. 3d 115 (D.D.C. 2017) ....................................................................................... 14

*Long v. Office of Pers. Mgmt.*,
692 F.3d 185 (2d Cir. 2012)................................................................................................... 22

*Lucaj v. Fed. Bureau of Investigation*,
852 F.3d 541 (6th Cir. 2017) ................................................................................................. 17

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)................................................................................................................. 7

*Minier v. Cent. Intelligence Agency*,
88 F.3d 796 (9th Cir. 1996) ..................................................................................................... 9

*Munger, Tolles & Olson LLP v. Dep't of the Army*,
58 F. Supp. 3d 1050 (C.D. Cal. 2014) ................................................................................... 14

*Nat. Labor Relations Bd. v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975).......................................................................................................... 16, 17

*Nat'l Parks & Conservation Ass'n v. Morton*,
498 F.2d 765 (D.C. Cir. 1974).............................................................................................. 12

*Oglesby v. U.S. Dep't of Army*,
920 F.2d 57 (D.C. Cir. 1990).............................................................................................. 7, 8

*Reporters Comm.*,
485 U.S. .................................................................................................................................. 22

*Rivera v. Phillip Morris, Inc.*,
395 F.3d 1142 (9th Cir. 2005) ................................................................................................. 7

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                                    iv

*U.S. Dep't of Def. v. Fed. Labor Relations Auth. (FLRA),*
  510 U.S. 487 (1994) .......................................................................................................... 21, 22

*United States v. Gonzalez,*
  669 F.3d 974 (9th Cir. 2012) ................................................................................................. 17, 20

*United States v. Richey,*
  632 F.3d 559 (9th Cir. 2011) ......................................................................................... 17, 20, 21

*United States v. Weber Aircraft Corp.*,
  465 U.S. 792 (1984) ................................................................................................................... 19

*Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*,
  690 F.2d 252 (D.C. Cir. 1982) .................................................................................................. 12

*Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*,
  865 F.2d 320 (D.C. Cir. 1989) .................................................................................................. 12

*Watkins v. Bureau of Customs and Border Prot.*,
  643 F.3d 1189 (9th Cir. 2011) ................................................................................................... 13

*Wilbur v. CIA,*
  355 F.3d 675 (D.C. Cir. 2004) .................................................................................................... 8

*Zemansky v. EPA,*
  767 F.2d 569 (9th Cir. 1985) ....................................................................................................... 8

Statutes

5 U.S.C. 552 .................................................................................................................................... 1

5 U.S.C. § 552(b)(3) ....................................................................................................................... 8

5 U.S.C. § 552(b)(3)(A) .................................................................................................................. 9

5 U.S.C. § 552(b)(4) .................................................................................................................... i, 12

5 U.S.C. § 552(b)(5) .................................................................................................................... i, 16

5 U.S.C. § 552(b)(6) .................................................................................................................... i, 21

15 U.S.C § 637 ................................................................................................................................. 3

41 U.S.C. § 423 ................................................................................................................................ 9

41 U.S.C. § 2101(7)(J) ............................................................................................................... 10, 11

41 U.S.C. § 2102 ........................................................................................................................... 5, 8

41 U.S.C. § 2102(a)(1) ..................................................................................................................... 9

U.S.C. § 552(b)(3)(B) ...................................................................................................................... 9

Rules

Fed. R. Civ. P. 26(b)(3)(B) ................................................................................................ 17, 21

Fed. R. Civ. P. 56(c) ................................................................................................................ 7

Federal Rule of Civil Procedure 56 ........................................................................................ 1

Regulations

48 C.F.R. § 52.219-9(d) .......................................................................................................... 3

FAR 9.105-1(c) ...................................................................................................................... 10

FAR 15.304(c)(3)(i) ............................................................................................................... 10

FAR 42.15 .............................................................................................................................. 10

FAR 42.1503(d) ..................................................................................................................... 10

Other Authorities

65 Fed. Reg. 7509 ................................................................................................................... 3

## I.     NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on January 24, 2019, at 8:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 12 on the 19th floor of the United States District Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable William H. Alsup, defendants UNITED STATES DEPARTMENT OF DEFENSE ("DOD") and UNITED STATES DEPARTMENT OF JUSTICE ("DOJ") (together, "Defendants" or the "Government"), pursuant to Federal Rule of Civil Procedure 56, will move the Court for an order granting summary judgment in favor of the Government and against plaintiff American Small Business League ("Plaintiff," or "ASBL").

This motion is brought on the ground that no material facts are in dispute and the Government is entitled to judgment as a matter of law.  The motion is based on this notice, the ensuing points and authorities, the declarations of Janice L. Buffler, Mark Herrington, Aleksandor Lamvol, Ellen London, Hirsh D. Kravitz, Kimberly Friday, Abraham Simmons, Susannah L. Raheb, Martha Crawford, Bethani T. Clever, and Harry Nahatis filed herewith, the pleadings on file with the Court, any additional evidence the Court may allow, and any argument permitted at the hearing.

## II.     RELIEF SOUGHT

The Government asks that the Court grant summary judgment in its favor and against Plaintiff.

## III.     ISSUE TO BE DECIDED

1. Did the Government conduct an adequate search in response to plaintiff's Freedom of Information Act ("FOIA") request?

2. Did the Government properly withhold and/or redact the documents that were released under applicable FOIA exemptions?

## IV.     MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This case involves a request by ASBL under the Freedom of Information Act ("FOIA"), 5 U.S.C. 552, and the Government's withholding of competitively harmful and privileged information.  ASBL requested the most recent Comprehensive Small Business Subcontracting Plans for defense contractors BAE and General Electric.  ASBL also requested communications between the Government and Lockheed Martin, including its subsidiary Sikorsky, concerning ASBL and its prior FOIA lawsuit to the

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                                         1

Government involving a Sikorsky subcontracting plan. The Government has provided ASBL with the documents responsive to these and other requests. Now, ASBL takes issue with the Government's redactions.

The Government has properly redacted information that, if disclosed, could 1) disrupt the contract procurement process, 2) impair the Government's ability to collect information about small business subcontracting, 3) cause competitive harm to the defense contractors, 4) breach attorney-client and work product privilege, and 5) unnecessarily reveal DOD employees' contact information. The Government correctly withheld this information under FOIA exemptions 3, 4, 5, and 6. ASBL challenges the Government's redaction of the contractors' proprietary information, including details about their relationships with specific subcontractors, business strategies and goals, and performance on prior contracts. ASBL also seeks access to communications among attorneys regarding ASBL's prior lawsuit, coordinating strategy and sharing drafts of court documents. ASBL cannot get this information through discovery, so it should not be able to get it through FOIA.

ASBL cannot establish that the Government did not conduct an adequate search or that the redactions are improper. The Court should therefore grant summary judgment for the Government.

## II.    FACTS

### A. Subcontracting Plans and the Test Program

The Small Business Act mandates that the federal Government encourage contractors to subcontract with "small disadvantaged businesses." *GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1110-11 (9th Cir. 1994), *overruled on other grounds*, *Animal Legal Def. Fund v. FDA*, 836 F.3d 987 (9th Cir. 2016)). The Federal Acquisition Regulation ("FAR") and the Department of Defense Supplement ("DFARS") implement the Small Business Act as it pertains to acquisitions and contracts. Buffler Decl. ¶ 4.

Generally, when required by FAR and DFARS, contractors must submit subcontracting plans as part of the bidding process for each project or contract. Buffler Decl. ¶ 5. But the Test Program for Negotiation of Small Business Subcontracting Plans ("Test Program") allows certain large defense contractors to submit a Comprehensive Subcontracting Plan ("CSP") on a plant-, division-, or company-wide basis. Buffler Decl. ¶ 5. Seven contractors participate in the Test Program: Lockheed Martin

(including its subsidiary Sikorsky), GE, BAE, General Dynamics, L3, Harris, Pratt & Whitney, and Raytheon. Raheb Aff. ¶ 26. Companies participate in this program voluntarily. Buffler Decl. ¶ 7.

A CSP must include the Test Program participant's subcontracting goals for various categories of small businesses, both by percentage and total dollar amounts, and the types of supplies or services it will subcontract. Buffler Decl. ¶ 6; 65 Fed. Reg. 7509, 7510 (Feb. 15, 2000); 48 C.F.R. § 52.219-9(d). CSPs also typically include subcontracting business processes, corporate policy statements, and lists of subcontractors used, as well as specific initiatives to assist small businesses proposed by the participants. Buffler Decl. ¶ 6. Participants sometimes go beyond the requirements and provide additional information about their strategies for utilizing small business subcontractors. *Id.* ¶ 18.

The Defense Contract Management Agency ("DCMA") manages the CSP Test Program on behalf of DOD. Buffler Decl. ¶ 8. Participants submit their CSP to DCMA annually for review. *Id.* The DCMA often negotiates with the participants before it will approve a CSP, a process that takes several months. *Id.* A participant might have to leave the Test Program if its CSP is unacceptable to the Government. *Id.*

DCMA also monitors and assesses participant performance and compliance, in accordance with FAR Subpart 19.7 and 15 U.S.C § 637. Buffler Decl. ¶ 9. Each year, DCMA completes a "640 Compliance Review" for each Test Program participant. *Id.* DCMA evaluates whether the participant is fully utilizing small business subcontractors in various categories, including Small Disadvantaged Businesses, HUBZone businesses, and businesses owned by Alaska Native Corporations, Indian Tribes, women, veterans, and service disabled veterans. *Id.* ¶ 10. It also considers whether the participant achieved the goals stated in its CSP, or at least made a good-faith effort. *Id.* If a participant did not meet its goals, it must explain the circumstances and lay out a plan for improvement. *Id.* DCMA makes its reports available to contracting officials who handle individual contracts. *Id.* ¶ 9.

The FAR requires the Government to collect contractor performance information, FAR Part 42.15, and to use it in source selection evaluations, FAR Part 15.1304(c)(3)(i). Contracting officials report performance data to the Contractor Performance Assessment Reporting System ("CPARS"), and they can access this information through the Past Performance Information Retrieval System ("PPIRS").

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                                          3

Buffler Decl. ¶ 12. DOD has always treated all performance evaluations as confidential source selection information because Government officials use it when making contract award decisions. *Id.* ¶ 13.

**B.  Plaintiff's FOIA Request and Documents Released and Withheld**

Plaintiff filed its complaint in this action on March 30, 2018.  ECF No. 1.  The Court held that this action is related to a prior FOIA case captioned *American Small Business League v. Department of Defense*, 14 Civ. 2166 ("*ASBL I*").  ECF No. 16.  That case involved a request for Sikorsky's Comprehensive Small Business Subcontracting Plan for fiscal year 2013; in that case, the Government released the plan with limited redactions for personal information on March 15, 2018.  ECF No. 148.

Plaintiff has requested the following agency records, as described in its amended complaint:

1.  The most recent master comprehensive subcontracting plan submitted by BAE System for participation in the Comprehensive Subcontracting Plan Test Program for the Department of Defense, requested on May 30, 2014;

2.  The most recent comprehensive subcontracting plan submitted by GE Aviation for participation in the Comprehensive Subcontracting Plan Test Program through the Department of Defense, requested on November 6, 2014;

3.  All documents transmitted between (a) DoD or the Department of Justice ("DOJ") and (b) Lockheed Martin Corp. ("LM," including Sikorsky Aircraft Corp. ("Sikorsky") and other LM subsidiaries concerning: (1) the FOIA request dated August 9, 2013, from the American Small Business League ("ASBL") to DoD, (2) ASBL", (3) Lloyd Chapman, (4) the CSPTP [(Comprehensive Subcontracting Plan Test Program)], (5) SBIR [(Small Business Innovation Research)], and (6) Mentor-Protégé program. Also, a list of all mentor-protégé agreements in the Department of Defense Mentor-Protégé Program.

4.  The Individual Subcontracting Report ISR/SF 294 and the Summary Subcontracting Report SSR/SF 295 for the contract with PIID N00024-03-C-2310 for General Dynamics; and

5.   The Individual Subcontracting Report ISR/SF 294 and the Summary Subcontracting Report SSR/SF 295 for the contract with PIID N00024-03-C-2311 for Lockheed Martin.

EFC No. 20.

The parties discussed the scope and timing of the production of documents in response to the above FOIA requests.  ECF No. 29 at ¶ 2.  As to the first request, the Government produced the BAE Plan on June 26, 2018.  London Decl. ¶ 5.  ASBL raises no challenges regarding this document, other than a request for attorney's fees.  ECF No. 29 at ¶ 3.

The Government produced the GE Plan on August 10, 2018.  London Decl. ¶ 5.  ASBL is challenging the redactions to this document pursuant to exemption 4.  London Decl. ¶ 6.

The parties agreed to custodians to be searched and a rolling production schedule for the records transmitted between DOD and Lockheed.[1]  ECF No. 29.  In compliance with the stipulation and order, on July 26, 2018, September 4, 2018, and September 26, 2018, the Government produced 727 pages of material from DOD, including correspondence between DOD employees and Lockheed employees.  London Decl. ¶ 5. These records include CSPs, as well as documents reflecting the negotiation of the CSPs and DCMA's monitoring of the contractor's compliance with the CSPs.  London Decl. ¶ 8.  The Government redacted material pursuant to exemption 3 (applying 41 U.S.C. § 2102), exemption 4, and exemption 6.  London Decl. ¶ 5.  Plaintiff is challenging all of the exemption 3 and 4 redactions, as well as the exemption 6 redactions of DOD employee phone numbers and email addresses.  London Decl. ¶ 9.

The parties also agreed to a schedule for documents responsive to the request for communications between DOJ and Lockheed, and on August 17, 2018, the Government produced 122 pages of material from DOJ responsive to the request.  London Decl. ¶ 5.  These pages include redactions taken pursuant to exemption 5, for privileged material that is covered by the common interest doctrine.  London Decl. ¶ 7.  Plaintiff is challenging these redactions.  *Id.*  The Government provided ASBL with Vaughn indices for the documents responsive to Plaintiff's third FOIA request on August 9, 2018, August 31, 2018, September 14, 2018, and October 5, 2018.  London Decl. ¶ 5.

DOD provided ASBL a "no records" response with regard to item 4 above, the Individual Subcontracting Report ISR/SF 294 and the Summary Subcontracting Report SSR/SF 295 for the

---

[1] ASBL is no longer seeking documents regarding the SBIR or Mentor-Protégé program as part of this FOIA request.  ECF No. 29 ¶ 5.

MOT. FOR SUMMARY JUDGMENT

C 18-01979-WHA                                5

contract with PIID N00024-03-C-2310 for General Dynamics, and Plaintiff is not challenging this response. *Id.* ¶ 6.

With regard to contract PIID N00024-03-C-2310, the Government informed ASBL that there is no specific SSR for this contract, nor is there a corporate-wide SSR for the Lockheed entity identified. *Id.* ¶ 7. However, the Government provided SSRs for (two different Lockheed corporate entities) for fiscal year 2003, with certain redactions, even though the Government asserted that these documents are beyond the scope of plaintiff's FOIA request. *Id.* ¶ 7. Plaintiff is not raising any challenges with regard to this request. London Decl. ¶ 11.

**C. DOD's Search for Responsive Records**

Several DOD employees, assigned to either FOIA matters or small business procurement, searched their records for documents responsive to the ASBL FOIA requests at issue.

Mark Herrington, an associate deputy general counsel who oversees DOD's FOIA litigation, searched his email files to locate correspondence between DOD and Lockheed or Sikorsky regarding ASBL's August 9, 2013 FOIA request. Herrington Decl. ¶ 4. Janice Buffler, then associate director of the DOD Office of Small Business Programs (OSBP), searched her emails and an OSBP shared drive for correspondence and other documents related to the firms' participation in the Test Program. *Id.* Tatia Bellamy-Vaughn, DCMA small business program director, and Luz Vazquez, a DCMA procurement analyst small business processional, searched their email accounts and a DCMA shared drive for documents shared between DOD and Lockheed or Sikorsky regarding ASBL, Lloyd Chapman, and the Test Program. *Id.* ¶ 5. Finally, the Joint Service Provider, an information systems management office within DOD, searched for relevant correspondence involving Terry Sutherland, former director of corporate communications for the Pentagon Force Protection Agency. *Id.* ¶ 6. The office concluded that it had destroyed Sutherland's files, as is the practice for former employees. *Id.*

**D. DOJ's Search for Responsive Records**

Several lawyers from the United States Attorney's Office for the Northern District of California and the Department of Justice Civil Appellate Section worked on *ASBL I.* Each of the lawyers who litigated this matter conducted a search of their records in response to the request for communications with Lockheed and Sikorsky (construed to include counsel for Lockheed and Sikorsky) regarding *ASBL*

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                                         6

*I. See* Friday Decl. ¶ 6; Kravitz Decl. ¶ 8; London Decl. ¶ 12; Simmons Decl. ¶ 8.  The responsive records included draft legal documents and emails related to DOJ and Sikorsky's joint litigation strategy in pursuit of their common legal interests in *ASBL I.* Friday Decl. ¶ 10; Kravitz Decl. ¶ 13-14; Simmons Decl. ¶ 13.  The Government either withheld these documents as privileged or produced them with redactions.  Friday Decl. ¶ 11-12; Kravitz Decl. ¶ 10; London Decl. ¶ 16.

## III.    ANALYSIS

### A. Standard of Review

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c).  A court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party.  *Anderson*, 477 U.S. at 248; *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  A dispute is material only if it could affect the outcome of the suit.  *Rivera*, 395 F.3d at 1146.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson*, 477 U.S. at 248.  Summary judgment is appropriate if a rational trier of fact, viewing the record as a whole, could not find in favor of the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"FOIA contemplates that some information may legitimately be kept from the public."  *Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009). The agency invoking a statutory exemption to FOIA to withhold requested documents "bears the burden of demonstrating that the exemption properly applies to the documents."  *Id*.

### B. DOD's and DOJ's Searches Were Adequate.

The Government conducted searches that could be reasonably expected to discover records responsive to plaintiff's FOIA request.  Because those searches were thorough, adequate, and conducted in good faith, they satisfied the agency's statutory obligations.

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                                     7

An agency's search for records is "adequate" if it used "methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Lahr*, 569 F.3d at 986. The issue "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Citizens Comm'n on Human Rights v. Food & Drug Admin*., 45 F.3d 1325, 1328 (9th Cir. 1995) (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). The agency need not conduct an exhaustive search of every record system, but it must make a good faith, reasonable search of those systems of records likely to possess the requested records. *Oglesby*, 920 F.2d at 68.

An agency can establish the adequacy of its search by submitting a reasonably detailed, non-conclusory affidavit describing its efforts, setting forth the search procedures. *Zemansky*, 767 F.2d at 573. "Agency affidavits enjoy a presumption of good faith" that a plaintiff must rebut. *See Ground Saucer Watch v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981). An agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for requested records." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam). An agency is entitled to summary judgment if it "demonstrates that it has conducted a reasonable search for relevant documents." *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 366 (S.D.N.Y. 2002).

Here, DOJ's search method was reasonably calculated to uncover records in its possession responsive to Plaintiff's FOIA request. Each of the lawyers involved in *ASBL I*, who would have the best knowledge of their own files and their involvement in the case, searched for responsive records in their emails. *See* Friday Decl. ¶¶ 3-6; Kravitz Decl. ¶¶ 6-9; London Decl. ¶¶ 12-15; Simmons Decl. ¶¶ 5-8. DOD's search method also was reasonably calculated to uncover records responsive to ASBL's request, as the Herrington declaration illustrates. Herrington Decl. ¶¶ 4-6. *See Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 770-72 (9th Cir. 2015) (affirming summary judgment for Government on "adequacy of the searches" where searching was "reasonably calculated to locate responsive records" and "a reasonable search is what [the plaintiffs] got"). Accordingly, the Government has demonstrated that it conducted a reasonable search for responsive records, and is entitled to summary judgment on this issue.

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                                   8

**C.   The Redacted Information is Exempt Under 5 U.S.C. § 552(b)(3).**

FOIA exemption 3 says the Government can withhold information "specifically exempted from disclosure" by another statute.  5 U.S.C. § 552(b)(3).  To determine if exemption 3 applies, a court must consider first whether the statute identified by the agency is within the meaning of exemption 3, and second whether the redacted information satisfies the exemption statute.  *Hamdan*, 797 F.3d at 776.

Here, the Government has redacted contractor performance information — which can be used in source selection evaluations where Lockheed submits proposals in response to solicitations — under exemption 3 and the Procurement Integrity Act, 41 U.S.C. § 2102.  This statute prohibits disclosure of certain information related to the bidding and source selection process.  *Id.* § 2102(a)(1).  Exemption 3 applies because the statute clearly identifies the kinds of contractor, proposal, and selection information the Government must withhold, and the redacted information falls within those definitions.

**1.   The Procurement Integrity Act is within the meaning of Exemption 3.**

Statutes that "clearly identify the types of material to be withheld under their scope" are within the meaning of Exemption 3.  *Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 801 (9th Cir. 1996) (Exemption 3 applied to statute requiring director of national intelligence to "protect intelligence sources and methods from unauthorized disclosure").  Specifically, the statute must require "that the matters be withheld from the public in such a manner as to leave no discretion" or establish "particular criteria for withholding or [refer] to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3)(A).

The Procurement Integrity Act is covered by exemption 3 because it identifies particular types of materials related to contractor bids that the Government must withhold.  *See Legal & Safety Employer Research, Inc. v. Dep't of the Army (LASER)*, No. CIV.S001748WBS/JFM, 2001 WL 34098652, at *4 (E.D. Cal. May 4, 2001) (finding the Procurement Integrity Act satisfies requirements of exemption 3). The statute states that federal Government employees "shall not knowingly disclose contractor bid or proposal information or source selection information."  41 U.S.C. § 2102(a)(1).  The statute also identifies the types of documents that make up those categories.  *See id*. § 2101(2) (definition of "contractor bid or proposal information"), § 2101(7) (definition of "source selection information").  Because the Procurement Integrity Act refers to "particular types of matters to be withheld," it falls within the ambit of exemption 3.  *See* 5 U.S.C. § 552(b)(3)(A).

Exemption 3 also provides that laws enacted after the OPEN FOIA Act of 2009 must specifically cite to FOIA. 5 U.S.C. § 552(b)(3)(B). The Procurement Integrity Act does not cite to FOIA. But the nondisclosure language preceded the OPEN FOIA Act, so this provision does not apply. In 2011, the act moved from 41 U.S.C. § 423 to § 2102, but the nondisclosure language remained substantially the same. H.R. Rep. No. 111-42, at 3 (2009) ("This bill is intended to restate existing law without substantive change."). The Court should assume that Congress intended for the disclosure prohibition to still apply, with respect to FOIA. *See Abdeljabbar v. Bureau of Alcohol, Tobacco & Firearms*, 74 F. Supp. 3d 158, 175 (D.D.C. 2014) (finding exemption 3 applied even though post-2009 appropriation bill did not cite to FOIA, as pre-2009 appropriation bills had similar non-disclosure language).

### 2. The redacted information is within the scope of the Procurement Integrity Act.

Under exemption 3 and the Procurement Integrity Act, the Government has redacted information related to Lockheed's actual subcontracting performance, including compliance reviews conducted by DCMA. Buffler Decl. ¶ 15-16 (describing the materials). The Procurement Integrity Act prohibits release of materials the agency has marked "source selection information" because disclosure would "jeopardize the integrity or successful completion" of the procurement process. 41 U.S.C. §§ 2101(7)(J), 2102. DOD must use past performance when determining whether to award a contract. *See* FAR 15.304(c)(3)(i); Buffler Decl. ¶ 11. Accordingly, the redacted details of Lockheed's past performance are non-releasable under the Procurement Integrity Act because the Government treats them as source selection information. 41 U.S.C. § 2101(7)(J); Buffler Decl. ¶ 13.

FAR 42.15 requires the Government to collect contractor performance information, and FAR 15.1304(c)(3)(i) requires contracting officials to use it in source selection. Because contracting officials must use past performance data when making award decisions, all performance evaluations are pre-decisional in nature. Buffler Decl. ¶ 14. Government evaluations of past performance therefore "must" be treated as source selection information. FAR 42.1503(d). Guidance for CPARS, the system that collects past performance data, provides that this data is not releasable under FOIA because it is "source selection information" and may contain proprietary information. "Guidance for the Contractor Performance Assessment Rating System," at 29 (July 2018). Access to the system restricted to individuals with an official need to know. Buffler Decl. ¶ 14.

Source selection officials rely on clear and timely evaluations of contractor performance to make informed business decisions when awarding Government contracts and orders. Buffler Decl. ¶ 11. Past performance information — including ratings and supporting narratives — is critical to ensuring that the Federal Government only does business with companies that provide quality products and services in support of the agency's mission. *Id.*

The Government has withheld in full two annual reviews of Sikorsky's comprehensive subcontracting program, known as 640 Compliance Reviews, under exemption 3. *Id.* ¶ 15. Withholding these reports is particularly crucial for procurement integrity. Every Test Program participant is subject to these annual reviews, and they produce the types of past performance data that officials use when making contract award decisions. *Id.* Disclosure could jeopardize procurement by giving the competitors and the public a window into the agency's decision-making process. *Id.* The process would be less fair because the competitors would have access to sensitive information about Lockheed's performance, while Lockheed would not have the same information about other contractors. *Id.* The Government has also redacted details of Lockheed's past performance that appear in its Comprehensive Small Business Subcontracting Plans and email correspondence between Lockheed and DOD. *Id.* ¶ 16. This information is equivalent to the information included in a 640 Review, so the Government also considers it non-releasable source selection information. *Id.*

This case is distinguishable from *LASER v. Army*, in which the district court found that contractor past performance reports were not source selection information within the meaning of the Procurement Integrity Act. *See* 2001 WL 34098652, at *4. In that case, decided in 2001, the Army issued a memo saying performance evaluations were source selection information, but not until *after* the plaintiff made its FOIA request. *Id.* In contrast, the information at issue in this case has always been treated as source selection information. Buffler Decl. ¶ 13. The *LASER* court also called the memo "sweeping;" yet the Procurement Integrity Act calls for agencies to make "case by case" determinations of what is source selection information. 2001 WL 34098652, at *4; 41 U.S.C. § 2101(7)(J). But the DOD should not have to make determinations for each and every performance evaluation document because each document is, by its nature, source selection information. *See* Buffler Decl. ¶ 13.

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                     11

The Procurement Integrity Act prohibits disclosure of certain contractor bidding and proposal information, and details of Lockheed's past performance are "source selection information" within the meaning of the statute. Thus, the redacted information is not releasable under FOIA exemption 3.

### D. The Redacted Information is Exempt Under 5 U.S.C. § 552(b)(4).

FOIA exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Exemption 4 serves private interests by protecting those who submit commercial data to the Government from the competitive disadvantages that would result from disclosure. *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 873 (D.C. Cir. 1992) (citing *Nat'l Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 768 (D.C. Cir. 1974)). It also serves Government interests by encouraging individuals to provide certain kinds of confidential information that will assist the Government in making intelligent, well-informed decisions. *Critical Mass*, 975 F.2d at 873. In line with the statutory language, the agency invoking exemption 4 must demonstrate that the information is "(1) commercial and financial information, (2) obtained from a person or by the Government, (3) that is privileged or confidential." *GC Micro*, 33 F.3d at 1112.

Information is "confidential" if disclosure is likely to either (1) "impair the Government's ability to obtain necessary information in the future;" *or* (2) cause "substantial harm to the competitive position" of the information provider. *Id*. Here, the Government has redacted proprietary information about GE and Lockheed's small business subcontracting relationships, strategies, and goals. Disclosing this information would harm the Government's ability to collect small business information from contractors and cause substantial competitive harm to both GE and Lockheed, including Sikorsky.

#### 1. Release of the Information Would Harm the Government.

When assessing whether disclosure would harm the Government, courts balance "the extent of impairment and the importance of the information against the public interest in disclosure." *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 269 (D.C. Cir. 1982). The key question is whether "the Government's information-gathering ability would be seriously impaired." *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 865 F.2d 320, 325 (D.C. Cir. 1989). Disclosing businesses' propriety information seriously impairs the Government's information-gathering ability because the

private actors would be less willing to share this information in the future.  *See Ctr. for Dig. Democracy v. Fed. Trade Comm'n*, 189 F. Supp. 3d 151, 165 (D.D.C. 2016).

Here, releasing the documents in full would cause companies such as Lockheed and GE to provide less information to DOD in the future, impairing the agency's ability to continue its work supporting small businesses.  Companies voluntarily participate in the Test Program.  Buffler Decl. ¶ 7, Raheb Aff. ¶ 11.  Lockheed and GE are required to provide certain information as part of their participation in the program, such as their subcontracting goals and descriptions of the type of supplies or services they will subcontract. Buffler Decl. ¶ 6.  They are not required to give DOD additional details about their strategies and efforts to utilize small businesses, but they often do.  Buffler Decl. ¶ 18.  DOD uses this crucial information to track progress in small business subcontracting, evaluate bid proposals, and increase opportunities for small businesses. *Id*.  Lockheed's witness said the company submits its confidential data to the Government in reliance upon these benefits. Raheb Aff. ¶ 11.

Witnesses for Lockheed, Sikorsky, and GE have testified that the companies might reevaluate how much information they provide in their small business subcontracting plans, knowing that the Government may release this information in response to FOIA requests. Raheb Aff. ¶ 59, Crawford Aff. ¶ 42, Clever Decl. ¶ 12. And the Government's witness also has stated that she is concerned that the contractors are going become more and more reluctant to elaborate on their programs.  Buffler Decl. ¶ 19.  Accordingly, the Government's interests will be seriously impaired if the information is released, and the redactions pursuant to exemption 4 are proper.  *See Bowen v. FDA*, 925 F.2d 1225, 1227-28 (9th Cir. 1991) (accepting testimony that the agency relied on firms' voluntary cooperation, and private entities would be less likely to share information if disclosure was possible).

**2.  Release of the Information Would Harm Lockheed, Sikorsky, and GE.**

Alternatively, the Government can establish that information is confidential by showing "(1) actual competition and (2) a likelihood of substantial competitive injury" to the contractor.  *GC Micro*, 33 F.3d at 1113.  The Government does not have to show that disclosure would cause "actual" harm. *Watkins v. Bureau of Customs and Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011).  Nor does it have to "engage in a sophisticated economic analysis" of the potential harm.  *Id.* at 1195.  "Nothing more" is required than identifying competitors and averring that they "could use the redacted information to gain

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                                                                  13

a significant competitive advantage" over the contractor. *Am. Small Bus. League v. Dep't of Def.*, 674 F. App'x 675, 676 (9th Cir. 2017).

Disclosure is likely to cause a contractor substantial competitive harm if it "would allow competitors to estimate and undercut [a firm's] bids." *GC Micro*, 33 F.3d at 1115; *Gulf & W. Indus. v. United States*, 615 F.2d 527, 530 (D.C. Cir. 1980). Disclosing either financial information, such as the amounts paid to subcontractors, or non-financial information, like performance evaluations, can cause substantial competitive injury. *See 100Reporters LLC v. Dep't of Justice*, 248 F. Supp. 3d 115, 142 (D.D.C. 2017) (finding exemption 4 applied to compliance-related documents because disclosure would "reveal extensive details about the inner workings of [the company's] business"). "It is not the data alone that must be considered, but the overall picture they give of [a company's] internal deliberative process," including "how it makes projections about future market conditions" and "how it structures payments to subcontractors." *Munger, Tolles & Olson LLP v. Dep't of the Army*, 58 F. Supp. 3d 1050, 1058 (C.D. Cal. 2014) (explaining that "large-scale financial information" is usually available for disclosure, but "specific financial information" is not).

Here, GE, Lockheed, and Sikorsky face significant actual competition for Government and private contracts, and so release of the redacted information is likely to cause substantial competitive injury. First, the firms compete in the intensely competitive government contract industry. *See* Raheb Aff. ¶ 13, Clever Decl. ¶ 5. These contracts are so competitive because they involve cutting-edge technology and significant costs, and they can last for long periods of time. *See* Raheb Aff. ¶ 13, *see also* Nahatis Decl. ¶ 3. Lockheed and GE regularly compete for contracts with the other Test Program participants, all but one of whom are in the Fortune 500. Raheb Aff. ¶ 26, Crawford Aff. ¶ 7. Defense contractors also have to compete for small business subcontractors, of which there are a limited number who have the necessary technical capabilities. *See* Raheb Aff. ¶ 14, Clever Decl. ¶ 6. Thus GE and Lockheed are likely to face substantial, actual competition for government contracts, as well as small business suppliers, going forward. *See General Elec. Co. v. Dep't of Air Force*, 648 F. Supp. 2d 95, 103 (D.D.C. 2009) (finding that GE showed actual competition over future contracts).

Second, disclosure would allow these competitors to better position themselves against GE and Lockheed when bidding on future Government contracts, causing them substantial competitive harm. *See Gulf & W. Indus*, 615 F.2d at 530.

**Lockheed and Sikorsky**

The Government has redacted confidential commercial and financial details contained in Lockheed's 2014-16 CSPs and in communications between DOD and Lockheed about its Test Program participation. The redactions include, for example: percentage goals for subcontracting various types of small businesses and the corresponding dollar values, Raheb Aff. ¶ 22, Crawford Aff. ¶ 19; details of Lockheed and Sikorsky past subcontracting performance, Raheb Aff. ¶ 37, Crawford Aff. ¶ 27; specific goals for improvement, Raheb Aff. ¶ 32; areas in Lockheed's supply chain where it intends to develop special commodity strengths, *id.* ¶ 31; Sikorsky's specific targeted industries, Crawford Aff. ¶ 28; methodology for making make-or-buy determinations, Raheb Aff. ¶ 23, Crawford Aff. ¶ 22; specific programs and contracts and their values, Raheb Aff. ¶ 44; and DOD compliance reviews, Raheb Aff. ¶ 43, Crawford Aff. ¶ 31. This is some of Lockheed and Sikorsky's most valuable information, and they do not have comparable details about their competitors' subcontracting plans. Raheb Aff. ¶ 19. Crawford Aff. ¶ 20. Competitors could identify technically proficient small business suppliers and steal them away from Lockheed and Sikorsky. *See* Raheb Aff. ¶ 14, Crawford Aff. ¶ 13. They could also evaluate Lockheed's mix of internal and external manufacturing — which correlate with manufacturing abilities, proposal strategy, estimated costs, and ultimate price to the customer. Raheb Aff. ¶ 23, Crawford Aff. ¶ 22. And knowledge of Lockheed and Sikorsky's past performance and goals for improvement would enable competitors to identify their strengths compared to Lockheed and Sikorsky's weaknesses when bidding on a contract. Raheb Aff. ¶ 29, Crawford Aff. ¶ 27. During the five-and-a-half-year time frame in question, about seventy percent of Lockheed's sales, and seventy-five percent of Sikorsky's, went to the U.S. government. Raheb Aff. ¶ 5, Crawford Aff. ¶ 5. So disclosure would cause harm to Lockheed by reducing their edge in competition for government contracts.

**GE**

The Government has redacted confidential commercial and financial details in GE's 2014 CSP. This includes lists of specific subcontractors and the amount of money GE awards them, Clever Decl. ¶¶

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                                   15

4, 7; data on GE's past performance on government contracts, *id.* ¶ 10; details of its small business goals, Nahatis Decl. ¶ 6; and specific initiatives and plans to develop certain categories of suppliers, *id.* ¶ 9. GE is involved in numerous competitions that take small business factors into account, and disclosure could give other contractors a competitive edge in these ongoing source selection processes. Clever Decl. ¶ 11. GE could lose suppliers to its competitors, and replacing them would set them back several months. Clever Decl. ¶ 6. Competitors could also piece together GE's internal processes, systems and initiatives, allowing them to adopt the same programs at a much lower expense. Clever Decl. ¶ 5. They could use GE's best practices for meeting small business goals to improve their own performance on government contracts. Nahatis Decl. ¶ 8. A competitor could also gain an advantage over GE in source selection by countering, in its own proposals, perceived weaknesses of GE's subcontracting program. Clever Decl. ¶ 5. In the aircraft engine industry, in which GE operates, competitions might occur once every few decades, and source selection can take more than two years. Nahatis Decl. ¶ 5. So disclosing GE's subcontracting trends could be useful to a competitor, and damaging to GE, for years. *Id.* ¶ 3.

Lockheed and GE have taken extensive measures to keep their small business participation information confidential because of its potential to cause competitive harm. Lockheed requires employees and business partners to enter into confidentiality agreements, marks commercial information as confidential, utilizes secure technology and filing system, and limits access to this information on a "need to know" basis. Raheb Aff. ¶ 54, Crawford Aff. ¶ 22. GE similarly uses restrictive markings on its CSPs and limits access to need-to-know employees and the Government. Clever Decl. ¶ 3.

Small business participation can be a key factor in an agency's award decision. Nahatis Decl. ¶ 4, Raheb Decl. ¶ 22.  Disclosure of a contractor's small business participation information would be particularly damaging — both to the agencies that hope to collect this information and the contractors who seek to avoid competitive harm.  Thus the redacted information is confidential within the meaning of exemption 4, and the Government can withhold it from FOIA disclosure.

**E.  The Redacted Information is Exempt Under 5 U.S.C. § 552(b)(5)**

DOJ's declarations establish that it properly withheld documents, in whole or in part, pursuant to Exemption 5.  Specifically, the Government has redacted information it shared with Sikorsky

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                              16

concerning their common legal interests because this information is covered by the attorney-client and work-product privileges.

### 1. Legal Framework

FOIA Exemption 5 withholds from disclosure "inter-agency or intra-agency memorandums or letters" that are not discoverable in litigation. 5 U.S.C. § 552(b)(5) (2016). "Exemption 5 encompasses records 'normally privileged in the civil discovery context.'" *Am. Civil Liberties Union of N. Calif. v. U.S. Dep't of Justice*, 880 F.3d 473, 483 (9th Cir. 2018) (quoting *Nat. Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). Simply put, "Exemption 5 withholds from a member of the public documents which a private party could not discover in litigation with the agency." *Sears*, 421 U.S. at 148.

Among other privileges, Exemption 5 incorporates the attorney-client privilege and the work product doctrine. *ACLU*, 880 F. 3d at 483. "The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011). The work product doctrine protects from discovery "mental impressions, conclusions, opinions, or legal theories of a party's attorney" prepared in anticipation of litigation. Fed. R. Civ. P. 26(b)(3)(B).

Although information usually loses its privilege when shared with a third party, the Ninth Circuit has long recognized a "common interest" or "joint defense" exception to this rule. *See United States v. Gonzalez*, 669 F.3d 974, 977-78 (9th Cir. 2012). Under the common interest doctrine, protections like work-product and attorney-client privilege attach to information revealed to a third party who shares common legal interests with the party facing a discovery request. *See id*. The doctrine includes information shared in anticipation of litigation, even before the parties sign a formal joint defense agreement. *See id*. at 978. One party to a common interest agreement "cannot unilaterally waive the privilege." *Id.* at 982.

Courts disagree over whether FOIA Exemption 5 protects from disclosure information that a Government agency reveals to a non-government third party while pursuing common legal interests. *Compare Hunton & Williams v. U.S. Dep't of Justice*, 590 F.3d 272, 277-81 (4th Cir. 2010) (finding such information protected from FOIA disclosure) *with Lucaj v. Fed. Bureau of Investigation*, 852 F.3d

541, 549 (6th Cir. 2017) (finding the common interest doctrine did not apply). *See also Citizens Progressive All. v. U.S. Bureau of Indian Affairs*, 241 F. Supp. 2d 1342, 1364 (D.N.M. 2002) (finding documents BIA shared with a tribe were protected from FOIA disclosure under common interest doctrine). The Ninth Circuit has not ruled on this issue.[2] This Court should find that information DOJ and DOD lawyers shared with Sikorsky's counsel —undiscoverable under the work product privilege, attorney-client privilege, and the common interest doctrine — is exempt from disclosure under FOIA Exemption 5.

Exemption 5 refers to "inter-agency or intra-agency" communications, but the Supreme Court has recognized that materials created by outside parties can be considered "intra-agency" if they share interests with a Government agency. *See Dep't of the Interior v. Klamath Water Users Prot. Ass'n*, 532 U.S. 1, 11-12 (2001) (explaining the "consultant corollary" idea, that Exemption 5 can encompass information prepared by outside consultants to advise agencies because their interests are one and the same). That logic should extend to information shared between the Government and outside entities when they partner in litigation to pursue common legal interests. "By cooperating with the agency in pursuit of the agency's own litigation aims, the litigation partner in a limited sense becomes a part of the enterprise that the agency is carrying out." *Hunton*, 590 F.3d at 280. Even if the litigation partner might gain some private benefit from "collaborating with an agency in the agency's pursuit of the public interest," there is no conflict of interest "because the outsider stands to gain personally only if the public's interest is vindicated." *Id*.

In *Hunton,* the Fourth Circuit held that the common interest privilege protected information exchanged between DOJ and a BlackBerry manufacturer because they shared common legal interests in patent litigation against the manufacturer. *Id.* at 275. The Government is a major BlackBerry user and wanted to prevent an injunction. *Id.* DOJ and the manufacturer shared information and documents for

---

[2] The Government asserted Exemption 5 and the common interest doctrine to withhold communications between Government officials and telecommunications companies in *Elec. Frontier Found. v. Office of Dir. of Nat. Intelligence*, No. C 08-01023 JSW, 2009 WL 3061975, at *6 (N.D. Cal. Sept. 24, 2009) (subsequent history omitted). The court said, without elaborating, that it was "not persuaded" by the common interest argument. *Id.* The communications concerned the telecom companies' efforts to lobby Congress to pass a favorable policy. *Id.* at *5. So unlike the present case and *Hunton*, the telecom companies did not share the agency's interests in specific litigation. *See id.*

several months "on a confidential 'common interest' basis" before signing a formal common interest agreement. *Id.* A law firm representing the opposing party in the litigation learned of the common interest agreement and filed a FOIA request for communications between DOJ and the manufacturer. *Id.* The court held that even though the communications involved a private entity, they still fell under exemption 5. *Id.* at 277-78. Otherwise, any time the Government partners with others in litigation, it would lose "its most basic civil discovery privileges — namely, the attorney-client and attorney work product privileges." *Id.* The court remanded the case so the district court could determine if and when the common interest agreement began prior to the formal written agreement. *Id.* at 288.

Here, the Government and Sikorsky shared common legal interests in responding to Plaintiff's prior FOIA lawsuit; indeed, the legal interests during the relevant times were precisely the same, as both parties sought to defend certain redactions in Sikorsky's 2013 Plan. Specifically, the Government and Sikorsky both wanted a court determination upholding the DOD's decision to withhold parts of the 2013 Plan, just as the DOJ and BlackBerry manufacturer both wanted to limit the scope of a court injunction in *Hunton*. Friday Decl. ¶ 8; Simmons Decl. ¶ 19; Lamvol Decl. ¶ 5; *Hunton*, 590 F.3d at 275. Lawyers from the Government and Sikorsky, an intervener, coordinated and exchanged information throughout the litigation — sharing drafts of various filings and discussing strategy — culminating in a formal joint defense agreement in September 2017. Friday Decl. ¶¶ 9-10; Kravitz Decl. ¶¶ 11-15; Herrington Decl. ¶¶ 8-9; Simmons Decl. ¶¶ 12-13; Lamvol Decl. ¶ 5-7. Even if Sikorsky stood to gain a private benefit from successful *ASBL I* litigation, its interests and DOJ's interests were not in conflict because they sought the same result. *See Hunton*, 590 F.3d at 280. The Court should thus consider the Government's communications with Sikorsky regarding these legal interests "intra-agency" for Exemption 5 purposes.

ASBL should not be allowed to use FOIA to circumvent traditional discovery rules. The Supreme Court has consistently rejected the idea that a party can "obtain through the FOIA material that is normally privileged [because it] would create an anomaly in that the FOIA could be used to supplement civil discovery." *United States v. Weber Aircraft Corp.*, 465 U.S. 792, 801 (1984). During *ASBL I*, ASBL could not have obtained through discovery all communications between DOJ and Sikorsky related to the ongoing litigation. So it should not be able to get the same, privileged information through FOIA now.

Finding that exemption 5 does not apply here would give ASBL a significant unfair advantage over the Government in this case and future litigation. ASBL is a frequent plaintiff in FOIA actions. Releasing attorney-client and work-product privileged information related to the Government's defense in *ASBL I* would give ASBL a rare window into the Government's legal strategy. ASBL is likely to file more FOIA actions against the Government that involve confidential commercial information, privacy, and other issues related to small business subcontracting that came up in *ASBL I*. The redacted information, if released, would help ASBL craft its strategy in future cases, whereas the Government, limited to civil discovery, will not have equivalent knowledge about ASBL. "FOIA was meant to foster political accountability, not to force the United States into a uniquely disadvantaged litigation posture." *Hunton*, 590 F.3d at 277.

If the Court finds that exemption 5 does not extend to the common interest privilege, the "impact on the Government's ability to conduct complex and multi-faceted litigation would be staggering." *Hunton*, 590 F.3d at 278. The Government would not be able to communicate freely with its litigation partners — a privilege accorded to all other litigants — for fear of future FOIA requests. Private entities would not enter common interest agreements with agencies because FOIA could force the Government to disclose their communications, despite the rule that one party to a common interest cannot unilaterally waive privilege. *See Gonzalez* 669 F.3d at 982, *see also* Lamvol ¶ 6 (explaining that Sikorsky has kept this information confidential). Nothing in exemption 5 "demands that the Government, alone among all litigants, be stripped of civil discovery privileges when it has done nothing more than communicate with other litigating parties with whom it shares a singular and unitary litigation interest." *Hunton,* 590 F.3d at 278. Accordingly, the Court should find that attorney-client and work product privileged communications between DOJ and Sikorsky, related to their common legal interests in the *ASBL I* litigation, are intra-agency communications exempt from FOIA disclosure.

### 2.    DOJ Properly Withheld Privileged Material Pursuant to Exemption 5

DOJ properly withheld privileged information from intra-agency and inter-agency documents pursuant to Exemption 5, as the withheld information is protected by the attorney-client privilege and the work product doctrine.

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                    20

### a.  The Attorney-Client Privilege Was Properly Applied

The attorney-client privilege was properly applied to communications between DOJ and Sikorsky (and its counsel).  *See* Friday Decl. ¶ 13; Simmons Decl. ¶ 13.  These communications were clearly communications between client and counsel.  They were intended to be, and in fact were, kept confidential. Friday Decl. ¶ 14; Simmons Decl. ¶ 15; Lamvol Decl. ¶ 6.  In addition, they were made for the purpose of receiving or providing legal advice about the issues surrounding the redactions in the 2014 Plan. Friday Decl. ¶ 13; Simmons Decl. ¶ 14; Kravitz Decl. ¶ 12-14.  Accordingly, the information constitutes privileged attorney-client communications.  *See Richy*, 632 F.3d at 566.

### b.  The Work Product Doctrine Was Properly Applied

The work product doctrine was properly applied to protect draft legal documents and other communications shared between and among Government lawyers and Sikorsky counsel prepared in reasonable anticipation of litigation.  Friday Decl. ¶ 12; Kravitz Decl. ¶ 14; Herrington Decl. ¶ 8, Lamvol Decl. ¶ 5. The emails and other documents prepared by the Government and Sikorsky attorneys include those attorneys' mental impressions, conclusions, opinions, and legal theories concerning positions that could be taken in the prior FOIA litigation. *Id.* The withheld information therefore constitutes protected work product.  *See* Fed. R. Civ. P. 26(b)(3)(B); *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 28 (1983) (Under "exemption 5, attorney work-product is exempt from mandatory disclosure without regard to the status of the litigation for which it was prepared.").

The Government properly redacted attorney-client and work-product privileged information, protected from FOIA disclosure under exemption 5.

### F.  The Redacted Information is Exempt Under 5 U.S.C. § 552(b)(6)

Plaintiff has withdrawn its objections to the redactions of the email addresses and phone numbers of employees of the contractors, and now only contests the DOD's redaction, pursuant to exemption 6, of the email addresses and phone numbers of DOD employees.  This exemption 6 redaction is proper because DOD employees have a protectable privacy interest in their official contact information, and there is no public interest in disclosure.

Exemption 6 states that FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. §

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                              21

552(b)(6).  Because exemption 6 speaks of an "unwarranted" invasion of personal privacy, "a court must balance the public interest in disclosure against the interest Congress intended the [e]xemption to protect."  *U.S. Dep't of Def. v. Fed. Labor Relations Auth. (FLRA)*, 510 U.S. 487, 495 (1994).  Once the Government has identified a cognizable privacy interest, "the only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding *of the operations or activities of the Government*."  *Id.*, quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press,* 489 U.S. 749, 775 (1989) (original emphasis).  Information that "sheds light on an agency's performance of its statutory duties" falls within this purpose; "information about private citizens that is accumulated in various Governmental files but that reveals little or nothing about an agency's own conduct" does not.  *Id.*, quoting *Reporters Comm.*, 489 U.S. at 773.

The government has properly redacted DOD personnel emails and phone numbers because DOD employees, civilian and military, have a cognizable privacy interest in their official contact information. *See, e.g., Hiken v. Dep't of Def.*, 872 F. Supp. 2d 936, 942 (N.D. Cal. 2012) (finding DOD can withhold "names and official email addresses and official phone numbers" under exemption 6). As a practice, DOD consistently withholds personally identifying information of all personnel at the military rank of Colonel or civilian rank GS-15 and below. Herrington Decl. ¶ 10. DOD has not withheld names of individuals known to ASBL, but it redacted email address and phone numbers to protect these individuals from harassment and annoyance. *Id.* ¶ 11; *see Long v. Office of Pers. Mgmt.*, 692 F.3d 185, 192 (2d Cir. 2012) (finding a privacy interest in names because DOD is a "sensitive" agency, and so its employees "face an increased risk of harassment or attack").  A policy of withholding personal information can create a reasonable expectation of privacy, and thus a privacy interest under exemption 6. *See Cameranesi v. Dep't of Def.*, 856 F.3d 626, 634, 642-43 (9th Cir. 2017).

Additionally, ASBL cannot show that releasing DOD personnel contact information will shed light on DOD's "performance of its statutory duties" or otherwise "let citizens know what their Government is up to."  *FLRA*, 510 U.S. at 497 (quoting *Reporters Comm.*, 485 U.S. at 773).  As in *FLRA*, "such disclosure would reveal little or nothing about the employing agencies or their activities." 510 U.S. at 497. The DOD employees at issue are not high-level decision makers, and so their identities

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                                          22

are not of interest to the public. Herrington Decl. ¶ 11. Their interest in protecting their privacy outweighs any public interest in disclosure, and therefore the redactions are proper under exemption 6.

### IV.    CONCLUSION

For the reasons discussed above, the Court should grant summary judgment in favor of the Government.

//

ALEX G. TSE
UNITED STATES ATTORNEY

Dated: November 16, 2018            /s/ *Ellen London*            .

Ellen London
Counsel for Defendant

MOT. FOR SUMMARY JUDGMENT
C 18-01979-WHA                    23