IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

AMERICAN SMALL BUSINESS LEAGUE,

Plaintiff,

v.

DEPARTMENT OF DEFENSE and
DEPARTMENT OF JUSTICE,

Defendants.

No. C 18-01979 WHA

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

## INTRODUCTION

In this FOIA action, both sides move for summary judgment. For the reasons stated below, both motions are **GRANTED IN PART** and **DENIED IN PART**.

## STATEMENT

Plaintiff American Small Business League is a non-profit organization that promotes the interests of small businesses. To that end, it focuses public attention on emerging issues for small businesses, reviews federal and state government policies and procedures to determine the potential impact on small businesses, and monitors federal contracts that are awarded to large corporations rather than to small businesses (Dkt. No. 1 ¶ 4).

The Small Business Act mandates that the federal government encourage government contractors to subcontract to "small disadvantaged businesses" ("SDB"). Under regulations subsequently enacted to implement SDB goals, federal government contractors must submit a subcontracting plan as part of the bidding process for a potential contract award. And,

defendant Department of Defense monitors contractor compliance with SDB goals (Buffler Decl. ¶¶ 4–9).

The Act normally requires prime contractors to submit "Individual Subcontracting Plans" for each contract to show how government contracts and subcontracts are awarded to small businesses. But in 1990, Congress passed the Test Program, thereby allowing certain large defense contractors to instead submit a single annual "Comprehensive Subcontracting Plan" for an entire plant, division, or company to identify all subcontract amounts awarded to small businesses on government contracts. Test Program participants must submit their Comprehensive Subcontracting Plan to the DOD each year for review and approval (*id*. ¶¶ 5, 8).

This action is related to a prior FOIA case, *American Small Business League v. Department of Defense*, Case No. C 14-02166 WHA ("*ASBL I*"). There, in August 2013, the same plaintiff requested Sikorsky's 2013 Comprehensive Small Business Subcontracting Plan from the DOD pursuant to FOIA. The agency initially denied plaintiff's request on the basis that the requested document contained confidential commercial information and thus fell under FOIA's exemption under Section 552(b)(4). In March 2018, after years of litigation and a trip to our court of appeals, the government released the document over Sikorsky's objections (with the exception of limited redactions for private personal information under Section 552(b)(6)).

As relevant to the instant motions, plaintiff now seeks GE Aviation's 2014 Comprehensive Subcontracting Plan. It also seeks all documents transmitted during *ASBL I* between the DOD or defendant Department of Justice and Lockheed Martin Corporation (including Sikorsky Aircraft Corporation, a subsidiary of Lockheed) regarding the 2013 FOIA request, ASBL, Lloyd Chapman, the Comprehensive Subcontracting Plan Test Program ("CSPTP"), and the Mentor-Protégé program (Dkt. No. 47 at 7).

Since plaintiff filed the instant action in March 2018, the government has produced responsive documents (along with *Vaughn* indexes), subject to redactions (Dkt. No. 29 ¶ 2). The government declared those redacted materials exempt under 5 U.S.C. §§ 552(b)(3)–(6).

The parties now cross-move for summary judgment on the government's redactions. The government moves to confirm the determinations of exemption (Dkt. No. 44). Plaintiff

challenges the government's assertion of Exemptions 3–5 as follows (Dkt. No. 47 at 8; Olson Decl., Exh. D):[1]

    (1) Redactions to GE's 2014 Comprehensive Subcontracting Plan pursuant to Exemption 4;

    (2) Redactions to contractor past performance evaluations and Comprehensive Subcontracting Plans pursuant to Exemption 3 and 4; and

    (3) Redactions to communications between the government and Sikorsky's counsel during *ASBL I* pursuant to Exemption 5.

Plaintiff also challenges the adequacy of the government's searches. This order follows full briefing and oral argument.

## ANALYSIS

FOIA's purpose is to let us see what our government has been up to by "provid[ing] public access to official information 'shielded unnecessarily' from public view and establish[ing] a 'judicially enforceable public right to secure such information from possibly unwilling official hands.' " *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). FOIA thus "mandates a policy of broad disclosure of government documents." *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 741 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016).

"When a request is made, an agency may withhold a document, or portions thereof, only if the material at issue falls within one of the nine statutory exemptions found in [Section] 552(b)." *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997). "These exemptions are explicitly exclusive and must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy." *Ibid.* (citations and quotations omitted). "FOIA's strong presumption in favor of disclosure places the burden on the government to show that an exemption properly applies to the records it seeks to withhold." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015).

---

[1] Plaintiff does not challenge the Exemption 6 redactions.

3

Here, the questions presented are whether the government (1) made adequate searches, and (2) has properly determined that the information at issue is exempt under Sections 552(b)(3), (4), and/or (5). This order addresses each issue in turn.

**1. ADEQUACY OF SEARCHES.**

The parties dispute whether the government's searches regarding documents transmitted between the DOJ, DOD, and Lockheed were reasonable and adequate (*see* Dkt. Nos. 29 ¶ 5). Under FOIA, an agency responding to a request must "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Lahr*, 569 F.3d at 986 (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). "This showing may be made by 'reasonably detailed, nonconclusory affidavits submitted in good faith.' " *Ibid*. "In evaluating the sufficiency of an agency's search, 'the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate.' " *Id*. at 987 (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)). The government argues it conducted a reasonable search for relevant documents. This order agrees.

Here, the DOD and DOJ submitted declarations attesting to reasonable searches made pursuant to the parties' stipulated search plan for the relevant documents (*see* Dkt. No. 29 ¶ 5). Specifically, Mark Herrington (the DOD's associate deputy general counsel who oversees the DOD's FOIA litigation) explains how he and Janice Buffler (then associate director of the DOD Office of Small Business Programs) searched their files for documents transmitted between the DOD and Lockheed or Sikorsky for relevant documents. He further explains how the DOD searched the files of Tatia Bellamy-Vaughn and Lux Vazquez of the Defense Contract Management Agency, and Terry Sutherland — all pursuant to the stipulated agreement (Herrington Decl. ¶¶ 4–6). Moreover, each of the attorneys at the DOJ involved in the *ASBL I* litigation also submitted declarations explaining how they searched their emails for responsive documents (Friday Decl. ¶ 6; Kravitz Decl. ¶ 8; London Decl. ¶ 12; Simmons Decl. ¶ 8).

Plaintiff counters that after notifying the government of an "unexplained gap" in the FOIA response, the government produced two more responsive documents not previously

4

identified (Dkt. No. 47 at 10). The government explained that it had missed those documents due to an error "in the de-duplicating process" and an accidental deletion by one of the government's attorneys (Olson Decl., Exh. Y). The government also volunteered to conduct additional searches "as quickly as [it] can" to check for any other potential errors made during the de-duplicating process. Plaintiff further asserts that when it flagged an additional defect in the government's production, the government produced another document "inadvertently marked as a duplicate" one day before plaintiff's brief was due (but just two days after plaintiff raised the issue) (*ibid*.). The government again volunteered to run another search. Plaintiff now complains of other potential gaps in the government's FOIA response and wonders aloud whether there are other documents the government's searches potentially missed (Dkt. No. 47 at 10–11). As such, it requests that the government (both the DOJ and DOD) be ordered to redo the entire search, specifically for "deleted" responsive records.

"[T]he failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate." *Lahr*, 569 F.3d at 988. As our court of appeals has repeatedly stated, plaintiff was "entitled to a reasonable search for records, not a perfect one. And a reasonable search is what [it] got." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015). Here, the government readily acknowledged certain missing documents once notified by plaintiff and promptly took steps to address the errors, including voluntarily redoing its search for documents from custodians located within the United States Attorney's Office and offering ways of building in more time for plaintiff to respond if it felt prejudiced by the timing (Olson Decl., Exh. Y; London Suppl. Decl. ¶¶ 3–5; Second Herrington Decl. ¶¶ 8–9). This order finds that the government's submitted declarations establish that its searches were reasonably calculated to uncover all relevant documents. Plaintiff's speculative claim of potentially missing documents fail to create a genuine dispute. And, to the extent there remains doubt regarding missing documents, the government has already volunteered to run relevant searches again (Dkt. No. 55 at 2). Accordingly, plaintiff's motion for summary judgment as to the adequacy of the government's search is **DENIED** and the government's motion is **GRANTED**.

5

## 2. EXEMPTION 3.

Section 552(b)(3) exempts records protected from disclosure by other federal statutes as follows:

> (3) specifically exempted from disclosure by statute (other than section 552b of this title), if that statute—
>
> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

In determining whether information has been properly withheld under Exemption 3, "the government must show [1] that the statute on which it relies qualifies as an exempting statute and [2] that the material being withheld falls within the exempting statute's coverage." *Cal-Almond, Inc. v. U.S. Dep't of Agric.*, 960 F.2d 105, 108 (9th Cir. 1992) (citing *C.I.A. v. Sims*, 471 U.S. 159, 167 (1985)). "Whether information is exempt from disclosure is a Congressional determination, not an administrative one." *Lessner v. U.S. Dep't of Commerce*, 827 F.2d 1333, 1335 (9th Cir. 1987) (citing *Irons & Sears v. Dann*, 606 F.2d 1215, 1220 (D.C.Cir. 1979), *cert. denied*, 444 U.S. 1075 (1980)).

Here, the government redacted details about Lockheed's actual subcontracting performance and compliance as alleged "source selection information" under Exemption 3 and the Procurement Integrity Act ("PIA").

The PIA prohibits disclosure of certain information related to the contractor bidding and source selection process, as follows:

> (a) Prohibition on disclosing procurement information.—
>
> (1) In general. — Except as provided by law, a person . . . shall not knowingly disclose contractor bid or proposal information or *source selection information before the award of a Federal agency procurement contract* to which the information relates.

The PIA further defines "source selection information" with the following catch-all provision:

> (7) *Source selection information*. — The term "source selection information" means any of the following information prepared for use by a Federal agency to evaluate a bid or proposal to enter into a Federal

6

> agency procurement contract, if that information previously has not been made available to the public or disclosed publicly:
>
>> (J) Other information marked as "source selection information" based on a case-by-case determination by the head of the agency, the head's designee, or the contracting officer that its disclosure would jeopardize the integrity or successful completion of the Federal agency procurement to which the information relates.

41 U.S.C. §§ 2102(a)(1), 2101(7)(J) (emphasis added).

The parties dispute whether the PIA qualifies as an exempting statute within the meaning of Exemption 3 and, if so, whether the information at issue falls within the statutory definition. This order need not decide whether the PIA is an exempting statute because, even assuming that it is, the government has not sufficiently shown that the redacted information constitutes "source selection information" within the PIA's definition.

Both sides agree that the PIA's non-disclosure provision applies to information created "*before the award* of a Federal agency procurement contract to which the information relates" (*see* Dkt. Nos. 47 at 16; 48 at 7). 41 U.S.C. § 2102(a)(1) (emphasis added). The dispute therefore boils down to the precise scope of the provision, as discussed below.

As an initial matter, the DOD failed to individually mark the redacted information as "source selection information," as explicitly required under the PIA (Dkt. No. 48 at 7). *See* 41 U.S.C. § 2101(7)(J) ("information *marked* as 'source selection information' based on a case-by-case determination") (emphasis added). In strictly applying the PIA, this would be sufficient grounds to find that Exemption 3 does not apply. The government still contends, however, that contractor past performance evaluations are "by their nature" source selection information treated confidentially by the DOD and therefore fall within the PIA's definition (Dkt. No. 48 at 7; Buffler Decl. ¶ 13). The government also cites Federal Acquisition Regulation 9.105-2, which exempts "past performance reviews" from disclosure after the award of a contract (Dkt. No. 48 at 7).

To determine the scope of the PIA, "we look first at the language of the statute." *Lessner v. U.S. Dep't of Commerce*, 827 F.2d 1333, 1337 (9th Cir. 1987). To repeat, the PIA provides that a present or former official of the federal government "shall not knowingly disclose . . . selection information *before the award* of a Federal agency procurement contract to

7

which the information relates." 41 U.S.C. § 2102(a)(1) (emphasis added). The statute elsewhere defines the types of documents that constitute "source selection information" that may not be knowingly disclosed. *See id*. § 2101(7). The definition of "source selection information" includes "information *prepared for use* by a Federal agency to evaluate a bid." *Ibid*. (emphasis added).

Here, the details of Lockheed's actual subcontracting performance and compliance relate to contracts *already* awarded to Lockheed. The government contends that post-contract performance evaluations play an informative role in awarding future procurement bids and therefore treats all performance evaluations as confidential "source selection information" (Buffler Decl. ¶¶ 11, 13). In other words, according to the government, "[a]ll evaluations have the unique characteristic of always being pre-decisional in nature" and thus fall within the purview of the PIA (*id*. ¶ 14).

The government's broad assertion that it can withhold the redacted information effectively *ad infinitum*, however, eviscerates any distinction between *pre-* and *post-*award of a contract — a distinction the PIA clearly contemplates — thereby rendering the statutory language "before the award" meaningless. Nor would such a blanket definition be "information marked as 'source selection information' based on a *case-by-case* determination" under Section 2101(7)(J). *See Legal and Safety Employer Research, Inc. v. U.S. Dep't of the Army*, No. C 01-748 WBS/JFM, 2001 WL 34098652, at *4 (E.D. Cal. May 4, 2001) (Judge William Shubb). That is, the record does not include any reference to any specific pre-award contract to which the information at issue applies. Instead, the current record shows that the government applied Section 2101(7)(J) generally — stating simply "Lockheed is a regular competitor for Federal contracts" and speculating that release of its past performance details "could" affect the source selection process — rather than on a case-by-case basis, as the PIA requires (*see* Dkt. No. 48 at 7; Buffler Suppl. Decl. ¶ 4). Moreover, nothing in the record suggests that the post-contract performance evaluations were specifically "prepared for use" by the government for the purpose of evaluating a specific bid or proposal to enter into a contract. *See* 41 U.S.C. §

2101(7). Rather, the requested information, on this record, seems to simply be evaluations completed *during* the performance of a contract.

Based on the foregoing — and in light of our court of appeals' exhortation that "[b]ecause FOIA is meant to promote disclosure, its exemptions are interpreted narrowly" — this order finds that the information related to Lockheed's past performance in connection with already-awarded contracts fall outside the scope of the PIA. *Sierra Club, Inc. v. United States Fish & Wildlife Serv.*, 911 F.3d 967, 978 (9th Cir. 2018) (citing *Assembly of Cal. v. U.S. Dep't of Commerce*, 968 F.2d 916, 920 (9th Cir. 1992)). Accordingly, plaintiff's motion for summary judgment as to Exemption 3 is **GRANTED** and the government's motion is **DENIED**.

### 3. EXEMPTION 4.

Section 552(b)(4) exempts from disclosure "(1) commercial and financial information, (2) obtained from a person or by the government, (3) that is privileged or confidential." *GC Micro Corp. v. Def. Logistics Agency*, 33 F.3d 1109, 1112 (9th Cir. 1994), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). "[C]ommercial or financial matter is 'confidential' for purposes of the exemption if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained." *Id.* at 1112. To satisfy the second "competitive harm" prong, the party resisting disclosure need not show actual competitive harm. Rather, that party need only show: (a) "actual competition in the relevant market," and (b) "a likelihood of substantial competitive injury if the information were released." *Lion Raisins Inc. v. U.S. Dep't of Agriculture*, 354 F.3d 1072, 1079 (9th Cir. 2004) (citing *GC Micro*, 33 F.3d at 1113).

A genuine issue of material fact exists where the parties submit "competing declarations concerning the potential competitive effect of releasing" the information at issue. *See Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 839 F.3d 750, 751 (9th Cir. 2016). "[I]f there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing." *Animal Legal Def. Fund*, 836 F.3d at 990.

9

Here, the government redacted details related to Lockheed and GE's small business subcontracting relationships, strategies, and goals (Dkt. No. 44 at 12). Specifically, the government redacted details in Lockheed's 2014–2016 Comprehensive Subcontracting Plan ("CSP") and communications between the DOD and Lockheed regarding Lockheed's Test Program participation (Dkt. No. 44 at 15), *e.g.*, percentage goals and corresponding dollar values for subcontracting, Lockheed and Sikorsky's past subcontracting performance, and Sikorsky's specific targeted industries (Raheb Aff. ¶¶ 22, 37; Crawford Aff. ¶¶ 19, 27–28). It further redacted details in GE's 2014 CSP, *e.g.*, lists of subcontractors and the amount of money GE awards them, GE's past performance data, and specific plans "to develop certain categories of suppliers" (Clever Decl. ¶¶ 4, 7, 10; Nahatis Decl. ¶ 9).

*First*, the government contends that disclosure of this information would impair its information-gathering ability, as disclosure would allegedly deter contractors from candidly submitting small business information. This, the government asserts, would limit its decision-making capacity — noting that these companies are "already taking steps to include less information in" the subcontracting plans (Clever Decl. ¶ 6; Raheb Decl. ¶ 59; Crawford Decl. ¶ 42). Plaintiff counters with its own declaration by William Shook, an alleged government contracts expert, who states that because these companies' businesses rely heavily upon federal contracts, and because the plans are mandatory, "noncompliance with the requirements for the submission, negotiation, and performance of a small business subcontracting plan is not an option if [contractors] want to do business with the U.S. government" (Shook Decl. ¶ 6).

*Second*, the government further argues that disclosure would cause substantial competitive harm. In support, it submits declarations by GE, Lockheed, and Sikorsky representatives "identifying the entities with which [the companies] compete[] for government defense contracts" (*see* Raheb Decl. ¶ 26; Crawford ¶ 25; Nahatis ¶ 7). *Am. Small Bus. League v. Dep't of Def.*, 674 F. App'x 675, 676 (9th Cir. 2017). These representatives also "aver[] that those entities could use the redacted information to gain a significant competitive advantage." *Ibid*. For example, they claim they could lose suppliers to its competitors, allow competitors to learn of and adopt their subcontracting programs at a lower expense, and/or enable competitors

10

to counter perceived weaknesses in their program in their own proposals (Clever Decl. ¶¶ 5, 6; Raheb Aff. ¶¶ 14, 29; Crawford Aff. ¶¶ 13, 27; Dkt. No. 44 at 16).

Plaintiff argues, *inter alia*, that the redacted information could not provide competitors with an advantage because the plans contain lists of company-wide value of subcontracts with particular subcontractors, rather than by specific contract (Shook Decl. ¶ 8(a)).

This order finds that issues of material fact exist as to Exemption 4. As in *ASBL I*, the government submitted declarations from the companies' representatives "(1) identifying the entities with which Sikorsky competes for government defense contracts and (2) averring that those entities could use the redacted information to gain a significant competitive advantage over Sikorsky." *Am. Small Bus. League*, 674 F. App'x at 676 (9th Cir. 2017). "Nothing more is required to gain protection from disclosure under Exemption 4." *Ibid*.

Although the undersigned in *ASBL I* found the Sikorsky declaration too conclusory to be given any substantial weight (as plaintiff asserts in the instant case), our court of appeals held it sufficient to "at least create[] a genuine issue of fact as to whether most of its redactions qualified for Exemption 4." *Ibid*.

So too here. As in *ASBL I*, the parties have submitted competing declarations as to whether disclosure of the requested information would cause competitive harm. Moreover, even though the government in *ASBL I* eventually reversed course (following the second denial of summary judgment) after determining that Sikorsky's representative Martha Crawford could not provide any facts showing a likelihood of substantial competitive harm, the issues there related specifically to the 2013 plan and the staleness of the information contained within the 2013 plan (Olson Decl., Exh. C). Here, in contrast, the plans at issue are more recent (2014–2016) and involve information as recent as June 2018 (Second Herrington Decl. ¶ 11). Additionally, the parties have submitted competing declarations as to whether disclosure would impede the government's information-gathering ability.

The instant case presents issues of material facts as to the propriety of the government's redactions pursuant to Exemption 4. Accordingly, both sides' cross-motions for summary judgment as to Exemption 4 are **DENIED**.

11

### 4. EXEMPTION 5.

Section 552(b)(5) protects from disclosure "interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Under Exemption 5, information may be withheld if (1) its source is a government agency, and (2) it "fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). "This exemption has been interpreted as coextensive with all civil discovery privileges." *Sierra Club*, 911 F.3d at 978 (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). "In light of the strong policy of the FOIA that the public is entitled to know what its government is doing and why, Exemption 5 is to be applied as narrowly as consistent with efficient Government operation." *Lahr*, 569 F.3d at 979 (quoting *Maricopa*, 108 F.3d at 1093).

Here, the government seeks to withhold communications (*i.e.*, documents transmitted) between the government and Sikorsky during *ASBL I* under Exemption 5. It argues that those communications, which the government contends qualify as "intra-agency" pursuant to the "common interest" doctrine, are protected by attorney-client and work product privileges.

The common interest doctrine creates an exception to the rule on waiver — *i.e.*, privileged information disclosed to a non-party sharing a common interest in litigation remains protected. *See United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir. 1987), *overruled on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997); *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012). The government argues that the communications at issue were made under a joint litigation strategy to withhold information under Exemption 4. This order holds that the communications among allies made through a common interest arrangement in litigation are protected from disclosure for purposes of Exemption 5, provided, of course, that all of the prerequisites for establishing the "privilege" are met.

In *Department of Interior v. Klamath Water Users Protective Association*, 532 U.S. 1 (2001), the Supreme Court of the United States held that an agency's communications with Indian Tribes addressing the Tribes' interest in governmental allocation of water rights were not

"inter-agency or intra-agency" within the scope of Exemption 5. There, the agency relied on the "consultant corollary" doctrine (which treats documents prepared for an agency by an outside consultant as an "intra-agency" memorandum) in arguing that their communications were "intra-agency" for purposes of Exemption 5 and thus protected by the deliberative process privilege. This was especially so, the agency argued, given the government's trust obligation towards the Tribes and potential erosion of candor in tribal communications. *Id*. at 11.

In rejecting the consultant corollary doctrine as applied in *Klamath*, the Supreme Court explained that despite those real concerns, the agency "ignore[d] the first condition of Exemption 5, that the communication be 'intra-agency or inter-agency,' " and that there was "no textual justification for draining the first condition of independent vitality." *Id*. at 12. The Supreme Court further noted that typically exempted consultant communications did not involve any self-interest by the "consultant" — a scenario which the Supreme Court stated "may be enough like the agency's own personnel to justify calling their communications 'intra-agency.' " *Ibid*. On the contrary, the Tribes "necessarily communicate[d] with the [agency] with their own, albeit entirely legitimate, interests in mind" and further represented "self-advoca[cy] at the expense of others." *Ibid*.

While neither the Supreme Court nor our court of appeals has squarely addressed this issue, the United States Court of Appeals for the Fourth Circuit in *Hunton & Williams v. United States Department of Justice*, 590 F.3d 272 (4th Cir. 2010), applied the common interest doctrine to satisfy Exemption 5's threshold requirement where communications involved a non-agency. There, counsel representing a plaintiff in an earlier patent infringement case — and in which the DOJ intervened — filed a FOIA request for communications made between the DOJ and the defendant (RIM) in the patent case. RIM, a Blackberry manufacturer, had solicited the DOJ's intervention in seeking to overturn a temporary injunction limiting BlackBerry manufacturing, as the injunction would have interfered with the federal government's heavy BlackBerry use. The agency argued that the common interest communications were exempt from FOIA disclosure. The appellate court agreed, holding that "[b]ecause the common interest doctrine requires the agency to determine that the public interest and the litigation partner's

13

interest have converged, communications between the agency and its partner can be understood as 'intra-agency' for purposes of Exemption 5." *Id*. at 280.

In so holding, the appellate court explained that the "clear thrust" of Exemption 5 was "to ensure that FOIA does not deprive the government of the work-product and attorney-client protections otherwise available to it in litigation." *Id*. at 278 (citing *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). It reasoned that to hold otherwise would "allow adverse private litigants to use FOIA to claim this sort of tactical advantage against the government" and thus "would run counter to the Exemption's goal." *Ibid*.

The appellate court further discussed the interplay between the common interest doctrine and the Supreme Court's treatment of the "consultant corollary" doctrine in *Klamath*. The appellate court believed its view was consistent with *Klamath*, where that holding "did not impact the very different situation" in *Hunton* where the agency and outside party "share[d] a unitary interest in achieving a litigative outcome and result." *Id*. at 279. Rather, the outside party in *Hunton*, the appellate court stated, "in a limited sense becomes a part of the enterprise that the agency is carrying out" and thus subsides "the danger of self-advocacy at the expense of others." *Id*. at 280, 287 (quoting *Klamath*, 532 U.S. at 12).

So too here. Just as in *Hunton*, privileged documents shared between the government and Sikorsky pursuant to a common interest ordinarily would remain protected in civil proceedings. The same protection should be afforded in the FOIA context if the government and Sikorsky shared a joint defense agreement. As our court of appeals has stated, Exemption 5 "has been interpreted as coextensive with all civil discovery privileges." *Sierra Club*, 911 F.3d at 978. And, as the United States Court of Appeals for the Fourth Circuit explained, "FOIA does not strip the government of its civil discovery privileges" and should not "allow adverse private litigants to [gain a] tactical advantage against the government." *Hunton*, 590 F.3d at 274, 278. As such, this order finds that communications between the government and Sikorsky during *ASBL I* concerning a joint litigation strategy were "intra-agency" for the purposes of Exemption 5.

14

Moreover, the circumstances here differ from those in *Lucaj v. Federal Bureau of Investigation*, 852 F.3d 541 (6th Cir. 2017), where the United States Court of Appeals for the Sixth Circuit, in strictly reading Exemption 5's threshold requirement, rejected the common interest doctrine's application to Exemption 5. There, the plaintiff requested information related to an FBI investigation into him pursuant to FOIA. *Id.* at 543. The appellate court rejected the FBI's attempt to withhold, under Exemption 5 and the common interest doctrine, "requests for assistance" documents (which included information such as legal theories of the case) sent by the DOJ to two foreign government entities, holding that the communications were not "inter-agency." *Id.* at 544–45. The documents' recipients in *Lucaj*, unlike here, did not share any common litigation strategy. Rather, the foreign government entities at most served as a source of information in an FBI investigation.[2]

Plaintiff further contends that the common interest doctrine does not apply here, where (as plaintiff asserts) — unlike in *Hunton*, where the DOJ had its own genuine interest in reversing the injunction — *ASBL I* was driven primarily by Sikorsky's self-interest in withholding the information, with the government simply obliging (Dkt. No. 51 at 12). Thus, plaintiff argues, *Klamath* dictates that the communications at issue fall outside the scope of Exemption 5.

This, however, misses *Hunton*'s main point that the common interest doctrine, as applied to Exemption 5 under these circumstances, is "simply a matter of evenhandedness." *Hunton*, 590 F.3d at 278. That is, adverse private litigants should be disallowed from exploiting a FOIA loophole to access otherwise privileged information. Even in *Hunton*, the appellate court noted that the non-agency party acted in its own interest in seeking a partnership with the DOJ. *Id.* at 287. To hold self-interest as negating a common litigation interest in this context, however, "would eviscerate the government's discovery privileges, since anyone who joins forces with the government in litigation will benefit if the partnership is successful." *Ibid.* An

---

[2] This order similarly finds plaintiff's reliance on *Elec. Frontier Found. v. Office of Dir. of Nat'l Intelligence*, No. C 08-01023 JSW, 2009 WL 3061975 (N.D. Cal. Sept. 24, 2009) (Judge Jeffrey White), *aff'd in part, vacated in part, rev'd in part sub nom. Elec. Frontier Found. v. Office of Dir. of Nat'l Intelligence*, 595 F.3d 949 (9th Cir. 2010), unavailing.

15

attempt to arbitrarily define the level of "self-interest" tolerable under Exemption 5 would "have no logical stopping point short of crippling the government's discovery privileges." *Ibid.*[3]

While this order finds that the common interest doctrine applies to Exemption 5, it does not blindly bless the government's mere invocation of a common interest. "Documents exchanged before a common interest agreement is established are not protected from disclosure." *Id*. at 285. "Thus, a proper assessment of the applicability of the common interest doctrine in this case requires a determination of the point in time" when the government decided to partner with Sikorsky in pursuing the Exemption 4 redactions and when the partnership ended. *Ibid*.

In *ASBL I*, there were obvious moments of divergent interests between the government and Sikorsky, as most readily demonstrated by the government's disclosures throughout that litigation. Moreover, the government and Sikorsky waited until September 2017 to enter into a formal joint defense agreement and withdrew from the agreement just a month later in October 2017 (Dkt. No. 44 at 19; Olson Decl., Exh. B). Yet the government seeks to withhold documents dating back to November 2014 and as recently as March 2018.

While a joint strategy agreement is not required to be reduced to writing, it must actually have been made. *Hunton*, 590 F.3d at 285, 287; *United States v. Gonzalez*, 669 F.3d 974, 980 (9th Cir. 2012). The government's *Vaughn* index Exemption 5 entries simply state that the information at issue involved, for example, "a discussion between Co-Defendants' counsel regarding legal strategy for proposed redactions" and therefore does not, by itself, sufficiently demonstrate a common interest (*see* Olson Decl., Exh. D). As in *Hunton*, "the record in this case presents the sort of features that underscore the need for watchfulness where the common interest doctrine is sought as a means to avoid FOIA's disclosure requirements." *Hunton*, 590 F.3d at 286. "For the doctrine to apply, an agency must show that it had agreed to help another

---

[3] Plaintiff further argues that the government failed to satisfy the FOIA Improvements Act of 2016, which requires that an agency show that (1) it "reasonably foresees that disclosure would harm an interest protected by an exemption described in" Section 552(b); or (2) "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A). This order finds that the government's assertion that circumvention of traditional discovery rules through FOIA would significantly impact its "ability to conduct complex and multi-faceted litigation" (as recognized in *Hunton*) sufficient for the purposes Section 552(a)(8)(A) (*see* Dkt. No. 48 at 20).

16

party prevail on its legal claims at the time of the communications at issue because doing so was in the public interest." *Id*. at 274. "[M]ere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement ha[d] been formed." *Id*. at 285. The appellate court in *Hunton* further observed that,

> In this regard, it is significant if communications were initiated by the private party, if the bulk of the communications came from a private party, and if there are sparse indications that the government had come to terms with the public interest at stake in the case. The purposes and initiatives of the private party are especially important. . . . In short, there are a number of items in the record suggesting that DOJ may not have decided to partner with RIM in the BlackBerry litigation much before November 2005. The fact that DOJ later concluded it shared RIM's interest does not protect communications between the two before that decision was made. An agreement to hear what RIM had to say and to keep what it heard confidential must not be confused with a conclusion that the public interest required taking RIM's side. . . . What FOIA requires is not that the government invariably lose in disclosure disputes, but that its claims be carefully evaluated. The analysis we set forth combines a recognition of the government's right to partner with those who share its legal interests with the judicial skepticism that FOIA demands.

*Id*. at 286–87. With the foregoing principles in mind, the government shall release all communications that were not legitimately made pursuant to a joint defense agreement (unless protected by another FOIA exemption).

### 5. EXEMPTION 6.

The government redacted email addresses and phone numbers of both contractor and DOD employees pursuant to Section 552(b)(6), which exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." In determining whether disclosure would be an "unwarranted" invasion of personal privacy, "a court must balance the public interest in disclosure against the interest Congress intended the exemption to protect." *United States Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994).

Here, plaintiff has not challenged the government's Exemption 6 redactions in its briefing. Moreover, because plaintiff has not shown, and this order does not find, any public interest in the information at issue, this order finds that, on balance, the government has sufficiently shown that the redactions at issue were properly made pursuant to Exemption 6. Accordingly, the government's motion for summary judgment as to Exemption 6 is **GRANTED**.

### 6. EVIDENTIARY OBJECTIONS.

Plaintiff objects to sections of the declarations submitted by the government of Susannah Raheb, Martha Crawford, Bethany Clever, and Harry Nahatis, arguing (very conclusory) that these declarations contain misleading and inadmissible opinion testimony of lay witnesses under FRE 403 and 701 and that the witnesses lack personal knowledge under FRE 602 (Dkt. No. 47 at 34). The declarations, however, show how each witness has direct responsibility for small business and federal government contracting issues (*see* Raheb Decl. ¶¶ 1–2; Crawford Decl. ¶¶ 1–2; Clever Decl. ¶ 2; Nahatis Decl. ¶ 2). They therefore have direct knowledge of both the issues in dispute and the competition within the relevant industry. That the witnesses cannot say with certainty the effect of releasing the information at issue is insufficient grounds for objection. Plaintiffs' objections are thus **OVERRULED**.

The government objects to, *inter alia*, the declaration of William A. Shook submitted by plaintiff. Mr. Shook, an attorney who advises clients on government subcontracting, opined on the risk (or lack thereof) of competitive harm upon disclosure. The government argues that there is no evidence of Mr. Shook's expertise on the issue and that certain sections of his declaration are "based on speculative assertions that lack foundation" (Dkt. No. 48 at 23). This order finds that, for purposes of finding an issue of material fact, Mr. Shook's declaration suffices. The government's objection as to the Shook Declaration is thus **OVERRULED**. Because this order does not rely on the other declarations the government disputes, those objections are **DENIED AS MOOT**.

### CONCLUSION

For the foregoing reasons, both motions for summary judgment are **GRANTED IN PART** and **DENIED IN PART**. To the extent the Exemption 4 motions are denied, counsel shall please promptly advise the Court how they wish to proceed.

**IT IS SO ORDERED.**

Dated: March 8, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE