KARL OLSON (SBN 104760)
THERESE Y. CANNATA (SBN 88032)
AARON R. FIELD (SBN 310648)
ZACHARY COLBETH (SBN 297419)
CANNATA O'TOOLE FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, California 94111
Telephone:  (415) 409-8900
Facsimile:  (415) 409-8904
Email:  kolson@cofolaw.com
        tcannata@cofolaw.com
        afield@cofolaw.com
        zcolbeth@cofolaw.com

Attorneys for Plaintiff
AMERICAN SMALL BUSINESS LEAGUE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN SMALL BUSINESS LEAGUE,<br><br>   Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE and UNITED STATES DEPARTMENT OF JUSTICE,<br><br>   Defendants,<br><br>LOCKHEED MARTIN CORPORATION,<br><br>   Defendant-Intervenor. | CASE NO. 3:18-CV-01979-WHA<br><br>**PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S SUPPLEMENTAL BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:  November 14, 2019<br>Time:  8:00 a.m.<br>Place: Courtroom 12, 19th Floor<br>Judge: Hon. William Alsup |

## I. INTRODUCTION

This Court wisely allowed discovery prior to deciding defendants' motion for summary judgment, observing that Lockheed Martin Corporation ("Lockheed") selectively discloses supposedly confidential information when it makes Lockheed look good, and that this selective disclosure "undercuts its vague contention that the company 'customarily' treats said information as confidential." Dkt. No. 126 at 4:22-5:6, 5:7-8. The Court raised serious questions about the "trustworthiness" of a key Lockheed witness' credibility and remarked that the declaration itself had "chipped away" at its credibility with contradictory statements that "do not square." *Id.*

The discovery now taken shows that defendants' summary judgment arguments completely unravel. Discovery shows that Lockheed and its subsidiary Sikorsky Aircraft Corporation ("Sikorsky") have been issuing press releases for at least the last ten years about the very information – suppliers and performance-to-goals – that they claim is confidential. Key documents – subcontracting plans showing past performance and the government's compliance reviews – have been made public. And one Sikorsky witness spent an hour testifying about the supposedly confidential nature of a redacted subcontracting plan, unaware that the unredacted plan has been made public and is a court record.

On the second prong of the *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019) test – whether the government had made assurances of privacy – defendants' summary judgment motion was on life support before depositions, and it is now dead. Even before the depositions, defendants had not shown any writing demonstrating any assurances of confidentiality from the government, and they had no declaration from any current government employee. Depositions now show an absence of oral assurances, much less anything in writing. Defendants flunk that part of the test too. Their motion should be denied.

## II. DEFENDANTS DISCLOSE SUPPOSEDLY "CONFIDENTIAL" INFORMATION

The first part of the test under *Food Marketing* is whether commercial or financial information is "both customarily and actually treated as private by its owner." 139 S. Ct. at 2366.

As this Court indicated in Dkt. No. 126 at 4:4-5:6, defendants fail that test. Lockheed

1

CANNATA O'TOOLE FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

selectively discloses the key components of subcontracting plans – supplier names, goals and performance to goals – when the disclosure makes Lockheed look good. Lockheed's Susannah Raheb testified at her deposition that Lockheed issued a press release about getting the "highest possible rating" for its 2017 performance which also identified and recognized 19 "exemplary" small business suppliers. Olson Decl., Ex. B (Raheb Tr.) at 90:8- 92:9. Raheb admitted that "the whole point" of issuing press releases is to attract good suppliers (even though paragraphs 51-53 of her declaration, Dkt. No. 107-5, said Lockheed keeps supplier names confidential to guard against poaching). Olson Decl., Ex. B at 92:5-9. Asked about poaching, Raheb said, "To your point, we go to trade shows, and we meet these companies. They're there." *Id*. at 92:18-22. The subcontractors at trade shows have name tags which identify their companies. *Id.* at 92:23-25. Lockheed and other companies do trade shows together and refer suppliers to one another. *Id*. at 93:1-24. Raheb attends about eight trade shows a year, at least one of which is attended by "close to a thousand" people. *Id*. at 95:25-97:1. The trade shows are annual events (*id*.), as are Lockheed's press releases recognizing its top suppliers. In short, there is nothing confidential about supplier names.

Raheb also admitted that Lockheed's goals for small business subcontracting are not kept confidential, and that its corporate historical subcontracting performance has been released, too. *Id*. at 65:1-21, 250:5-252:10. In short, the key components of Lockheed's subcontracting plans and what Lockheed is trying to withhold – supplier names, goals and performance to goals – have not been kept confidential. Nor have "compliance reviews," which are government (not company-submitted) documents. *Id*. at 177:5-180:19; Olson Decl., Ex C (Crawford Tr.) at 97:8-100:16.[1]

Raheb had difficulty keeping her story straight. She said she would have redacted the rating Lockheed received in a compliance review, but she admitted that Lockheed issued a press release about the same rating, saying, "We choose when we're going to release our press releases and disclose our rating. It's something that we choose to do for marketing purposes and just to

---

[1] This is an independent basis for denying summary judgment as to compliance reviews, ratings, and other such government records under Exemption 4. Dkt. No. 113 at 21:21-22:12.

demonstrate our program success. I don't think this is something – I mean, it's – we would have disclosed if we did bad. And so I – we have that choice to determine whether we want to disclose that or not versus making public." *Id*. at 180:9-181:15. She at one point stopped a little bit short of saying that she, and not this Court, should be the final arbiter of disclosure, but she ultimately insisted that, "What we choose to – put out there, is our – it's – it's – it's basically our decision . . . . To me it's pretty clear. The thing is that – the – we got an exceptional rating. It's something to tout." *Id*. at 182:2-184:10. She then went back to saying that a bad rating should be confidential, because "it's our – it's our decision." *Id*. at 184:11-24. She said FOIA doesn't enter into her decision in terms of what information to release or not; the decision about what information to release "is for marketing purposes." *Id.* at 185:16-186:4. But eventually, she admitted that whether to release information in response to a FOIA request is the government's decision "if they want to release information." *Id.* at 253:3-24.

Sikorsky's Martha Crawford likewise flunked the test of showing that her company customarily and actually keeps its information confidential. Crawford acknowledged that Sikorsky, too, issues annual press releases about its small business suppliers. Olson Decl., Ex. C at 171:16-18. She initially insisted that the information in Sikorsky's comprehensive subcontracting plans is confidential (Dkt. No. 107-3 ¶ 16; Olson Decl., Ex. C at 53:24-54:6), blissfully unaware that the very same plan she testified was confidential has now been released and is a court record (Dkt. No. 47-24). Informed of this key fact, Crawford first asserted that even though the "confidential" plan has been released in unredacted form and is on this Court's website, it is still confidential. She eventually conceded that the plan is **not** confidential anymore. Olson Decl., Ex. C at 121:8-124:18. Lockheed's Nancy Deskins likewise admitted Lockheed has a public "Supplier Wire" website on the Internet, which she asked the government to "check out" in all her e-mails, containing a plethora of information about Lockheed's specific subcontractors and the types of goods and services Lockheed was seeking from them. Olson Decl., Ex. D (Deskins Tr.) at 100:1-101:23, 106:1-107:7, 114:2-20.

In short, defendants fail to show that they customarily and actually keep the information at

3

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S SUPPLEMENTAL BRIEF IN CONNECTION WITH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER RULE 56(D)
CASE NO. 3:18-CV-01979-WHA

issue confidential. Rather, they regularly make public the same types of information – goals, performance-to-goals, subcontractor names, and compliance reviews (Olson Decl., Ex. B at 70:21-24, 82:12-15, 91:5-16) – and there are regular trade shows attended by hundreds of people at which subcontractors mingle.[2] Defendants' motion for summary judgment should be denied for this reason alone.

### III.    GOVERNMENT GAVE NO ASSURANCES OF PRIVACY

The second part of the *Food Marketing* test is whether the government gave assurances of privacy. 139 S.Ct. at 2356. Here, it didn't.

Lockheed's Raheb admitted that there were no written assurances from the government that if it got a FOIA request it would treat information as confidential. Olson Decl., Ex. B at 27:16-23, 238:17-239:23. She admitted that there weren't even any oral assurances that the government would keep comprehensive subcontracting plans or compliance reviews confidential. *Id.* at 239:24-240:25. Crawford also admitted there were neither written nor oral assurances of confidentiality from the government, stating multiple times that no one in the government ever gave her any assurances that they would withhold information or keep documents confidential. Olson Decl., Ex. C at 91:11-15, 93:21-24, 268:23, 269:3-17. Former government employee Janice Buffler admitted that when she got FOIA training and received FOIA requests, her thinking "evolved" and she realized she couldn't keep entire plans secret. Olson Decl., Ex. A (Buffler Tr.) 131:6-133:25. The government flunks this part of the test too.

Even if Lockheed customarily and actually kept subcontracting performance and compliance reviews confidential – and it didn't – defendants failed to show that submitter information was provided to the Department of Defense ("DOD") under assurances of privacy. *See Food Marketing*, 139 S. Ct. at 2362 ("[I]nformation might be considered confidential only if the party receiving it provides some assurance that it will remain secret."), 2366 ("At least where commercial or financial information is both customarily and actually treated as private

---

[2] Lockheed will argue that the information disclosed is only at a "high level." But the same is true of the subcontracting plans. *See, e.g.*, Dkt. No. 47-24.

4

by its owner and provided to the government under an assurance of privacy, the information is 'confidential' within the meaning of Exemption 4.").

DOD has never explicitly assured privacy to any of its contractors. Ms. Buffler testified that DOD never gave written assurances to contractors stating that information provided to it would remain private. Olson Decl., Ex. A 107:1-108:18. No defense contractor, including Lockheed, sought and/or received written confirmation from the government of any alleged assurance while Buffler was employed from 2010 to 2018, or even asked about it. *Id*. at 22:6-11,107:1-108:18. Buffler also stated that, during her tenure, not only did Lockheed never request that she keep the names of its small business subcontractors a secret, but that she "*never agreed* to keep the names of small business subcontractors a secret." *Id.* at 76:2-9 (emphasis added). Bufffler stated that information "made public in one [place], [] should be made public in [an]other." *Id.* at 237:10-18.

Buffler testified that she lacked authority to determine whether information is releasable under FOIA, specifying that such authority is delegated to the FOIA Office. *Id.* at 69:21-70:21, 161:23-162:4. She also stated that "there was no written policy" regarding the releasability of information in subcontracting plans. *Id*. at 111:7-112:14. The treatment of subcontracting plans has "evolved as to the release of information," and contractors now know that plans can be made public. *Id*. at 131:5-133:2. Buffler said she looked at parts of a plan "to see what might be releasable."[3] *Id*. at 66:23-67:5. Crawford, too, admitted that no one assured her of confidentiality. Olson Decl., Ex. C at 182:18-183:10, 261:8-269:17. In short, there were no assurances of privacy.[4]

**VI.    CONCLUSION**

Democracies die in darkness. This Court shouldn't let that happen. Defendants' summary judgment motion should be denied.

---

[3] This verifies that *in camera* review is necessary and appropriate.

[4] Crawford also verified that defendants cannot show disclosure here would cause harm, as the FOIA Improvement Act of 2016 requires. *See* Olson Decl., Ex. C at 89:5-92:13 (Sikorsky would provide DOD with any information requested and would not demand confidentiality), 121:12-130:10, 143:1-23 (could not say if disclosure of Sikorsky's 2013 plan caused harm).

5

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S SUPPLEMENTAL BRIEF IN CONNECTION WITH
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER RULE 56(D)
CASE NO. 3:18-CV-01979-WHA

DATED: October 18, 2019    CANNATA O'TOOLE FICKES & OLSON LLP

By:  /s/ Karl Olson
     KARL OLSON

Counsel for Plaintiff
AMERICAN SMALL BUSINESS LEAGUE

6

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S SUPPLEMENTAL BRIEF IN CONNECTION WITH
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT UNDER RULE 56(D)
CASE NO. 3:18-CV-01979-WHA