KARL OLSON (SBN 104760)
AARON R. FIELD (SBN 310648)
CANNATA O'TOOLE FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, California 94111
Telephone: (415) 409-8900
Facsimile: (415) 409-8904
Email: kolson@cofolaw.com
afield@cofolaw.com

Attorneys for Plaintiff
AMERICAN SMALL BUSINESS LEAGUE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN SMALL BUSINESS LEAGUE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE and UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendants,<br><br>LOCKHEED MARTIN CORPORATION,<br><br>Defendant-Intervenor. | CASE NO. 3:18-CV-01979-WHA<br><br>**PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S NOTICE OF MOTION AND MOTION TO COMPEL DEFENDANTS' COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. NO. 153)**<br><br>Date: May 28, 2020<br>Time: 8:00 a.m.<br>Judge: Hon. William Alsup<br>Place: Ctrm. 12, 19th Floor |

**NOTICE OF MOTION AND MOTION (DKT. NO. 58, DKT. NO. 153)**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on May 28, 2020, at 8:00 a.m., in Courtroom 12 of this Court, as authorized by Dkt. No. 165, plaintiff American Small Business League ("plaintiff" or "ASBL") will and hereby does move, pursuant to Dkt. No. 58 and Dkt. No. 153, for an Order finding that defendants United States Department of Defense ("DOD") and United States Department of Justice ("DOJ") (collectively, "defendants") have not fully complied with Dkt. No. 58 and Dkt. No. 153, and compelling them to do so within fourteen (14) days.

This Motion is made on the grounds that defendants have not complied with this Court's summary judgment orders, Dkt. No. 58 and Dkt. No. 153, as to 5 U.S.C. section 552, subdivisions (b)(4) ("Exemption 4") and (b)(5) ("Exemption 5"), respectively. The Court authorized this Motion in Dkt. No. 165, at the joint request of the parties.

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in support; the anticipated Reply in support; the declaration of Karl Olson in support; the Court's records and files in this action; and any other evidence or argument the Court may receive before or at the hearing on this Motion.

**RELIEF SOUGHT**

The disclosure of (1) all government assessments and evaluations – including compliance reviews, in their entirety – and all other information created by the government that defendants have withheld under Exemption 4 and (2) all correspondence between defendants, on the one hand, and Lockheed Martin Corporation ("Lockheed") and its subsidiaries, including Sikorsky Aircraft Corporation ("Sikorsky"),[1] and their attorneys, in *American Small Business League v. Department of Defense*, Case No. C-14-02166-WHA (N.D. Cal.) ("*ASBL I*"), that defendants have withheld pursuant to Exemption 5, except for correspondence from September 13, 2017 through October 11, 2017.

**ISSUES TO BE DECIDED**

---

[1] For ease of reference, Lockheed and Sikorsky are both referred to in this brief as "Lockheed."

1

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. NO. 153)
CASE NO. 3:18-CV-01979-WHA

CANNATA O'TOOLE FICKES & OLSON LLP
ATTORNEYS AT LAW
100 PINE STREET, SUITE 350, SAN FRANCISCO CA, 94111
TEL: 415.409.8900 – FAX: 415.409.8904

1. Whether DOD and DOJ have complied with Dkt. No. 153 as to Exemption 4.

2. Whether DOD and DOJ have complied with Dkt. No. 58 as to Exemption 5.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

ASBL has long fought, in this case and others, to vindicate its right of access under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), to records showing the extent to which some of the largest prime defense contractors are complying with their small business subcontracting obligations under the Small Business Act, 15 U.S.C. § 631, and related government regulations. This is an issue of tremendous importance at a time when many small businesses face existential challenges to their survival. In this case, ASBL won two orders directing defendants to disclose records relevant to Lockheed's compliance with small business subcontracting obligations that defendants had improperly withheld. Defendants, however, have failed to comply with Dkt. No. 153 with respect to Exemption 4, and with Dkt. No. 58 with respect to Exemption 5. They should be ordered to remedy that failing by disclosing all "government assessments and evaluations," including compliance reviews, and all *ASBL I*-related communications with Lockheed from before September 13, 2017 and after October 11, 2017.

### II.  FACTUAL AND PROCEDURAL HISTORY

ASBL is a nonprofit advocacy organization that supports policies that protect small businesses. Dkt. No. 47-53 ¶ 2. It is focused on ensuring that federal small business protection programs like the Small Business Act, 15 U.S.C. § 631 ("SBA") are functioning properly. Dkt. No. 47-53 ¶¶ 1-4. ASBL made the FOIA requests at issue here to (1) expose agencies' and prime contractors' compliance or non-compliance with the SBA and their small business subcontracting goals to public scrutiny, and (2) assess whether DOD's "Test Program," which allows large prime contractors to submit one "comprehensive subcontracting plan" rather than separate plans for each contract, Dkt. No. 58 at 2:3-9, had furthered the SBA's purpose of helping small businesses.[2]

---

[2] In findings DOD appended to a 2015 GAO report, DOD found that subcontracting opportunities for small businesses had dramatically **diminished** since the "Test Program"

2

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. NO. 153)
CASE NO. 3:18-CV-01979-WHA

This motion focuses on a September 22, 2017 FOIA request by ASBL that sought, among other things,

> All documents transmitted between (a) DoD or the Department of Justice and (b) Lockheed Martin Corp. ("LM," including Sikorsky Aircraft Corp. ("Sikorsky") and other LM subsidiaries concerning: (1) the FOIA request dated August 9, 2013, from the American Small Business League ("ASBL") to DoD, (2) ASBL"), (3) Lloyd Chapman, (4) the CSPTP [(Comprehensive Subcontracting Plan Test Program)], (5) SBIR [(Small Business Innovation Research)], and (6) Mentor-Protégé program.

Dkt. No. 47-47. ASBL made this Request on September 22, 2017, to multiple federal government departments to ensure prompt action. Dkt. No. 47-47. DOD told ASBL on September 25, 2017 that it would not timely respond. Dkt. No. 20 ¶ 22; Dkt. No. 22 ¶ 22. On October 26, 2017, DOD stated that it was still in the process of responding, that a response would take more time, and that ASBL had the right to judicial review. Dkt. No. 47-49. ASBL received no further response to the Lockheed Request *for the next seven months*, at which point ASBL included the Lockheed Request in this lawsuit. Dkt. No. 22 ¶ 25.

ASBL filed its original complaint on March 30, 2018, and later amended its complaint to include the Request at issue in this motion and the DOJ as a defendant. Dkt. No. 20; Dkt. No. 29-1. The case was related to *ASBL v. DOD*, 3:14-CV-2166-WHA (N.D. Cal.) ("*ASBL I*"). Dkt. No. 8, 8-1, 15, 16.

Defendants invoked FOIA Exemptions 3, 4, 5, and 6. Dkt. No. 159-1 ¶ 37. The parties filed cross-motions for summary judgment on November 16 and December 7, 2018, Dkt. No. 44; Dkt. No. 47; Dkt. No. 48; Dkt. No. 51. ASBL challenged defendants on Exemptions 3, 4, and 5, and emphasized the importance of public access to compliance reviews. *See* Dkt. No. 47.

Defendants argued that most of their communications with Lockheed in *ASBL I* were protected by Exemption 5, which applies to "inter-agency or intra-agency memorandums or

---

became effective: "the percentage of dollars subcontracted to small businesses by all of the [Test Program] participants combined declined over the life of the [Test Program] from approximately 46% in FY96" to "24% in FY14." *See Action Needed to Determine Whether DOD's Comprehensive Subcontracting Plan Test Program Should Be Made Permanent, Report No. GAO-16-27*, Government Accountability Office 30, Exhibit 1 (Nov. 2015), *available at* https://www.gao.gov/assets/680/673649.pdf.

letters which would not be available by law to a party other than an agency in litigation with the agency," 5 U.S.C. § 552(b)(5), pursuant to the "common interest" doctrine. Dkt. No.44 at 16:25-23:5. ASBL argued that the common interest doctrine didn't apply given defendants' interests as government agencies and Lockheed's different interests as a private corporation, and that defendants didn't have a lawful joint defense agreement with Lockheed in any event. Dkt. No. 47 at 27:1-34:20.

The Court ruled on the parties' cross-motions on March 8, 2019. Dkt. No. 58. It ruled for ASBL on Exemption 3, rejecting the Procurement Integrity Act as a basis for using Exemption 3 to justify withholding the "compliance review" evaluations and assessments. Dkt. No. 58 at 6:1-9:9. It denied both motions as to Exemption 4. Dkt. No. 58 at 9:10-11:28 (citing, *inter alia*, *ASBL I*, 674 F. App'x 675, 676 (9th Cir. 2017)). It granted ASBL's motion in part as to Exemption 5. Dkt. No. 58 at 12:1-17:16. And it set the case for trial as to Exemption 4 on December 9, 2019. Dkt. No. 61.

As to Exemption 5, the Court held that defendants were entitled to withhold only their *ASBL I* communications with Lockheed that were legitimately made pursuant to a legally effective joint defense agreement. *See* Dkt. No. 58 at 12:1-17:16. The Court refused to "blindly bless the government's mere invocation of a common interest." Dkt. No. 58 at 16:3-4. It explained:

> "Documents exchanged before a common interest agreement is established are not protected from disclosure." *Id.* at 285. "Thus, a proper assessment of the applicability of the common interest doctrine in this case requires a determination of the point in time" when the government decided to partner with Sikorsky in pursuing the Exemption 4 redactions and when the partnership ended. *Ibid.*

Dkt. No. 58 at 3-9. The Court concluded, "**With the foregoing principles in mind, the government shall release all communications that were not legitimately made pursuant to a joint defense agreement (unless protected by another FOIA exemption).**" Dkt. No. 58 at 17:13-16 (emphasis added). It elaborated at a January 31, 2019 hearing on the parties' cross-motions that the joint defense agreement standard is strict, and that "if you don't dot your I's and cross your T's, you are out of luck." Declaration of Karl Olson in Support of Plaintiff American Small

4

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. NO. 153)
CASE NO. 3:18-CV-01979-WHA

Business League's Notice of Motion and Motion to Compel Defendants' Compliance with Court Orders (Dkt. No. 58, Dkt. No. 153) ("Olson Decl."), Ex. A at 5:8-10, 5:12-16.

Defendants released far less than Dkt. No. 58 required. They and Lockheed waited for years after the *ASBL I* case began, until September 13, 2017, to enter into and execute a formal joint defense agreement, and they formally terminated that agreement less than a month later, on October 11, 2017. Dkt. No. 64-3 ¶¶ 11, 12. But they are continuing to withhold communications from throughout *ASBL I*. *See* Dkt. No. 64-3 ¶ 14 (post-order declaration identifying **twenty-one (21) lines** of Exemption 5 *Vaughn* index that changed as a result of defendants' post-order disclosures), Dkt. No. 78-1, Ex. B (post-order Exemption 5 *Vaughn* index listing **approximately one hundred and thirty-four (134) lines** of documents that defendants are **continuing to withhold** under Exemption 5 and the common interest doctrine). To justify this, they assert that – despite defendants' obvious on-again, off-again alliance with Lockheed, initial inability to agree to an actual written joint defense agreement, and later inability to agree on terms for reinstating one – their and Lockheed's interests were "aligned" throughout much of the case. Dkt. No. 64-2 ¶¶ 13-14; Dkt. No. 64-3 ¶ 13. ASBL objected to defendants' non-compliance with the Exemption 5 order. *See* Dkt. No. 72.

Defendants released about 1,182 pages of additional records responsive to the request at issue here on April 30, 2019 and June 28, 2019, including some with respect to which they invoked Exemption 4, and provided an updated *Vaughn* index on July 11, 2019. Dkt. No. 159-1 ¶ 43. After Dkt. No. 58 and these subsequent disclosures, defendants continued to withhold twelve documents in full, including government-made compliance reviews. *See* Olson Decl., Ex. F-1. The rest remained heavily redacted. Dkt. No. 159-1 ¶ 43.

In mid-2019, two relevant appellate decisions issued: *Rojas v. Federal Aviation Administration*, 927 F.3d 1046 (9th Cir. 2019), and *Food Marketing Institute v. Argus Leader Media*, 139 S. Ct. 2356 (2019). ASBL sought reconsideration of Dkt. No. 58 as to Exemption 5 based on *Rojas* in Dkt. Nos. 74, 85, 87, 92, but the Court held ASBL's motion for reconsideration in abeyance pending the outcome of defendants' petition for *en banc* review in *Rojas*. Dkt. No.

5

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. NO. 153)
CASE NO. 3:18-CV-01979-WHA

93.[3] The Court also granted defendants' leave to file a second motion for summary judgment based on *Food Marketing Institute*. *See* Dkt. No. 103. ASBL opposed, Dkt. No. 113, and the Court granted partial summary judgment in favor of both ASBL and defendants on November 24, 2019. Dkt. No. 153.

In Dkt. No. 153, this Court ordered defendants to disclose in some form all twelve documents that they had withheld in full, and ordered defendants to unredact many others, including defendants' government-made compliance reviews. *See* Dkt. No. 153. The Court held that some information submitted by Lockheed was, on the record before it, protected under Exemption 4 as interpreted by *Food Marketing Institute*. Dkt. No. 153. However, the Court also held:

> [O]nly information originating from the companies themselves can be considered information that they customarily and actually treated as private during their ordinary course of business. In the instant action, that means that ***government assessments and evaluations cannot be considered "confidential" information*** for purposes of Exemption 4.

Dkt. No. 153 at 5:21-6:8 (emphasis in original). The Court explained that this meant all twelve documents which defendants had withheld in full – several of which were compliance reviews – needed to be disclosed, in whole or in part. *Id.* at 15:1-16:2. The Court directed, ***"Defendants must release updated redacted versions of all documents (2,000-plus pages) at issue — including the disclosure of all government evaluations and assessments — by JANUARY 6, 2020****." Id.* at 16:5-7 (emphasis added).

Defendants once again failed to disclose enough in response to the Court's Exemption 4 order. *See* Olson Decl., Ex. E-1, E-2, E-3, E-4. Even in compliance review documents that the government created – which fall squarely within this Court's clear mandate that "government assessments and evaluations" must be disclosed, and which are critical to the public's right and

---

[3] This Court has not yet ruled on the motion for reconsideration, and ASBL is not asking this Court to do so here. The Ninth Circuit recently granted rehearing *en banc*, *Rojas v. Federal Aviation Administration*, 948 F.3d 959 (9th Cir. 2020), but it has not yet heard oral argument or ruled. Because the Ninth Circuit may not issue an *en banc* decision for some time, ASBL is pressing its Exemption 5 objections based on Dkt. No. 58 here, independently of its motion for reconsideration, which the Court said it would delay resolving until after the Ninth Circuit's *en banc* decision.

ability to assess how the government's small business subcontracting efforts are working and ensure that the government is fighting as hard as it should be for small businesses – defendants have disclosed only extremely high-level information and left a substantial majority of the information in the records at issue redacted. *See* Olson Decl. ¶ 7, Ex. E-1, E-2, E-3, E-4. For example, defendants have disclosed Lockheed's highest level overall small business subcontracting goals and the extent to which Lockheed has met them, but have *not* disclosed *that same kind of information* on a very slightly more granular level, as it relates to women-owned small businesses and other small business subcategories. *See* Olson Decl., Ex. D-1. There is no principled basis in Dkt. No. 153 for this distinction. Also, throughout their compliance reviews, defendants are apparently also continuing to withhold other government-made charts and data, as well as narrative discussions of small business subcontracting performance. *See* Olson Decl., Ex. D-2.

In January 2020, ASBL and defendants informally resolved an initial motion for attorney's fees and costs with an explicit carveout for future proceedings about compliance. Olson Decl. ¶ 2. ASBL then wrote to defendants to meet and confer about their improper withholdings under Exemption 4 and Exemption 5. Olson Decl., Ex. A-C. As to Exemption 4, defendants revised their withholdings on a few select pages in their compliance reviews. *See* Olson Decl., Ex. B-C. However, the fundamental issues remain: defendants' compliance reviews are still overwhelmingly redacted, frustrating the public's right to know whether billions of dollars in taxpayer funds earmarked for small businesses are being spent as promised. *See, e.g.*, Olson Decl., Ex. E-1, E-2, E-3, E-4. They conceal far more than they disclose, despite their status as government-made and non-confidential documents pursuant to Dkt. No. 153. *Id*. As to Exemption 5, defendants refused to disclose anything further. Olson Decl., Ex. B-C.

Having failed to resolve defendants' compliance issues as to Exemption 5 and Exemption 4 after extensive correspondence, ASBL had no choice but to proceed with this motion.[4]

---

[4] The parties stipulated to a briefing schedule, Dkt. No. 164, and this Court ordered that the motion be filed and that ASBL identify five documents for a second *in camera* review, Dkt. No. 165. ASBL has done so, and attached the four of these documents that defendants disclosed to it in redacted form in our supporting declaration. Olson Decl. ¶ 7, Ex. E-1, E-2, E-3, E-4.

## III. ARGUMENT

### A. LEGAL STANDARD.

FOIA "provides public access to official information 'shielded unnecessarily' from public view and establishes a 'judicially enforceable public right to secure such information from possibly unwilling official hands.' " *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). In Dkt. No. 58, this Court explained:

> FOIA thus "mandates a policy of broad disclosure of government documents." *Church of Scientology of California v. U.S. Dep't of Army*, 611 F.2d 738, 741 (9th Cir. 1979), *overruled on other grounds by Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987 (9th Cir. 2016). [¶] "When a request is made, an agency may withhold a document, or portions thereof, only if the material at issue falls within one of the nine statutory exemptions found in [Section] 552(b)." *Maricopa Audubon Soc. v. U.S. Forest Serv.*, 108 F.3d 1082, 1085 (9th Cir. 1997). "These exemptions are explicitly exclusive and must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy." Ibid. (citations and quotations omitted). "FOIA's strong presumption in favor of disclosure places the burden on the government to show that an exemption properly applies to the records it seeks to withhold." *Hamdan v. U.S. Dep't of Justice*, 797 F.3d 759, 772 (9th Cir. 2015).

Dkt. No. 58 at 3:16-27. To meet its burden to show that an exemption applies, defendants must present non-conclusory evidence, rather than merely "boilerplate" declarations. *See, e.g.*, *Lane v. U.S. Dep't of the Interior*, 523 F.3d 1128, 1136 (9th Cir. 2008); *see also Goldwater Institute v. U.S. Dep't of Health and Human Services*, No. 19-15615, 2020 WL 1487844, at **1-2, __ Fed. App'x __ (9th Cir. March 24, 2020) (Tashima, J., Hurwitz, J., Miller, J.) (reversing summary judgment order in Exemption 4 case where the government relied on confidentiality regulations and "broad, general arguments about the confidentiality of [the documents at issue], rather than addressing the specific documents at issue here and showing how they fall under Exemption 4 of FOIA" to justify withholding numerous e-mails created by the Food and Drug Administration).

### B. DEFENDANTS SHOULD BE ORDERED TO DISCLOSE ALL COMPLIANCE REVIEWS AND GOVERNMENT EVALUATIONS AND ASSESSMENTS IN THEIR ENTIRETY, BECAUSE THEY DO NOT QUALIFY AS "CONFIDENTIAL" UNDER DKT. NO. 153.

8

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. NO. 153)
CASE NO. 3:18-CV-01979-WHA

In order to justify their withholdings under Exemption 4, defendants were required to establish that "the information is (1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *See Goldwater Institute*, 2020 WL 1487844, at *1 (citing 5 U.S.C. § 552(b)(4); *Food Mktg. Inst.*, 139 S. Ct. at 2362). In *Food Marketing Institute*, the Supreme Court elaborated, "At least where commercial or financial information is both customarily and actually treated as private by its owner and provided to the government under an assurance of privacy," *Id.* at 2366, it may be exempt.

In Dkt. No. 153, this Court held that government assessments and evaluations are not "confidential" within the meaning of Exemption 4 and must be disclosed:

> In the instant action, . . . *government assessments and evaluations cannot be considered "confidential" information* for purposes of Exemption 4. This includes, for example, the government's evaluations of a contractor's compliance with regulatory requirements, ratings, assessments of a contractor report's accuracy, and recommendations – *e.g.*, a finding that an SSR report was "considered not accurate" (*e.g.*, MSJ002082); that a company's suppliers were "not validating their size at time of award" (*e.g.*, *ibid.*); that an "SB goal" was "[n]ot met" because that company "failed to meet the SB goal by" a certain percentage (*e.g.*, MSJ002087); and that the rating of a review was "[e]xceptional" (*e.g.*, MSJ000743). Such information *stemmed from the government,* not the companies. No one can reasonably argue that those evaluations by the government constituted information that belonged to the companies rather than the government. The information generated by the government must be disclosed.

Dkt. No. 153 at 5:23-6:8 (emphasis in original). Accordingly, all "government assessments and evaluations," **including all compliance reviews, in their entirety**, must be disclosed.

The Court's holding that Exemption 4's "confidential" requirement, as interpreted by *Food Marketing Institute*, requires the disclosure of government assessments and evaluations like compliance reviews was correct. Defendants could not, and did not, present evidence showing that their own assessments and evaluations constituted "commercial information customarily and actually treated as private by its owner," or contained any information that was legitimately "provided to the government under an assurance of privacy." *Food Mktg. Inst.*, 139 S. Ct. at 2366. This Court effectuated the compelling public interest in ensuring that billions of taxpayer dollars meant for small businesses are being spent as intended, an interest which is now more important than ever, as the government is distributing trillions of dollars in COVID-19 aid, hundreds of

9

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. NO. 153)
CASE NO. 3:18-CV-01979-WHA

billions of which are earmarked for small businesses. This Court correctly held in Dkt. No. 153 that information in defendants' compliance reviews and evaluations, including information to the effect that Lockheed's small business subcontracting goals were not met "by a certain percentage," is subject to public disclosure and, as a result, public scrutiny and political checks and balances.

This Court's ruling is bolstered by Exemption 4's independent "obtained from a person" requirement, and the case law interpreting it. *See* 5 U.S.C. § 552(b)(4); *Gen. Servs. Admin. v. Benson*, 415 F.2d 878, 881 (9th Cir. 1969) (Exemption 4 "clearly condones withholding information only when it is obtained from a person *outside the agency*"). In *Raher v. Fed. Bureau of Prisons*, a district court held, based on this rule, that the defendant could not "categorically exempt all internal price evaluation and source selection decision records which it generated for the purpose of evaluating bids." No. CV-09-526-ST, 2011 WL 2014875, at **17-18 (D. Or. May 24, 2011). Also, in *Goldwater Institute*, the Ninth Circuit applied *Food Marketing Institute* and the "obtained from a person" requirement to reverse a district court's summary judgment decision that had improperly blessed the government's non-disclosure of e-mails created by the FDA based on general assertions and citations to FDA confidentiality regulations (the government has similarly incorrectly invoked regulations in this case). 2020 WL 1487844, at **1-2.

Despite this Court's clear directives in Dkt. No. 153, defendants have failed to disclose vast swathes of their compliance reviews and many other government-made documents. *See* Olson Decl. ¶ 7, Ex. E-1, E-2, E-3, E-4. For example, defendants' redactions still conceal DCMA responses to numerous questions (in both narrative and chart format), much of the DCMA's analysis and rationale for its ratings, and the DCMA's recommendations to Lockheed Martin Corporation ("LMC") for improvement. *See, e.g.*, Olson Decl., Ex. D-2 (at SUPP001154, SUPP001155, redacting all of the DMCA's responses – which appear to be stated in prose – to listed questions). This information must be disclosed pursuant to this Court's order.

Defendants must also disclose all "government assessments and evaluations," including performance to goals information. This Court specifically cited performance to goals information

10

in compliance reviews as an example of evaluative information subject to disclosure. Dkt. No. 153 at 5:23-6:8 (ordering disclosure of, by way of example, defendants' conclusion "that an 'SB goal' was '[n]ot met' because that company 'failed to meet the SB goal by' a certain percentage (*e.g.*, MSJ002087)"). Yet defendants are continuing to withhold exactly this kind of performance to goals information throughout their compliance reviews, including performance to goals information for small disadvantaged businesses, women owned small businesses, HBCU/MI, hub-zone small businesses, veteran-owned small businesses, and service disabled veteran–owned small businesses (and sometimes, *see* SUPP1219-SUPP1221, redacting even general information that is qualitatively identical to what the Court discussed in Dkt. No. 153 at 5:23-6:8. *See, e.g.*, Olson Decl., Ex. D-1. This clearly violates Dkt. No. 153. It also makes it impossible for ASBL to assess, among other things, how DOD is enforcing the SBA, whether DOD's "Test Program" is working, and whether prime contractors are keeping their promises regarding small business subcontracting. The simplest way – and the only lawful way, given this Court's clear holdings in Dkt. No. 153 – to resolve this issue is to order defendants to disclose all of the information that they have withheld pursuant to Exemption 4 in compliance reviews, and in any other compliance-related records and correspondence.

### C. DEFENDANTS SHOULD BE ORDERED TO DISCLOSE ALL COMMUNICATIONS WITH LOCKHEED THAT THEY HAVE WITHHELD UNDER EXEMPTION 5 WHICH WERE NOT MADE BETWEEN SEPTEMBER 13, 2017 AND OCTOBER 11, 2017, BECAUSE THAT IS THE ONLY TIME WHEN THEY HAD A JOINT DEFENSE AGREEMENT UNDER DKT. NO. 58.

Exemption 5 allows the government to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). As this Court has explained,

> Under Exemption 5, information may be withheld if (1) its source is a government agency, and (2) it "fall[s] within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). "This exemption has been interpreted as coextensive with all civil discovery privileges." *Sierra Club*[*, Inc. v. United States Fish & Wildlife Serv.*, 911 F.3d 967,] 978 [(9th Cir. 2018)] (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)). "In light of the strong policy of the FOIA that the public is entitled to

know what its government is doing and why, Exemption 5 is to be applied as narrowly as consistent with efficient Government operation." *Lahr*, 569 F.3d at 979 (quoting *Maricopa Audubon Soc.* [*v. U.S. Forest Serv.*, 108 F.3d 1082,] 1093 [(9th Cir. 1997)]).

Dkt. No. 58 at 12:4-12.[5]

This Court further held that while the "common interest" doctrine sometimes justifies withholding records under Exemption 5, it applies only to the extent that it squares with the limitations set forth in *Hunton & Williams v. U.S. Department of Justice*, 590 F.3d 272 (4th Cir. 2010). The Court explained,

> While this order finds that the common interest doctrine applies to Exemption 5, it does not blindly bless the government's mere invocation of a common interest. "Documents exchanged before a common interest agreement is established are not protected from disclosure." *Id*. at 285. "Thus, a proper assessment of the applicability of the common interest doctrine in this case requires a determination of the point in time" when the government decided to partner with Sikorsky in pursuing the Exemption 4 redactions and when the partnership ended. *Ibid*.
>
> In *ASBL I*, there were obvious moments of divergent interests between the government and Sikorsky, as most readily demonstrated by the government's disclosures throughout that litigation. Moreover, the government and Sikorsky waited until September 2017 to enter into a formal joint defense agreement and withdrew from the agreement just a month later in October 2017 (Dkt. No. 44 at 19; Olson Decl., Exh. B). Yet the government seeks to withhold documents dating back to November 2014 and as recently as March 2018.
>
> While a joint strategy agreement is not required to be reduced to writing, it must actually have been made. *Hunton*, 590 F.3d at 285, 287; *United States v. Gonzalez*, 669 F.3d 974, 980 (9th Cir. 2012). The government's *Vaughn* index Exemption 5 entries simply state that the information at issue involved, for example, "a discussion between Co-Defendants' counsel regarding legal strategy for proposed redactions" and therefore does not, by itself, sufficiently demonstrate a common interest (see Olson Decl., Exh. D). As in *Hunton*, "the record in this case presents the sort of features that underscore the need for watchfulness where the common interest doctrine is sought as a means to avoid FOIA's disclosure requirements." *Hunton*, 590 F.3d at 286. "For the doctrine to apply, an agency must show that it had agreed to help another party prevail on its legal claims at the time of the communications at issue because doing so was in the public interest." *Id*. at 274.

---

[5] ASBL maintains that Dkt. No. 58 should not have blessed any part of defendants' assertion of Exemption 5 based on defendants' claimed "common interests" with Lockheed, an outside corporation that, unlike defendants, was motivated solely by its and its shareholders' own private financial interests. Exemption 5 does not encompass the "common interest doctrine." *See generally*, *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1 (2001). But in any event, defendants did not comply with Dkt. No. 58 as it stands.

12

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. NO. 153)
CASE NO. 3:18-CV-01979-WHA

> "[M]ere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement ha[d] been formed." *Id*. at 285.

This Court then quoted *Hunton*, 590 F.3d at 286–87, and held, "[T]he government shall release ***all communications that were not legitimately made pursuant to a joint defense agreement (unless protected by another FOIA exemption)***." Dkt. No. 58 at 17:13-16 (emphasis added).

The government has not done so. Its April 26, 2019 submission[6] pays lip service to "taking the narrowest view of when there was a common interest with Sikorsky," Dkt. No. 64 at 1, but that's not what the government has done. As this Court recognized in its March 8, 2019 Order,

> the government and Sikorsky waited until September 2017 to enter into a formal joint defense agreement and withdrew from the agreement just a month later in October 2017. (Dkt. No. 44 at 19; Olson Decl., Exh. B [Dkt. No. 47-3].) Yet the government seeks to withhold documents dating back to November 2014 and as recent as March 2018.

Dkt. No. 58 at 16:12-15. The Court commented at the January 31 hearing,

> . . . there is no such thing as a joint defense privilege. Let's be very clear on that. It's just a way to avoid waiver. . . . And if you don't dot your I's and cross your T's, you are out of luck. So if you entered into the agreement on Monday – I'm sorry, on Sunday – let's say Friday, take Friday, then that doesn't cover anything on Monday, Tuesday, Wednesday, Thursday, in my view.

Olson Decl., Ex. A at 5:8-10, 5:12-16. When the government's lawyer conceded, "we didn't have a formal agreement at all times," this Court responded, "Maybe you didn't do it right then. . . . No formal agreement. Where is that Sikorsky lawyer? Is he out there somewhere? That's a big firm. They should have done it right if they wanted these things to be secret." Olson Decl., Ex. G at 6:1-3, 6:5-8. This Court commented, in words that apply to the government's on-again, off-again "relationship" with Lockheed, that parties "kind of test the waters," and then eventually may say they want a joint defense agreement, and then "they want to roll into it everything that happened

---

[6] In Dkt. No. 72, ASBL objected to defendants' filing of supplemental declarations, Dkt. Nos. 64-1, 64-2, 64-3, to support their Exemption 5 withholdings. ASBL renews that objection here. Defendants should not be, and were not under the Court's March 8, 2019 Order, Dkt. No. 58, permitted to submit new evidence to justify their Exemption 5 withholdings after the Court issued Dkt. No. 58. The consequence was and is more work, and higher litigation expenses, for plaintiff.

before. It doesn't work that way. You only get it from that point forward." Dkt. No. Olson Decl., Ex. G at 6:12-22.

Defendants extensive withholdings indicate that they haven't gotten the message. A declaration by DOD counsel Mark Herrington, Dkt. No. 64-1, makes vague references to an on-again, off-again "common interest" between the government and Sikorsky in defending certain redactions, but one thing Mr. Herrington does not say is that the government and Sikorsky had an actual Joint Defense Agreement. Nor does a declaration offered by Hirsh Kravitz. Dkt. No. 64-2.[7] A declaration by Ellen London, Dkt. No. 64-3, is vague, referring abstractly to times when the government's and Lockheed's interests were supposedly "unequivocally aligned," and largely skirts whether there was a real joint defense agreement, eventually confirming that a formal agreement lasted less than a month. Dkt. No., 64-3 ¶¶ 11-12. And defendants have not offered any declaration by Lockheed's former counsel. They therefore ignore the Court's admonition that, " '[M]ere "indicia" of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement ha[d] been formed.' " Dkt No. 58 at 17:2-4.

The government also fails to comply with Dkt. No. 58 because it does not even mention, let alone adequately account for, " 'the public interest at stake in the case.' " Dkt. No. 58 at 17:6 (quoting *Hunton & Williams*, 590 F.3d at 286-87). " 'For the [common interest] doctrine to apply, an agency must show that it had agreed to help another party prevail on its legal claims at the time of the communications at issue *because doing so was in the public interest*.' " Dkt. No. 58 at 16:24-17:2 (quoting *Hunton*, 590 F.3d at 274) (emphasis added). There are " 'sparse indications that the government had come to terms with the public interest' " here, which supports finding that any legally effective "common interest" was limited to September 13 to October 11, 2017.

This case exemplifies the dangers of applying Exemption 5 to communications between the government and outsiders. *Cf.* Dkt. No. 58 at 16:21-23 (stating that " 'the record in this case

---

[7] The Kravitz declaration is primarily inadmissible opinion and speculation that the government and interested parties "must be able to discuss strategies" or else "the candid discussion needed for this vital decision-making process would be chilled," and ASBL objects to it on that basis. Dkt. No. 64-2 ¶ 11; *see also* Fed. R. Evid. 403, 602, 701. Also, defendants have not disclosed their joint defense agreement to ASBL. ASBL has included it in its *in camera* review list.

14

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. NO. 153)
CASE NO. 3:18-CV-01979-WHA

presents the sort of features that underscore the need for watchfulness where the common interest doctrine is sought as a means to avoid FOIA's disclosure requirements' ") (quoting *Hunton & Williams*, 590 F.3d at 286). Defendants' filings are vague and conclusory, evince an on-again, off-again misconception of "common interest", ignore the fact that the government eventually rejected Lockheed's assertion of confidentiality in *ASBL I* (Exs. H, I, J and K to Olson Decl.), don't come to terms with the public interest in disclosure, and result in withholding information from the public contrary to the purpose of FOIA and the plain language of Exemption 5.

The government provided an updated *Vaughn* index to plaintiff that verifies its supplemental disclosures are inadequate, under both Exemption 5 and this Court's March 8, 2019 Order. Olson Decl., Ex. B. In her declaration, Ms. London identified twenty-one (21) lines of the *Vaughn* index that have changed as a result of this Court's March 8, 2019 Order. Dkt. No. 64-3 ¶ 14. Yet the government's updated *Vaughn* index lists, on approximately one hundred and thirty-four (134) lines, documents that it is continuing to withhold under Exemption 5. Dkt. No. 78-1, Ex. B. The government's withholdings continue to span virtually the entire *ASBL I* case. *See, e.g.*, Dkt. No. 78-1, Ex. B at 1, 18. Defendants should be ordered to disclose all of their communications with Lockheed made before or after September 13 to October 11, 2017.

## IV. CONCLUSION

This motion should not have been necessary. The Court issued its summary judgment orders after extensive briefing and argument. Unfortunately, defendants have not complied with those orders, requiring this compliance motion. Defendants should be ordered to comply with Dkt. No. 153 as to Exemption 4 by disclosing all compliance reviews and other government-made documents in their entirety, and with Dkt. No. 58 as to Exemption 5 by disclosing all communications with Lockheed in *ASBL I* that were not made between September 13 and October 11, 2017.

15

PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S MOTION TO COMPEL
COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. NO. 153)
CASE NO. 3:18-CV-01979-WHA

Respectfully submitted,

DATED: April 23, 2020

CANNATA O'TOOLE FICKES & OLSON LLP

By: /s/ Karl Olson
    KARL OLSON

Karl Olson
Aaron R. Field

Counsel for Plaintiff
AMERICAN SMALL BUSINESS LEAGUE