KARL OLSON (SBN 104760)
AARON R. FIELD (SBN 310648)
CANNATA O'TOOLE FICKES & OLSON LLP
100 Pine Street, Suite 350
San Francisco, California 94111
Telephone:     (415) 409-8900
Facsimile:     (415) 409-8904
Email:         kolson@cofolaw.com
               afield@cofolaw.com

Attorneys for Plaintiff
AMERICAN SMALL BUSINESS LEAGUE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMERICAN SMALL BUSINESS LEAGUE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF DEFENSE and UNITED STATES DEPARTMENT OF JUSTICE,<br><br>Defendants,<br><br>LOCKHEED MARTIN CORPORATION,<br><br>Defendant-Intervenor. | CASE NO. 3:18-CV-01979-WHA<br><br>**DECLARATION OF KARL OLSON IN SUPPORT OF PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S NOTICE OF MOTION AND MOTION TO COMPEL DEFENDANTS' COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. NO. 153)**<br><br>Date:     May 28, 2020<br>Time:     8:00 a.m.<br>Judge:     Hon. William Alsup<br>Place:     Ctrm. 12, 19th Floor |

CANNATA O'TOOLE FICKES & OLSON LLP
ATTORNEYS AT LAW
100 PINE STREET, SUITE 350, SAN FRANCISCO CA, 94111
TEL: 415.409.8900 – FAX: 415.409.8904

I, KARL OLSON, declare:

1. I am a member in good standing of the State Bar of California and a partner at the law firm Cannata, O'Toole, Fickes & Olson LLP, counsel of record for plaintiff American Small Business League in this lawsuit. I make this declaration of personal knowledge, and, if called as a witness, I could and would testify competently to the facts stated herein.

2. Attached as **Exhibit A** is a true and correct copy of ASBL's February 11, 2020 meet and confer letter raising the issue of defendants' non-compliance with Dkt. No. 153 as to Exemption 4 and Dkt. No. 58 as to Exemption 5. Plaintiff began this process after informally resolving an initial motion for attorney's fees and costs with an explicit carveout for future proceedings related to compliance.

3. Attached as **Exhibit B** is a true and correct copy of two revised pages disclosed by defendants on February 18, 2020 (SUPP938-SUPP939), and of defendants' February 25, 2020 formal response to ASBL's February 11, 2020 letter, which was accompanied by further attached revised disclosures (SUPP1156).

4. Attached as **Exhibit C** is a true and correct copy of defendants' March 6, 2020 final response to ASBL's February 11, 2020 letter, which was accompanied by further attached revised disclosures (SUPP289, SUPP291, SUPP294-96, SUPP302, SUPP362, SUPP365-SUPP366, SUPP1197, SUPP1200).

5. Despite diligently meeting and conferring with defendants, through counsel, ASBL was unable to resolve defendants' non-compliance with Dkt. No. 153 as to Exemption 4 and Dkt. No. 58 as to Exemption 5 informally. As a result, ASBL has brought this motion to compel compliance.

6. Attached as **Exhibit D** is a group of excerpts of compliance reviews disclosed in this case that illustrate some, but by no means all, of the shortcomings of defendants' disclosures.

6a. Attached as **Exhibit D-1** is a true and correct copy of excerpts of responsive compliance reviews disclosed by defendants on January 6, 2020 that disclose general performance to goals information, but conceal performance to goals information of exactly the

CANNATA O'TOOLE FICKES & OLSON LLP
ATTORNEYS AT LAW
100 PINE STREET, SUITE 350, SAN FRANCISCO CA, 94111
TEL: 415.409.8900 – FAX: 415.409.8904

1

same kind for all small business sub-categories, including women-owned small businesses, veteran-owned small businesses, HUBZone small businesses, and minority-owned small businesses.

6b.    Attached as **Exhibit D-2** is a true and correct copy of excerpts of responsive compliance reviews disclosed by defendants on January 6, 2020 that conceal what appears to be narrative discussion of Lockheed's performance and compliance or non-compliance with small business subcontracting goals.

7.    Attached as **Exhibit E** is a group exhibit containing true and correct copies of four documents that ASBL is requesting that defendants submit to this Court for *in camera* review, pursuant to Dkt. No. 165, containing defendants' remaining redactions as of March 6, 2020. I am informed and believe that defendants previously submitted the first three of these four documents for *in camera* review in advance of the Court's ruling on defendants' second motion for summary judgment, Dkt. No. 153, pursuant to Dkt. No. 145. Defendants' redactions of these compliance reviews – in particular those regarding Sikorsky – are representative of their remaining redactions to the many other compliance reviews at issue in this case (described in general terms in defendants' pre-Dkt. No. 153 *Vaughn* indexes, Exhibits F-1 and F-2, *infra*).

7a.    Attached as **Exhibit E-1** is a true and correct copy of the most complete and least redacted version of Sikorsky's FY2013 compliance review disclosed by defendants to date, which defendants have Bates labeled SUPP1218-SUPP1238. ASBL requests that defendants submit an unredacted version of this document to the Court for *in camera* review pursuant to Dkt. No. 165.

7b.    Attached as **Exhibit E-2** is a true and correct copy of the most complete and least redacted version of Lockheed's FY2014 compliance review disclosed by defendants to date, which defendants have Bates labeled SUPP435-SUPP458. ASBL requests that defendants submit an unredacted version of this document to the Court for *in camera* review pursuant to Dkt. No. 165.

7c.    Attached as **Exhibit E-3** is a true and correct copy of the most complete

CANNATA O'TOOLE FICKES & OLSON LLP
100 PINE STREET, SUITE 350, SAN FRANCISCO CA, 94111
ATTORNEYS AT LAW
TEL: 415.409.8900 – FAX: 415.409.8904

1   and least redacted version of Sikorsky's FY2017 compliance review disclosed by defendants to

2   date, which defendants have Bates labeled SUPP1159-SUPP1185. ASBL requests that defendants

3   submit an unredacted version of this document to the Court for *in camera* review pursuant to Dkt.

4   No. 165.

5          7d.     Attached as **Exhibit E-4** is a true and correct copy of the most complete

6   and least redacted version of Sikorsky's FY2014 compliance review disclosed by defendants to

7   date, which defendants have Bates labeled SUPP1139-SUPP1158. ASBL requests that defendants

8   submit an unredacted version of this document to the Court for *in camera* review pursuant to Dkt.

9   No. 165.

10         7e.     ASBL also requests that defendants submit for *in camera* review the joint

11  defense agreement that they and Lockheed's attorneys executed on September 13, 2017, exited on

12  October 11, 2017, and purportedly reinstated even though they could not agree on terms in

13  November 2017. ASBL hopes that the agreement will aid the Court in ascertaining whether and

14  the extent to which defendants' "common interest" claim under Exemption 5 is supported by any

15  evidence. Notably, in *ASBL v. Department of Defense*, Case No. 14-cv-2166-WHA ("*ASBL I*"),

16  the government ended up disclosing documents despite Sikorsky's objections, which undermines

17  the claim of "common interest" privilege. *See* Exhibit J and Exhibit K, which are discussed *infra*

18  at paragraphs 12 and 13.

19         8.      Attached as **Exhibit F** is a group exhibit containing true and correct copies of all

20  four *Vaughn* indexes provided by defendants, in their most up to date form.

21         8a.     Attached as **Exhibit F-1** are true and correct copies of the most recent

22  *Vaughn* indexes provided by defendant United States Department of Defense.

23         8b.     Attached as **Exhibit F-2** is a true and correct copy of the most recent

24  *Vaughn* index provided by defendant United States Department of Justice.

25         8c.     Attached as **Exhibit F-3** is a true and correct copy of the letter that

26  defendants provided with their January 6, 2020 disclosures in response to Dkt. No. 153, which

27  identifies defendants' additional disclosures in the materials they have Bates-labeled "SUPP."

28

---

3

9.    Attached as **Exhibit G** is a true and correct copy of excerpts of the certified transcript of the hearing on ASBL's and defendants' cross-motions for summary judgment that took place in this Court on January 31, 2019.

10.    Attached as **Exhibit H** are true and correct copies of two pages of documents produced to us by the Department of Justice ("DOJ") in this litigation, Bates-stamped MSJ00070-71, referring to a supposed Joint Defense Agreement entered into between counsel for the Department of Defense and counsel for defense contractor Sikorsky. These documents indicate that the supposed Joint Defense Agreement was entered into on September 13, 2017. The defendants in this case have not produced the Joint Defense Agreement.

11.    Attached as **Exhibit I** are true and correct copies of emails between Assistant United States Attorney Ellen London and Rex Heinke, counsel for Sikorsky, dated October 11, 2017, in which Ms. London states, "Rex and Jessica, As we discussed yesterday, we are formally withdrawing from the JDA, per the attached letter, given the current posture of the case." Mr. Heinke replies, "Us too." These emails were produced to us by the DOJ in this case, Bates-stamped MSJ 90.

12.    Attached as **Exhibit J** is a true and correct copy of a letter dated November 7, 2017 from Paul Jacobsmeyer, chief of the Freedom of Information Division of the Department of Defense, to Rex Heinke, counsel for intervenor Sikorsky in *ASBL I*. This letter was produced to us in this case and is Bates-stamped MSJ000112-116. In this letter, Mr. Jacobsmeyer tells Mr. Heinke that DOD will be releasing additional information from Sikorsky's fiscal year 2013 Comprehensive Small Business Subcontracting Plan (the "Plan"). Mr. Jacobsmeyer tells Mr. Heinke that discovery in the case "revealed that at least for some of the information that has been redacted, the Company's witnesses were unable to establish that there is a likelihood of substantial competitive injury in the relevant market." (Page MSJ000113.) He goes on to question the declaration of Martha Crawford of Sikorsky (who has also provided a declaration in this case) and, citing also her deposition testimony, states, "Sikorsky has failed to provide any evidence that

CANNATA O'TOOLE FICKES & OLSON LLP
ATTORNEYS AT LAW
100 PINE STREET, SUITE 350, SAN FRANCISCO CA, 94111
TEL: 415.409.8900 – FAX: 415.409.8904

DECLARATION OF KARL OLSON IN SUPPORT OF PLAINTIFF AMERICAN SMALL BUSINESS LEAGUE'S
MOTION TO COMPEL COMPLIANCE WITH COURT ORDERS (DKT. NO. 58, DKT. No. 153)
CASE NO. 3:18-CV-01979-WHA

1    there is a likelihood of substantial competitive harm in light of the fact that much of the redacted

2    information is publicly available." (Pages MSJ000114-115.)

3        13.    Attached as **Exhibit K** is a true and correct copy of a March 14, 2018 letter from

4    Paul Jacobsmeyer, chief of the Freedom of Information Division of the Defense Department, to

5    Sikorsky counsel Rex Heinke, informing Mr. Heinke that the government would be releasing

6    additional information because, among other things, this Court "explained that it found the

7    declarations of Sikorsky's witnesses to be generic and generally unpersuasive," and stating that

8    "given the witnesses that are designated and the evidence available, the Government will not be

9    able to prove at an evidentiary hearing that release of the dollar amount of the subcontracts would

10    result in a likelihood of substantial competitive harm, as required by GC Micro." (Page

11    MSJ000173-74 of documents produced by the Government in this case.) The Government

12    pointed to "the absence of information that the information remains commercially sensitive."

13    (Page MSJ000174.)

14        I declare under penalty of perjury under the laws of the United States of America that

15    the foregoing is true and correct.

16        Executed in San Francisco, California on April 23, 2020.

17                        /s/ Karl Olson
                         KARL OLSON
18

19

20

21

22

23

24

25

26

27

28

CANNATA O'TOOLE FICKES & OLSON LLP
ATTORNEYS AT LAW
100 PINE STREET, SUITE 350, SAN FRANCISCO CA, 94111
TEL: 415.409.8900 – FAX: 415.409.8904

5

# EXHIBIT A



Karl Olson
kolson@cofolaw.com

February 11, 2020

**By Email and U.S. Mail**
Ellen London
Savith Iyengar
United States Attorney's Office
450 Golden Gate Ave., Box 36055
San Francisco, CA 94102-3495
Ellen.London@usdoj.gov
Savith.Iyengar@usdoj.gov

Re:    *American Small Business League v. U.S. Department of Defense and U.S. Department of Justice,* Case No. 3:18-cv-01979-WHA (N.D. Cal.)

Dear Ellen and Savith:

I am writing to meet and confer regarding the disclosures of defendants United States Department of Defense and United States Department of Justice pursuant to Dkt. No. 58 and Dkt. No. 153. Defendants have not fully complied with Dkt. No. 153 as to Exemption 4, or with Dkt. No. 58 as to Exemption 5. I am writing to attempt to resolve these issues without further judicial intervention.

**I.      Compliance Ratings**

It is now beyond dispute that defendants must disclose all adjectival compliance ratings that are subject to the FOIA requests at issue in this case, notwithstanding Exemption 4. After the oral argument on defendants' renewed summary judgment motion, but before the Court issued its ruling, on November 22, 2019, defendants filed a Notice representing that they would release these compliance ratings, before the Court issued its ruling. *See* Dkt. No. 152 (representing to plaintiff and the Court that defendants would release "adjectival ratings of Lockheed's annual performance with regard to small business subcontracting"). Then, in Dkt. No. 153, the Court ordered defendants to disclose compliance ratings, and imbued defendants' Notice with judicial force. *See* Dkt. No. 153 at 5:23-24 ("In the instant action, . . . *government assessments and evaluations cannot be considered "confidential" information* for purposes of Exemption 4.") (emphasis in original); *see also id.* at 6:1-5 & n.2 (providing examples of what must be disclosed, and noting that defendants had represented they would disclose compliance ratings).

Ms. London
Mr. Iyengar
Page 2
February 11, 2020

Nevertheless, despite defendants' representations to the parties and the Court, Dkt. No. 152, and despite the Court's clarity on this point, Dkt. No. 153 at 5:23-24, 6:1-5, defendants failed to remove their redactions from two compliance ratings in their January 6, 2020 disclosures to plaintiff. *See* Bates Nos. SUPP000938-SUPP000939. Please send plaintiff, through the undersigned counsel, revised records that do not redact this information by February 18, 2020.

## II.    DCMA Comments, Analysis, Remarks, and Charts

The Court made the scope of its November 24, 2019 order clear:

> In the instant action, that means that *government assessments and evaluations cannot be considered "confidential" information* for purposes of Exemption 4. This includes, for example, the government's evaluations of a contractor's compliance with regulatory requirements, ratings, assessments of a contractor report's accuracy, and recommendations – *e.g.,* a finding that an SSR report was "considered not accurate" (*e.g.,* MSJ002082); that a company's suppliers were "not validating their size at time of award" (*e.g., ibid.*); that an "SB goal" was "[n]ot met" because that company "failed to meet the SB goal by" a certain percentage (*e.g.,* MSJ002087); and that the rating of a review was "[e]xceptional" (*e.g.,* MSJ000743).    Such information *stemmed from the government,* not the companies.    No one can reasonably argue that those evaluations by the government constituted information that belonged to the companies rather than the government.    The information generated by the government must be disclosed.

Dkt. No. 153 at 5:23-6:8.

Despite these directives, defendants have once again redacted vast swathes of compliance review information in their January 6, 2020 disclosures. For example, defendants' redactions still cover *most* of the DCMA's responses to questions, the DCMA's analysis and rationale for its ratings, as well as the DCMA's recommendations to Lockheed Martin Corporation ("LMC") for improvement. *See, e.g.,* SUPP001154 and SUPP001155 (completely redacting all of the DMCA's responses – which appear to be stated in prose – to listed questions), SUPP01156 (redacting large portions of explanation of "High" "Risk Rating" assigned by the DMCA). This information, and all information like it that defendants are continuing to withhold, including in defendants' compliance review documents, must be disclosed. Even a very narrow reading of Dkt. No. 153 requires that at least the overwhelming majority of all compliance reviews, and at most the entirety of defendants' compliance reviews, be disclosed.

Defendants' disclosure obligations extend to all "evaluations and assessments," regardless of whether they are presented in charts or in prose. This includes performance to goals information. Defendants' continued withholding in compliance reviews of performance to

Ms. London
Mr. Iyengar
Page 3
February 11, 2020

goals information, including performance to goals information for small disadvantaged businesses, women owned small businesses, HBCU/MI, hub-zone small businesses, veteran-owned small businesses, and service disabled veteran –owned small businesses ranks among defendants' most facially unlawful withholdings, given the Court's explicit direction that this information be disclosed and the obvious importance of this information to plaintiff and the public. *See, e.g.*, SUPP000437-SUPP000439, SUPP000441; *see also, e.g.*, SUPP001219-SUPP001221 (redacting even general small business performance to goals information, and *also* redacting performance to goals information related to all of the above-identified categories). Defendants must disclose this information, pursuant to the Court's explicit direction in Dkt. No. 153.

To resolve these issues, please disclose every compliance review that is responsive to the FOIA requests at issue in this case in its entirety and without redactions by February 18, 2020. Also, please disclose all DMCA answers to questions in the DCMA's compliance review forms, and all evaluation and assessment information like that which the Court identified in Dkt. No. 153 at 5:25-6:8, such as performance-to-goals information, by February 18, 2020.

We can conceive of no reasonable justification for defendants' refusal to disclose evaluation and assessment information, given the Court's directives in Dkt. No. 153. If defendants elect to continue to withhold any part of any responsive compliance review, or any other evaluation and assessment information, regardless of its location, please explain why you believe defendants' withholdings are consistent with Dkt. No. 153 in your February 18, 2020 response.

## III.   Communications with Outsiders in *ASBL I*

On March 8, 2019, the Court issued a split decision on plaintiff's and defendants' initial cross-motions for summary judgment that required defendants to disclose, *inter alia*, communications with outside parties that they had previously withheld in *ASBL I* pursuant to Exemption 5. *See* Dkt. No. 58; *see also* Dkt. No. 72 (plaintiff's objections to defendants' revised Exemption 5 disclosures pursuant to Dkt. No. 58). While the Court agreed that Exemption 5 applied to some of defendants' communications with outsiders during *ASBL I* based on a common interest theory, it held that Exemption 5 did not apply to other such communications and stated that "there were obvious moments of divergent interests between the [G]overnment and Sikorsky" and that the Government "shall release all communications that were not legitimately made pursuant to a joint defense agreement." *See* Dkt. No. 58. It listed documents dating back to November 2014 and March 2018 as exemplars of communications not protected under Exemption 5. And it held that communications are protected under the common interest doctrine if the agency can "show that it had agreed to help another party prevail on its legal claims at the time of the communications at issue because doing so was in the public interest," and that "mere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement ha[d] been formed." *See* Dkt. No. 58.

Ms. London
Mr. Iyengar
Page 4
February 11, 2020

In response to the Court's order, defendants disclosed some further documents (and accordingly altered twenty-one (21) lines of their *Vaughn* index, but also filed a declaration that listed, on approximately one hundred and thirty-four (134) lines, documents that defendants were continuing to withhold under Exemption 5 and the common interest doctrine. Dkt. No. 72-2, Ex. B. Defendants' withholdings continued to span virtually the entire *ASBL I* case, with carve-outs for a few short periods during which the government was apparently prepared to concede its interests and Sikorsky's diverged. See, e.g., Dkt. No. 72-1, Ex. B at 1 (referencing communications withheld based on the "common interest doctrine" from November 2014), 18 (referencing communications withheld based on the "common interest doctrine" from March 2018). Plaintiff objected to defendants' minimal disclosures in a court filing, Dkt. No. 72, which emphasized that defendants' expansive view of the common interest doctrine and minimalist view of their disclosure obligations was directly contrary to the Court's summary judgment order. *See* Dkt. No. 72.

Plaintiff's position on defendants' response to Dkt. No. 58's Exemption 5 holding is the same today as it was then. As plaintiff said in Dkt. No. 72 at 9:11-13, "the government should . . . disclose all communications between the government and Sikorsky except those during the one-month period in which it had a Joint Defense Agreement, September 13, 2017 to October 11, 2017."

Plaintiff would welcome the resolution of this issue without further Court intervention as well. Please disclose, by February 18, 2020, all communications with outsiders in *ASBL I* that are responsive to the FOIA requests at issue that defendants are continuing to withhold pursuant to Exemption 5, except for communications during the one-month period in which defendant United States Department of Defense had a joint defense agreement with Sikorsky, from September 13, 2017 to October 11, 2017.

## IV.    Stipulation

If plaintiff and defendants are unable to resolve any of the issues we have raised above informally, we ask that defendants stipulate to a briefing schedule on a motion to compel compliance with the Court's March 8, 2019 order, Dkt. No. 58, as to Exemption 5, and the Court's November 24, 2020 order, Dkt. No. 153, as to Exemption 4. In your February 18, 2020 response and disclosures, please state whether defendants will stipulate to such a briefing schedule.

Very truly yours,

CANNATA, O'TOOLE, FICKES & OLSON LLP

KARL OLSON

KO:jr

# EXHIBIT B

SUPP000938

**DEFENSE CONTRACT MANAGEMENT AGENCY (DCMA)**
**SMALL BUSINESS SUBCONTRACTING PROGRAM COMPLIANCE REVIEW**
In accordance with FAR 19.706 and FAR 52.219-9

### Part I – General Information

**1.a. Contractor**
**Name:** Lockheed Martin (LM) MST
**Address:** 199 Borton Landing Rd
**City/State/Zip:** Moorestown, New Jersey 08057
**CAGE(s) [Field1 ]:** 02769                                   **DUNS:** 848028494

**1.b. Small Business Liaison Officer (SBLO) [Field 2]:**
**Name:** Susannah Raheb
**Phone:** (b) (6)
**E-mail:** (b) (6)

**1.c. Alternate Small Business Liaison Officer (SBLO)  [Field 3]:**
**Name:**
**Phone:**
**E-mail:**

| 2. DCMA Small Business Professional | 3. Administrative Contracting Officer |
|---|---|
| **Name:** Luz M. Vasquez | **Name:** Bonnie Roberts |
| **Title:** Procurement Analyst | **Location:** 6801 Rockledge Drive, Bethesda, MD 20817 |
| **Phone:** (b) (6) | **Phone:** (b) (6) |
| **E-mail:** (b) (6) | **E-mail:** (b) (6) |

**4.  Small Business Administration (SBA) Representative**
**Name:** Stephanie Lewis                    **E-mail:** (b) (6)
**Phone:** (b) (6)

**5. DCMA/Small Business Administration (SBA), joint review**
☐ Yes          ☑ No

Note: always "No" unless it is an approved follow up type review.

**6. Review type:  On-site** ☑   **Virtual Review** ☐

**7. Period Covered by this Review**

   **a. From:** 1 October 2014

   **b. To:** 30 September 2015

**8.a. Date of this review:** January 25-26, 2016

  **b. Rating of this review:** Exceptional

**9.a. Date of last review [Field 4]:** May 18-20, 2015

  **b. Rating of last review [Field 5]:** Acceptable

LMC0001322
MSJ002625

## DEFENSE CONTRACT MANAGEMENT AGENCY (DCMA)
### SMALL BUSINESS SUBCONTRACTING PROGRAM COMPLIANCE REVIEW
In accordance with FAR 19.706 and FAR 52.219-9

### Part I – General Information

**1.a. Contractor**
**Name:** Lockheed Martin (LM) MST
**Address:** 199 Borton Landing Rd
**City/State/Zip:** Moorestown, New Jersey 08057
**CAGE(s) [Field1 ]:** 02769                    **DUNS:** 848028494

**1.b. Small Business Liaison Officer (SBLO) [Field 2]:**
**Name:** Susannah Raheb
**Phone:** (b) (6)
**E-mail:** (b) (6)

**1.c. Alternate Small Business Liaison Officer (SBLO)  [Field 3]:**
**Name:**
**Phone:**
**E-mail:**

| **2. DCMA Small Business Professional** | **3. Administrative Contracting Officer** |
|---|---|
| **Name:** Luz M. Vasquez | **Name:** Bonnie Roberts |
| **Title:** Procurement Analyst | **Location:** 6801 Rockledge Drive, Bethesda, MD 20817 |
| **Phone:** (b) (6) | **Phone:** (b) (6) |
| **E-mail:** (b) (6) | **E-mail:** (b) (6) |

**4. Small Business Administration (SBA) Representative**
**Name:** Stephanie Lewis                    **E-mail:** (b) (6)
**Phone:** (b) (6)

**5. DCMA/Small Business Administration (SBA), joint review**
☐ Yes        ☑ No

Note: always "No" unless it is an approved follow up type review.

**6. Review type:  On-site** ☑    **Virtual Review** ☐

**7. Period Covered by this Review**

   **a. From:**    1 October 2014

   **b. To:**        30 September 2015

**8.a. Date of this review:** January 25-26, 2016

  **b. Rating of this review:** Exceptional

**9.a. Date of last review [Field 4]:** May 18-20, 2015

  **b. Rating of last review [Field 5]:** Acceptable



*United States Attorney*
*Northern District of California*

---

*9ᵗʰ Floor, Federal Building*
*450 Golden Gate Ave., Box 36055*
*San Francisco, CA 94102-3495*

*(415) 436-7200*
*FAX (415) 436-7169*

February 25, 2020

Via Email
Karl Olson
Cannata O'Toole, Fickes & Almazan LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

      Re:    *American Small Business League v. Dep't of Defense*
               Case No.: 18-CV-1979-WHA

Dear Karl,

      Thank you for your letter sent on February 11, 2020. We have carefully considered each of your concerns about the government's compliance with ECF Nos. 153 and 58, and respond below.

ECF No. 153

      With respect to DCMA's adjectival ratings, we reviewed the two pages you identified, which are identical (SUPP000938-39), removed the inadvertent redactions to the adjectival rating, and sent you corrected versions of the relevant pages on February 18, 2020.

      With respect to DCMA's compliance reviews, we have determined that one page you identified in your letter (SUPP0001156) contains a redaction that was incorrectly applied. This redaction was the result of an error in applying redactions, and did not reflect the redactions we intended to make. We have enclosed a corrected version of that page with this letter. We will also have a paralegal review the remainder of the redactions by the end of next week to ensure that they were applied as identified.

      With respect to your remaining concerns about the compliance reviews, the government's redactions comply with ECF No. 153 (the "Order"). The Court held that Exemption 4 protects "only information originating from the companies themselves[.]" ECF No. 153 at 5. As you noted in your letter, under Exemption 4, "*government assessments and evaluations cannot be considered 'confidential' information*[.]" *Id.* The Court provided, as examples, the following:

      [T]he government's evaluations of a contractor's compliance with regulatory requirements, ratings, assessments of a contractor report's accuracy, and recommendations — *e.g.*, a finding that an SSR report was "considered not

accurate" (*e.g.*, MSJ002082); that a company's suppliers were "not validating their size at time of award" (*e.g.*, *ibid.*); that an "SB goal" was "[n]ot met" because that company "failed to meet the SB goal by" a certain percentage (*e.g.*, MSJ002087); and that the rating of a review was "[e]xceptional" (*e.g.*, MSJ000743).

*Id.* As the Court explained, "[s]uch information *stemmed from the government*, not the companies." *Id.* at 6. These "evaluations by the government" could not "constitute[ ] information that belonged to the companies rather than the government," therefore the Court ordered that "[t]he information generated by the government must be disclosed." *Id.*

The Court also held that, "[o]n the other hand, information originating from the *companies* may qualify as 'confidential' information under *Food Marketing.*" *Id.* This "information related to how the companies intend to meet their subcontracting goals, which industries they plan to target and their strategy for such targeting, and their planned initiatives for promoting use of small businesses." *Id.* at 8. This included "the companies' small-business subcontracting goals, in terms of percentage categories and actual dollars spent, for that particular year," "information related to the companies' use of small-business subcontractors, including their small-business subcontracting policies and their initiatives for improving small-business subcontracting performance," "information about 'relevant point(s) of contact for the contractor submitting the report, programs covered under its plan(s), associated subcontract award data, what spend the contractor has expended with each small business concern category for the reporting period in question, detailed progress on initiatives, and suppliers' names and contracts awarded and amounts,'" and "purchase orders, individual subcontracting reports, and dollar spend reports for all supplier categories" ("to demonstrate their compliance with the governing regulations and performance against their commitments identified in their comprehensive subcontracting plan"). *Id.* at 6-7. As the Court found, "[t]he DCMA reviews themselves also contained said information provided by the companies in its bare form." *Id.* at 7.

Given that "[d]isclosure would necessarily destroy the private nature of this information, no matter the circumstance," *id.* at 14, the Court ordered the government to "comport with the findings of" the Order by releasing "redacted versions" of the previously withheld compliance reviews, and to "release updated redacted versions of *all* documents (2,000-plus pages) at issue – including the disclosure of all government evaluations and assessments – by January 6, 2020." *Id.* at 16.

Following the Order, the undersigned counsel closely reviewed every page at issue to ensure that only information properly considered "confidential" under the Court's Order would remained redacted. To that end, the government removed redactions from the language reflecting government assessments and evaluations. For example, while the Court recognized the confidential nature of "the companies' small-business subcontracting goals, in terms of percentage categories and actual dollars spent, for that particular year," the government disclosed the following language among the documents you identified (and similar language elsewhere): that a contractor's "SSR report is considered not accurate" because of "various errors with the supplier's size classification" (SUPP000436), the contractor "met" or "met and exceeded all negotiated goals" (SUPP000438-39), small business goals were "not met" but "[t]he actual dollars are higher than negotiated showing the added effort in trying to meet the goal" (SUPP000441), "Small Business shows a downward trend" and "[a] recovery plan was requested by OSD and DCMA" (SUPP000438), whether a company met its goals "by socio-economic categor[y]," including that "[t]he strategies in place to increase SDB spend are considered ineffective as it did not result in a favorable increase in spend," "[t]he contractor did not meet

their long term goals" (SUPP000441) or "did not achieve" or "was unable to achieve" a particular goal (SUPP001221), and that a company was "currently exceeding its FY13 goals for SB, SDB, WOSBs, VOSBs and SDVOSBs" (SUPP001222).

The government took care to release all information reflecting its "evaluations of a contractor's compliance with regulatory requirements, ratings, assessments of a contractor report's accuracy, and recommendations," as directed by the Court, while withholding only that information the Court held as confidential under *Food Marketing* as originating from the companies, including where that information was included in the government's compliance reviews.

ECF No. 58

Following the Court's Order dated March 8, 2019, ECF No. 58 (the "March 8 Order"), which provided the Court's guidance as to the scope of Exemption 5, the government re-reviewed the material originally withheld pursuant to Exemption 5 and released additional documents on April 26, 2019. ECF No. 64. The government conducted this review and made this release in order to ensure it was taking the narrowest view of when there was a common interest with Sikorsky. *Id.* The government filed a notice of further release of documents that attached supplemental declarations by Mark H. Herrington, Associate Deputy General Counsel with the Department of Defense, Hirsh D. Kravitz, Senior Supervisory FOIA Counsel with the Department of Justice, and Ellen London, Assistant United States Attorney, regarding this further release of documents. *Id.* The government also provided an updated *Vaughn* index to reflect this release, including more detail regarding the application of Exemption 5 to the relevant documents in light of the March 8 Order. *Id.*

Mr. Herrington's declaration explained that based on the government's "narrower view of when there was a common interest in light of the [ ] March 8 Order," the government released "emails with counsel for Sikorsky starting in November 2014, following the *ASBL I* summary judgment hearing, and until the point in time at which the Government agreed with Sikorsky on the exact scope of redactions that the Government would defend at that point in the litigation." ECF No. 64-1 ¶¶ 5-6. While before the hearing, "the Government had moved for summary judgment in support of redacting the Plan in its entirety," "after the hearing, there was a period of time in which the Government was reassessing whether to release portions of the Plan in light of instructions given by the Court at the hearing." *Id.* ¶ 6. Accordingly, the government decided to release "the communications during the time that the Government was reassessing the redactions (but had not yet decided what exactly to redact) until the time that the Government agreed with Sikorsky on the precise scope of redactions in the version of the Plan that the Government subsequently produced to ASBL on November 18, 2014. Once we agreed on these specific redactions, the DoD and Sikorsky acted in concert to defend them." *Id.*; *see also* ECF No. 64-3 ¶ 7. The government also released "emails between the Government and Sikorsky's counsel in December 2014, after the Court" denied the government's motion, "and until the time the Government filed a notice of appeal." ECF No. 64-1 ¶ 7. As Mr. Herrington explained, "[o]nce the Government made the decision to appeal, the Government and Sikorsky acted in concert and pursuant to their common interest to appeal the Court's order." *Id.*

Mr. Kravitz's declaration discusses the "communications between Civil Appellate attorneys and Sikorsky's attorneys during the appellate proceedings in ASBL I." ECF 64-2 ¶ 8. Once DoD and Sikorsky filed notices of appeal, they "shared the common goal of obtaining a court determination upholding the DoD's decision to redact portions of the Plan pursuant to

FOIA Exemption 4 (as well as Exemption 6)." *Id.* ¶ 10.  Because of this common interest, "the parties coordinated their litigation strategy, which was discussed in the Government's email communications with Sikorsky after filing the notice of appeal." *Id.* ¶ 11.  The withheld communications include "draft legal documents and mediation strategies" and contain attorneys' "mental impressions, conclusions, opinions, and legal theories concerning positions that could be taken" in that litigation, and "was intended to be, and was in fact, kept confidential."  *Id.* ¶¶ 12-14.

Following the Ninth Circuit's order and remand, the parties' interests "were again aligned in defending the redactions."  ECF No. 64-3 ¶ 10.  The government nonetheless decided to release the documents "during the period of time between March 30, 2017, and September 17, 2017, when the Government had not formally entered into a joint defense agreement with Sikorsky," even though this "was due to its cautious approach to entering agreements with private parties, and not because of a concern that the Government's and Sikorsky's interests were not aligned."  *Id.*  The government also "produced responsive documents after [October 11, 2017]," when "the Government sent a notification ending the joint defense agreement" because it "planned to release information from the Plan, and Sikorsky objected to that release."  *Id.* ¶ 12.  Starting November 15, 2017, "[t]he parties' interests were again aligned," because at this point they "were jointly defending the new version of the Plan, with the additional information released."  *Id.* ¶ 13.  Accordingly, it remains the case that "[t]he documents that the Government is still withholding represent the moments from *ASBL I* during which the parties' interest were unequivocally aligned and they were acting in partnership to defend the redactions in the Plan."  *Id.* ¶ 6.

\*    \*    \*    \*    \*    \*

To the extent you believe it is still necessary, the government is willing to meet and confer further regarding a briefing schedule on a motion regarding the above-reference issues.

Very truly yours,

DAVID L. ANDERSON
United States Attorney


*/s/ Ellen London*
*/s/ Savith Iyengar*
ELLEN LONDON
SAVITH IYENGAR
Assistant U.S. Attorneys


Enclosure

required reports in eSRS as a prime contractor and 80% on-time submission of reports from their subcontractors.

☐ **Acceptable** – **Always** demonstrates a good-faith effort to meet **all** of its goals on subcontracting plans reported for the fiscal year being reviewed, but falls short of thresholds to receive a rating of Highly Successful. Provides reasonable and supportable explanations why certain goals could not be achieved. Demonstrates compliance with the mandatory elements of their subcontracting plans and implementing regulations. ISRs and SSRs submitted accurately within 30 days after the end of applicable reporting periods 70% of the time.

☒ **Marginal** - **Deficient** in meeting key subcontracting plan elements or the contractor has failed to satisfy one or more requirements of a corrective action plan from the prior review. Fail to comply with the submission requirements in eSRS on the majority of their contracts with subcontracting plans and no evidence of flow-down to applicable subcontractors. There is evidence of corporate and/or senior management commitment to bring their subcontracting program to an acceptable level and has demonstrated a commitment to apply the necessary resources to do so. A corrective action plan is required, and the Administrative Contracting Officer(s) (ACO) and SBA CMR(s) must be notified.

☐ **Unsatisfactory** – **Noncompliant** with the contractual requirements of DFARS and FAR 52.219-8 and 52.219-9. Contractor's management shows little interest in bringing its program to an acceptable level or is generally uncooperative. For example, recommendations made by SBA or DCMA on previous reviews have never been implemented. A corrective action plan is required, and the ACO(s) and SBA CMR(s) must be notified

---

**2. RISK RATING:**

The following rating criteria should be used to determine the contractor's rating.

☒ **High** - High Risk is assigned when the contractor is not meeting contract negotiated and DoD goals.

☐ **Moderate** - Moderate Risk may be assigned when the contractor is meeting contract negotiated goals but not DoD goals.

☐ **Low** – Low Risk may be assigned when the contractor is meeting contract negotiated and DoD goals.

3. RATINGS SUMMARY, RECOMMENDATIONS, AND FOLLOW-UP OF CORRECTIVE ACTIONS(S):

1  "Negotiated goals" refers to the dollar and percentage goals in the approved subcontracting plan. (For rating purposes, the reviewer will compare the percentage goals to the percentage achievements.)
2  Examples of such initiatives include, but are not limited to, participating in a Mentor-Protégé program, performing compliance reviews at subcontractors' sites, administering a buyer incentive program, participating in trade fairs, promoting registration in the CCR, and contracting suppliers to encourage SDB and HUBZone certification.
3  For example, recommendations made by SBA or DCMA on previous reviews have never been implemented.

DISCUSS:
    Risk Rating:

    DCMA assigned Sikorsky a High Risk Rating.  DCMA was unable to validate the dollars reported on the FY14 SSR.

    Performance Rating:  In summary, Sikorsky has displayed "Good Faith Effort" when it comes to supporting Small Business concerns.  Sikorsky performed well against making their goals on their FY14 Initiatives and Industry Targets.  DCMA applauds Sikorsky for their efforts in this area of their Small Business Subcontracting Program.  However, after thorough review, DCMA has identified a number of areas that need to be improved.  Throughout the annotations are made stating recommendations.  A summary of those recommendations are listed below.  A corrective action plan is required thirty days after the receipt of this form.

    Follow-up of Corrective Actions:

    The following is a recap of the recommendations stated throughout the FY14 DCMA 640 report.  It is recommended that Sikorsky address the following:

    •   Accuracy of the SSR- ██████████████████████████████████ DCMA was unable to determine if the internal purchases were included in the FY14 SSR.  It is recommended that Sikorsky provide assurances that internal purchases are not included in the SSR's.

DCMA Form 640 July 2013 revision          FOR OFFICAL USE ONLY                    Page 18 of 20

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001490

# EXHIBIT C



*United States Attorney*
*Northern District of California*

*9th Floor, Federal Building*
*450 Golden Gate Ave., Box 36055*
*San Francisco, CA 94102-3495*

*(415) 436-7200*
*FAX (415) 436-7169*

March 6, 2020

<u>Via Email</u>
Karl Olson
Aaron Field
Cannata O'Toole, Fickes & Almazan LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

  Re: *American Small Business League v. Dep't of Defense*
     <u>Case No.: 18-CV-1979-WHA</u>

Dear Karl and Aaron,

  This letter follows our letter to you dated February 25, 2020. In that letter, we noted that one page you had identified in your February 11, 2020 letter (SUPP0001156) contained a redaction that was incorrectly applied. That redaction was the result of staff error in applying redactions counsel had identified for redaction, and did not reflect the redactions the government intended to make. As a result, we enclosed a corrected version of that page with our February 25, 2020 letter, and promised to have a paralegal review all of the redactions to ensure that they were applied as previously identified by counsel.

  As a result of this review, we discovered 11 pages that were inconsistent with the redactions previously identified by counsel: SUPP000289, SUPP000291, SUPP000294-96, SUPP000302, SUPP000362, SUPP000365-66, SUPP001197, and SUPP001200. These pages are attached to this letter.

        Very truly yours,

        DAVID L. ANDERSON
        United States Attorney

        */s/ Savith Iyengar*
        SAVITH IYENGAR
        Assistant U.S. Attorney

Enclosures

**SUPP000289**

I.    **Sikorsky's General Concerns with DCMA's Approach and Methodology**

    a.    **Failure to Abide by the Rating Criteria Contained in the DCMA-SBA Memorandum of Understanding and DCMA Form 640**

Attachment 1 to the November 12, 2009 DCMA-SBA Memorandum of Understanding ("MOU") contains the relevant criteria for the five potential ratings assigned to small business programs. In order to assess a marginal rating, DCMA must show the following: (1) that the contractor is deficient in meeting key subcontracting plan elements or one or more requirements of a corrective action plan from a prior review; and, (2) that the contractor has failed to comply with the submission requirements in eSRS on the majority of their contracts with subcontracting plans and shows no evidence of flow-down to applicable subcontractors.



Under the first factor, DCMA has indicated that Sikorsky met or exceeded four of five small business goals,

Sikorsky's previous reviews where outstanding and highly successful ratings were assigned.

In fact, DCMA found that Sikorsky could not "*fully support* records of ISR in eSRS…"

. See DCMA-SBA MOU, Attachment 1 ("Outstanding: … The contractor demonstrates existing policies and processes that ensure…90% on-time submission of subcontract reports.").

2

The information contained in this document and all attachments is considered confidential commercial or financial information.  The disclosure of this information would cause competitive harm to Sikorsky Aircraft Corporation and its affiliates, and is thus protected under 5 U.S.C § 552(b) (4) and 18 U.S.C. § 1905.  Should the Government receive any request under the Freedom of Information Act or decide to otherwise make the information contained in this document and all attachments publicly available, please advise us before taking any such action.  This document contains no technical information controlled by ITAR or EAR.

**USA00372**

**MSJ000676**

SUPP000291

time, DCMA informed Sikorsky that 'this call could be your exit interview.'

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████

## II. Sikorsky's Response to DCMA's Recommendations and Sikorsky's Proposed Corrective Actions

### a. Recommendation No. 1: Accuracy of SSR

████████████████████████████████████████████ *It is*
*recommended that the SSR reported to DoD include only dollars attributed to DoD.*

████████████████████

████████████ DCMA's position that spend associated with non-DoD agencies should be excluded from our SSR reports, ███████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████ previous DCMA reviewers did not view this practice as cause for a marginal rating, and did not require a corrective action plan to address this issue.

████████████████████

███████████████████████████████████████████
███████████████████████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████

███████████████████████████████████████████

4

The information contained in this document and all attachments is considered confidential commercial or financial information. The disclosure of this information would cause competitive harm to Sikorsky Aircraft Corporation and its affiliates, and is thus protected under 5 U.S.C § 552(b) (4) and 18 U.S.C. § 1905. Should the Government receive any request under the Freedom of Information Act or decide to otherwise make the information contained in this document and all attachments publicly available, please advise us before taking any such action. This document contains no technical information controlled by ITAR or EAR.

USA00374

MSJ000678

**c. Recommendation No. 3:  Assign DoD Prime Contract Number to All Spend**

*Purchases in support of Speculative Sales are included in the dollars reported on the SSR.  It is recommended that Sikorsky attribute a DoD prime/subcontract contract number for all dollars counted toward DoD performance goals.*



**d. Recommendation No. 4:  Allocation Rate Includes Non-DoD Dollars**

*The allocation rate was applied to the Indirect subcontracting rate on the FY14 SSR.  The indirect allocation rate is computed by the Government Accounting group and included non DoD values.  It is recommended that the non DoD spend be removed from the DoD allocation rate.  Sikorsky has an internal SBLO manual and standard work instructions that correctly describes the application of the indirect subcontracting rate.  After review, it was determined that Sikorsky did not follow the instructions provided in their manual. It is recommended that the correct application of the indirect rate be applied to the dollars reported on the SSR or elect not to include indirect subcontracting in your subcontracting plan.  The indirect subcontracting allocation rate is determined by dividing the total DoD direct subcontracting dollars for the current reporting period by the total Direct subcontracting dollars for the current period.  DCMA recommends that Sikorsky amend the method that is used to determine indirect subcontracting*

7

The information contained in this document and all attachments is considered confidential commercial or financial information.  The disclosure of this information would cause competitive harm to Sikorsky Aircraft Corporation and its affiliates, and is thus protected under 5 U.S.C § 552(b) (4) and 18 U.S.C. § 1905.  Should the Government receive any request under the Freedom of Information Act or decide to otherwise make the information contained in this document and all attachments publicly available, please advise us before taking any such action.  This document contains no technical information controlled by ITAR or EAR.

USA00377

MSJ000681

---

—

SUPP000296



**e. Recommendation No. 5: Allocation Rate v. Indirect Subcontracting**

*Sikorsky is adhering to the method described in the FY14 CSP. The Allocation rate stated in the SBLO procedural manual differs from the FY14CSP. FY14 Comprehensive subcontracting plan (CSP) Section 10, proportional Allocation Calculation and Section 11, Summary Subcontracting report calculation methodology describes the methodology utilized by the firm to determine and allocate indirect subcontracting dollars for the SSR. The Allocation rate is determined annually by dividing the Total Dollar value of the contract that are with the DoD (Direct DoD Yearly Sales) by the Total Annual Company sales for that 12 month reporting period. The allocation rate was used to determine the percentage of DoD Business Sikorsky has versus non DoD. The method as stated is not the indirect subcontracting and this formula must be corrected in future Subcontracting Plans.*

9

The information contained in this document and all attachments is considered confidential commercial or financial information. The disclosure of this information would cause competitive harm to Sikorsky Aircraft Corporation and its affiliates, and is thus protected under 5 U.S.C § 552(b) (4) and 18 U.S.C. § 1905. Should the Government receive any request under the Freedom of Information Act or decide to otherwise make the information contained in this document and all attachments publicly available, please advise us before taking any such action. This document contains no technical information controlled by ITAR or EAR.

USA00379

MSJ000683

*eSRS for review and approval of the SBLO…"  See* DCMA's GFY13 Form 640, pg. 9 (emphasis added).



DCMA's finding that it does not comply with FAR 52.219-9(d)(10)
DCMA's conclusion that Sikorsky failed to comply with a previous corrective action plan.

### I.  Recommendation No. 12:  Inclusion of Internal Purchase Orders

*DCMA was unable to determine if the internal purchases were included in the FY 14 SSR.   It is recommended that Sikorsky provide assurances that internal purchases are not included in the SSR's.*

As part of the 640 review, Sikorsky was requested to provide a report of *all* orders issued to large businesses with a total value over $650K.

### m. Recommendation No. 13: Missed Small Business Goal

15

The information contained in this document and all attachments is considered confidential commercial or financial information.  The disclosure of this information would cause competitive harm to Sikorsky Aircraft Corporation and its affiliates, and is thus protected under 5 U.S.C § 552(b) (4) and 18 U.S.C. § 1905.  Should the Government receive any request under the Freedom of Information Act or decide to otherwise make the information contained in this document and all attachments publicly available, please advise us before taking any such action.  This document contains no technical information controlled by ITAR or EAR.    **USA00385**

SUPP000362

**EXHIBIT 4**
Corporate Historical Subcontracting Performance

| CORPORATE | TOTAL | | SB | | SDB | | WOSB | | HUBZone | | VOSB | | SDVOSB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | $ | % | $ | % | $ | % | $ | % | $ | % | $ | % | $ |
| GFY 2008 | 13,355,374,934 | 29.3 | 3,910,567,992 | 5.0 | 672,787,403 | 7.5 | 998,498,137 | 1.7 | 226,184,066 | 3.7 | 495,800,632 | 1.1 | 151,237,838 |
| GFY 2009 | 12,908,423,771 | 25.3 | 3,269,320,439 | 3.7 | 476,350,650 | 6.3 | 810,736,269 | 1.8 | 234,440,150 | 3.7 | 478,918,062 | 1.2 | 149,043,238 |
| GFY 2010 | 15,343,885,627 | 26.0 | 3,982,899,169 | 3.4 | 518,470,888 | 5.6 | 864,987,289 | 1.6 | 246,317,319 | 4.0 | 618,661,662 | 1.7 | 264,458,309 |
| GFY 2011 | 18,530,382,554 | 23.0 | 4,261,491,321 | 3.6 | 661,320,372 | 5.3 | 975,064,105 | 1.3 | 249,684,256 | 4.2 | 786,372,263 | 2.0 | 365,496,404 |
| GFY 2012 | 16,989,085,760 | 23.6 | 4,003,517,557 | 3.7 | 630,708,040 | 5.0 | 853,584,661 | 1.3 | 223,959,773 | 4.2 | 714,977,545 | 1.9 | 316,453,367 |
| GFY 2013 | 16,548,938,868 | 22.9 | 3,787,130,352 | 3.8 | 631,527,311 | 4.5 | 741,615,374 | 1.4 | 227,046,722 | 4.8 | 790,837,130 | 2.5 | 410,233,695 |
| GFY 2014 | 20,068,707,044 | 17.2 | 3,353,250,726 | 3.4 | 653,794,640 | 3.3 | 691,100,253 | 1.1 | 206,362,393 | 2.8 | 539,564,846 | 1.1 | 212,300,304 |
| GFY 2015 | 16,116,296,890 | 21.2 | 3,412,387,824 | 4.0 | 648,478,397 | 4.5 | 717,352,942 | 1.2 | 301,402,257 | 3.5 | 561,570,833 | 1.9 | 301,953,168 |

*This document contains trade secrets and commercial or financial information that is privileged or confidential. The disclosure of such information is prohibited under the Freedom of Information Act (5 USC SEC 552) and other statutes prohibiting disclosure (e.g. 18 USC SEC 1905).*

USA00115

MSJ000429
MSJ002000

SUPP000365



## Impact of DoD GFY '16 Non-Discretionary Large Business Subcontracting on Small Business Performance – DoD



**Lockheed Martin Aeronautics Company**
**Summary of Fenced Large Business by Program**

| Program | Estimated Fenced Large Business GFY 2016 |
|---|---|
| | |

*This document contains trade secrets and commercial or financial information that is privileged or confidential. The disclosure of such information is prohibited under the Freedom of Information Act (5 USC SEC 552) and other statutes prohibiting disclosure (e.g. 18 USC SEC 1905).*

USA00239

MSJ000544
MSJ002003

SUPP000366

EXHIBIT 4
Corporate Historical Subcontracting Performance

| CORPORATE | TOTAL $ | SB % | SB $ | SDB % | SDB $ | WOSB % | WOSB $ | HUBZone % | HUBZone $ | VOSB % | VOSB $ | SDVOSB % | SDVOSB $ |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Subcontracting Past Performance - DoD Only | | | | | | | | |
| GFY 2008 | 13,355,374,934 | 29.3 | 3,910,567,992 | 5.0 | 672,787,403 | 7.5 | 998,498,137 | 1.7 | 226,184,066 | 3.7 | 495,800,632 | 1.1 | 151,237,838 |
| GFY 2009 | 12,908,423,771 | 25.3 | 3,269,320,439 | 3.7 | 476,350,650 | 6.3 | 810,736,269 | 1.8 | 234,440,150 | 3.7 | 478,918,062 | 1.2 | 149,043,238 |
| GFY 2010 | 15,343,885,627 | 26.0 | 3,982,899,169 | 3.4 | 518,470,888 | 5.6 | 864,987,289 | 1.6 | 246,317,319 | 4.0 | 618,661,662 | 1.7 | 264,458,309 |
| GFY 2011 | 18,520,382,554 | 23.0 | 4,261,491,321 | 3.6 | 661,320,272 | 5.3 | 975,064,105 | 1.3 | 249,684,256 | 4.2 | 786,373,263 | 2.0 | 365,496,404 |
| GFY 2012 | 16,989,985,760 | 23.6 | 4,003,517,557 | 3.7 | 630,708,040 | 5.0 | 853,584,661 | 1.3 | 223,959,773 | 4.2 | 714,977,545 | 1.9 | 316,453,367 |
| GFY 2013 | 16,548,938,868 | 22.9 | 3,787,130,352 | 3.8 | 631,527,311 | 4.5 | 741,615,374 | 1.4 | 227,046,723 | 4.8 | 790,827,130 | 2.5 | 410,233,695 |
| GFY 2014 | 20,068,707,044 | 17.2 | 3,353,250,726 | 3.4 | 653,794,640 | 3.3 | 691,109,252 | 1.1 | 206,362,393 | 2.8 | 539,564,846 | 1.1 | 212,300,304 |
| GFY 2015 | 16,116,296,890 | 21.2 | 3,412,387,824 | 4.0 | 648,478,397 | 4.5 | 717,352,942 | 1.2 | 201,402,257 | 3.5 | 561,570,832 | 1.9 | 301,953,168 |

*This document contains trade secrets and commercial or financial information that is privileged or confidential. The disclosure of such information is prohibited under the Freedom of Information Act (5 USC SEC 552) and other statutes prohibiting disclosure (e.g. 18 USC SEC 1905).*

USA00272

MSJ000577
MSJ002004

**f. FAR 52.219-9(d)(6) Are indirect costs included in establishing subcontracting goals?**
☑ YES ☐ NO  Briefly describe and analyze the methodology utilized by the contractor to determine share of indirect costs for small business, veteran-owned small business concerns, service-disabled veteran-owned small business concerns, HUBZone small business concerns, small disadvantaged business concerns, and women-owned small business concerns.

☐ NOT APPLICABLE
If applicable, is the contractor adhering to the method described in the small business subcontracting plans? ☑ YES ☐ NO
DESCRIBE:

Sikorsky is adhering to the method described in FY15 CSP. ████████████████████████
████████████. Indicated on the FY14 Compliance Review was a recommendation that the indirect allocation calculation be amended.  The allocation rate used to determine the indirect dollars could include dollars that may not ultimately be tied to DoD.  This subject is under review.  Guidance from the Office of the Secretary of Defense Small Business Programs was requested.  A resolution has not been determined.

**g. FAR 52.219-9(d)(7) Is the name of individual employed by the contractor who administers the subcontracting program  included in the  plans, with a description of the duties?**
☑ YES ☐ NO  Are they fulfilling the small business duties as described in the plans?
☑ YES ☐ NO
DESCRIBE:

████████████████████████████████████████████████████. This information was reviewed. The SBLO is carrying out the duties as stated in the plan.  Sikorsky is compliant with the subject FAR element.

**h. FAR 52.219-9(d)(8) Briefly describe the efforts by the contractor to ensure small business concerns have an equitable opportunity to compete for subcontracts. Is the contractor adhering to the method described in the plans to assure equitable subcontracting opportunities exist for small business?   ☑ YES ☐ NO**
DESCRIBE:

████████████████████████████████████████████. In practice, Sikorsky provides small business concerns the necessary tools to become a supplier through ████████████████████████████. Additionally █████████ provides the necessary framework for small businesses to bid on upcoming work. ████████████████. DCMA has reviewed training documents and attendance information and found it in accordance with subject FAR element.

**i.  FAR 52.219-9(d)(9)**
(1) Are there assurances that the offeror will include the clause FAR 52.219-8 "Utilization of Small Business Concerns" in all subcontracts that offer further subcontracting oportunities?  ☑ YES ☐ NO
Is the contractor adhering to this assurance?  ☑ YES ☐ NO  See Exhibit I

(5) **Records of internal guidance and encouragement to buyers through (A) workshops, seminars, training, etc. and (B) monitoring performance to evaluate compliance with program requirements in accordance with FAR 52.219-9(d)(11)(v). Is the contractor maintaining records as described in the plans [Field 20]?**
☑ YES ☐ NO
**DESCRIBE:**

. DCMA has reviewed the aforementioned documents and found
S korsky compliant with the subject FAR element.

(6) **FAR 52.219-9(d)(11)(vi) Records on a contract-by-contract basis, records to support award data submitted by the offeror to the Government, including the name, address, and business size of each subcontractor. Contractors having commercial plans need not comply with this requirement. Is the contractor maintaining records as described in the plans [Field 21]?** ☑ YES ☐ NO
☑ **NOT APPLICABLE to Commercial Plans**
**DESCRIBE:**

Sikorsky maintains records in accordance with internal guidance provided in both Sikorsky's FY15 CSP and SBLO Handbook.                                                          FY14 review results recommended Sikorsky include the definition of each small business concern and penalties for misrepresenting its supplier size.  This recommendation was adopted by Sikorsky.  FY15 revealed the changes Sikorsky made to the form.  DCMA finds Sikorsky compliant with the subject FAR element.

I. **FAR 52.219-9(e) In order to effectively implement this plan to the extent consistent with efficient contract performance the contractor shall perform the following functions:**

(1) **Is the contractor assisting small businesses by arranging solicitations, time for the preparation of bids, quantities, specifications, and delivery schedules to facilitate the participation by such concerns in accordance with FAR 52.219-9(e)(1)?** ☑ YES ☐ NO
**DESCRIBE:**

Evidence of support of this FAR element is their work with

ikorsky is compliant with the subject FAR element.

(2) **Is the contractor providing adequate and timely consideration of small businesses in all "make-or-buy" decisions in accordance with FAR 52.219-9(e)(2)?** ☑ YES ☐ NO
**DESCRIBE:**

. DCMA reviewed the Work Transition documentation and found it compliant with the subject FAR clause.

# EXHIBIT D-1

**SUPP000437**

c. PERFORM TREND ANALYSIS OF PAST PERFORMANCE *(Last 5 years, if available)* AND DISCUSS TRENDS, POSITIVE OR NEGATIVE: 6 years data is presented to expand trend
*(To copy over data use Paste "overwrite cells" option)*

| Fiscal Year | Total Subcontracting Dollars (per the SSR) | | Small Business | | | |
|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | $ Goal | $ Actual | % Goal | % Actual |
| FY09 | $14,037,397,703 | $12,908,423,771 | $3,647,703,940 | $3,269,320,439 | 26.0% | 25.3% |
| FY10 | $17,429,732,154 | $15,342,885,627 | $4,010,780,695 | $3,982,899,169 | 23.0% | 26.0% |
| FY11 | $18,688,799,649 | $18,520,382,554 | $3,569,560,733 | $4,261,491,321 | 19.1% | 23.0% |
| FY12 | $17,199,685,096 | $16,989,991,052 | $3,319,539,224 | $4,003,522,849 | 19.3% | 23.6% |
| FY13 | $16,704,423,289 | $16,548,938,868 | $3,107,022,732 | $3,787,130,352 | 18.6% | 22.9% |
| FY14 | $15,074,000,072 | $19,528,707,044 | $2,788,690,013 | $3,353,250,726 | 18.5% | 17.2% |

| Fiscal Year | Small Disadvantaged Business | | | | Women-Owned Small Business | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| FY09 | (b) (4) | | | | | | | |
| FY10 | | | | | | | | |
| FY11 | | | | | | | | |
| FY12 | | | | | | | | |
| FY13 | | | | | | | | |
| FY14 | | | | | | | | |

| Fiscal Year | HBCU/MI | | | | Hub-Zone Businesses | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| FY09 | (b) (4) | | | | | | | |
| FY10 | | | | | | | | |
| FY11 | | | | | | | | |
| FY12 | | | | | | | | |
| FY13 | | | | | | | | |
| FY14 | | | | | | | | |

| Fiscal Year | Veteran-Owned Small Business | | | | Service Disabled Veteran-Owned Small Business | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| FY09 | (b) (4) | | | | | | | |
| FY10 | | | | | | | | |
| FY11 | | | | | | | | |
| FY12 | | | | | | | | |
| FY13 | | | | | | | | |
| FY14 | | | | | | | | |

The total subcontracting dollars reported for FY14 show an increase of $3 Billion dollars from FY13 data. This marks the largest increase in total subcontracting dollars for the past six fiscal years. It also marks LM lowest Small Business performance across all

Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0000754**
**MSJ002083**

**SUPP000438**

socio-economic categories for the same period of time. LM FY 14 SB dollar goal was $2.7B and they achieved $3.3B but still missed the percentage goal by 1.3%. This anomaly can be observed when there is an unpredicted increase in the total subcontracting base with the majority of allocations going to large, which is the case seen here with LM. Small Business shows a downward trend. ▮▮▮▮▮▮▮▮▮▮▮▮. A recovery plan was requested by OSD and DCMA to be included in their FY15 CSP plan.

This report also covers LM Missile Fire Control (MFC) business unit SB performance. (b) (4) ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

2. **FOR COMPREHENSIVE SUBCONTRACTING PLANS ONLY INITIATIVES:**

   a. Describe the efforts the firm uses to achieve all negotiated initiatives?   Describe: LM identified three initiatives for FY13. Efforts for each initiative are discussed below. Outreach is the main contributor in achieving the negotiated initiatives.

      1. **Indian Incentive Program: Objective: Submit a minimum of 5 IIP proposals to OSBP office: Complete**

         - Lockheed Martin submitted a total of **32** IIP proposals. LM received listing of approved payment submittals from DoD OSBP IIP Office.

      2. **SnapOn Tools Corporate Agreement: Restrict competition to Small Business only and release RFP to identified SB: Complete**

         - Competed procurement restricted to Small Business and narrowed down from ten to four small businesses of which (b) (4) ▮▮▮▮▮▮ got awarded the contract. Redirection of spend in process for this follow on contract. Awarded in Feb 2014 with spend of (b) (4) ▮▮▮ as of Sept 2014. This initiative is considered successful and complete.

      3. **Mentor Protégé Program: Identify and submit for two new MP agreements with focus on developing (SDB< HUBZone, and SDVOSB) and two other industries: Complete**

         - LM submitted two proposals: TIME Systems, LLC to the Army on 01/02/2014 and G2 Ops to the Navy.
         - LM held a total of 3 supplier information sessions and multiple chat/webinars.  ROI on suppliers information session a total of (b) (4) ▮▮▮▮▮▮▮▮▮▮▮ Number of suppliers receiving subcontracts (b)

      4. **SBIR Program: Identify and add proven SBIR firms to the know Supplier Database to provide new training and engagement opportunities. Report number of SBIR partnerships**

         ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
         ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
         ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

      Is the firm making adequate progress to meet all milestones for all negotiated initiatives? ☒ Yes ☐ No The contractor was extremely successful with all 3 of their initiatives efforts.

   b. TARGET INDUSTRIES:
      Has the contractor met, or are they on track to meet all selected industry category goals?   ☒ Yes ☐ No

      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. The contractor met all the negotiated goals. ▮▮▮▮▮▮
      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
      ▮▮▮▮ The contractor efforts to switch spend from large to small are considered a success. ▮▮▮▮

Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0000755**
**MSJ002084**



|  | SB Goal % | SB Actual % | SB Goal $ | SB Actual $ |
|---|---|---|---|---|
| FY 2013 | (b) (4) | | | |
| FY 2014 | | | | |

|  | SDB Goal % | SDB Actual % | SDB Goal $ | SDB Actual $ |
|---|---|---|---|---|
| FY 2013 | (b) (4) | | | |
| FY 2014 | | | | |

|  | VOSB Goal % | VOSB Actual % | VOSB Goal $ | VOSB Actual $ |
|---|---|---|---|---|
| FY 2013 | (b) (4) | | | |
| FY 2104 | | | | |

|  | Large Goal % | Large Actual % | Large Goal $ | Large Actual $ |
|---|---|---|---|---|
| FY 2013 | (b) (4) | | | |
| FY 2104 | | | | |

|  | Estimated Spend % | Estimated Spend Actual % | Estimated Spend Goal $ | Estimated Spend Actual $ |
|---|---|---|---|---|
| FY 2013 | (b) (4) | | | |
| FY 2104 | | | | |

2. ███████████████████████████. LM met and exceeded all negotiated goals. ████████████ The efforts made to switch spend from large to small were not significant to create a change in favor of SB. ████████ however no return on investment ██████████████

|  | SB Goal % | SB Actual % | SB Goal $ | SB Actual $ |
|---|---|---|---|---|
| FY 2012 | (b) (4) | | | |
| FY 2013 | | | | |
| FY 2014 | | | | |

|  | WOSB Goal % | WOSB Actual % | WOSB Goal $ | WOSB Actual $ |
|---|---|---|---|---|
| FY 2012 | (b) (4) | | | |
| FY 2013 | | | | |
| FY 2014 | | | | |

|  | SDB Goal % | SDB Actual % | SDB Goal $ | SDB Actual $ |
|---|---|---|---|---|
| FY 2012 | (b) (4) | | | |
| FY 2013 | | | | |
| FY 2104 | | | | |

|  | Large Goal % | Large Actual % | Large Goal $ | Large Actual $ |
|---|---|---|---|---|
| FY 2012 | (b) (4) | | | |
| FY 2013 | | | | |
| FY 2104 | | | | |

|  | Estimated Spend Goal % | Estimated Spend Actual % | Estimated Spend Goal $ | Estimated Spend Actual $ |
|---|---|---|---|---|
| FY 2012 | (b) (4) | | | |
| FY 2013 | | | | |
| FY 2104 | | | | |

Describe the method the firm uses to improve performance by small business in the selected industry categories?

DCMA Form 640 Nov. 2013 revision    FOR OFFICAL USE ONLY    Page 5 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000756
MSJ002085

**SUBCONTRACTING PERFORMANCE FACTORS**
*Compliance with FAR requirements in this part establish the basic requirements for an acceptable rating*

1.  OVERALL SUBCONTRACTING PERFORMANCE – SUMMARY SUBCONTRACTING REPORT (SSR) SUBMISSION (FAR 52-219-9(d) (1), (2) & (10) (iii) & (iv)

   a.  WERE SSR REPORTS SUBMITTED IN ACCORDANCE WITH FAR REQUIREMENTS AND SSR  INSTRUCTIONS?
   ☒ YES   ☐ NO.   Identify deficiencies: SAC submitted on time for October 2013, however due to verification issues with their internal purchasing system that separated the report it was resubmitted in January 2014.

   b.  VERIFY ACCURACY OF SSR REPORTS:  The original SSR was submitted incorrectly in October 2013. This was not discovered until December 2013 after the DCMA Program Manager had accepted the original submission. The root cause was the mechanism to differentiation of small business spend to the appropriate socioeconomic category was not included in an upgrade to Sikorsky's SAP system upgrade for the fourth quarter of FY13. As a result the SSR was rejected and resubmitted to ensure the correct percentages were able to be verified during the 640 Review. The SSR was verified to ensure the goals and percentages were correctly reported.

   c.  PERFORM TREND ANALYSIS OF PAST PERFORMANCE AND DISCUSS TRENDS, POSITIVE OR NEGATIVE:

| Fiscal Year | Total Subcontracting Dollars (per the SSR) | | Small Business | | | |
|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | $ Goal | $ Actual | % Goal | % Actual |
| | | | | | | |

| Fiscal Year | Small Disadvantaged Business | | | | Women-Owned Small Business | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| | | | | | | | | |

| Fiscal Year | HBCU/MI | | | | Hub-Zone Businesses | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| | | | | | | | | |

| Fiscal Year | Veteran-Owned Small Business | | | | Service Disabled Veteran-Owned Small Business | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 2 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.
LMC0001588

Special Note: The 2010 program reviews determined 2009 SSRs invalid. Thus, they are omitted from the -table above. DCMA will only evaluate the actual achievement reported in 2010, 2011, 2012, and 2013.

SAC has continued to meet and exceed all negotiated small business subcontracting goals since FY12. SAC did meet and exceed their SB goal.

Small Disadvantaged Business (SDB):

SAC has not been able to meet the           DOD minimum subcontracting goal.

SAC did meet and exceed their SDB goal.

Women Owned Small Business (WOSB):
SAC continues to exceed the        DoD minimum subcontracting goal.

SAC did meet and exceed their WOSB goal.

HUBZone Small Business:

SAC did meet its negotiated HUBZone goal.

Veteran Owned Small Business (VOSB):

SAC did meet and exceed its VOSB goal.

Service Disabled Veteran Owned Small Business (SDVOSB):

SAC did meet and exceed its SDVOSB goal.

2. **FOR COMPREHENSIVE SUBCONTRACTING PLANS ONLY INITIATIVES:**

   a.  Describe the efforts the firm uses to achieve all negotiated initiatives?   Describe:

DCMA Form 640 Nov. 2013 revision                FOR OFFICAL USE ONLY                Page 3 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001589

⏎

**SUPP001221**

███████

███████

<span>Sikorsky is on track to meet this goal by year end FY14.</span>

███████

Sikorsky has met this goal.

███████

Sikorsky has met this goal.

███████

Sikorsky has met this goal.

███████

Sikorsky has met this goal.

Is the firm making adequate progress to meet all milestones for all negotiated initiatives? ☒ Yes ☐ No

   b.  TARGET INDUSTRIES:
     Has the contractor met, or are they on track to meet all selected industry category goals?  ☐ Yes ☒ No

███████ Sikorsky has met this goal.

███████ . Sikorsky did not achieve this goal.

     Describe the method the firm uses to improve performance by small business in the selected industry categories?

███████ . However, Sikorsky was unable to achieve this goal.

   c.  List the major programs (s) the firm is monitoring as requested by the customer.

Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001590**

# EXHIBIT D-2

resubmitted to ensure the correct percentages were able to be verified during the 640 Review. The SSR was verified to ensure the goals and percentages were correctly reported. Sikorsky provided the DCMA Program Manager a summary of the incident including a corrective action that testing will be verified with process owner to ensure that this will not be a reoccurring problem. There was no NASA for FY 13 subcontracting for ISR Submittal.

SAC has submitted the SSR as required by FAR 52.219-9 (d)(1), and ensures that their subcontractors who received/receives a subcontract $500,000, $550,000 or over $650,000 or over submits ISR via eSRS for review and approval of the SBLO (detailed in Part III, 1.j.). ISRs for the applicable subcontractor were requested from Sikorsky by the DCMA Program Manager. ███████████████████████████████████████████████████████████████ In addition to flowing down 52.219-9 in the Sikorsky Term and Conditions comply with the instructions.  The supporting ISRs were not provided for any of the Small Business Plans in exhibit 1.

Sikorsky is not in compliance with FAR 52.219-9 (d) (10). **DCMA does not find this acceptable.**  It is recommended that Sikorsky be able to provide supporting documentation to ensure the subcontractors with applicable Small Business Plans are submitting ISRs in accordance with FAR 52.219-9 (d) (10).  Please see the corrective action in Part V Summary and Recommendations.

k.  FAR 52.219-9 (d) (11) (i) Briefly describe and analyze the Source lists (e.g. CCR), guides, and other data the firm uses to identify small businesses.  Is the firm adhering to the method described in the plan?    ☒ YES ☐ NO
DESCRIBE HERE:



. During the review the SBLO was able to demonstrate the ability to navigate www.sam.gov, Small Business Dynamic Search in addition to Sikorsky's internal data base SA8068 Supplier Information Forms. Sikorsky does comply with FAR 52.219-9 (d)(11)(i). DCMA finds this be acceptable.

l.  FAR 52.219-9 (d) (11) (ii) List organizations that are contacted by the firm in an attempt to locate sources that are small businesses.  Is the firm utilizing the list of organizations described in the plan? ☒ YES ☐ NO   DESCRIBE HERE:



DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY                    Page 9 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.
LMC0001595

██████████████████████████████████████████████████

the information that is provided in the FY13 CSP. During the 640 review Sikorsky was able to demonstrate to the Program Manager they are effective utilizing these sources as evidenced by meeting all of their goals and by providing a sample exercise to lookup vendors, and verification of attendance at several of the events of the ████████████████████████████████. Sikorsky does comply with FAR 52.219-9 (d)(11)(ii). DCMA finds this be acceptable.

m. FAR 52.219-9 (d) (11) (iii) Briefly describe and analyze the methodology utilized by the firm for maintaining records of purchases over $150,000. Are they adhering to the method described in the plan? ☒ YES ☐ NO
DESCRIBE HERE:

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████ The PUR02-02-004 purchasing guidance procedure was provided to the DCMA Program Manager for review. Evidence that SAC is appropriately maintaining records are recorded on the Exhibit 1 of this report. Sikorsky complies with FAR 52.219-9 (d) (11)(iii). DCMA finds this to be acceptable.

n. FAR 52.219-9 (d) (11) (iv) Briefly describe and analyze the records the firm maintains to document outreach efforts with trade associations business development organizations, conferences, trade fairs, and veteran service organizations, to locate small businesses. Is the firm maintaining records as described in the plan? ☒ YES ☐ NO
DESCRIBE HERE:

██████████████████████████████████████████████████
██████████████████████████████ During the review a calendar of Small Events were provided to the Program Manager in addition to a list of attendees. ██████████████████████████████████████████
██████████████ Attendance records were verified by the DCMA Program Manager and found to be acceptable. It was evident by the attendance records that the SBLO was utilizing ████████████████████████
██████████████████████████████████████████████████.
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████████. Sikorsky does comply with FAR 52.219-9 (d)(11). DCMA finds this be acceptable.

o. FAR 52.219-9 (d) (11) (v) Briefly describe and analyze the records the firm maintains to document internal guidance and encouragement to buyers through (A) workshops, seminars, training, etc. and (B) monitoring performance to evaluate compliance with program requirements. Are they maintaining records as described in the plan? ☒ YES ☐ NO
DESCRIBE HERE:

██████████████████████████████████████████████████
██████████████████████████████████████████████████
██████████████████████ A copy of the training was provided to the DCMA Program Manager for review. The training was found to be complete and accurate to address the buyer's role in the Small Business and Purchasing process. ██████████████████████████████████

---

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 10 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

SUPP001228

confirmed by the SBLO and verified by the DCMA Program Manager. This was

, which is in line with This results in

and SAC Handbook adequate. Sikorsky is in compliance with FAR 52.219-9(d)(11)(v). DCMA finds this to be acceptable.

p. FAR 52.219-9 (d) (11) (vi) Briefly describe and analyze the methodology the firm uses, on a contract-by-contract basis, to record support award data, including the name, address, and business size of each subcontractor.  Contractors having commercial plans need not comply with this requirement.   Are they maintaining records as described in the plan?
   ☒ YES ☐ NO   DESCRIBE HERE:

. It should be noted that the system upgrade with the SAP system during the 3rd quarter did have an effect on the SSR submitted in October 2013. During the system upgrade the 4th quarter was not able to accurately differentiate small businesses subcategories which resulted in the miscalculation of the supporting figures in the SSR. During the review validation of HUBZone was demonstrated by the SBLO through www.sam.gov and the Small Business Dynamic System.

Fourteen Sample purchase order were requested and provided for review to verify Small Business categories.  All fourteen were found to be correctly categorized. See Exhibit 1. Sikorsky does comply with FAR 52.219-9 (d)(11)(vi). DCMA finds this be acceptable.

q. FAR 52.219-9 (e) (1)  Briefly describe and analyze the methodology utilized by the firm to assist small businesses by arranging solicitations, time for the  preparation of bids, quantities, specifications, and delivery schedules so as to facilitate the participation by such concerns.  Are they adhering to the method described in the plan? ☒ YES ☐ NO
   DESCRIBE HERE:

However, there were no examples during FY13 for the DCMA Program Manager to review.

Sikorsky does comply with FAR 52.219-9 (e)(1). DCMA finds this be acceptable.

DCMA Form 640 Nov. 2013 revision        FOR OFFICAL USE ONLY        Page 11 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001597

r. FAR 52.219-9 (e) (2) Briefly describe and analyze the methodology utilized by the firm to provide adequate and timely consideration of small businesses in all "make-or-buy" decisions.    Is the firm adhering to the method described in the plan? ☒ YES ☐ NO   DESCRIBE HERE:

. In 2013 did not negatively impact Small Business and . The DCMA program Manager reviewed several examples for verification purposes. DCMA finds this to be in compliance with FAR 52.219-9 (e) (2). DCMA finds this to be acceptable.

s. FAR 52.219-9 (e) (3) Briefly describe and analyze the methodology utilized by the firm to counsel and discuss subcontracting opportunities with small businesses. Is the firm adhering to the method described in the plan? ☒ YES ☐ NO DESCRIBE HERE:

The documents were analyzed and found to be acceptable as drafted. SAC has provided the methodology required to track counseling and discussions of subcontracting opportunities with small businesses. DCMA finds this to be in compliance with FAR 52.219-9 (e) (3). DCMA finds this to be acceptable.

t. FAR 52.219-9 (e) (4) Briefly describe and analyze the methodology utilized by the firm to provide notice to subcontractors concerning penalties and remedies for misrepresentations of business status as a small business for the purpose of obtaining a subcontract.    Is the firm adhering to the method described in the plan? ☒ YES ☐ NO DESCRIBE HERE:

The DCMA Program Manager reviewed the Sikorsky U.S. Government Provisions

DCMA Form 640 Nov. 2013 revision    FOR OFFICAL USE ONLY    Page 12 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.
LMC0001598

SUPP001230

and Clauses for Orders under U.S. Government Contracts and a copy of a blank SA1048 for verification purposes.

SAC has provided the methodology required to provide notice to subcontractors concerning penalties and remedies for misrepresentations of business status. Sikorsky is in compliance with FAR 52.219-9(e)(4). DCMA finds this to be acceptable.

u.   FAR 19.702  It is the policy of the United States that its prime contractors establish procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns.   Describe the method utilized by the firm to ensure timely payment of subcontractors.   Has the firm been adhering to this policy?  ☒ YES ☐ NO      DESCRIBE HERE:

The DCMA Program Manager reviewed both polices and found them to be acceptable. Several examples of small business payment were provided for verification purposes. DCMA considers the revised payment options presented in compliance with FAR 19.702. DCMA finds this to be acceptable.

v.   Has the firm adequately addressed all previous Corrective Action Plans?  ☒ YES ☐ NO

No Corrective Action Plan was required as a result of the FY12 640 Review.

2.   COMPLIANCE WITH RECORD KEEPING:

a.   REVIEW A REPRESENTATIVE SAMPLE OF PURCHASE ORDERS AWARDED TO LARGE BUSINESS, INCLUDING PURCHASE ORDERS OVER $650,000. See below.

| SUBCONTRACTING PURCHASE ORDER REVIEW CHECKLIST DCMA FORM 640 EXHIBIT 1 | | | | | | | |
|---|---|---|---|---|---|---|---|
| **DCMA FORM 640 EXHIBIT 1** *(for more rows click outside the right side of the row on the form and hit "enter")* | | | | | | | |
| **CONTRACTOR:** | **Sikorsky Aircraft Corporation** | | **PERIOD COVERED: FY 13** | **1 October 2012 TO 30 September 2013** | | | |
| **SAMPLING OF AWARDS TO LARGE BUSINESS OVER $150,000 AND $650,000; AND SAMPLES OF P.O. TO SMALL BUSINESS TO VERIFY CERTIFICATION** | | | | | | | |
| **SUB-CONTRACTS WITH LARGE BUSINESSES = or > $650,000** | | | | **FAR 52.219-9(d)(9)** | | | |
| **Prime Contract** | **Date** | **Vendor Name** | **$ Amount** | **Subcontract Number** | **SB Plan In Place?** | **ISR Input?** | **Remarks** |
|  |  |  |  |  |  |  |  |

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001599

**SUPP001153**

3. MONITORING SB PROGRAM PERFORMANCE AND REQUIREMENTS:

  a. ARE SENIOR MANAGEMENT AND STAFF BRIEFED REGULARLY ON ACHIEVEMENT AND/OR PROGRAM DEFICIENCIES?

    ☒ YES.   COMMENTS:

    ☐ NO.   COMMENTS:

  b. WHAT DOES CONTRACTOR DO TO IMPROVE OVERALL PROGRAM PERFORMANCE IF OVERALL PROGRAM GOALS ARE NOT BEING MET? *(Identify any Corrective Action Plan(s) implemented)*

    Sikorsky achieved most of the FY14 goals.

DCMA Form 640 July 2013 revision         FOR OFFICAL USE ONLY         Page 15 of 20

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001487

**SUPP001154**

4. SUPPLEMENTAL INFORMATION

   a.  Discuss the firm's use of strategic sourcing teams or other groups within the firm that may assist the SBLO in the development of business subcontracting sources and the goal setting process. (If so, define its role in goal development and its role during plan performance). DESCRIBE:

   b.  Discuss any successes the firm has made in subcontracting opportunities, those which were normally awarded to a large business, that have been redirected to a small business. DESCRIBE:

   c.  Discuss any procurement actions the firm may have reserved for small business. DESCRIBE:

   d.  Discuss the firm's use of Corporate, Blanket and Long Term Agreements and how they may affect small business dollars. DESCRIBE:

   d.  Discuss the extent of use and the firm's internal written guidance for credit card purchases. DESCRIBE:

   f.  Discuss the firm's use of the internet or web-site as tools to advertise its ongoing and future procurement requirements. DESCRIBE:

   g.  Discuss the firm's use of Mentor/Protégé agreements to increase small business subcontracting opportunities. If the firm is not participating in the Mentor Protégé program, are they considering participating in the program? DESCRIBE:

   h.  Discuss the firm's initiatives/accomplishments made to ensure more small businesses are able to compete in more "high-tech" procurements. DESCRIBE:

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001488

i. Discuss how the firm monitors its individual subcontracting goals/plans and readjusts its internal focus in achieving goals that may be in doubt of being attained.   DESCRIBE:

[redacted]

j. Discuss any planned procurement actions, or procurement actions, or procurements addressed specifically within subcontracting plan that had to be redirected to another business size category.   DESCRIBE:

[redacted]

5. NOTEWORTHY ACTIVITIES TO JUSTIFY A HIGHLY SUCCESSFUL OR OUTSTANDING RATING:

REVIEW AND DISCUSS CONTRACTOR'S ACTIVITIES THAT ARE CONSIDERED NOTEWORTHY TO JUSTIFY A HIGHLY SUCCESSFUL OR OUTSTANDING.

6. ADDITIONAL REMARKS.  DESCRIBE IN DETAIL HOW A CONTRACTOR HAS MET THE CRITERIA TO JUSTIFY A RATING THAT IS HIGHER THAN ACCEPTABLE.

Outstanding – Describe how the contractor has had exceptional success with initiatives to assist, promote and utilize small business (SB), small disadvantaged business (SDB), women-owned small business (WOSB), HUBZone small business, veteran-owned small business (VOSB), and service-disabled VOSB (SD/VOSB).  Describe how the contractor has an exemplary program that could be used as a model by other contractors in similar industries.

Highly Successful – Describe how the contractor has had significant success with initiatives to assist, promote, and utilize SB, SDB, WOSB, HUBZone small business, VOSB, and SD/VOSB.  Describe how the contractor has gone above and beyond the required elements of the program.  Provide documentation and stories to support such efforts.

## PART V – SUMMARY AND RECOMMENDATIONS

### 1. PROGRAM RATING:

The following rating criteria should be used to determine the contractor's rating.  Note that the rating criteria are the same as SBA per the November 12, 2009 DCMA/SBA Memorandum of Understanding.

☐ **Outstanding - Exceeds** the negotiated small business goal and 2 additional category goals on 90% or more of the subcontracting plans reported for the fiscal year under review. Has exceptional success with numerous specific initiatives to assist, promote and utilize Small Business (SB), Small Disadvantaged Business (SDB), Women-Owned Small Business (WOSB), HUBZone Small Business (HUBZone), Veteran-Owned Small Business (VOSB), Service-Disabled Veteran Own Small Business (SDVQSB); Alaska Native Corporations (ANC's) and Tribal Native American concerns, except in instances where the Large Prime Contractor (LPC) can provide a reason the Commercial Marketing Representative (CMR) or DCMA representative deems justifiable as to why the LPC has not had exceptional success in those categories.

☐ **Highly Successful - Met or exceeded** the negotiated goals in three small business categories on 80% of the subcontracting plans reported for the fiscal year under review. Has moderate success with some initiatives to assist, promote and utilize SB, SDB, WOSB, HUBZone, VOSB, and SDVOSB as described above in the criteria for a rating of Outstanding. Demonstrates focused efforts to go above and beyond the required elements of the subcontracting program and provides documentation of achievements and success stories to support such efforts. The contractor demonstrates existing policies and process that ensures 85% on-time and accurate submission of

DCMA Form 640 July 2013 revision                FOR OFFICAL USE ONLY                Page 17 of 20
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001489

required reports in eSRS as a prime contractor and 80% on-time submission of reports from their subcontractors.

☐ **Acceptable** – **Always** demonstrates a good-faith effort to meet **all** of its goals on subcontracting plans reported for the fiscal year being reviewed, but falls short of thresholds to receive a rating of Highly Successful. Provides reasonable and supportable explanations why certain goals could not be achieved. Demonstrates compliance with the mandatory elements of their subcontracting plans and implementing regulations. ISRs and SSRs submitted accurately within 30 days after the end of applicable reporting periods 70% of the time.

☒ **Marginal** - **Deficient** in meeting key subcontracting plan elements or the contractor has failed to satisfy one or more requirements of a corrective action plan from the prior review. Fail to comply with the submission requirements in eSRS on the majority of their contracts with subcontracting plans and no evidence of flow-down to applicable subcontractors. There is evidence of corporate and/or senior management commitment to bring their subcontracting program to an acceptable level and has demonstrated a commitment to apply the necessary resources to do so. A corrective action plan is required, and the Administrative Contracting Officer(s) (ACO) and SBA CMR(s) must be notified.

☐ **Unsatisfactory** – **Noncompliant** with the contractual requirements of DFARS and FAR 52.219-8 and 52.219-9. Contractor's management shows little interest in bringing its program to an acceptable level or is generally uncooperative. For example, recommendations made by SBA or DCMA on previous reviews have never been implemented. A corrective action plan is required, and the ACO(s) and SBA CMR(s) must be notified

---

## 2. RISK RATING:

The following rating criteria should be used to determine the contractor's rating.

☒ **High** - High Risk is assigned when the contractor is not meeting contract negotiated and DoD goals.

☐ **Moderate** - Moderate Risk may be assigned when the contractor is meeting contract negotiated goals but not DoD goals.

☐ **Low** – Low Risk may be assigned when the contractor is meeting contract negotiated and DoD goals.

3. RATINGS SUMMARY, RECOMMENDATIONS, AND FOLLOW-UP OF CORRECTIVE ACTIONS(S):

1  "Negotiated goals" refers to the dollar and percentage goals in the approved subcontracting plan. (For rating purposes, the reviewer will compare the percentage goals to the percentage achievements.)
2  Examples of such initiatives include, but are not limited to, participating in a Mentor-Protégé program, performing compliance reviews at subcontractors' sites, administering a buyer incentive program, participating in trade fairs, promoting registration in the CCR, and contracting suppliers to encourage SDB and HUBZone certification.
3  For example, recommendations made by SBA or DCMA on previous reviews have never been implemented.

DISCUSS:
   Risk Rating:

   DCMA assigned Sikorsky a High Risk Rating. DCMA was unable to validate the dollars reported on the FY14 SSR.

   Performance Rating: In summary, Sikorsky has displayed "Good Faith Effort" when it comes to supporting Small Business concerns. Sikorsky performed well against making their goals on their FY14 Initiatives and Industry Targets. DCMA applauds Sikorsky for their efforts in this area of their Small Business Subcontracting Program. However, after thorough review, DCMA has identified a number of areas that need to be improved. Throughout the annotations are made stating recommendations. A summary of those recommendations are listed below. A corrective action plan is required thirty days after the receipt of this form.

   Follow-up of Corrective Actions:

   The following is a recap of the recommendations stated throughout the FY14 DCMA 640 report. It is recommended that Sikorsky address the following:

   • Accuracy of the SSR- ████████████████████████████████████ DCMA was unable to determine if the internal purchases were included in the FY14 SSR. It is recommended that Sikorsky provide assurances that internal purchases are not included in the SSR's.

---

DCMA Form 640 July 2013 revision                    FOR OFFICAL USE ONLY                    Page 18 of 20

Distribution of this document is prohibited outside the Government unless expressly authorized.



**SUPP001157**

- ███████████████████████████████████████████████████████████. It is recommended that the SSR reported to DoD include only dollars attributed to DoD.

- When the SSR was completed, the information was not preserved at the time of submission. As a result, transactions made after that date had an impact on the purchase orders that are a part of the FY14 SSR. Sikorsky was unable to go reproduce a report that displays the dollar amounts reported on the FY14 SSR. It is Recommend that Sikorsky take a snapshot of the Purchase order file the moment that the SSR is completed, so that the SSR can be duplicated.

- ████████████████████████████████████████████████ It is recommended that Sikorsky attribute a DoD prime/subcontract contract number for all dollars counted toward DoD performance goals.

- Allocation Rate versus Indirect Subcontracting- Sikorsky is adhering to the method described in the FY14 CSP. The Allocation rate stated in the SBLO procedural manual differs from the FY14 CSP. ████████████████████████ ███████████████████████████████████████████████████████████████████ The method as stated is not the indirect subcontracting and this formula must be corrected in future Subcontracting Plans.

- ███████████████████████████████████████████████████. It is recommended that the non DoD spend be removed from the DoD allocation rate. █████████████████████████ After review, it was determined that Sikorsky did not follow the instructions provided in their manual. It is recommended that the correct application of the indirect rate be applied to the dollars reported on the SSR or elect not to include indirect subcontracting in your subcontracting plan ███████████████████████████████████████████████ record keeping must be corrected so that correct dollars are reported to each Executive Agency. ████████████████████████████████████████ DCMA recommends that Sikorsky amend the method that it is used to determine indirect subcontracting spend that is applied to the SSR. Additionally, assure that only DoD dollars are reported to DoD.

- ISR Submission for Subcontractors- ███████████████████████████████████████████ ████████████ However the execution of what was stated in the manual and the plan were not carried through. Compliance with this FAR element was not demonstrated. Sikorsky was unable to fully support records of ISR in eSRS as required, by ensuring that their subcontractors who received/receives a subcontract of $650,000 or over submits ISR via eSRS for review and approval of the SBLO. Sikorsky had difficulty locating supporting contract numbers. Therefore DCMA found Sikorsky non-compliant with FAR 52.219-9 (d) (10). DCMA does not find this acceptable. It is recommended that Sikorsky maintain capability to provide supporting documentation to ensure the subcontractors with applicable Small Business Plans are submitting ISRs in accordance with FAR. This finding was also issued as a result of the FY13 review. (Reference Exhibit 1)

- Subcontractor Size- ███████████████████████████████████████████████████████ █████████████████████████████████████████ It is recommended that Sikorsky add the definitions of all small business concerns so that the supplier knows that they are signing and held accountable for, and include the penalty as stated in FAR 52.219-1 to its suppliers. These changes should be a part of the update to form SA1048.

- A Penalty for Misrepresentation-It is recommended that Sikorsky update their manual that addresses penalties for small business concerns misrepresenting their status. Furthermore it is recommended that Sikorsky adopt the definitions listed in FAR part 19 without reference. Contractors should see what they are signing as without having to refer to an additional site. █████████████████████████████████████████████ It is recommended that FAR clause 52.219-1 is used as Sikorsky's small business representation and or update SA1048. Furthermore Sikorsky's procedures mirror what is stated in the FAR by definition and penalty statement. Sikorsky did not demonstrate that Purchase orders include NAICS codes. However Small Business Certifications included the information but there is no cross reference. It is recommended that Sikorsky include NAICS codes on their purchase orders

FOR OFFICAL USE ONLY
Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001491**

- Follow-up on previously issued Corrective Actions- Follow-up, Corrective Action indicated in FY13 Review was that Sikorsky provide supporting documentation to ensure the subcontractors with applicable Small Business Plans are submitting ISRs in accordance with FAR 52.219-9 (d) (10).  There was difficulty tying the purchase order to the contract.  Currently, Sikorsky is working on system improvements to improve this capability ▉▉▉▉▉▉▉▉▉. (Reference Exhibit 1, subcontract number not identified and ISR's not accepted).  Please address this in the FY14 Corrective Action Plan.

---

**4.   EXIT INTERVIEW PARTICIPANTS:**

| Government: | Contractor: |
|---|---|
| 1. Micole Stephens-Mack | 1. Martha Crawford |
| 2. | 2. Keith Richardson |
| 3. | 3. |

---

**5.  REVIEW STATUS:**

Indicate the status of this 640 Review.  Once a review is closed, you'll need to create a new review.

☒ **Open**

☐ **Closed**

---

**6.   NAME of Small Business Specialist:**          **7.   DATE:**

STEPHENS.MICOLE.123043061

Digitally signed by STEPHENS.MICOLE.1230430612
DN: c=US, o=U.S. Government, ou=DoD, ou=PKI, ou=DCMA,
cn=STEPHENS.MICOLE.1230430612
Date: 2015.07.07 16:22:58 -05'00'

SIGNATURE: 2 _____

---

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001492

**Part IV – Comprehensive Subcontracting Plan (CSP) Test**
**Program Applies to CSP Only - If not applicable skip to Part V**

1. Describe the efforts the firm uses to achieve all negotiated initiatives.

██████████████████████████████████████████████. For the first initiative, LM completed all of its main objectives to strengthen

their ██████████████████████████████████████████████████████

   Is the firm making adequate progress to meet all milestones for all negotiated initiatives?
   ☑ YES  ☐ NO

2. **TARGET INDUSTRIES**
   Has the contractor met, or are they on track to meet all selected industry category goals?
   ☑ YES  ☐ NO

   **Describe the method the firm uses to improve performance by small business in the selected industry categories.**

   Lockheed Martin designated two commodity areas in FY 2017: (b) (4)                   and (b) (4)
   These industry categories were selected to increase small business performance and a continuation of FY16; however, higher
   goals were negotiated for FY17. ████████████ goals were exceeded as follows ████████████
                                                   Additionally, Lockheed Martin met their objectives in the CSP to pursue
   new Small Business opportunities fo ████████

   ████████████████████████████████████████████████████

3. List the major programs(s) the firm is monitoring as requested by the customer.

| Program Name | Discuss: | Add/Remove | |
|---|---|---|---|
| GPS, JASSM, SBIRS, C-130J (AF/Navy), F-22 | | ☐ Add | ☐ Remove |
| FAST, AEHF, DESPII, F2AST, JAGM, THAAD | | ☐ Add | ☐ Remove |
| AEGIS BMD AWS (Navy/MDA), Target & Counterm | | ☐ Add | ☐ Remove |
| C2BMC, H-60 R&S, F-35 JSF | | ☐ Add | ☐ Remove |

4. Did the firm fully comply with the request to provide program specific information as
   requested by the customer?     ☑ YES  ☐ NO

5. **PERFORM INTERIM ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN**
   Indicate by analysis and contractor concurrence, one or more of the plan's goals may not be
   attained by end of performance.

   Performance towards goals as of mid-year

   |  | SB | SDB | WOSB | HUBZONE | VOSB | SDVOSB |
   |---|---|---|---|---|---|---|
   | Negotiated | (b) (4) | | | | | |
   | Mid-Year | | | | | | |

   As of end of Q2, LM's is exceeding all of its goals. (b) (4)
   ████████████████████████████████████. The mid-year assessment shows no difficulties in meeting
   and exceeding its negotiated FY17 subcontracting goals.

LMC0000688
MSJ002025

## Part IV – Comprehensive Subcontracting Plan (CSP) Test
## Program Applies to CSP Only - If not applicable skip to Part V

**1.  Describe the efforts the firm uses to achieve all negotiated initiatives.**

initiative was the award of 14 purchase orders with an aggregated value of $227,945,067 to current and past protégés and implemented a one-year MP agreement with Alro Manufacturing Co. (WOSB, VOSB). Further, Lockheed Martin developed an internal Mentor Protégé Strategy to assist small business suppliers with core competencies. Lockheed Martin also provided bi-monthly meetings as a forum for education and exchange of information with the Mentor Protege team. Their third initiative greatest accomplishment was the identification of ten new for SDB,HUBZone and SDVOSB search  to include Disabled Veteran Business Alliance and Hawaii SBDC. All negotiated initiatives goals and milestones were met and exceeded.

**Is the firm making adequate progress to meet all milestones for all negotiated initiatives?**
**✓ YES ☐ NO**

**2. TARGET INDUSTRIES**
**Has the contractor met, or are they on track to meet all selected industry category goals?**
**✓ YES ☐ NO**

**Describe the method the firm uses to improve performance by small business in the selected industry categories.**

Lockheed Martin designated two commodity areas in FY 2017: (b) (4)                    and (b) (4)
These industry categories were selected to increase small business performance and a continuation of FY16; however, higher goals were negotiated for FY17                    s goals were exceeded as follows
                    ). Additionally, Lockheed Martin met their objectives in the CSP to pursue
new Small Business opportunities for

**3. List the major programs(s) the firm is monitoring as requested by the customer.**

| Program Name | Discuss: | Add/Remove | |
|---|---|---|---|
| GPS, JASSM, SBIRS, C-130J (AF/Navy), F-22 | | Add | Remove |
| FAST, AEHF, DESPII, F2AST, JAGM, THAAD | | Add | Remove |
| AEGIS BMD AWS (Navy/MDA), Target & Counterm | | Add | Remove |
| C2BMC, H-60 R&S, F-35 JSF | | Add | Remove |

**4. Did the firm fully comply with the request to provide program specific information as requested by the customer?    ✓ YES ☐ NO**

**5. PERFORM INTERIM ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN**
**Indicate by analysis and contractor concurrence, one or more of the plan's goals may not be attained by end of performance.**

Performance towards goals as of mid-year

|  | SB | SDB | WOSB | HUBZONE | VOSB | SDVOSB |
|---|---|---|---|---|---|---|
| Negotiated (b) (4) | | | | | | |
| Mid-Year | | | | | | |

As of end of Q2, LM's is exceeding all of its goals (b) (4)
(b) (4)
(b) (4)                    he mid-year assessment shows no difficulties in meeting
and exceeding its negotiated FY17 subcontracting goals.

LMC0000688-A
MSJ002026

**SUPP000383**

| Part IV – Comprehensive Subcontracting Plan (CSP) Test |
| Program Applies to CSP Only - If not applicable skip to Part V |

1.  **Describe the efforts the firm uses to achieve all negotiated initiatives.**



their                                    For the first initiative, LM completed all of its main objectives to strengthen

   **Is the firm making adequate progress to meet all milestones for all negotiated initiatives?**
   ✓ **YES**   ☐ **NO**

2. **TARGET INDUSTRIES**
   **Has the contractor met, or are they on track to meet all selected industry category goals?**
   ✓ **YES**   ☐ **NO**

   **Describe the method the firm uses to improve performance by small business in the selected industry categories.**

   s goals were exceeded as follows

3. **List the major programs(s) the firm is monitoring as requested by the customer.**

| Program Name | Discuss: | Add/Remove | |
|---|---|---|---|
| GPS, JASSM, SBIRS, C-130J (AF/Navy), F-22 | | ☐ Add | ☐ Remove |
| FAST, AEHF, DESPII, F2AST, JAGM, THAAD | | ☐ Add | ☐ Remove |
| AEGIS BMD AWS (Navy/MDA), Target & Counterm | | ☐ Add | ☐ Remove |
| C2BMC, H-60 R&S, F-35 JSF | | ☐ Add | ☐ Remove |

4. **Did the firm fully comply with the request to provide program specific information as requested by the customer?** ✓ **YES** ☐ **NO**

5. **PERFORM INTERIM ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN**
   **Indicate by analysis and contractor concurrence, one or more of the plan's goals may not be attained by end of performance.**

   Performance towards goals as of mid-year

   |  | SB | SDB | WOSB | HUBZONE | VOSB | SDVOSB |
   |---|---|---|---|---|---|---|
   | Negotiated | (b) (4) | | | | | |
   | Mid-Year | | | | | | |

   As of end of Q2, LM's is exceeding all of its goals. (b) (4)
                                                    The mid-year assessment shows no difficulties in meeting
   and exceeding its negotiated FY17 subcontracting goals.

**LMC0000688-B
MSJ002027**

## Part IV – Comprehensive Subcontracting Plan (CSP) Test
### Program Applies to CSP Only - If not applicable skip to Part V

**1. Describe the efforts the firm uses to achieve all negotiated initiatives.**

▮▮▮▮▮▮▮▮▮▮▮ . For the first initiative, LM completed all of its main objectives to strengthen

their ▮▮▮▮▮▮▮ ▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Is the firm making adequate progress to meet all milestones for all negotiated initiatives?
✓ YES ☐ NO

**2. TARGET INDUSTRIES**
Has the contractor met, or are they on track to meet all selected industry category goals?
✓ YES ☐ NO

Describe the method the firm uses to improve performance by small business in the selected industry categories.

▮▮▮▮▮▮ goals were exceeded as follows ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮ Overall, LM efforts performed to increase Small Business utilization for both target commodities are exceptional.

**3. List the major programs(s) the firm is monitoring as requested by the customer.**

| Program Name | Discuss: | Add/Remove | |
|---|---|---|---|
| GPS, JASSM, SBIRS, C-130J (AF/Navy), F-22 | | ☐ Add | ☐ Remove |
| FAST, AEHF, DESPII, F2AST, JAGM, THAAD | | ☐ Add | ☐ Remove |
| AEGIS BMD AWS (Navy/MDA), Target & Counterm | | ☐ Add | ☐ Remove |
| C2BMC, H-60 R&S, F-35 JSF | | ☐ Add | ☐ Remove |

**4. Did the firm fully comply with the request to provide program specific information as requested by the customer?**    ✓ YES ☐ NO

**5. PERFORM INTERIM ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN**
Indicate by analysis and contractor concurrence, one or more of the plan's goals may not be attained by end of performance.

Performance towards goals as of mid-year



|  | SB | SDB | WOSB | HUBZONE | VOSB | SDVOSB |
Negotiated (b) (4)
Mid-Year

As of end of Q2, LM's is exceeding all of its goals. (b) (4)
(b) (4)
(b) (4) The mid-year assessment shows no difficulties in meeting
and exceeding its negotiated FY17 subcontracting goals.

| COMPREHENSIVE PLAN | Goals May Not Be Met – Check Box(es) where goals may not be met | | | | | | Demonstrated Good Faith Efforts |
|---|---|---|---|---|---|---|---|
| | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | |
| Midyear SSR Date Range: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☑ Yes  ☐ No |

**Recommended Action:**

Contractor is on target in meeting negotiated SB subcontracting goals for FY17. No remedy needed at this time.

## 6. PERFORM FINAL ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN

| COMPREHENSIVE PLAN | All Goals Were Met | Goals Not Met – Check Box(es) | | | | | | Demonstrated Good Faith Efforts |
|---|---|---|---|---|---|---|---|---|
| | | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | |
| Year End SSR Date Range: | ☑ Yes  ☐ No | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ YES  ☐ No |

**Recommended Action:**

Performance towards goals as of end-year FY17

|  | SB | SDB | WOSB | HUBZONE | VOSB | SDVOSB |
|---|---|---|---|---|---|---|
| Negotiated | (b) (4) ██████████████████████████ |
| End-Year | |

As of end of Q4, Lockheed Martin exceeded all of its goals.

## Part V – Program Rating Determination

The DCMA Small Business Programs Compliance rating scale below is a modified version of FAR 42.1503-Contractor Performance Information, Procedures, and Table 42-2—Evaluation Ratings Definitions.

**Evaluation Ratings Definitions (for the Small Business Subcontracting Evaluation Factor, when FAR clause 52.219-9 is used).**

| Rating | Definition | Note |
|---|---|---|
| ☑ Exceptional | Performance meets Very Good rating and exceeds many subcontracting program elements to the Government's benefit. There should have been NO weaknesses identified. Identify multiple significant events that were exceptional and state how they were benefits to the Government. | To justify an Exceptional rating, identify multiple documented successes that exceed the subcontracting plan requirements. State how they were a benefit to small business utilization. An Exceptional rating signifies that the company has an exemplary program or practices that could be used as a model by other contractors in similar industries. There is no action taken or planned action to be taken for compliance with |

LMC0000689
MSJ002029

# EXHIBIT E-1

## DEFENSE CONTRACT MANAGEMENT AGENCY (DCMA)
## REVIEW OF CONTRACTOR'S COMPREHENSIVE SUBCONTRACTING PROGRAM

| PART I – GENERAL INFORMATION |
|---|

| | |
|---|---|
| 1. CONTRACTOR:<br>Name: Sikorsky Aircraft Corporation (SAC)<br>Address 1: 6900 Main Street<br>Address 2:<br>City/State/Zip: Stratford, CT 06615<br>CAGE: 78286          DUNS: 83-555-1474 | 1.a. SMALL BUSINESS LIAISON OFFICER (SBLO)<br>Name: Francisco Vasquez<br>Phone: (b) (6)          FAX: (b) (6)<br>E-mail: (b) (6)<br>1.b. ALTERNATE SMALL BUSINESS LIAISON OFFICER<br>Name:<br>Phone:          FAX:<br>E-mail |
| 2. PROGRAM MANAGER, COMPREHENSIVE PROGRAM<br><br>Name: Judy A. Collier<br>Phone: (b) (6)          FAX:<br>E-mail: (b) (6) | 3. GROUP CHIEF, COMPREHENSIVE PROGRAM PROGRAM<br>Name: Margarette Trimble-Williams<br>Phone: (b) (6)          FAX: (b) (6)<br>E-mail: (b) (6) |
| 4. SMALL BUSINESS ADMINISTRATION (SBA) COMMERCIAL MARKETING REPRESENTATIVE (CMR)<br>Name: Sandy Liu<br>Phone: (b) (6)          FAX: (b) (6)<br>E-mail: (b) (6) | 5. ADMINISTRATIVE CONTRACTING OFFICER<br>Name: Kimberly Gaskins<br>Phone: (b) (6)          FAX:<br>E-mail (b) (6) |

DCMA/SMALL BUSINESS ADMINISTRATION (SBA), JOINT REVIEW:
☐ Yes    ☒ No IF NOT, WHY NOT: Virtual Review

Review setting:  on-site review  ☐   virtual review ☒

| 6. PERIOD COVERED BY THIS REVIEW:<br>6.a.From: 1 October 2012 | 7.a. DATE OF THIS REVIEW:<br>Feb. 4-6, 2014<br>7.b. TYPE OF REVIEW:<br>Virtual Review | 8.a. DATE OF LAST REVIEW DATA:<br>25 January, 2013<br>8.b. TYPE OF LAST REVIEW DATA<br>Site Review |
|---|---|---|
| 6.b. To: 30 September 2013 | 7.c. RATING OF THIS REVIEW<br>Outstanding | 8.c. RATING OF LAST REVIEW DATA:<br>Highly Successful |
| | 7.d. RISK OF THIS REVIEW:<br>Moderate | 8.d. RISK OF LAST REVIEW DATA<br>Moderate |

9. DOD RATIOS:
   a. Total Annual Company Sales: ▮

   b. Total dollar value of contracts that are with DoD (including those without plans): ▮

10. TYPE OF SUBCONTRACT PLAN(S):

☐ Individual Plan(s): Number of plans:

☐ Commercial Plan: Approving authority:          Period Covered From:          Period Covered To:

☒ Comprehensive Plan: Approving authority: Margarette Trimble-Williams Period Covered From: 1Oct12 Period Covered To: 30Sep13

☐ Master Plan: Approving authority:          Period Covered From:          Period Covered To:

☐ Other: Specify Type

## PART II – CONTRACTOR'S COMPREHENSIVE SUBCONTRACTING PERFORMANCE

DCMA Form 640 Nov. 2013 revision    FOR OFFICAL USE ONLY    Page 1 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001587

## SUBCONTRACTING PERFORMANCE FACTORS
*Compliance with FAR requirements in this part establish the basic requirements for an acceptable rating*

1. OVERALL SUBCONTRACTING PERFORMANCE – SUMMARY SUBCONTRACTING REPORT (SSR) SUBMISSION (FAR 52-219-9(d) (1), (2) & (10) (iii) & (iv)

    a. WERE SSR REPORTS SUBMITTED IN ACCORDANCE WITH FAR REQUIREMENTS AND SSR INSTRUCTIONS?
    ☒ YES ☐ NO. Identify deficiencies: SAC submitted on time for October 2013, however due to verification issues with their internal purchasing system that separated the report it was resubmitted in January 2014.

    b. VERIFY ACCURACY OF SSR REPORTS: The original SSR was submitted incorrectly in October 2013. This was not discovered until December 2013 after the DCMA Program Manager had accepted the original submission. The root cause was the mechanism to differentiation of small business spend to the appropriate socioeconomic category was not included in an upgrade to Sikorsky's SAP system upgrade for the fourth quarter of FY13. As a result the SSR was rejected and resubmitted to ensure the correct percentages were able to be verified during the 640 Review. The SSR was verified to ensure the goals and percentages were correctly reported.

    c. PERFORM TREND ANALYSIS OF PAST PERFORMANCE AND DISCUSS TRENDS, POSITIVE OR NEGATIVE:

| Fiscal Year | Total Subcontracting Dollars (per the SSR) | | Small Business | | | |
|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | $ Goal | $ Actual | % Goal | % Actual |
| | | | | | | |

| Fiscal Year | Small Disadvantaged Business | | | | Women-Owned Small Business | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| | | | | | | | | |

| Fiscal Year | HBCU/MI | | | | Hub-Zone Businesses | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| | | | | | | | | |

| Fiscal Year | Veteran-Owned Small Business | | | | Service Disabled Veteran-Owned Small Business | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001588

Special Note: The 2010 program reviews determined 2009 SSRs invalid. Thus, they are omitted from the -table above. DCMA will only evaluate the actual achievement reported in 2010, 2011, 2012, and 2013.

SAC has continued to meet and exceed all negotiated small business subcontracting goals since FY12. SAC did meet and exceed their SB goal.

Small Disadvantaged Business (SDB):

SAC has not been able to meet the ▮ DOD minimum subcontracting goal. SAC did meet and exceed their SDB goal.

Women Owned Small Business (WOSB):
SAC continues to exceed the ▮ DoD minimum subcontracting goal. SAC did meet and exceed their WOSB goal.

HUBZone Small Business:

SAC did meet its negotiated HUBZone goal.

Veteran Owned Small Business (VOSB):

SAC did meet and exceed its VOSB goal.

Service Disabled Veteran Owned Small Business (SDVOSB):

SAC did meet and exceed its SDVOSB goal.

2. **FOR COMPREHENSIVE SUBCONTRACTING PLANS ONLY INITIATIVES:**

   a. Describe the efforts the firm uses to achieve all negotiated initiatives?   Describe:

FOR OFFICAL USE ONLY
Distribution of this document is prohibited outside the Government unless expressly authorized.
LMC0001589

███████████████████████████████████████████████

███████████████████████████████████████████████
**Sikorsky is on track to meet this goal by year end FY14.**

███████████████████████████████████████████████
**Sikorsky has met this goal.**

███████████████████████████████████████████████
**Sikorsky has met this goal.**

███████████████████████████████████████████████
**Sikorsky has met this goal.**

███████████████████████████████████████████████
**Sikorsky has met this goal.**

Is the firm making adequate progress to meet all milestones for all negotiated initiatives? ☒ Yes ☐ No

    b.   TARGET INDUSTRIES:
       Has the contractor met, or are they on track to meet all selected industry category goals?  ☐ Yes ☒ No

███████████████████████████████████████████████ **Sikorsky has met this goal.**

███████████████████████████████████████████████ **. Sikorsky did not achieve this goal.**

       Describe the method the firm uses to improve performance by small business in the selected industry categories?

███████████████████████████████████████████████ **. However, Sikorsky was unable to achieve this goal.**

    c.   List the major programs (s) the firm is monitoring as requested by the customer.

LMC0001590

Currently, there aren't any customer requests through DCMA for program level reporting.

| Program Name | Discuss: | Add/Remove |
|---|---|---|
|  |  | ☐ Add ☐ Remove |
|  |  | ☐ Add ☐ Remove |
|  |  | ☐ Add ☐ Remove |
|  |  | ☐ Add ☐ Remove |

d. Did the firm fully comply with the request to provide program specific information as requested by the customer?
☐ Yes ☒ No Not Applicable

e. PERFORM **INTERIM** ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN (SF 295/SSR).
Indicate by analysis and contractor concurrence, one or more of the plan's goals **may not be** attained by end of performance.

| COMPREHENSIVE PLAN | Goal May Not Be Met – Check Box(es) where goals may not be met | | | | | | Demonstrated Good Faith Effort |
|---|---|---|---|---|---|---|---|
|  | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB |  |
| Midyear SF295/SSR Date Range: Oct 1, 2012 – Mar 31, 2013 | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☒ Yes ☐ No |

███████████████. Sikorsky is currently exceeding its FY13 goals for SB, SDB, WOSBs, VOSBs and SDVOSBs. Sikorsky is below the HUBZone spend goal.

f. PERFORM FINAL ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN (SF 295/SSR).

| COMPREHENSIVE PLAN | All Goals Were Met | Goals Not Met – Check Box(es) | | | | | | Demonstrated Good Faith Effort |
|---|---|---|---|---|---|---|---|---|
|  |  | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB |  |
| Year End SF295/SSR Date Range: Oct 1, 2012 – SEP 30, 2013 | ☒ YES ☐ No | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ YES ☐ No |

Recommended Action:

██████████████. Sikorsky met all of its FY13 goals for SBs, SDBs, WOSBs, HUBZone, VOSBs and SDVOSBs.

**PART III – CONTRACTOR'S COMPREHENSIVE SMALL BUSINESS PROGRAM ADMINISTRATION PROGRAM ADMINISTRATION FACTORS**
*Compliance with FAR requirements in this part establish the basic requirements for an acceptable rating*

**REVIEW OF SMALL BUSINESS PROGRAM (FAR 52.219-9)**

1. ARE THERE WRITTEN PROCEDURES IN PLACE REGARDING SMALL BUSINESS PROGRAM ADMINISTRATION FOR:

a. FAR 52.219-9 (d) (1) Does the firm express goals in terms of percentage of totals planned subcontracting dollars for each small business category, in all plans? ☒ YES ☐ NO   DESCRIBE HERE:

The SAC FY13 Comprehensive Subcontracting Plan (CSP)████████████████████

DCMA Form 640 Nov. 2013 revision    FOR OFFICAL USE ONLY    Page 5 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.
LMC0001591

**SUPP001223**

does comply with FAR 52.219-9 (d)(1).

The SAC SBLO Handbook ███████████████████████████████ does comply with FAR 52.219-9 (d)(1). DCMA finds this be acceptable.

b. FAR 52.219-9 (d) (2) Are there statements of total dollars planned to be subcontracted for each small business category in all plans?  ☒ YES ☐ NO   DESCRIBE HERE:

The SAC FY13 Comprehensive Subcontracting Plan (CSP) ██████████████████████████████ and does comply with FAR 52.219-9 (d) (2).

The SAC SBLO Handbook ████████████████████████████████ and does comply with FAR 52.219-9 (d)(2). DCMA finds this be acceptable.

c. FAR 52.219-9 (d) (3) Is there a description of the principal types of supplies and services to be subcontracted for each small business category?  ☒ YES ☐ NO   DESCRIBE HERE:

DCMA has concluded that the provided support documentation does substantiate compliance with FAR 52.219-9(d)(3). DCMA finds this to be acceptable.

d. FAR 52.219-9 (d) (4) Briefly describe and analyze the methodology used by the firm to develop subcontracting goals. Is the firm adhering to the method described in the plan to develop subcontracting goals?  ☒ YES ☐ NO DESCRIBE HERE:

The SAC SBLO Handbook █████████████ and does comply with FAR 52.219-9 (d)(4). DCMA finds this be acceptable.

e. FAR 52.219-9 (d) (5) Briefly describe and analyze the methodology utilized by the firm to identify small business sources. Is the firm adhering to the method described in the plan to develop small business sources?  ☒ YES ☐ NO DESCRIBE HERE:

FOR OFFICAL USE ONLY

Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001592**

**SUPP001224**



This was documented and provided to the DCMA Program Manager for verification purposes.

. However, it does further expand upon this process with                    which provides an accurate flow-chart of                    .

During the Review the SBLO demonstrated correct and proper usage in identifying a HUBZone via SAM and through the Small Business Dynamic Search Website.

This was seen in the verification of the event log. Sikorsky does comply with FAR 52.219-9 (d) (5). DCMA finds this be acceptable.

f. FAR 52.219-9 (d) (6) Briefly describe and analyze the methodology utilized by the firm to determine and allocate indirect subcontracting dollars for the SF295/SSR (and the SF 294, if applicable). Are they adhering to the policy, and or the method described in the plan to determine indirect costs?  ☒ YES ☐ NO    DESCRIBE HERE:

The SB subcontracting data calculation is consistent with Summary Subcontract Report (SSR) instructions.

This was verified during the review. This is found to be acceptable. Sikorsky does comply with FAR 52.219-9 (d)(6). DCMA finds this be acceptable.

g. FAR 52.219-9 (d) (7) Briefly describe and analyze the small business related duties of the individual who administers the subcontracting program/plan. Are they fulfilling the small business duties as described in the plan? ☒ YES ☐ NO    DESCRIBE HERE:

**FOR OFFICAL USE ONLY**

Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001593**

**SUPP001225**

███████████████████████████████████

███████████████████████████████████

███████████████████████████████████          The DCMA Program Manager examined the extended listing of duties and responsibilities and has found this contractor to be performing their duties at the highest level of competence. Sikorsky does comply with FAR 52.219-9 (d)(7). DCMA finds this be acceptable.

h. FAR 52.219-9 (d) (8) Briefly describe and analyze the efforts by the firm to ensure equitable subcontracting opportunities exist for small businesses.  Is the firm adhering to the method described in the plan to assure equitable subcontracting opportunities exist for small business?  ☐ YES ☐ NO     DESCRIBE HERE:

DCMA has analyzed efforts employed by SAC buyers who are required to use suppliers from its parent company's, United Technologies Companies (UTC), supplier database with emphasis on utilizing UTC ████ suppliers. ████ the document was provided for review to the DCMA Program Manager. ████████████████████████████████████████ . These were found to be acceptable as evidenced by the examples in Exhibit 1. Sikorsky does comply with FAR 52.219-9 (d)(8).DCMA finds this be acceptable.

i. FAR 52.219-9 (d) (9) Briefly describe and analyze the methodology utilized by the firm for maintaining records of purchases over $650,000, ($1.5M for construction) with large businesses that require subcontracting plans. Is the firm adhering to the method described in the plan?   ☒ YES ☐ NO     DESCRIBE HERE:

██████████████████████████████████ Evidence that SAC is appropriately maintaining records are recorded on the Exhibit 1 of this report.

██████████████████████████████████

A sample of "flow-down" compliance with FAR 52.219-9 clause was requested for Large Business awarded purchase orders over $650,000. A sample size of 9 was selected for review of the compliance flow-down. All subcontracting plans were found to be acceptable. Sikorsky complies with FAR 52.219-9 (d) (9). DCMA found this to be acceptable.

j. FAR 52.219-9 (d) (10) Does the firm cooperate in studies or surveys as may be required, submit periodic reports to determine extent of compliance to plans.  Submit ISR, Subcontracting Report for Individual Contracts, and/or SSR, Summary Subcontract Report, in accordance with 52.219-9, and ensure that its subcontractors agree to submit ISR and SSR.   ☐ YES ☒ NO     DESCRIBE HERE:

The original SSR was submitted incorrectly in October 2013. This was not discovered until December 2013 after the DCMA Program Manager had accepted the original submission. The root cause was the mechanism to differentiate the small business spend to the appropriate socioeconomic category was not included in an upgrade to Sikorsky SAP system upgrade for the fourth quarter of FY13. As a result the SSR was rejected and

---

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 8 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001594

resubmitted to ensure the correct percentages were able to be verified during the 640 Review. The SSR was verified to ensure the goals and percentages were correctly reported. Sikorsky provided the DCMA Program Manager a summary of the incident including a corrective action that testing will be verified with process owner to ensure that this will not be a reoccurring problem. There was no NASA for FY 13 subcontracting for ISR Submittal.

SAC has submitted the SSR as required by FAR 52.219-9 (d)(1), and ensures that their subcontractors who received/receives a subcontract $500,000, $550,000 or $650,000 or over submits ISR via eSRS for review and approval of the SBLO (detailed in Part III, 1.j.). ISRs for the applicable subcontractor were requested from Sikorsky by the DCMA Program Manager.

In addition to flowing down 52.219-9 in the Sikorsky Term and Conditions comply with the instructions.  The supporting ISRs were not provided for any of the Small Business Plans in exhibit 1.

Sikorsky is not in compliance with FAR 52.219-9 (d) (10). **DCMA does not find this acceptable.**  It is recommended that Sikorsky be able to provide supporting documentation to ensure the subcontractors with applicable Small Business Plans are submitting ISRs in accordance with FAR 52.219-9 (d) (10).  Please see the corrective action in Part V Summary and Recommendations.

k.  FAR 52.219-9 (d) (11) (i) Briefly describe and analyze the Source lists (e.g. CCR), guides, and other data the firm uses to identify small businesses.  Is the firm adhering to the method described in the plan?      ☒ YES ☐ NO
DESCRIBE HERE:



. During the review the SBLO was able to demonstrate the ability to navigate www.sam.gov, Small Business Dynamic Search in addition to Sikorsky's internal data base SA8068 Supplier Information Forms. Sikorsky does comply with FAR 52.219-9 (d)(11)(i). DCMA finds this be acceptable.

l.  FAR 52.219-9 (d) (11) (ii) List organizations that are contacted by the firm in an attempt to locate sources that are small businesses.  Is the firm utilizing the list of organizations described in the plan? ☒ YES ☐ NO   DESCRIBE HERE:



DCMA Form 640 Nov. 2013 revision                    FOR OFFICAL USE ONLY                    Page 9 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001595

**SUPP001227**

the information that is provided in the FY13 CSP. During the 640 review Sikorsky was able to demonstrate to the Program Manager they are effective utilizing these sources as evidenced by meeting all of their goals and by providing a sample exercise to lookup vendors, and verification of attendance at several of the events of the ███████████████████████████████. Sikorsky does comply with FAR 52.219-9 (d)(11)(ii). DCMA finds this be acceptable.

m. FAR 52.219-9 (d) (11) (iii) Briefly describe and analyze the methodology utilized by the firm for maintaining records of purchases over $150,000.   Are they adhering to the method described in the plan?  ☒ YES ☐ NO
DESCRIBE HERE:

The PUR02-02-004 purchasing guidance procedure was provided to the DCMA Program Manager for review. Evidence that SAC is appropriately maintaining records are recorded on the Exhibit 1 of this report. Sikorsky complies with FAR 52.219-9 (d) (11)(iii). DCMA finds this to be acceptable.

n.  FAR 52.219-9 (d) (11) (iv) Briefly describe and analyze the records the firm maintains to document outreach efforts with trade associations business development organizations, conferences, trade fairs, and veteran service organizations, to locate small businesses.   Is the firm maintaining records as described in the plan?  ☒ YES ☐ NO
DESCRIBE HERE:

During the review a calendar of Small Events were provided to the Program Manager in addition to a list of attendees. Attendance records were verified by the DCMA Program Manager and found to be acceptable. It was evident by the attendance records that the SBLO was utilizing ██████████████████████.

. Sikorsky does comply with FAR 52.219-9 (d)(11). DCMA finds this be acceptable.

o. FAR 52.219-9 (d) (11) (v) Briefly describe and analyze the records the firm maintains to document internal guidance and encouragement to buyers through  (A) workshops, seminars, training, etc. and (B) monitoring performance to evaluate compliance with program requirements.   Are they maintaining records as described in the plan?   ☒ YES ☐ NO
DESCRIBE HERE:

A copy of the training was provided to the DCMA Program Manager for review. The training was found to be complete and accurate to address the buyer's role in the Small Business and Purchasing process.

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY                    Page 10 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001596

confirmed by the SBLO and verified by the DCMA Program Manager. ████████ This was ████████████████████████████████████████████████████ This results in ████████████████████████████████████████, which is in line with ████████████████████████████████████ and SAC Handbook adequate. Sikorsky is in compliance with FAR 52.219-9(d)(11)(v). DCMA finds this to be acceptable.

p. FAR 52.219-9 (d) (11) (vi) Briefly describe and analyze the methodology the firm uses, on a contract-by-contract basis, to record support award data, including the name, address, and business size of each subcontractor. Contractors having commercial plans need not comply with this requirement. Are they maintaining records as described in the plan?
☒ YES ☐ NO   DESCRIBE HERE:

████████████████████████████████████████████████████████. It should be noted that the system upgrade with the SAP system during the 3rd quarter did have an effect on the SSR submitted in October 2013. During the system upgrade the 4th quarter was not able to accurately differentiate small businesses subcategories which resulted in the miscalculation of the supporting figures in the SSR. During the review validation of HUBZone was demonstrated by the SBLO through www.sam.gov and the Small Business Dynamic System.

Fourteen Sample purchase order were requested and provided for review to verify Small Business categories. All fourteen were found to be correctly categorized. See Exhibit 1. Sikorsky does comply with FAR 52.219-9 (d)(11)(vi). DCMA finds this be acceptable.

q. FAR 52.219-9 (e) (1) Briefly describe and analyze the methodology utilized by the firm to assist small businesses by arranging solicitations, time for the preparation of bids, quantities, specifications, and delivery schedules so as to facilitate the participation by such concerns. Are they adhering to the method described in the plan? ☒ YES ☐ NO
DESCRIBE HERE:

████████████████████████████████████████████████████ However, there were no examples during FY13 for the DCMA Program Manager to review.

████████████████████████████████████████ Sikorsky does comply with FAR 52.219-9 (e)(1). DCMA finds this be acceptable.

DCMA Form 640 Nov. 2013 revision                FOR OFFICAL USE ONLY                Page 11 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.
LMC0001597

SUPP001229

r.  FAR 52.219-9 (e) (2) Briefly describe and analyze the methodology utilized by the firm to provide adequate and timely consideration of small businesses in all "make-or-buy" decisions.    Is the firm adhering to the method described in the plan?  ☒ YES ☐ NO   DESCRIBE HERE:

. In 2013                          did not negatively impact Small Business and                          .  The DCMA program Manager reviewed several examples for verification purposes. DCMA finds this to be in compliance with FAR 52.219-9 (e) (2). DCMA finds this to be acceptable.

s.  FAR 52.219-9 (e) (3) Briefly describe and analyze the methodology utilized by the firm to counsel and discuss subcontracting opportunities with small businesses. Is the firm adhering to the method described in the plan?  ☒ YES ☐ NO   DESCRIBE HERE:

The documents were analyzed and found to be acceptable as drafted. SAC has provided the methodology required to track counseling and discussions of subcontracting opportunities with small businesses. DCMA finds this to be in compliance with FAR 52.219-9 (e) (3). DCMA finds this to be acceptable.

t.  FAR 52.219-9 (e) (4) Briefly describe and analyze the methodology utilized by the firm to provide notice to subcontractors concerning penalties and remedies for misrepresentations of business status as a small business for the purpose of obtaining a subcontract.   Is the firm adhering to the method described in the plan?  ☒ YES ☐ NO   DESCRIBE HERE:

The DCMA Program Manager reviewed the Sikorsky U.S. Government Provisions

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY                Page 12 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001598

and Clauses for Orders under U.S. Government Contracts and a copy of a blank SA1048 for verification purposes.

SAC has provided the methodology required to provide notice to subcontractors concerning penalties and remedies for misrepresentations of business status. Sikorsky is in compliance with FAR 52.219-9(e)(4). DCMA finds this to be acceptable.

u.  FAR 19.702  It is the policy of the United States that its prime contractors establish procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns.   Describe the method utilized by the firm to ensure timely payment of subcontractors.   Has the firm been adhering to this policy?  ☒ YES ☐ NO     DESCRIBE HERE:

The DCMA Program Manager reviewed both polices and found them to be acceptable. Several examples of small business payment were provided for verification purposes. DCMA considers the revised payment options presented in compliance with FAR 19.702. DCMA finds this to be acceptable.

v.  Has the firm adequately addressed all previous Corrective Action Plans?  ☒ YES ☐ NO

No Corrective Action Plan was required as a result of the FY12 640 Review.

2.  COMPLIANCE WITH RECORD KEEPING:

a.  REVIEW A REPRESENTATIVE SAMPLE OF PURCHASE ORDERS AWARDED TO LARGE BUSINESS, INCLUDING PURCHASE ORDERS OVER $650,000. See below.

| SUBCONTRACTING PURCHASE ORDER REVIEW CHECKLIST DCMA FORM 640 EXHIBIT 1 | | | | | | | |
|---|---|---|---|---|---|---|---|
| DCMA FORM 640 EXHIBIT 1 *(for more rows click outside the right side of the row on the form and hit "enter")* | | | | | | | |
| CONTRACTOR: | Sikorsky Aircraft Corporation | | PERIOD COVERED: FY 13 | | 1 October 2012 TO 30 September 2013 | | |
| SAMPLING OF AWARDS TO LARGE BUSINESS OVER $150,000 AND $650,000; AND SAMPLES OF P.O. TO SMALL BUSINESS TO VERIFY CERTIFICATION | | | | | | | |
| SUB-CONTRACTS WITH LARGE BUSINESSES = or > $650,000 | | | | | FAR 52.219-9(d)(9) | | |
| Prime Contract | Date | Vendor Name | $ Amount | Subcontract Number | SB Plan In Place? | ISR Input? | Remarks |

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 13 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001599

| PURCHASE ORDERS/SUB-CONTRACTS TO LARGE BUSINESS = OR > $150,000 | | | | | | FAR 52.219-9(d)(11)(iii) | |
|---|---|---|---|---|---|---|---|
| Size | P.O. # | Date | Vendor Name | $ Amount | Item Procured | Reason Code | Remarks |

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001600

**SUPP001232**

| SAMPLES OF P.O. TO SMALL BUSINESS TO VERIFY CERTIFICATION | | | | | | FAR 52.219-9(e)(4i) | |
|---|---|---|---|---|---|---|---|
| Size | P.O. # | Date | Vendor Name | $ Amount | Item Procured | Sys Shows | Self-Certification Shows |

FOR OFFICAL USE ONLY

Page 15 of 21

Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001601**

**REASON CODES FOR SB/SDB/WOSB/HUBZone/SDVOSB NOT SELECTED/SOLICITED: (1) SOLE SOURCE / (2) SINGLE SOURCE / (3) SOURCE CONTROLLED DRAWING / (4) CUSTOMER DIRECTED / (5) NO KNOWN SB SOURCE / (6) SB SOLICITED, NOT SELECTED**

### PART IV – SUPPLEMENTAL DATA
### VALIDATION OF INFORMATION IN THIS PART MAY BE USED TO JUSTIFY HIGHER RATINGS

1.  HAS A COMPANY-WIDE SB POLICY STATEMENT BEEN ISSUED BY CURRENT SENIOR MANAGEMENT AND DISSEMINATED THROUGHOUT THE COMPANY?

    ☒ YES.  Issued By: ▮▮▮▮▮▮▮▮    Title: ▮▮▮▮▮▮▮▮    Date: ▮▮▮▮▮▮▮▮

    ☐ NO.  COMMENTS:

2.  SBLO APPOINTMENT/AUTHORITY PLACEMENT IN THE ORGANIZATION:

    a. HAS THE SBLO BEEN FORMALLY APPOINTED BY SENIOR LEVEL MANAGEMENT?

    ☒ YES.  Where are the duties and responsibilities defined?

    Mr. Francisco Vasquez has been officially appointed the Division, SBLO since January 10, 2012.

    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    ☐ NO.  COMMENTS:

    b. IS THE SBLO APPOINTED AT AN APPROPRIATE LEVEL TO EFFECTIVELY ADMINISTER THE PROGRAM?

    ☒ YES.  DESCRIBE:

    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    ☐ NO.  COMMENTS

    c. TO WHOM DOES THE SBLO REPORT?  Name: ▮▮▮▮▮▮▮    Title: ▮▮▮▮▮▮▮

    d. SBLO IS A: ☐ Corporate ☒ Division

    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

    e. IS THERE AN ORGANIZATION CHART THAT DISPLAYS THE POSITION OF THE SBLO WITHIN THE ORGANIZATION?

    ☒ YES.    See below.

    ☐ NO.  COMMENTS:

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 16 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001602

## Sikorsky Aircraft Corporation
## Organization Structure



3.  MONITORING SB PROGRAM PERFORMANCE AND REQUIREMENTS:

a.  ARE SENIOR MANAGEMENT AND STAFF BRIEFED REGULARLY ON ACHIEVEMENT AND/OR PROGRAM DEFICIENCIES?

☒ YES.  COMMENTS:


.

☐ NO.  COMMENTS:

b.  WHAT DOES CONTRACTOR DO TO IMPROVE OVERALL PROGRAM PERFORMANCE IF OVERALL PROGRAM GOALS ARE NOT BEING MET? *(Identify any Corrective Action Plan(s) implemented)*

. These allow the responsible stake holder to adapt strategies to mitigate risk in not meeting the goals.

4.  SUPPLEMENTAL INFORMATION

a.  Discuss the firm's use of strategic sourcing teams or other groups within the firm, that may assist the SBLO in the development of business subcontracting sources and the goal setting process.  (If so, define its role in goal development and its role during plan performance).  DESCRIBE:

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 17 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001603**

b.  Discuss any successes the firm has made in subcontracting opportunities, those which were normally awarded to a large business, that have been redirected to a small business.   DESCRIBE:

Sikorsky has made an effort to increase subcontracting opportunities, those which were normally awarded to a large business, that have been redirected to a small business, for example. ███████████████████████████████████████████████████.

Through this action and combination of focusing on increasing subcontracting opportunities to ███████  they were able to increase their subcontracting with this particular vendor ███████

████████████████████████████████████████████████████████████████████████████████████████

          is a continued success story from FY12 where,
████████████████████████████████████████████

c.  Discuss any procurement actions the firm may have reserved for small business.  DESCRIBE:

████████████████████████████████████████████████████

d.  Discuss the firm's use of Corporate, Blanket and Long Term Agreements and how they may affect small business dollars.   DESCRIBE:

████████████████████████████████████████████████████████

e.  Discuss the extent of use and the firm's internal written guidance for credit card purchases.   DESCRIBE:

████████████████████.

f.  Discuss the firm's use of the internet or web-site as tools to advertise its ongoing and future procurement requirements.   DESCRIBE:

████████████████████████████████

g.  Discuss the firm's use of Mentor/Protégé agreements to increase small business subcontracting opportunities.  If the firm is not participating in the Mentor Protégé program, are they considering participating in the program?  DESCRIBE:

████████████████████████████████████████████████████████

h.  Discuss the firm's initiatives/accomplishments made to ensure more small businesses are able to compete in more "high-tech" procurements.   DESCRIBE:

████████████████████████████████

i.  Discuss how the firm monitors its individual subcontracting goals/plans and readjusts its internal focus in achieving goals that may be in doubt of being attained.   DESCRIBE:

Not Applicable to CSP Plan Participates.

J.  Discuss any planned procurement actions, or procurement actions, or procurements addressed specifically within the subcontracting plan that had to be redirected to another business size category.  DESCRIBE:

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 18 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.
LMC0001604

███████████████████████████████████████████

5. NOTEWORTHY ACTIVITIES TO JUSTIFY A HIGHLY SUCCESSFUL OR OUTSTANDING RATING:

   REVIEW AND DISCUSS CONTRACTOR'S ACTIVITIES THAT ARE CONSIDERED NOTEWORTHY TO JUSTIFY A
   HIGHLY SUCCESSFUL OR OUTSTANDING.

6. ADDITIONAL REMARKS.  DESCRIBE IN DETAIL HOW A CONTRACTOR HAS MET THE CRITERIA TO JUSTIFY A
   RATING THAT IS HIGHER THAN ACCEPTABLE.

   - Sikorsky met 6 out 6 goals.
   - Sikorsky exceeded 5 out of 6 goals.
   - SAC has met all of its FY13 negotiated Initiatives
   - SAC met one of its FY13 negotiated Target Industries.
   - ████████████████████████████████████████████████████
   - SAC has implemented new policies that drive the program to have contributory ownership of goals.


Outstanding – Describe how the contractor has had exceptional success with initiatives to assist, promote and utilize small business
(SB), small disadvantaged business (SDB), women-owned small business (WOSB), HUBZone small business, veteran-owned small
business (VOSB), and service-disabled VOSB (SD/VOSB).  Describe how the contractor has an exemplary program that could be
used as a model by other contractors in similar industries.


Highly Successful – Describe how the contractor has had significant success with initiatives to assist, promote, and utilize SB, SDB,
WOSB, HUBZone small business, VOSB, and SD/VOSB.  Describe how the contractor has gone above and beyond the required
elements of the program.  Provide documentation and stories to support such efforts.


## PART V – SUMMARY AND RECOMMENDATIONS

### 1.  PROGRAM RATING:

The following rating criteria should be used to determine the contractor's rating.  Note that the rating criteria are the same as SBA per
the November 12, 2009 DCMA/SBA Memorandum of Understanding.

☒ **Outstanding - Exceeds** the negotiated small business goal and 2 additional category goals on 90% or more of the subcontracting
plans reported for the fiscal year under review. Has exceptional success with numerous specific initiatives to assist, promote and
utilize Small Business (SB), Small Disadvantaged Business (SDB), Women-Owned Small Business (WOSB), HUBZone Small
Business (HUBZone), Veteran-Owned Small Business (VOSB), Service-Disabled Veteran Own Small Business (SDVQSB); Alaska
Native Corporations (ANC's) and Tribal Native American concerns, except in instances where the Large Prime Contractor (LPC) can
provide a reason the Commercial Marketing Representative (CMR) or DCMA representative deems justifiable as to why the LPC has
not had exceptional success in those categories.

☐ **Highly Successful - Met or exceeded** the negotiated goals in three small business categories on 80% of the subcontracting plans
reported for the fiscal year under review. Has moderate success with some initiatives to assist, promote and utilize SB, SDB, WOSB,
HUBZone, VOSB, and SDVOSB as described above in the criteria for a rating of Outstanding. Demonstrates focused efforts to go

Distribution of this document is prohibited outside the Government unless expressly authorized.

above and beyond the required elements of the subcontracting program and provides documentation of achievements and success stories to support such efforts. The contractor demonstrates existing policies and process that ensures 85% on-time and accurate submission of required reports in eSRS as a prime contractor and 80% on-time submission of reports from their subcontractors.

☐ **Acceptable – Always** demonstrates a good-faith effort to meet **all** of its goals on subcontracting plans reported for the fiscal year being reviewed, but falls short of thresholds to receive a rating of Highly Successful. Provides reasonable and supportable explanations why certain goals could not be achieved. Demonstrates compliance with the mandatory elements of their subcontracting plans and implementing regulations. ISRs and SSRs submitted accurately within 30 days after the end of applicable reporting periods 70% of the time.

☐ **Marginal - Deficient** in meeting key subcontracting plan elements or the contractor has failed to satisfy one or more requirements of a corrective action plan from the prior review. Fail to comply with the submission requirements in eSRS on the majority of their contracts with subcontracting plans and no evidence of flow-down to applicable subcontractors. There is evidence of corporate and/or senior management commitment to bring their subcontracting program to an acceptable level and has demonstrated a commitment to apply the necessary resources to do so. A corrective action plan is required, and the Administrative Contracting Officer(s) (ACO) and SBA CMR(s) must be notified.

☐ **Unsatisfactory – Noncompliant** with the contractual requirements of DFARS and FAR 52.219-8 and 52.219-9. Contractor's management shows little interest in bringing its program to an acceptable level or is generally uncooperative. For example, recommendations made by SBA or DCMA on previous reviews have never been implemented. A corrective action plan is required, and the ACO(s) and SBA CMR(s) must be notified

---

**2. RISK RATING:**

The following rating criteria should be used to determine the contractor's rating.

☐ **High -** High Risk is assigned when the contractor is not meeting contract negotiated and DoD goals.

☒ **Moderate -** Moderate Risk may be assigned when the contractor is meeting contract negotiated goals but not DoD goals.

☐ **Low –** Low Risk may be assigned when the contractor is meeting contract negotiated and DoD goals.

3. RATINGS SUMMARY, RECOMMENDATIONS, AND FOLLOW-UP OF CORRECTIVE ACTIONS(S):

1 "Negotiated goals" refers to the dollar and percentage goals in the approved subcontracting plan. (For rating purposes, the reviewer will compare the percentage goals to the percentage achievements.)
2 Examples of such initiatives include, but are not limited to, participating in a Mentor-Protégé program, performing compliance reviews at subcontractors' sites, administering a buyer incentive program, participating in trade fairs, promoting registration in the CCR, and contracting suppliers to encourage SDB and HUBZone certification.
3 For example, recommendations made by SBA or DCMA on previous reviews have never been implemented.

DISCUSS:
   Risk Rating:

   Sikorsky's FY13 program risk rating is "Moderate." The "moderate" rating is assigned when a contractor is meeting negotiated goals but not DOD goals.

   Performance Rating:

   Sikorsky's Small Business Program Performance is rated "Outstanding" for FY13.


   Follow-up of Corrective Actions:

   It is recommended that Sikorsky be able to provide supporting documentation to ensure the subcontractors with applicable Small Business Plans are submitting ISRs in accordance with FAR 52.219-9 (d) (10).

---

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 20 of 21
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001606

**SUPP001238**

**4. EXIT INTERVIEW PARTICIPANTS:**

| Government: | Contractor: |
|---|---|
| 1. Judy Collier | 1. Francisco Vasquez, SBLO |
| 2. Kimberly Gaskins, DACO | 2. Amy Johnson, Director Supply Chain Management |
| 3. Alexander Yip, Cost Monitor | 3. Keith Richardson, Manager Business Process Management |
| | 4. John Palumbo, Vice President of Product Centers |

**5. REVIEW STATUS:**

Indicate the status of this 640 Review. Once a review is closed, you'll need to create a new review.

☐ **Open**

☒ **Closed**

**6. NAME of SMALL BUSINESS SPECIALIST:**          **7. DATE:**

SIGNATURE: _____     03/07/2014
                    **Judy A. Collier**

Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001607**

# EXHIBIT E-2

SUPP000435

## DEFENSE CONTRACT MANAGEMENT AGENCY (DCMA)
## REVIEW OF CONTRACTOR'S COMPREHENSIVE SUBCONTRACTING PROGRAM

### PART I – GENERAL INFORMATION

| 1. CONTRACTOR:<br>Name: Lockheed Martin Missiles Fire Control<br>Address 1:1701 W Marshall Dr.<br>Address 2:<br>City/State/Zip: Grand Prairie, TX<br>CAGE: 64059(Grand Prairie)/04939(Orlando) DUNS: 794571448/196189385 | 1.a. SMALL BUSINESS LIAISON OFFICER (SBLO)<br>Name: Suzanne Raheb<br>Phone: (b) (6)    FAX: 407-625-6513<br>E-mail: (b) (6)<br>1.b. ALTERNATE SMALL BUSINESS LIAISON OFFICER (SBLO)<br>Name:<br>Phone:    FAX:<br>E-mail: |
|---|---|
| 2. PROGRAM MANAGER, COMPREHENSIVE SUBCONTRACTING PROGRAM<br>Name: Luz M. Vasquez<br>Phone: (b) (6)    FAX:<br>E-mail: (b) (6) | 3. DIVISION CHIEF, COMPREHENSIVE SUBCONTRACTING PROGRAM<br>Name: Margarette Trimble-Williams<br>Phone: (b) (6)    FAX: (310) 900-6025<br>E-mail: (b) (6) |
| 4. SMALL BUSINESS ADMINISTRATION (SBA) COMMERCIAL MARKETING REPRESENTATIVE (CMR) http://www.sba.gov/GC/cmr.html<br>Name: Sophia Chou<br>Phone: (b) (6)    FAX: (202) 481-4850<br>E-mail: (b) (6) | 5. ADMINISTRATIVE CONTRACTING OFFICER<br>Name: Mary Margaret Robinson<br>Phone: (b) (6)    FAX:<br>E-mail: (b) (6) |

DCMA/SMALL BUSINESS ADMINISTRATION (SBA), JOINT REVIEW:
☒ Yes    ☐ No IF NOT, WHY NOT:

Review setting:    on-site review ☒    virtual review ☐

| 6. PERIOD COVERED BY THIS REVIEW:<br><br>6.a.From: 1 October 2013 | 7.a. DATE OF THIS REVIEW:<br>May 18-20, 2015<br>7.b. TYPE OF REVIEW:<br>Full Program | 8.a. DATE OF LAST REVIEW DATA:<br>February 25-27, 2014<br>8.b. TYPE OF LAST REVIEW DATA<br>Full Program |
|---|---|---|
| 6.b. To: 30 September 2014 | 7.c. RATING OF THIS REVIEW DATA:<br>Acceptable | 8 c. RATING OF LAST REVIEW DATA:<br>Outstanding |
| | 7.d. RISK OF THIS REVIEW DATA:<br>Moderate | 8.d. RISK OF LAST REVIEW DATA<br>Moderate |

9. DOD RATIOS:
   a. Total Annual Company Sales: $45,600,000,000

   b. Total dollar value of contracts that are with DoD (including those without plans): $25Billion in DoD orders, $27 Billion in DoD sales and $43Billion in DoD Backlog

10. TYPE OF SUBCONTRACT PLAN(S):

☐ Individual Plan(s):  Number of plans:

☐ Commercial Plan:  Approving authority:    Period Covered From:    Period Covered To:

☒ Comprehensive Plan:  Approving authority: Margarette Trimble-Williams    Period Covered From: 1 Oct 13    Period Covered To: 30 Sept 14

☐ Master Plan:  Approving authority:    Period Covered From:    Period Covered To:

☐ Other: Specify Type

| DCMA Form 640 Nov. 2013 revision | FOR OFFICAL USE ONLY | Page 1 of 24 |
|---|---|---|

Distribution of this document is prohibited outside the Government unless expressly authorized.

---

## PART II – CONTRACTOR'S COMPREHENSIVE SUBCONTRACTING PERFORMANCE
### SUBCONTRACTING PERFORMANCE FACTORS
*Compliance with FAR requirements in this part establish the basic requirements for an acceptable rating*

---

1. OVERALL SUBCONTRACTING PERFORMANCE – SUMMARY SUBCONTRACTING REPORT (SSR) SUBMISSION (FAR 52-219-9(d) (1), (2) & (10) (iii) & (iv)

a. WERE SSR REPORTS SUBMITTED IN ACCORDANCE WITH FAR REQUIREMENTS AND SSR INSTRUCTIONS?
☒ YES   ☐ NO.   Identify deficiencies:

The SSR report was submitted on time and in accordance with FAR requirements. This business unit uses the P2P Electronic System for purchase order retention and documentation. The system captures suppliers by size, purchase order dollars and other factors.

b. VERIFY ACCURACY OF SSR REPORTS:

As a result of this review, the FY14 SSR report is considered not accurate. The purchase order sampled noted various errors with the supplier's size classification. The DCMA reviewer informed LM that the FY14 SSR will be rejected in the system so they can made necessary corrections to disallow the total dollars reported into the erroneous categories for FY14. LM was proactive on gathering the total dollars in question and will correct the SSR accordingly.

Additionally, it was found that LM suppliers are not validating their size at time of award and the contractor relies on their last submission into their own electronic system. ███████████████████████; however, the only electronic system allowed to be used by regulation is SAM. The regulations do not allow the contractor to rely on their own electronic system for size purposes at this time.

Other references:

   "13 CFR 121.411 What are the size procedures for SBA's Section 8(d) Subcontracting Program?
*(a) Prime contractors may rely on the information contained in the System for Award Management (SAM) (or any successor system or equivalent database maintained or sanctioned by SBA) as an accurate representation of a concern's size and ownership characteristics for purposes of maintaining a small business source list.
(b) Even if a concern is on a small business source list, it must still qualify and self-certify as a small business at the time it submits its offer as a section 8(d) subcontractor. Prime contractors may accept a subcontractor's electronic self-certifications as to size, if the subcontract contains a clause which provides that the subcontractor verifies by submission of the offer that the size or socioeconomic representations and certifications made in SAM (or any successor system) are current, accurate and complete as of the date of the offer for the subcontract. Prime contractors or subcontractors may not require the use of SAM (or any successor system) for purposes of representing size or socioeconomic status in connection with a subcontract.
 It is our responsibility under  13CFR125.3(f)(2)(i) to evaluate whether the prime contractor assigned the proper NAICS code and corresponding size standard to a subcontract, and a review of whether small business subcontractors qualify for the size or socioeconomic status claimed".*

   " *13CFR125.3(c)(v) The contractor must assign each subcontract the NAICS code and corresponding size standard that best describes the principal purpose of the subcontract (see §121.410). The prime contractor may rely on subcontractor self-certifications made in SAM (or any successor system), if the subcontract contains a clause which provides that the subcontractor verifies by submission of the offer that the size or socioeconomic representations and certifications in SAM (or any successor system) are current, accurate and complete as of the date of the offer for the subcontract. A prime contractor or subcontractor may not require the use of SAM (or any successor system) for purposes of representing size or socioeconomic status in connection with a subcontract".*

---

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY                    Page 2 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0000753**
**MSJ002082**

**SUPP000437**

c. PERFORM TREND ANALYSIS OF PAST PERFORMANCE (*Last 5 years, if available*) AND DISCUSS TRENDS, POSITIVE OR NEGATIVE: 6 years data is presented to expand trend
(To copy over data use Paste "overwrite cells" option)

| Fiscal Year | Total Subcontracting Dollars (per the SSR) | | Small Business | | | |
|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | $ Goal | $ Actual | % Goal | % Actual |
| FY09 | $14,037,397,703 | $12,908,423,771 | $3,647,703,940 | $3,269,320,439 | 26.0% | 25.3% |
| FY10 | $17,429,732,154 | $15,342,885,627 | $4,010,780,695 | $3,982,899,169 | 23.0% | 26.0% |
| FY11 | $18,688,799,649 | $18,520,382,554 | $3,569,560,733 | $4,261,491,321 | 19.1% | 23.0% |
| FY12 | $17,199,685,096 | $16,989,991,052 | $3,319,539,224 | $4,003,522,849 | 19.3% | 23.6% |
| FY13 | $16,704,423,289 | $16,548,938,868 | $3,107,022,732 | $3,787,130,352 | 18.6% | 22.9% |
| FY14 | $15,074,000,072 | $19,528,707,044 | $2,788,690,013 | $3,353,250,726 | 18.5% | 17.2% |

| Fiscal Year | Small Disadvantaged Business | | | | Women-Owned Small Business | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| FY09 | (b) (4) | | | | | | | |
| FY10 | | | | | | | | |
| FY11 | | | | | | | | |
| FY12 | | | | | | | | |
| FY13 | | | | | | | | |
| FY14 | | | | | | | | |

| Fiscal Year | HBCU/MI | | | | Hub-Zone Businesses | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| FY09 | (b) (4) | | | | | | | |
| FY10 | | | | | | | | |
| FY11 | | | | | | | | |
| FY12 | | | | | | | | |
| FY13 | | | | | | | | |
| FY14 | | | | | | | | |

| Fiscal Year | Veteran-Owned Small Business | | | | Service Disabled Veteran-Owned Small Business | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| FY09 | (b) (4) | | | | | | | |
| FY10 | | | | | | | | |
| FY11 | | | | | | | | |
| FY12 | | | | | | | | |
| FY13 | | | | | | | | |
| FY14 | | | | | | | | |

The total subcontracting dollars reported for FY14 show an increase of $3 Billion dollars from FY13 data. This marks the largest increase in total subcontracting dollars for the past six fiscal years. It also marks LM lowest Small Business performance across all

DCMA Form 640 Nov. 2013 revision

FOR OFFICAL USE ONLY

Distribution of this document is prohibited outside the Government unless expressly authorized.

Page 3 of 24

**LMC0000754**
**MSJ002083**

socio-economic categories for the same period of time. LM FY 14 SB dollar goal was $2.7B and they achieved $3.3B but still missed the percentage goal by 1.3%. This anomaly can be observed when there is an unpredicted increase in the total subcontracting base with the majority of allocations going to large, which is the case seen here with LM. Small Business shows a downward trend. ████████████████████████. A recovery plan was requested by OSD and DCMA to be included in their FY15 CSP plan.

This report also covers LM Missile Fire Control (MFC) business unit SB performance. **(b) (4)** ████████
████████████████████████████████████████████████████████

2. **FOR COMPREHENSIVE SUBCONTRACTING PLANS ONLY INITIATIVES:**

   a. Describe the efforts the firm uses to achieve all negotiated initiatives?   Describe: LM identified three initiatives for FY13. Efforts for each initiative are discussed below. Outreach is the main contributor in achieving the negotiated initiatives.

      1. **Indian Incentive Program: Objective: Submit a minimum of 5 IIP proposals to OSBP office: Complete**

         - Lockheed Martin submitted a total of **32** IIP proposals. LM received listing of approved payment submittals from DoD OSBP IIP Office.

      2. **SnapOn Tools Corporate Agreement: Restrict competition to Small Business only and release RFP to identified SB: Complete**

         - Competed procurement restricted to Small Business and narrowed down from ten to four small businesses of which **(b) (4)** ████████ got awarded the contract. Redirection of spend in process for this follow on contract. Awarded in Feb 2014 with spend of **(b) (4)** ████ as of Sept 2014. This initiative is considered successful and complete.

      3. **Mentor Protégé Program: Identify and submit for two new MP agreements with focus on developing (SDB< HUBZone, and SDVOSB) and two other industries: Complete**

         - LM submitted two proposals: TIME Systems, LLC to the Army on 01/02/2014 and G2 Ops to the Navy.
         - LM held a total of 3 supplier information sessions and multiple chat/webinars.  ROI on suppliers information session a total of **(b) (4)** ████████████████████ Number of suppliers receiving subcontracts **(b)**

      4. **SBIR Program: Identify and add proven SBIR firms to the know Supplier Database to provide new training and engagement opportunities. Report number of SBIR partnerships**

         ████████████████████████████████████████████████
         ████████████████████████████████████████████████
         ████████████████████████████████████████████████

      Is the firm making adequate progress to meet all milestones for all negotiated initiatives? ☒ Yes ☐ No The contractor was extremely successful with all 3 of their initiatives efforts.

   b. TARGET INDUSTRIES:
      Has the contractor met, or are they on track to meet all selected industry category goals?   ☒ Yes ☐ No

      ████████████████████████████████████. The contractor met all the negotiated goals. ████████████
      ████████████████████████████████████████████████
      ████████████████ The contractor efforts to switch spend from large to small are considered a success. ████████
      ████████████████████████

DCMA Form 640 Nov. 2013 revision        FOR OFFICAL USE ONLY        Page 4 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000755
MSJ002084

| | SB Goal % | SB Actual % | SB Goal $ | SB Actual $ |
|---|---|---|---|---|
| FY 2013 | (b) (4) | | | |
| FY 2014 | | | | |

| | SDB Goal % | SDB Actual % | SDB Goal $ | SDB Actual $ |
|---|---|---|---|---|
| FY 2013 | (b) (4) | | | |
| FY 2014 | | | | |

| | VOSB Goal % | VOSB Actual % | VOSB Goal $ | VOSB Actual $ |
|---|---|---|---|---|
| FY 2013 | (b) (4) | | | |
| FY 2104 | | | | |

| | Large Goal % | Large Actual % | Large Goal $ | Large Actual $ |
|---|---|---|---|---|
| FY 2013 | (b) (4) | | | |
| FY 2104 | | | | |

| | Estimated Spend % | Estimated Spend Actual % | Estimated Spend Goal $ | Estimated Spend Actual $ |
|---|---|---|---|---|
| FY 2013 | (b) (4) | | | |
| FY 2104 | | | | |

2. ████████████████████████████████. LM met and exceeded all negotiated goals. ███████████████████ The efforts made to switch spend from large to small were not significant to create a change in favor of SB. ████████████████ however no return on investment ████████████████

| | SB Goal % | SB Actual % | SB Goal $ | SB Actual $ |
|---|---|---|---|---|
| FY 2012 | (b) (4) | | | |
| FY 2013 | | | | |
| FY 2014 | | | | |

| | WOSB Goal % | WOSB Actual % | WOSB Goal $ | WOSB Actual $ |
|---|---|---|---|---|
| FY 2012 | (b) (4) | | | |
| FY 2013 | | | | |
| FY 2014 | | | | |

| | SDB Goal % | SDB Actual % | SDB Goal $ | SDB Actual $ |
|---|---|---|---|---|
| FY 2012 | (b) (4) | | | |
| FY 2013 | | | | |
| FY 2104 | | | | |

| | Large Goal % | Large Actual % | Large Goal $ | Large Actual $ |
|---|---|---|---|---|
| FY 2012 | (b) (4) | | | |
| FY 2013 | | | | |
| FY 2104 | | | | |

| | Estimated Spend Goal % | Estimated Spend Actual % | Estimated Spend Goal $ | Estimated Spend Actual $ |
|---|---|---|---|---|
| FY 2012 | (b) (4) | | | |
| FY 2013 | | | | |
| FY 2104 | | | | |

Describe the method the firm uses to improve performance by small business in the selected industry categories?

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 5 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000756
MSJ002085

SUPP000440

LM continued to utilize the methods as established in their objectives section of their FY14 CSP plan to include Supplier Information Sessions, adding new suppliers to their known supplier database, reviewed procurement spend with large businesses to identify opportunities to switch spend to small, chat sessions, and release of media to create awareness and exposure among buyers and decision makers.

c.   List the major programs (s) the firm is monitoring as requested by the customer.

| Program Name | Discuss: | Add/Remove |
|---|---|---|
| Global Positioning System (GPS) | USAF program / LM Space Systems business unit | ☐ Add ☐ Remove |
| F-22 Raptor Aircraft | USAF program/LM Aeronautics | ☐ Add ☐ Remove |
| Spaced Based Infrared System (SBIRS) | USAF program/LM Space Systems | ☐ Add ☐ Remove |
| Joint Air-to-Surface Standoff Missile (JASSM) | USAF program/LM Electronic Systems | ☐ Add ☐ Remove |
| C-130J (Hercules Aircraft) | USAF program/LM Aeronautics | ☐ Add ☐ Remove |
| C-130J (Hercules Aircraft) | Navy program/LM Aeronautics | ☒ Add ☐ Remove |
| Flexible Acq. Sustainment Tool (FAST) | USAF program/LM Electronics Systems | ☐ Add ☐ Remove |
| Advanced Extra High Frequency (AEHF) | USAF program/ LM Space Systems | ☐ Add ☐ Remove |
| Design Engineering Support Program (DESP II) | USAF program/LM  IS&G | ☐ Add ☐ Remove |
| Terminal High Altitude Air Defense (THAAD) | MDA program/ LM Space Systems | ☐ Add ☐ Remove |
| Aegis Ballistic Missile Defense Program (Aegis BMD AWS) | MDA program/ LM Electronics | ☐ Add ☐ Remove |
| Targets and Countermeasures | MDA program/ LM Space Systems | ☐ Add ☐ Remove |
| Multi Mission Helo-H-60 Romeo & H-60 Sierra (H-60 R&S) | Navy program/ LM Electronics Systems | ☐ Add ☐ Remove |
| F-35 Joint Strike Fighter (JSF) | Navy program/LM Aeronautics. | ☐ Add ☐ Remove |
| Joint Air-to-Ground Missile (JAGM) | Army program/LM Electronic Systems | ☐ Add ☐ Remove |
| Future Flexible Acquisition & Sustainment tool (F2AST) | USAF program/LM Electronic Systems | ☐ Add ☐ Remove |
| Next Generation Aegis Missile (NGAM SM3 blk. IIB) | MDA program/LM Space Systems | ☐ Add ☐ Remove |
| Aegis BMD AWS | Navy program/LM Moorestown | ☒ Add ☐ Remove |
| C2BMC | MDA program | ☒ Add ☐ Remove |

d.   Did the firm fully comply with the request to provide program specific information as requested by the customer?
☒ Yes ☐ No

e.   PERFORM **INTERIM** ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN (SF 295).
    Indicate by analysis and contractor concurrence, one or more of the plan's goals **may not be** attained by end of performance.

| COMPREHENSIVE PLAN | Goal May Not Be Met – Check Box(es) where goals may not be met | | | | | | Demonstrated Good Faith Effort |
|---|---|---|---|---|---|---|---|
| | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | |
| Midyear SF295/SSR  Date Range: 1Oct12-30Mar13 | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ Yes ☐ No |

DCMA Form 640 Nov. 2013 revision

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000757
MSJ002086

Recommended Action:

f.   PERFORM FINAL ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN (SF 295).

| COMPREHENSIVE PLAN | All Goals Were Met | Goals Not Met – Check Box(es) | | | | | | Demonstrated Good Faith Effort |
|---|---|---|---|---|---|---|---|---|
| | | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | |
| Year End SF295/SSR Date Range:1Oct13-30Sep14 | ☐ YES ☒ No | ☒ | ☒ | ☒ | ☐ | ☐ | ☐ | ☒ YES ☐ No |

Recommended Action:

| Lockheed Martin | FY14 CSP Negotiated Goals $$$ | FY14 CSP Negotiated Goals % | FY14 End-Year Achievement Actual $$$ | FY14 End-Year Achievement Actual % |
|---|---|---|---|---|
| SB | | (b) (4) | | |
| LB | | | | |
| Total | | | | |
| SDB | | | | |
| WOSB | | | | |
| HUBZone | | | | |
| VOSB | | | | |
| SDVOSB | | | | |

The ▮▮▮▮▮▮▮▮ contributions to the Small Business spend is minimal and almost non-existent for most Small Business subcategories. LM MFC exceeded all of their business unit goals.

A breakdown of LM achievement by socio-economic categories follows:

1. SB goal: Not met. Lockheed Martin failed to meet the SB goal by ▮▮▮▮ The actual dollars are higher than negotiated showing the added effort in trying to meet the goal. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ MFC is begin in outreach participation.

2. SDB goal: ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮ The strategies in place to increase SDB spend are considered ineffective as it did not result in a favorable increase in spend. The contractor did not meet their long term goals. ▮▮▮▮▮▮▮▮▮
▮▮▮▮

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 7 of 24

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000758
MSJ002087

**SUPP000442**

| | FY '10 | FY '11 | FY '12 | FY '13 | FY '14 |
|---|---|---|---|---|---|
| **LM SDB Goals** | (b) (4) | | | | |
| **Negotiated** | | | | | |
| **Actual** | | | | | |

LM SDB goal for FY14 was missed by ███.

3. WOSB goal: LM missed the WOSB goal by █████████████████

4. HUBZone goal was met at exactly ████████████████████

5. VOSB goal was met at ████. Even when they met the goal, LM VOSB percentage dropped significantly when compared to previous years. ███████████████████

6. SDVOSB: ███████████████████████████████████████████████████ LM performance through FY13 was on target with meeting the 3% increase in spend for this category. FY14 shows a big drop in spend attributed to ████████████████████████████████████████ LM was not able to reach their goal but made satisfactory progress in increasing spend for this category.

**SDVOSB Strategy Plan Milestones**

| Revised | FY '10 | FY '11 | FY '12 | FY '13 | FY '14 |
|---|---|---|---|---|---|
| **SDVOSB Goals** | (b) (4) | | | | |
| **Negotiated** | | | | | |
| **Actual** | | | | | |

LM MFC actual was 3.6%, the overall performance for this segment is considered satisfactory and on track.

---

**PART III – CONTRACTOR'S COMPREHENSIVE SMALL BUSINESS PROGRAM ADMINISTRATION**
**PROGRAM ADMINISTRATION FACTORS**
*Compliance with FAR requirements in this part establish the basic requirements for an acceptable rating*

---

**REVIEW OF SMALL BUSINESS PROGRAM (FAR 52.219-9): The contractor continues to comply with FAR 52-219-9. There are no changes with their methodology and procedures as described in LM FY13 640 report except for items e, g, m, n, o and v below.**

1. ARE THERE WRITTEN PROCEDURES IN PLACE REGARDING SMALL BUSINESS PROGRAM ADMINISTRATION FOR:

   a. FAR 52.219-9 (d) (1) Does the firm express goals in terms of percentage of totals planned subcontracting dollars for each small business category, in all plans?   ☒ YES ☐ NO    DESCRIBE HERE:

      LM has procedures in place to establish and monitor subcontracting goals. LM breaks down the total planned subcontracting dollars for each small business category and its corresponding percentage based on their total subcontracting base. LM complies with this requirement.

   b. FAR 52.219-9 (d) (2) Are there statements of total dollars planned to be subcontracted for each small business category in all plans?   ☒ YES ☐ NO    DESCRIBE HERE:

      LM is in compliance with this requirement. Indirect dollar allocations are included with their goal projection.

   c. FAR 52.219-9 (d) (3) Is there a description of the principal types of supplies and services to be subcontracted for each small business category?   ☒ YES ☐ NO    DESCRIBE HERE:

---

Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0000759**
**MSJ002088**

A detailed description of the principal types of supplies and services is contained in their FY14 CSP plan. LM is organized into five business units: Aeronautics, Information Systems & Global Solutions, Missiles & Fire Control (review site), Mission Systems & Training and Space Systems. LM is in compliance with this requirement.

d. FAR 52.219-9 (d) (4) Briefly describe and analyze the methodology used by the firm to develop subcontracting goals. Is the firm adhering to the method described in the plan to develop subcontracting goals?  ☒ YES ☐ NO DESCRIBE HERE:

LM utilizes a "bottoms up" forecasting process from all the Business Areas, business development, procurement, material planning and finance.  The goals are then rolled up to the Corporate Director, Category Management & Supplier Diversity and are aggregated to determine corporate performance targets. The DCMA analyst has reviewed their basis for establishing goals described in their CSP plans and entered into numerous discussions to determine any variations from the procedures because their forecast seems to not be at par with their goal achievement. It is noted that the disparity on the negotiated goals vs. actual achievement in FY14 was due mainly to ███████████ ███████████████████████ an internal leadership decision.

e. FAR 52.219-9 (d) (5) Briefly describe and analyze the methodology utilized by the firm to identify small business sources. Is the firm adhering to the method described in the plan to develop small business sources?  ☒ YES ☐ NO DESCRIBE HERE:

Outreach is used extensively throughout the LM organization. LM participated in over 60 outreach events in FY14. LM keeps records of attendance for all their outreach efforts. LM is adhering to their method as described in their FY14 CSP plan.

f.  FAR 52.219-9 (d) (6) Briefly describe and analyze the methodology utilized by the firm to determine and allocate indirect subcontracting dollars for the SF295 (and the SF 294, if applicable).  Are they adhering to the policy, and or the method described in the plan to determine indirect costs?  ☒ YES ☐ NO    DESCRIBE HERE:

This methodology has been reviewed and considered acceptable by the current and previous DCMA analysts. The following is the methodology Lockheed Martin uses to determine and allocate indirect subcontracting dollars (FY14 CSP).

Indirect Allocations: (b) (4)

███████████████████████████████████████████
████████████
███████████████████████████████
████████████████████
████████████████████████████████
████████████████████████
███████████████████████████████████
███████████████████████████        ████████████████████████

g. FAR 52.219-9 (d) (7) Briefly describe and analyze the small business related duties of the individual who administers the subcontracting program/plan.  Are they fulfilling the small business duties as described in the plan ? ☒ YES ☐ NO    DESCRIBE HERE:

Nancy Deskins held the Corporate SBLO chair in FY14. She had many years of experience and was fully engaged with this program. Suzanne Raheb is the newly assigned SBLO and former deputy SBLO under Nancy Deskins. She is

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 9 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000760
MSJ002089

equally experienced to manage this program. In fact, the supplier wire tool addition to the corporate SB vision was an idea brought forward by Suzanne. LM is completely engaged with the SBIR program, Mentor-Protégé program, outreach events and/or adapting changes and new ways to procure supplies. The SBLO duties have been reviewed and considered acceptable by the current and previous DCMA analysts.

h. FAR 52.219-9 (d) (8) Briefly describe and analyze the efforts by the firm to ensure equitable subcontracting opportunities exist for small businesses.  Is the firm adhering to the method described in the plan to assure equitable subcontracting opportunities exist for small business?  ☒ YES ☐ NO     DESCRIBE HERE:

The DCMA analyst's purchase order review validates the contractor is adhering with their efforts to ensure equitable subcontracting opportunities exist for small business as detailed in their Comprehensive subcontracting plan. All purchase orders sampled included a buyer checklist in which the buyer documents if small businesses were/were not solicited and the reason for award. The contractor also tracks, reports and monitors their participation in conferences, trade fairs, supplier information sessions, forums and workshops promoting small business. The contractor is in compliance with this requirement.

i. FAR 52.219-9 (d) (9)  Briefly describe and analyze the methodology utilized by the firm for maintaining records of purchases over $650,000, ($1.5M for construction) with large businesses that require subcontracting plans..  Is the firm adhering to the method described in the plan?  ☒ YES ☐ NO     DESCRIBE HERE:

Purchase order records are maintained electronically. The Record Keeping section in the CSP addresses each business unit to maintain records to demonstrate policies and procedures are being implemented. ████████████████████████████████████████████████████████████████████████ The sample reviewed validated the collection of subcontracting plans is in place, their review process and acceptance of plan, and proper documentation in the event the supplier was not required to submitting a plan (Commercial Item/In-House work). LM's methodology and record keeping process is considered acceptable.

j. FAR 52.219-9 (d) (10) Does the firm cooperate in studies or surveys as may be required, submit periodic reports to determine extent of compliance to plans.  Submit ISR, Subcontracting Report for Individual Contracts, and/or SSR, Summary Subcontract Report, in accordance with 52.219-9, and ensure that its subcontractors agree to submit ISR and SSR.
☒ YES ☐ NO     DESCRIBE HERE:

All reports are timely. LM cooperates and collaborates with studies and surveys. LM is in compliance with this requirement.

k. FAR 52.219-9 (d) (11) (i) Briefly describe and analyze the Source lists (e.g. CCR), guides, and other data the firm uses to identify small businesses.  Is the firm adhering to the method described in the plan?    ☒ YES ☐ NO   DESCRIBE HERE:

The contractor's sources to identify Small Business suppliers are documented throughout this report and in their current and past comprehensive subcontracting plans. Supplier Information Sessions and Matchmaking events have been of great success. The contractor's involvement with multiple organizations is also documented. LM's method to identify Small Businesses is deemed acceptable.

l. FAR 52.219-9 (d) (11) (ii) List organizations that are contacted by the firm in an attempt to locate sources that are small businesses.  Is the firm utilizing the list of organizations described in the plan? ☒ YES ☐ NO   DESCRIBE HERE:

The list includes SAM, Exostar, Known Supplier Database and the Lockheed Martin internal database among others. Lockheed Martin uses social networking tools such as Twitter, GovWin and Lockheed Martin's on-line bulletin board on LMC.com and advertises bulletin board items to organizations such as National Veteran Owned Business Association (NaVOBA). A review of their records shows they are utilizing these sources. LM is adhering to this requirement.

m. FAR 52.219-9 (d) (11) (iii) Briefly describe and analyze the methodology utilized by the firm for maintaining records of purchases over $150,000.   Are they adhering to the method described in the plan? ☒ YES ☐ NO
DESCRIBE HERE:

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 10 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000761
MSJ002090

LM maintains all purchase order records electronically. The contractor was able to retrieve all requested purchase orders using this electronic system. The manipulation of the folders was simple and within few clicks and scrolls the reviewer was able to examine in detail each purchase orders listed under Part II (2)(a). Each purchase order documented the rationale for award and if small business and its sub-categories were solicited or not. LM's record keeping methodology is adequate.

n.  FAR 52.219-9 (d) (11) (iv) Briefly describe and analyze the records the firm maintains to document outreach efforts with trade associations business development organizations, conferences, trade fairs, and veteran service organizations, to locate small businesses.  Is the firm maintaining records as described in the plan?  ☒ YES ☐ NO
DESCRIBE HERE:

Lockheed Martin maintains records of Corporate and local sponsored events to locate small businesses.  Lockheed Martin holds targeted Supplier Information Sessions (SIS) with focus on negotiated initiatives.  The Return on Investment (ROI) for these events is tracked. At the business unit level, MFC hosted the DFW Veteran Summit and a joint SIS session along with the Aeronautics business unit. They also sponsored the Florida Minority Supplier Development Council and lead the green and black belt training efforts. The DCMA analyst examined the records and they are considered adequate.

o.  FAR 52.219-9 (d) (11) (v) Briefly describe and analyze the records the firm maintains to document internal guidance and encouragement to buyers through  (A) workshops, seminars, training, etc. and (B) monitoring performance to evaluate compliance with program requirements.   Are they maintaining records as described in the plan?  ☒ YES ☐ NO
DESCRIBE HERE:

LM's training records were provided and validated. The contractor also maintains records of training to new SBLOs and procurement personnel. Most notable training effort was MFC mentoring of five SB suppliers for a six month period. MFC also lead the Green and Black Belt training sessions in FY14. LM training records are complete and adequate.

p.  FAR 52.219-9 (d) (11) (vi) Briefly describe and analyze the methodology the firm uses, on a contract-by-contract basis, to record support award data, including the name, address, and business size of each subcontractor.  Contractors having commercial plans need not comply with this requirement.   Are they maintaining records as described in the plan?
☒ YES ☐ NO   DESCRIBE HERE:

The contractor utilized their Exostar System during the review. This system captures all supporting award data. The contractor's system(s) are considered adequate. LM is in compliance with this requirement.

q.  FAR 52.219-9 (e) (1)  Briefly describe and analyze the methodology utilized by the firm to assist small businesses by arranging solicitations, time for the  preparation of bids, quantities, specifications, and delivery schedules so as to facilitate the participation by such concerns.  Are they adhering to the method described in the plan?
☒ YES ☐ NO   DESCRIBE HERE:

The DCMA analyst previously reviewed Lockheed Martin's policies, LMAP 2.320, entitled "Identifying Potential Sources for Competitive Solicitations" and LMAP 3.110. The procedures have not changed from last year report and contain specific guidance that allows for small business considerations and include even provisions for certain competitions that can be limited to small business concerns as documented in other areas of this report. The contractor's actions are deemed appropriate.

r.  FAR 52.219-9 (e) (2) Briefly describe and analyze the methodology utilized by the firm to provide adequate and timely consideration of small businesses in all "make-or-buy" decisions.   Is the firm adhering to the method described in the plan?  ☒ YES ☐ NO   DESCRIBE HERE:

In the event there is a "make-or-buy" decision the SBLO is part of the process. All suppliers are considered regardless of their size. This methodology is determined to be adequate.

s.  FAR 52.219-9 (e) (3) Briefly describe and analyze the methodology utilized by the firm to counsel and discuss subcontracting opportunities with small businesses. Is the firm adhering to the method described in the plan?  ☒ YES ☐ NO
DESCRIBE HERE:

DCMA Form 640 Nov. 2013 revision                FOR OFFICAL USE ONLY                Page 11 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000762
MSJ002091

SUPP000446

Lockheed Martin is adhering to the methods described in their plan. Records examined document various events in which counseling and subcontracting opportunities were discussed as follows:

▌ ██████████████████████████████████████████████████████ a notorious increase from last year.

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████

LM methods are considered adequate. They continue to find new ways to bring information to new small business suppliers.

t.   FAR 52.219-9 (e) (4)   Briefly describe and analyze the methodology utilized by the firm to provide notice to subcontractors concerning penalties and remedies for misrepresentations of business status as a small business for the purpose of obtaining a subcontract.   Is the firm adhering to the method described in the plan?   ☒ YES ☐ NO
DESCRIBE HERE:

The contractor's notice is included in each supplier registration to their database. Suppliers are to acknowledge the penalties for misrepresenting the supplier's size status and are requested to notify them immediately of any changes with their size. The issue with this process is that because is not done at time of award but during the initial registration process suppliers do forget to update their size status. The review of purchase orders notes multiple suppliers size errors. This clause needs to be included on each subcontract award.

u.   FAR 19.702 It is the policy of the United States that its prime contractors establish procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns.   Describe the method utilized by the firm to ensure timely payment of subcontractors.   Has the firm been adhering to this policy?   ☒ YES ☐ NO      DESCRIBE HERE:

██████████████████████████████████████████████████████████ At the business unit, ████████ that resulted in expediting payment as well and improvement in suppliers cash flow █████████████████

v.   Has the firm adequately addressed all previous Corrective Action Plans?   ☒ YES ☐ NO

The contractor addressed DCMA FY13 corrective action (CA) request promptly. Some of LM corrective actions are tied to SBA HQ approval of their proposed processes. LM maintained DCMA informed at all times of their progress, meetings with SBA and provided a status report for our review. The corrective actions are still under SBA review and pending approval and implementation. This item will be carried forward in FY14 and further until is officially closed by DCMA.

LMC0000763
MSJ002092

2. COMPLIANCE WITH RECORD KEEPING:

a. REVIEW A REPRESENTATIVE SAMPLE OF PURCHASE ORDERS AWARDED TO LARGE BUSINESS, INCLUDING PURCHASE ORDERS OVER $650,000.

LM utilizes an electronic self-certification system to capture the supplier size. The suppliers update their size status annually not at time of award. The sample shows various purchase orders with erroneous size classification in their system. This is a repetitive finding documented in last year 640 report and now seen at a different business unit. Because these suppliers had incorrect size and the dollars were captured in their FY14 SSR, DCMA requested corrections to be made on the FY14 SSR to disallow any dollars reported for those suppliers during that period. The suppliers and dollars are shown below:

1. (b) (4)                    supplier was counted as SDB but is not; disallow (b) (4)        (only one Purchase Order issued in FY14)
2. (b) (4)                    supplier was counted as SDB but is not SDB; disallow (b) (4)        ( only one PO issued in FY14)
3. (b) (4)        supplier was counted as SDB but is not SDB; disallow (b) (4)        for all POs issued in FY14

The total SDB dollars disallowed is $7,351,653.26.

---

**SUBCONTRACTING PURCHASE ORDER REVIEW CHECKLIST DCMA FORM 640 EXHIBIT 1**

**DCMA FORM 640 EXHIBIT 1**
*(for more rows click outside the right side of the row on the form and hit "enter")*

| CONTRACTOR: | Lockheed Martin MFC | PERIOD COVERED: FY 14 | October TO September |
|---|---|---|---|

**SAMPLING OF AWARDS TO LARGE BUSINESS OVER $150,000 AND $650,000; AND SAMPLES OF P.O. TO SMALL BUSINESS TO VERIFY CERTIFICATION**

**SUB-CONTRACTS WITH LARGE BUSINESSES = or > $650,000**      **FAR 52.219-9(d)(9)**

| Prime Contract | Date | Vendor Name | $ Amount | Subcontract Number | SB Plan In Place? | ISR Input? | Remarks |
|---|---|---|---|---|---|---|---|
| (b) (4) | 10/10/2013 | (b) (4) | | | Y | Y | Plan was received, reviewed and incorporated prior to award |
| | 7/14/2014 | | | | Y | Y | Plan was received, reviewed and incorporated prior to award |
| | 4/2/2014 | | | | Y | Y | Plan was received, reviewed and incorporated prior to award |
| | 12/18/2013 | | | | Y | Y | Order was finalized on 3/29/14, SB plan was received before order was placed |
| | 12/18/2013 | | | | Y | Y | Order was completed on June 11, 2014 |
| | 2/19/2014 | | | | Y | Y | Sb was received on 6/24/14, order was not funded until 7/25/14 |

DCMA Form 640 Nov. 2013 revision      FOR OFFICAL USE ONLY      Page 13 of 24

Distribution of this document is prohibited outside the Government unless expressly authorized.

(b) (4)

(b) (4)

| | Date | | | | | | | Remarks |
|---|---|---|---|---|---|---|---|---|
| | 11/25/2013 | | | | | Y | Y | SB plan received on time |
| | 2/5/2014 | | | | | Y | Y | SB plan received 5/20/14 |
| | 3/13/2014 | | | | | Y | Y | SB Plan received on 8/8/14; order was completed 8/25/14 |
| | 6/16/2014 | | | | | Y | Y | SB Plan approval 6/12/14 |
| | 10/10/2013 | | | | | Y | Y | SB Plan received 9/24/14 |
| | 11/11/213 | | | | | Y | Y | SB Plan received 11/1/13 |

**PURCHASE ORDERS/SUB-CONTRACTS TO LARGE BUSINESS = OR > $150,000**          FAR 52.219-9(d)(11)(iii)

| Size | P.O. # | Date | Vendor Name | $ Amount | Item Procured | Reason Code | Remarks |
|---|---|---|---|---|---|---|---|
| L | (b) (4) | 12/3/2013 | (b) (4) | | | | (b) (4) |
| L | | 12/9/2013 | | | | | IDIQ contract-non-competitive |
| L | | 2/19/2014 | | | | | Follow-on, economic consideration-Cost avoidance of having a new design |
| L | | 4/23/2014 | | | | | No alternate sources considered |
| L | | 7/24/2014 | | | | | Source Controlled Drawing |
| L | | 10/16/2013 | | | | | Source Controlled Drawing |
| L | | 10/18/2013 | | | | | (b) (4) |
| L | | 5/19/2014 | | | | | Follow-on, will cost $62K more to develop new source |

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 14 of 24

Distribution of this document is prohibited outside the Government unless expressly authorized.

SUPP000449

| | (b) (4) | | (b) (4) | | | |
|---|---|---|---|---|---|---|
| L | | 5/6/2014 | | | | OEM item |
| L | | 6/27/2014 | | | | Source Controlled Drawing |
| L | | 10/22/2013 | | | | Source Controlled Drawing |
| L | | 12/19/2013 | | | | Source Controlled Drawing |
| L | | 6/27/2014 | | | | (b) (4) |
| | | | | | | |

| | | SAMPLES OF P.O. TO SMALL BUSINESS TO VERIFY CERTIFICATION | | | FAR 52.219-9(e)(4i) | |
|---|---|---|---|---|---|---|
| **Size** | **P.O. #** | **Date** | **Vendor Name** | **$ Amount** | **Item Procured** | **Sys Shows** | **Self-Certification Shows** |
| | (b) (4) | | (b) (4) | | | |
| SB | | 11/25/2013 | | | Contract Labor | SB/VOSB/SDVOSB | SB/VOSB/SDVOSB |
| SB | | 10/21/2013 | | | Contract Labor | SB/SDB/WOSB/VOSB/SDVOSB | SB/SDB/WOSB/VOSB/SDVOSB |
| SB | | 4/1/2014 | | | Container | SB/VOSB/SDVOSB | SB/VOSB/SDVOSB |
| SB | | 8/29/2014 | | | Sensors | SB/SDB | Not SDB, LM issued only one PO in FY14 value of (b) (4) |
| SB | | 1/21/2014 | | | Contract labor | SB/SDB/WOSB | SB/SDB/WOSB |
| | | 7/15/2014 | | | Relay | SB/SDB | SB/SDB |
| SB | | 10/1/2013 | | | Contract Labor | SB/SDB/WOSB/HUBZONE/VOSB/SDVOSB | Not SDB; only PO for (b) (4) |
| SB | | 11/25/2013 | | | Contract Labor | SB/SDB/VOSB/SDVOSB | SB/SDB/VOSB/SDVOSB |
| SB | | 4/9/2014 | | | Protective Cover | SB/SDB | SB/SDB |

DCMA Form 640 Nov. 2013 revision

**FOR OFFICAL USE ONLY**

Page 15 of 24

Distribution of this document is prohibited outside the Government unless expressly authorized.

SUPP000450

(b) (4)   (b) (4)

| SB | | 7/28/2014 | | Contract Labor | SB/SDB/WO SB/HUBZON E | SB/SDB/WOSB/HUBZONE; Hub 11-30-13 |
| SB | | 7/24/2014 | | Circuit Board Assy | SB/HUBZON E/VOSB/SDV OSB | SB/HUBZONE/VOSB/ SDVOSB; Hub 10-04-13 |
| SB | | 7/31/2014 | | Hinge Pin Housing | SB/SDB/HUB ZONE/VOSB/ SDVOSB | SB/SDB/HUBZONE/VOSB/ SDVOSB; Hub 6/5/2008 |
| SB | | 3/11/2014 | | Temperature Sensor | SB/HUBZON E/ | SB/HUBZONE; Hub 2-11-13 |
| SB | | 9/2/2014 | | Contract Labor | SB/SDB/WO SB/HUBZON E/VOSB/SDV OSB | Not SDB, they received (b) (4) which were counted as SDB |
| SB | | 10/16/2013 | | Ethernet Switch | SB/HUBZON E/VOSB/SDV OSB | SB/HUBZONE/VOSB/ SDVOSB; Hub 11-30-2004 |
| SB | | 11/11/2013 | | Generators | SB/HUBZON E/VOSB/SDV OSB | SB/HUBZONE/VOSB/ SDVOSB; Hub 9-24-2007 |
| SB | | 10/16/2013 | | Wooden Heat threated pallets | SB/HUBZON E | SB/HUBZONE; Hub 2-20-2012 |
| SB | | 3/14/2014 | | Repair Helicopter | SB/HUBZON E/VOSB | SB/HUBZONE/VOSB; Hub 12-20-2010 |

**REASON CODES FOR SB/SDB/WOSB/HUBZone/SDVOSB NOT SELECTED/SOLICITED: (1) SOLE SOURCE / (2) SINGLE SOURCE / (3) SOURCE CONTROLLED DRAWING / (4) CUSTOMER DIRECTED / (5) NO KNOWN SB SOURCE / (6) SB SOLICITED, NOT SELECTED**

**PART IV – SUPPLEMENTAL DATA**
**VALIDATION OF INFORMATION IN THIS PART MAY BE USED TO JUSTIFY HIGHER RATINGS**

1. HAS A COMPANY-WIDE SB POLICY STATEMENT BEEN ISSUED BY CURRENT SENIOR MANAGEMENT AND DISSEMINATED THROUGHOUT THE COMPANY?
☒ YES.  Issued By:  Marillyn A. Hewson          Title: Chairman/CEO          Date: Annually

☐ NO.  COMMENTS:

2. SBLO APPOINTMENT/AUTHORITY PLACEMENT IN THE ORGANIZATION:

a. HAS THE SBLO BEEN FORMALLY APPOINTED BY SENIOR LEVEL MANAGEMENT?
☒ YES.  Where are the duties and responsibilities defined?

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 16 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000767
MSJ002096

**SUPP000451**

Suzanne Raheb has been newly assigned as LM Corporate SBLO replacing Nancy Deskins, former SBLO. Her duties remain as listed under Section 6 of the CSP and in the Corporation Performance Management System. Nancy Deskins was the appointed SBLO for the period in review.

☐ NO.   COMMENTS:

b. IS THE SBLO APPOINTED AT AN APPROPRIATE LEVEL TO EFFECTIVELY ADMINISTER THE PROGRAM?
☒ YES.  DESCRIBE:

Nancy Deskins was the assigned SBLO during the review period. She reported to Pat Sunderlin, Chair Supply Chain Council. Suzanne Rehab facilitated the review as the newly assigned Corporate SBLO.

☐ NO.  COMMENTS

c. TO WHOM DOES THE SBLO REPORT?

Name: Pat Sunderlin   Title: VP Materials Missiles & Fire Control, who also Chair the Supply Chain Council.

d. SBLO IS A: ☒ Corporate ☐ Division (*if a division SBLO, describe the relationship between this division and the corporate SBLO*).

e. IS THERE AN ORGANIZATION CHART THAT DISPLAYS THE POSITION OF THE SBLO WITHIN THE ORGANIZATION?

☒ YES.   Charts were provided

☐ NO.  COMMENTS:

3.   MONITORING SB PROGRAM PERFORMANCE AND REQUIREMENTS:

   a. ARE SENIOR MANAGEMENT AND STAFF BRIEFED REGULARLY ON ACHIEVEMENT AND/OR PROGRAM DEFICIENCIES?

   ☒ YES.   COMMENTS:

   Monthly briefs to the executive staff to include progress to goals.

   ☐ NO.  COMMENTS:

   b. WHAT DOES CONTRACTOR DO TO IMPROVE OVERALL PROGRAM PERFORMANCE IF OVERALL PROGRAM GOALS ARE NOT BEING MET? (*Identify any Corrective Action Plan(s) implemented*)

   Lockheed Martin utilizes recovery plan templates to develop specific strategies and initiatives to correct any goal deficiency. The corrective actions are tailored to the program and reviewed weekly for improvement.

4.   SUPPLEMENTAL INFORMATION

   a. Discuss the firm's use of strategic sourcing teams or other groups within the firm, that may assist the SBLO in the development of business subcontracting sources and the goal setting process.  (If so, define its role in goal development and its role during plan performance).   DESCRIBE:

   As briefed to the DCMA analyst, LM utilizes multiple strategic sourcing teams. MFC evaluates potential supplier's capabilities and provides insight into assisting with sourcing actions and improving SB performance.  MFC forecasting process is considered a step forward into forecasting realistic goals. It is noted that each business unit operates independently of each other but carry similar approaches.

**LMC0000768**
**MSJ002097**

SUPP000452

b.  Discuss any successes the firm has made in subcontracting opportunities, those which were normally awarded to a large business, that have been redirected to a small business.  DESCRIBE:

Lockheed Martin documentation of their efforts includes the following:

(b) (4)

c.  Discuss any procurement actions the firm may have reserved for small business.  DESCRIBE:

Lockheed Martin documented the following actions in FY14:

(b) (4)

LMC0000769
MSJ002098

SUPP000453

(b) (4)

- 
- 
- 
- 

- 
- 
- 
- 
- 
- 
- 
- 
- 

FOR OFFICAL USE ONLY

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000770
MSJ002099

SUPP000454

(b) (4)

At the business unit, Missiles and Fire Control documented the following actions:

(b) (4)

d.  Discuss the firm's use of Corporate, Blanket and Long Term Agreements and how they may affect small business dollars.
DESCRIBE:

Lockheed Martin is well known for using corporate agreements as a best practice. The contractor provided copies of their current corporate agreements (spreadsheets). This practice has been found to be beneficial to small businesses in general as once selected into a corporate agreement and based on good performance the likelihood of continuing the relationship once the agreement expires is high. The (b) (4)

| Large | Small | SDB | SWOB | HUB | Vet | SDV | Native |
|-------|-------|-----|------|-----|-----|-----|--------|

(b) (4)

e.  Discuss the extent of use and the firm's internal written guidance for credit card purchases.   DESCRIBE:

LM has made no changes to their internal written guidance for credit card purchases as noted in previous report. As such the following is an excerpt from previous report and still applies:   (b) (4)

LMC0000771
MSJ002100

f.  Discuss the firm's use of the internet or web-site as tools to advertise its ongoing and future procurement requirements. DESCRIBE:

Lockheed Martin heavily relies on automated tools to advertise future procurements. They continue with "Supplier Wire", a new tool introduced last fiscal year. This newly implemented tool is packed with information for small businesses looking to do business with them. It offers free webinars, live chats, educational videos, immediate needs bulletins, directories, partnership pursuits and a veteran's corner. DCMA recognizes LM for bringing innovation as a way to reach out small business suppliers, new this FY is their LM Supplier Mall, an accessible database that identifies SB suppliers.

g.  Discuss the firm's use of Mentor/Protégé agreements to increase small business subcontracting opportunities.  If the firm is not participating in the Mentor Protégé program, are they considering participating in the program?   DESCRIBE:

- Lockheed Martin has (b) (4) Mentor Protégé agreements. They hosted three protégé 101 webinars. LM submitted two proposals: (b) (4) to the Army on 01/02/2014 and (b) (4) to the Navy.
- LM held a total of 3 supplier information sessions and multiple chat/webinars.  ROI on suppliers information session a total of (b) (4) Number of suppliers receiving subcontracts (b)

MFC efforts utilizing current and past protégés were briefed during the review. All efforts with the MP program are satisfactory.

LM was awarded a Nunn Perry award for their efforts with IERUS Technologies in FY14.

h. Discuss the firm's initiatives/accomplishments made to ensure more small businesses are able to compete in more "high-tech" procurements.  DESCRIBE:

In 2014, 117 SBIR/STTR awards were received to the small business/LM team and Lockheed Martin had the following 3 SBIR Phase III successes:

- (b) (4)
- 
- 

i.  Discuss how the firm monitors its individual subcontracting goals/plans and readjusts its internal focus in  achieving goals that may be in doubt of being attained.    DESCRIBE: SEE PART IV (3) (B) ABOVE.

j.  Discuss any planned procurement actions, or procurement actions, or procurements addressed specifically within the subcontracting plan that had to be redirected to another business size category.  DESCRIBE:  SEE PART IV 4 (B) ABOVE

5. NOTEWORTHY ACTIVITIES TO JUSTIFY A HIGHLY SUCCESSFUL OR OUTSTANDING RATING:

REVIEW AND DISCUSS CONTRACTOR'S ACTIVITIES THAT ARE CONSIDERED NOTEWORTHY TO JUSTIFY A HIGHLY SUCCESSFUL OR OUTSTANDING.

6. ADDITIONAL REMARKS.  DESCRIBE IN DETAIL HOW A CONTRACTOR HAS MET THE CRITERIA TO JUSTIFY A RATING THAT IS HIGHER THAN ACCEPTABLE.

Outstanding – Describe how the contractor has had exceptional success with initiatives to assist, promote and utilize small business (SB), small disadvantaged business (SDB), women-owned small business (WOSB), HUBZone small business, veteran-owned small business (VOSB), and service-disabled VOSB (SD/VOSB).  Describe how the contractor has an exemplary program that could be used as a model by other contractors in similar industries.

Highly Successful – Describe how the contractor has had significant success with initiatives to assist, promote, and utilize SB, SDB, WOSB, HUBZone small business, VOSB, and SD/VOSB.  Describe how the contractor has gone above and beyond the required elements of the program.  Provide documentation and stories to support such efforts.

DCMA Form 640 Nov. 2013 revision        FOR OFFICAL USE ONLY        Page 21 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000772
MSJ002101

**PART V – SUMMARY AND RECOMMENDATIONS**

**1. PROGRAM RATING:**

The following rating criteria should be used to determine the contractor's rating.  Note that the rating criteria are the same as SBA per the November 12, 2009 DCMA/SBA Memorandum of Understanding.

☐ **Outstanding** - **Exceeds** the negotiated small business goal and 2 additional category goals on 90% or more of the subcontracting plans reported for the fiscal year under review. Has exceptional success with numerous specific initiatives to assist, promote and utilize Small Business (SB), Small Disadvantaged Business (SDB), Women-Owned Small Business (WOSB), HUBZone Small Business (HUBZone), Veteran-Owned Small Business (VOSB), Service-Disabled Veteran Own Small Business (SDVQSB); Alaska Native Corporations (ANC's) and Tribal Native American concerns, except in instances where the Large Prime Contractor (LPC) can provide a reason the Commercial Marketing Representative (CMR) or DCMA representative deems justifiable as to why the LPC has not had exceptional success in those categories.

☐ **Highly Successful - Met or exceeded** the negotiated goals in three small business categories on 80% of the subcontracting plans reported for the fiscal year under review. Has moderate success with some initiatives to assist, promote and utilize SB, SDB, WOSB, HUBZone, VOSB, and SDVOSB as described above in the criteria for a rating of Outstanding. Demonstrates focused efforts to go above and beyond the required elements of the subcontracting program and provides documentation of achievements and success stories to support such efforts. The contractor demonstrates existing policies and process that ensures 85% on-time and accurate submission of required reports in eSRS as a prime contractor and 80% on-time submission of reports from their subcontractors.

☒ **Acceptable – Always** demonstrates a good-faith effort to meet **all** of its goals on subcontracting plans reported for the fiscal year being reviewed, but falls short of thresholds to receive a rating of Highly Successful. Provides reasonable and supportable explanations why certain goals could not be achieved.  Demonstrates compliance with the mandatory elements of their subcontracting plans and implementing  regulations. ISRs and SSRs submitted accurately within 30 days after the end of applicable reporting periods 70% of the time.

☐ **Marginal - Deficient** in meeting key subcontracting plan elements or the contractor has failed to satisfy one or more requirements of a corrective action plan from the prior review. Fail to comply with the submission requirements in eSRS on the majority of their contracts with subcontracting plans and no evidence of flow-down to applicable subcontractors. There is evidence of corporate and/or senior management commitment to bring their subcontracting program to an acceptable level and has demonstrated a commitment to apply the necessary resources to do so. A corrective action plan is required, and the Administrative Contracting Officer(s) (ACO) and SBA CMR(s) must be notified.

☐ **Unsatisfactory – Noncompliant** with the contractual requirements of DFARS and FAR 52.219-8 and 52.219-9. Contractor's management shows little interest in bringing its program to an acceptable level or is generally uncooperative. For example, recommendations made by SBA or DCMA on previous reviews have never been implemented. A corrective action plan is required, and the ACO(s) and SBA CMR(s) must be notified

**2. RISK RATING:**

The following rating criteria should be used to determine the contractor's rating.

☐ **High -** High Risk is assigned when the contractor is not meeting contract negotiated and DoD goals.

☒ **Moderate -** Moderate Risk may be assigned when the contractor is meeting contract negotiated goals but not DoD goals.

☐ **Low –** Low Risk may be assigned when the contractor is meeting contract negotiated and DoD goals.

3. RATINGS SUMMARY, RECOMMENDATIONS, AND FOLLOW-UP OF CORRECTIVE ACTIONS(S):

1  "Negotiated goals" refers to the dollar and percentage goals in the approved subcontracting plan. (For rating purposes, the reviewer will compare the percentage goals to the percentage achievements.)

DCMA Form 640 Nov. 2013 revision    FOR OFFICAL USE ONLY    Page 22 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000773
MSJ002102

2   Examples of such initiatives include, but are not limited to, participating in a Mentor-Protégé program, performing compliance reviews at subcontractors' sites, administering a buyer incentive program, participating in trade fairs, promoting registration in the CCR, and contracting suppliers to encourage SDB and HUBZone certification.

3   For example, recommendations made by SBA or DCMA on previous reviews have never been implemented.

DISCUSS:

Risk Rating: The contractor is rated moderate risk because they are not meeting the DoD SDB ███ , HUBZone ███ and SDVOSB ███ goals.

Rating Summary and Recommendations:

1. Negotiated Goals. Lockheed Martin missed three out of their six negotiated goals. They missed their SB, SDB and WOSB goal and met their HUBZone, VOSB and SDVOSB goals. Good faith efforts in achieving negotiated goals are documented throughout the report. LM met all three negotiated initiatives and target industry goals.

2. eSRS reporting: The SSR report was found to be inaccurate. This review noted three suppliers counted as SDB that were not SDB. A total of $7,351,653.26 for the SDB category is disallowed. LM was informed during the exit briefing that the FY14 SSR report was going to be rejected so they can apply necessary corrections to the dollars shown under the SDB category. A recap of the finding documented under Part III 2 (a) follows:

███ ., supplier was counted as SDB but is not; disallow ███ (only one Purchase Order issued in FY14)

███ supplier was counted as SDB but is not SDB; disallow ███ ( only one PO issued in FY14)

███ supplier was counted as SDB but is not SDB; disallow ███ for all POs issued in FY14

3. CFR 121.411 (b) states " even if a concern is on a small business source list it must qualify and self-certify as a small business at the time it submits its offer". ███

4. Prime contractor's acceptance of a supplier electronic self-certification as to size: This finding was documented in FY13 and carried over to FY14. In essence ███ The federal register July 16, 2013 added a new provision to CFR 121.411(b) even if a concern is on a small business source list it must qualify and self-certify as a small business at the time it submits its offer. Prime contractor may accept an electronic self-certification as to size, if the subcontract contains a clause providing that the contractor plans to rely on SAMS for self-certification verification as to be current, accurate and complete as of the date of the offer for the subcontract. ███ LM will be required to make changes to ███ This corrective action will be placed on hold until the FAR publishes their final rule.

5. Electronic Signature/Signature on same page the supplier acknowledges its size status: This finding is also carried over from FY13. 13CFR121.411 (f) that states and quote: "An authorized official must sign the certification on the same page containing the size status claimed by the concern." According to SBA, the FAR council is working on publishing a final rule on the subject of electronic signature and the electronic self-certification that should combine the new requirements in order for everyone to use consistent guidance. Once this final rule is published and during the comments period, it is recommended that LM submit their comments to the FAR council for consideration. This issue will be placed on hold until the final rule is published.

6. NAICS Code: 13CFR125.3(c)(v) The contractor must assign each subcontract the NAICS code and corresponding size standard that best describes the principal purpose of the subcontract (see §121.410). This finding was also documented in FY13 report. ███ however, being complaint with the regulation should not be left to discretion. LM's use of discretion is not allowed as this is a regulation requirement.  The procedures need to give specific instructions on how to comply with this requirement and not be subject to interpretation. The government reviewers should be able to validate this process in accordance with regulations. The contractor was found to not in compliance with the NAICS code portion of the regulation. LM provided a corrective action

DCMA Form 640 Nov. 2013 revision          FOR OFFICAL USE ONLY          Page 23 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.
LMC0000774
MSJ002103

within the timeframe requested. LM new NAICS code process was presented to SBA HQ for their acceptance. SBA is still evaluating the process.

Corrective Actions:

As a result of this review a corrective action plan is requested for items 2 and 3 above. Even though the review site was LM MFC, these practices are corporate wide as such the recommendation and corrective action applies to Lockheed Martin Corporation (all business units). It will be necessary for Lockheed Martin SEBP office to forward a copy of the corrective action plan to Luz Vasquez, DCMA analyst within thirty days of receipt of this report. Please include any actions taken from the time of the review to the present time. Progress should be reported monthly. The DCMA analyst will validate the implementation of the corrective actions and proper disposition.

Based on the summary, recommendations and corrective actions above the performance rating of Acceptable is recommended.

***Your overall program performance rating is Acceptable.***

---

**4.   EXIT INTERVIEW PARTICIPANTS:**

**Government:**
1. Luz M. Vasquez, DCMA SBP
2. Sophia Chou, SBA CMR

**Contractor:**
1. Suzanne Raheb, Corporate SBLO
2. Kent Anderson, Senior Manager, Procurement Compliance and Training, MFC
3. Mark Hatter, Director, Global Supply Chain, MFC
4. Burt Ford, Associate General Counsel, Corporate
5. Pat McHugh, Corporate Reporting and Compliance Lead, Corporate
6. Kurt Ravenfeld, Director, Global Supply Chain Operations
7. Chuch Wason, Director, Global Supply Chain, MFC
8. Lee Sorenson, VP, Procurement, IS&GS
9. Roger Phelps, Director, Global Supply Chain, MFC
10. Dawn Lehew, Compliance Analyst, Senior Staff, MFC
11. Phyllis Grant, Senior Management, Supplier Diversity, MFC
12. Jim Tanksley, Sr. Manager, Supplier Diversity, Aerospace
13. Lisa Coursey, Supplier Diversity Senior Staff, MFC
14. Jay Pitman, Director Global Supply Chain THAAD program, MFC

---

**5.   REVIEW STATUS:**
   Indicate the status of this 640 Review.  Once a review is closed, you'll need to create a new review.

☒ **Open; One or more corrective action item(s) were created  as result of this review (See Part V). This item will remain open until all corrective actions are implemented to include FY13 corrective actions that still are pending DCMA/SBA approval.**
☐ Closed

---

**6.   NAME of SMALL BUSINESS SPECIALIST:**          **7.  DATE:**

(b) (6)

   SIGNATURE: _____ _    **6/28/15**

---

DCMA Form 640 Nov. 2013 revision        FOR OFFICAL USE ONLY        Page 24 of 24
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0000775
MSJ002104

# EXHIBIT E-3

SUPP001159

# DEFENSE CONTRACT MANAGEMENT AGENCY (DCMA)
## SMALL BUSINESS SUBCONTRACTING PROGRAM COMPLIANCE REVIEW
### In accordance with FAR 19.706, FAR 52.219-8, and FAR 52.219-9

## Part I – General Information

**1.a.  Contractor**
**Name:**  Sikorsky, A Lockheed Martin Company(SIK)
**Address:**  6900 Main Street
**City/State/Zip:**  Stratford, CT 06615-9129
**CAGE(s) [Field 1]:**  78286
**DUNS [Field 1]:** 835551474

**1.b. Small Business Liaison Officer (SBLO) [Field 2]:**
**Name:**  Martha Crawford
**Phone:** (b) (6)            **Ext**
**E-mail:** (b) (6)

**1.c. Alternate Small Business Liaison Officer (SBLO) [Field 3]:**
**Name:**  NA
**Phone:**            **Ext**
**E-mail:**

**2.  DCMA Small Business Professional**
**Name:**  Luz M. Vasquez
**Location:**  Small Business Professional- DCMA DALLAS
**Phone:** (b) (6)   **Ext**
**E-mail:** (b) (6)

**3. Administrative Contracting Officer**
**Name:**  Kimberly Gaskins
**Location:**  DCMA Sikorsky
**Phone:** (b) (6)   **Ext**
**E-mail:** (b) (6)

**4.  Small Business Administration (SBA) Representative**
**Name:**  Sandy Liu      **E-mail:**
**Phone:** (b) (6)   **Ext**

**5. DCMA/Small Business Administration (SBA) Joint Review**

☐ Yes ☑ No   NOTE: Always "No" unless it is an approved follow up type review.

**6. Review Type:  On-site ☑    Virtual Review ☐**

**7. Period Covered by this Review**

**a. From:**  October 1, 2016

**b. To:**   September 30, 2017

**8.a.  Date of this review:**  March 6-7, 2018

**b. Rating of this review:**  Very Good

**9.a.  Date of last review [Field 4]:**  February 22, 2017

**b. Rating of last review [Field 5]:**  Satisfactory

**10.  Department of Defense (DoD) Ratios**    84%

   **a. Total annual company sales [Field 6]:** 3,913,721,983

   **b. Total annual sales for DoD [Field 7]:**  3,320,089,864

**11.  Type of Subcontract Plan(s)**

☐ **Individual Plan(s):  Number of plans:**

☐ **Commercial Plan:  Approved by:**      **Plan year:**

☑ **Comprehensive Plan:  Approved by:** Tatia M. Evelyn-Bellamy  **Plan year:** FY17

☐ **Master Plan:  Approved by:**

**Three (3) Year Period Ending:**

**12.  Mentor Protégé Agreements [Field 8]:**

   None for FY17

SUPP001161

## Part II – Contractor's Subcontracting Performance

1. **Accuracy of Small Business Reports (Summary Subcontract Reports (SSRs) and Individual Subcontracting Reports (ISRs))**

   a. **FAR 52.219-8(a). Were small business, small disadvantaged business, women-owned small business, HUBZone small business, service-disabled veteran-owned small business, and veteran-owned small business reported on SSRs and ISRs? [Field 36] ☑ YES ☐ NO   Exhibit I  DESCRIBE:**

   The sample of purchase orders reviewed shows no errors with the suppliers size classification as such the accuracy of Sikorsky small business suppliers size claimed in their FY17 SSR is not questioned. The contractor is in compliance with FAR 52.219-8(a).

   b. **FAR 52.219-8(d)(1) and FAR 52.219-9(c)(2)(i).  Does the Contractor correctly rely on written representations by their subcontractors regarding their status as a small business concern, a veteran-owned small business concern, a service-disabled veteran-owned small business concern, a small disadvantaged business concern, or a women-owned small business concern to include certifications that representations are current, accurate, and complete as of the date of the offer for the subcontract? [Field 36]☑ YES ☐ NO ☐ N/A  Exhibit I  DESCRIBE:**

   The sample of purchase orders selected for this review and documented under Exhibit 1 shows no errors with the suppliers size classification. This is a great improvement from their FY16 review. The contractor implemented a strong validation process with excellent results.

   c. **FAR 52.219-8(d)(2) and FAR 52.219-9(c)(2)(ii).  If the Contractor relies on a subcontractor's representations of its size and socioeconomic status as a small business, small disadvantaged business, veteran-owned small business, service-disabled veteran-owned small business, or a women-owned small business in the System for Award Management (SAM)*, has the subcontractor represented that the size and socioeconomic status representations made in SAM are current, accurate and complete as of the date of the offer for the subcontract? [Field 36] ☐ YES ☑ NO ☐ N/A  Exhibit I**
   **\*NOTE:  The Contractor may not require the use of SAM for the purposes of representing size or socioeconomic status in connection with a subcontract.**

   d. **FAR 52.219-9(l). Are purchases from a corporation, company, or subdivision that is an affiliate appropriately NOT included in the ISR and SSR.   ☑ YES ☐ NO**

   e. **FAR 52.219-9(l). Do ISRs and SSRs only include subcontracts involving performance in the United States or its outlying areas? ☑ YES ☐ NO**

   f. **FAR 52.219-9(l). Do ISRs and SSRs include awards by affiliates as subcontract awards by the Contractor?  ☑ YES ☐ NO**

   g. **FAR 52.219-9(l). Are subcontracting achievements as reported on ISRs and SSRs limited to awards made to Contractors' immediate next-tier subcontractors? ☑ YES ☐ NO**

LMC0001496

2. **Overall subcontracting performance – SSR submission FAR 52.219-9(l)(2)**

   a. **Were SSRs submitted accurately in accordardance with all the elements of FAR 52.219-9(l) and SSR instructions at Electronic Subcontracting Reporting System (eSRS.gov)? [Field 9]☑ YES ☐ NO  DESCRIBE:**

   Sikorsky submitted their SSR reports timely in accordance with the FAR and eSRS instructions; however, as noted in their FY16 report, Sikorsky is not able to validate the SSR report because they cannot tie the material purchased prior to an award to a DoD contract award (Direct or Indirect material) ██████████████████████████

      **(1) Were SSRs submitted under individual subcontracting plans ☐ YES ☑ NO If no, skip to question (2)**

        **(a) FAR 52.219-9(l)(2)(i)(A). Does the SSR encompass all subcontracting under prime contracts and subcontracts with the awarding agency, regardless of the dollar value of the subcontracts and does the SSR includes indirect costs on a prorated basis? [Field 9] [Field 10] ☐ YES ☐ NO**

        **(b) FAR 52.219-9(l)(2)(i)(C). Did the Contractor submit a separate SSR to each executive agency covering only that agency's contracts, provided at least one of that agency's contracts is over $700,000 (over $1.5 million for construction of a public facility) and contains a subcontracting plan? ☐ YES ☐ NO**

        **(c) 52.219-9(l)(2)(i)(D). Is the SSR submitted annually, within thirty days (30) after the end of the Government's fiscal year [September 30]? ☐ YES ☐ NO**

        **(d) FAR 52.219-9(l)(2)(i)(E). Were subcontract awards that were related to work for more than one executive agency appropriately allocated on the SSR? ☐ YES ☐ NO ☐ N/A**

      **(2) Commercial Plan ☐ YES ☑ NO  If no, skip to question 3.**

        **(a) FAR 52.219-9(l)(2)(ii)(A).  Does the commercial SSR include all subcontract awards under the commercial plan in effect during the Government's fiscal year and all indirect costs? ☐ YES ☐ NO [Field 9] [Field 10]**

        **(b) 52.219-9(l)(2)(ii)(B). Is the commercial SSR submitted annually, within thirty days (30) after the end of the Government's fiscal year? ☐ YES ☐ NO**

        **(c) FAR 52.219-9(l)(2)(ii)(C). Has the Contractor specified the percentage of dollars attributable to each agency from which contracts for commercial items were received on the SSR? ☐ YES ☐ NO**

      **(3) Is the CEO (or most senior executive in the organization) named on SSR [block 13 of SSR]? ☑ YES ☐ NO**

      **(4) Did the CEO (or most senior executive in the organization) sign and keep the signed SSR on file? ☑ YES ☐ NO**

SUPP001163

   b.  Perform trend analysis of historical small business goal achievements (*last 5 years, if available*) from eSRS. Describe the underlying cause of trends, positive or negative.  Exhibit II.  DESCRIBE:



3. FAR 52.219-9(l)(1).  ISR performance (not applicable to Commercial or Comprehensive Plans)

   a.  Were ISRs submitted accurately in accordance with all the elements of FAR 52.219-9(l) and ISR instructions at eSRS.gov? [Field 11] ☐ YES  ☐ NO  DESCRIBE:

     NA

     **(1)**  **FAR 52.219-9(l)(1)(i).  During contract performance, were ISRs submitted within thirty days of March 31 and September 30? ☐ YES ☐ NO  Exhibit III**

     NA

     **(2)**  **FAR 52.219-9(l)(1)(i).  Were final ISRs submitted for each contract within thirty days of contract completion? ☐ YES ☐ NO**

     NA

     **(3)**  **FAR 52.219-9(l)(1)(ii).  If options were included on the requirement, was the dollar goal inserted on the ISR a sum of the base period through the current option? ☐ YES ☐ NO**

     NA

     **(4)**  **FAR 52.219-9(l)(1)(iii). Did the Contractor acknowledge receipt or reject the ISRs from the subcontractor(s)? ☐ YES ☐ NO ☐ N/A  Exhibit I**

   b. **FAR 19.701 and FAR 19.705-7(d).  Perform analysis of all regular and final ISRs.  Has the Contractor demonstrated a good faith effort in meeting the negotiated small business subcontracting goals?  ☐ YES    ☐ NO  Exhibit III**

     NA

LMC0001498

**b.** Perform trend analysis of historical small business goal achievements (*last 5 years, if available*) from eSRS. Describe the underlying cause of trends, positive or negative. **Exhibit II. DESCRIBE:**

3. **FAR 52.219-9(I)(1).** ISR performance (not applicable to Commercial or Comprehensive Plans)

    **a.** Were ISRs submitted accurately in accordance with all the elements of FAR 52.219-9(I) and ISR instructions at eSRS.gov? **[Field 11]** ☐ YES ☐ NO **DESCRIBE:**

        NA

        **(1)** **FAR 52.219-9(I)(1)(i).** During contract performance, were ISRs submitted within thirty days of March 31 and September 30? ☐ YES ☐ NO **Exhibit III**

        NA

        **(2)** **FAR 52.219-9(I)(1)(i).** Were final ISRs submitted for each contract within thirty days of contract completion? ☐ YES ☐ NO

        NA

        **(3)** **FAR 52.219-9(I)(1)(ii).** If options were included on the requirement, was the dollar goal inserted on the ISR a sum of the base period through the current option? ☐ YES ☐ NO

        NA

        **(4)** **FAR 52.219-9(I)(1)(iii).** Did the Contractor acknowledge receipt or reject the ISRs from the subcontractor(s)? ☐ YES ☐ NO ☐ N/A **Exhibit I**

    **b.** **FAR 19.701 and FAR 19.705-7(d).** Perform analysis of all regular and final ISRs. Has the Contractor demonstrated a good faith effort in meeting the negotiated small business subcontracting goals? ☐ YES ☐ NO **Exhibit III**

        NA

SUPP001165

---

## Part III – Contractor's Small Business Program

1. **Review of Small Business Program in accordance with FAR 52.219-9 [Field 13]**

   a. **FAR 52.219-9(d)(1). Does the Contractor express goals in terms of percentage of total planned subcontracting dollars for each small business category, in all plans?**
      ☑ YES ☐ NO

   b. **FAR 52.219-9(d)(2). Are there statements of total dollars planned to be subcontracted for each small business category in all plans?** ☑ YES ☐ NO

   c. **FAR 52.219-9(d)(3). Is there a description of the principal types of supplies and services to be subcontracted for each small business category?** ☑ YES ☐ NO

   d. **FAR 52.219-9(d)(4). Briefly describe the methodology used by the Contractor to develop subcontracting goals. Is the Contractor adhering to the method described in the plans to develop subcontracting goals?** ☑ YES ☐ NO  **DESCRIBE:**

   ██████████████████████████████████████████ This methodology has been found to be in compliance with FAR 52.219-9(d)(4).

   e. **FAR 52.219-9(d)(5). Briefly describe the methodology utilized by the Contractor to identify potential sources for solicitation purposes. Is the Contractor adhering to the method described in the approved small business subcontracting plans?** ☑ YES ☐ NO **DESCRIBE:**

   ██████████████████████████████████████████ . Sikorsky is found to be in compliance with FAR 52.219-9(d)(5).

---

LMC0001499

**f. FAR 52.219-9(d)(6). Are indirect costs included in establishing subcontracting goals?**
☐ YES ☑ NO

If indirect costs are included, briefly describe and analyze the methodology utilized by the Contractor to determine share of indirect costs for small business, veteran-owned small business concerns, service-disabled veteran-owned small business concerns, HUBZone small business concerns, small disadvantaged business concerns, and women-owned small business concerns. Is the Contractor adhering to the method described in the small business subcontracting plan? ☐ YES ☑ NO  DESCRIBE:

████████████████████████████████████████████████████████████

███████████████████████. As part of their FY16 640 review, the contractor was requested to develop a methodology to track their direct and indirect material parts spend purchased prior to award to the end-customer ████████████████████████████████████████ however, DCMA won't be able to validate the accuracy of the upgraded system until after the Fiscal Year 2018 ends.

**g. FAR 52.219-9(d)(7). Is the name of individual employed by the Contractor who administers the subcontracting program included in the plans, with a description of the duties?**
☑YES ☐ NO  Is the named person fulfilling the small business duties as described in the plans? ☑ YES ☐ NO  DESCRIBE:

Martha Crawford is correctly identified on the FY17 CSP as Sikorsky's SBLO along with a description of her duties. ████ ██████████████████████████████████ During the previous 640 review, it was recommended that Sikorsky implement stronger measures to ensure the ISR collection and review process was not broken. Based on the recommendations, Sikorsky██████████████████████████████████████████ ████ This review validates the implementation of the ISR tool. The purchase order sampled showed 40% of the subcontractors ISRs were submitted late. As a result, it is recommended that Sikorsky enhance their communication exchanges with their subcontractors to inform them of the importance of a timely ISR submission in accordance with the instructions of the eSRS.

**h. FAR 52.219-9(d)(8). Briefly describe the efforts by the Contractor to ensure small business concerns have an equitable opportunity to compete for subcontracts. Is the Contractor adhering to the method described in the plans to assure equitable subcontracting opportunities exist for small business?** ☑ YES ☐ NO  DESCRIBE:

A review of Sikorsky's procedures PUR 02-02-004 titled Sikorsky's Small Business programs details the duties of the SBLO and Buyers to ensure small business concerns have equitable opportunities to compete for subcontracts. ████████

████████████████████████████████████████████████████████████

**i. FAR 52.219-9(d)(9).**
(1) Is the Contractor adhering to the assurance that the Contractor will include clause FAR 52.219-8 "Utilization of Small Business Concerns" in all subcontracts that offer further subcontracting opportunities?✓☐ YES ☐ NO  Exhibit I

**f. FAR 52.219-9(d)(6). Are indirect costs included in establishing subcontracting goals?**
☐ YES  ✓ NO

If indirect costs are included, briefly describe and analyze the methodology utilized by the Contractor to determine share of indirect costs for small business, veteran-owned small business concerns, service-disabled veteran-owned small business concerns, HUBZone small business concerns, small disadvantaged business concerns, and women-owned small business concerns. Is the Contractor adhering to the method described in the small business subcontracting plan? ☐ YES ✓ NO  DESCRIBE:

As part of their FY16 640 review, the contractor was requested to develop a methodology to track their direct and indirect material parts spend purchased prior to award to the end-customer. however, DCMA won't be able to validate the accuracy of the upgraded system until after the Fiscal Year 2018 ends.

**g. FAR 52.219-9(d)(7). Is the name of individual employed by the Contractor who administers the subcontracting program included in the plans, with a description of the duties?**
✓ YES ☐ NO  Is the named person fulfilling the small business duties as described in the plans? ✓ YES ☐ NO  DESCRIBE:

Martha Crawford is correctly identified on the FY17 CSP as Sikorsky's SBLO along with a description of her duties. During the previous 640 review, it was recommended that Sikorsky implement stronger measures to ensure the ISR collection and review process was not broken. Based on the recommendations, Sikorsky This review validates the implementation of the ISR tool. The purchase order sampled showed 40% of the subcontractors ISRs were submitted late. As a result, it is recommended that Sikorsky enhance their communication exchanges with their subcontractors to inform them of the importance of a timely ISR submission in accordance with the instructions of the eSRS.

**h. FAR 52.219-9(d)(8). Briefly describe the efforts by the Contractor to ensure small business concerns have an equitable opportunity to compete for subcontracts. Is the Contractor adhering to the method described in the plans to assure equitable subcontracting opportunities exist for small business?** ✓ YES ☐ NO  DESCRIBE:

. The SBP's review of purchase orders validates this process is being followed and proper documentation was found in the Purchase Order file. Sikorsky is in compliance with FAR 52.219-9 (d)(8).

**i. FAR 52.219-9(d)(9).**
(1) Is the Contractor adhering to the assurance that the Contractor will include clause FAR 52.219-8 "Utilization of Small Business Concerns" in all subcontracts that offer further subcontracting opportunities? ✓ YES ☐ NO  Exhibit I

SUPP001168

(2) Is the Contractor requiring all subcontractors that receive subcontracts over $700,000 ($1.5 million for construction of any public facility with further subcontracting possibilities) except small business concerns to adopt a subcontracting plan? [Field 35] ☑ YES  ☐ NO  ☐ N/A  Exhibit I

## j. FAR 52.219-9(d)(10)

(1) 52.219-9(d)(10)(i). Does the Contractor cooperate in studies or surveys as may be required? ☑ YES ☐ NO

(2) FAR 52.219-9(d)(10)(ii). Does the Contractor submit periodic reports to determine extent of compliance to plans? ☑ YES ☐ NO

(3) FAR 52.219-9(d)(10)(iii). Does the Contractor include subcontracting data for each order when reporting subcontracting achievements for indefinite-delivery, indefinite-quantity contracts intended for use by multiple agencies? ☐ YES ☑ NO

(4) FAR 52.219-9(d)(10)(iv). Does the Contractor submit ISRs and/or SSRs? ☑ YES ☐ NO

(5) FAR 52.219-9(d)(10)(v). Does the Contractor ensure that its subcontractors submit ISRs and/or SSRs? ☑ YES ☐ NO ☐ N/A Exhibit I

(6) FAR 52.219-9(d)(10)(vi). Does the Contractor provide its prime contract number, its DUNS number, and the e-mail address of the Contractor's official responsible for acknowledging receipt of or rejecting the ISRs, to all first-tier subcontractors with subcontracting plans so they can enter this information into the eSRS when submitting their ISRs? ☑ YES ☐ NO ☐ N/A

(7) 52.219-9(d)(10)(vii). Does the Contractor require that each subcontractor with a subcontracting plan provide the prime contract number, its own DUNS number, and the e-mail address of the subcontractors official responsible for acknowledging receipt of or rejecting the SSRs, to its subcontractors with subcontracting plans? ☑ YES ☐ NO ☐ N/A

## k. FAR 52.219-9(d)(11). A description of the types of records that will maintained concerning procedures that have been adopted to comply with the requirements and goals in the plans including:

(1) FAR 52.219-9(d)(11)(i). Is the Contractor maintaining source lists (e.g. SAM), guides, and other data to identify small businesses? [Field 14] ☑ YES ☐ NO DESCRIBE:

Sikorsky is in compliance with FAR 52.219-9 (d)(11).

LMC0001501

SUPP001169

(2) **FAR 52.219-9(d)(11)(ii).  Is the Contractor maintaining records of organizations that were contacted by the Contractor in an attempt to locate sources that are small businesses?  [Field 15]  ☑ YES ☐ NO   DESCRIBE:**

████████████████████████████████████████████████
████████████████████████████████ . Other records were available as needed. A review of the records validate multiple organizations were sought in attempting to locate new small business suppliers. S korsky is found to be in compliance with this FAR requirement.

(3) **52.219-9(d)(11)(iii).  Is the Contractor maintaining records for each subcontract of more than $150,000?   [Field 18]  ☑ YES ☐ NO ☐ N/A  Exhibit I  DESCRIBE:**

████████████████████████████████████████████████
█████████████ The SBP's review of purchase orders validates this process is being followed and proper documentation was found in the Purchase Order file. Sikorsky is in compliance with subject requirement.

(4) **FAR 52.219-9(d)(11)(iv).  Is the Contractor maintaining records of any outreach efforts to contact trade associations, business development organizations, conferences and trade fairs and veteran service organizations? [Field 19] ☑ YES ☐ NO   DESCRIBE:**

████████████████████████████████████████████████
███████████████████████ Sikorsky is compliant with FAR 52.219-9(d) (11)(iv).

(5) **FAR 52.219-9(d)(11)(v).  Is the Contractor maintaining records of internal guidance and encouragement to buyers through (A) workshops, seminars, training, etc. and (B) monitoring performance to evaluate compliance with program requirements? [Field20] ☑ YES ☐ NO   DESCRIBE:**

S korsky provided records of small business program updates provided to all levels of the organization in FY17
████████████████████████████████████████████████
████████████████████████ Sikorsky is compliant with FAR 52.219-9(d)(11)(v).

LMC0001502

SUPP001170

**(6) FAR 52.219-9(d)(11)(vi). Is the Contractor maintaining records on a contract-by-contract basis, records to support award data submitted by the Contractor to the Government, including the name, address, and business size of each subcontractor. Contractors having commercial plans need not comply with this requirement. [Field 21] ☑ YES ☐ NO ☐ N/A to Commercial Plans DESCRIBE:**

Sikorsky maintains records in accordance with internal guidance provided in both Sikorsky's FY17 CSP and the SBLO Handbook. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Sikorsky is compliant with the subject FAR element.

**l.  FAR 52.219-9(d)(12). Did the Contractor make a good faith effort to acquire articles, equipment, supplies, services, or materials, or obtain the performance of construction work from the small business concerns that it used in preparing the bid or proposal, in the same or greater scope, amount, and quality used in preparing and submitting the bid or proposal? ☐ YES ☐ NO ☑ N/A**

**m.  FAR 52.219-9(d)(13). Did the Contractor provide the Contracting Officer with a written explanation if the Contractor fails to acquire articles, equipment, supplies, services or materials or obtain the performance of construction work as described in FAR 52.219-9(d)(12)? [Field 13] ☐ YES ☐ NO ☑ N/A**

**n.  FAR 52.219-9(d)(14). Has the Contractor prohibited a subcontractor from discussing with the Contracting Officer any material matter pertaining to payment to or utilization of a subcontractor? [Field 13] ☐ YES ☑ NO ☐ N/A**

**o.  FAR 52.219-9(d)(15). Does the Contractor pay its small business subcontractors on time and in accordance with the terms and conditions of the underlying subcontract, and notify the Contracting Officer when the prime Contractor makes either a reduced or an untimely payment to a small business subcontractor? [Field 13] ☑ YES ☐ NO**

**p.  FAR 52.219-9(e)(1). Is the Contractor assisting small businesses by arranging solicitations, time for the preparation of bids, quantities, specifications, and delivery schedules to facilitate the participation by such concerns? ☑ YES ☐ NO DESCRIBE:**

During the review, S korsky's team briefed on several instances in which assistance was provided to a supplier directly or indirectly. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Sikorsky's efforts are in accordance with FAR 52.219-9(e)(1).

**q.  FAR 52.219-9(e)(2). Is the Contractor providing adequate and timely consideration of small businesses in all "make-or-buy" decisions? ☑ YES ☐ NO DESCRIBE:**

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

LMC0001503

r. **FAR 52.219-9(e)(3). Is the Contractor counseling and discussing subcontracting opportunities with small businesses?**  ☑ YES ☐ NO  **DESCRIBE:**

███████████████████████████████████████████████████████

the provided counseling. Sikorsky is in compliance with FAR 52.219-9(e)(3).

s. **FAR 52.219-8(d)(5). Is the Contractor confirming a HUBZone small business concern is a certified HUBZone small business by SBA?**  ☑ YES ☐ NO  **Exhibit I**

t. **FAR 52.219-9(e)(5). Is the Contractor providing notice to subcontractors concerning penalties and remedies for misrepresentations of business status as a small business for the purpose of obtaining a subcontract?  [Field 22]**  ☑ YES ☐ NO  **DESCRIBE:**

███████████████████████████████████████████████████████

Sikorsky's practice of providing notice to subcontractors for misrepresentation is compliant with FAR 52.219-9(e)(5).

u. **FAR 52.219-9(e)(6). Is the Contractor providing notice to inform each unsuccessful small business offeror in writing of the name and location of the apparent successful offeror prior to award of the contract in which a small business concern received a small business preference for subcontracts over the Simplified Acquisition Threshold?**  ☐ YES ☐ NO  ☑ N/A

v. **FAR 52.219-9(e)(7). Has each subcontract been assigned a NAICS code and corresponding size standard that best describes the principal purpose of the subcontract?  [Field 36]**  ☑ YES ☐ NO

2. **Other Regulatory Compliance**

   a. **FAR 52.219-8(b).  Has the Contractor provided the maximum practicable opportunity to participate in performing contracts let by any Federal agency, including contracts and subcontracts for subsystems, assemblies, components, and related services for major systems for small business concerns, veteran-owned small business concerns, service-disabled veteran-owned small business concerns, HUBZone small business concerns, small disadvantaged business concerns, and women-owned small business concerns?  [Field 39]**  ☑ YES ☐ NO  **DESCRIBE:**

   This review covers only DoD contracts, no factors were discovered that could hinder maximum practicable opportunities offered to small businesses and its subcategories.

r. **FAR 52.219-9(e)(3). Is the Contractor counseling and discussing subcontracting opportunities with small businesses?** ☑ YES ☐ NO  **DESCRIBE:**

Sikorsky is in compliance with FAR 52.219-9(e)(3).

s. **FAR 52.219-8(d)(5). Is the Contractor confirming a HUBZone small business concern is a certified HUBZone small business by SBA?** ☑ YES ☐ NO  Exhibit I

t. **FAR 52.219-9(e)(5). Is the Contractor providing notice to subcontractors concerning penalties and remedies for misrepresentations of business status as a small business for the purpose of obtaining a subcontract? [Field 22]** ☑ YES ☐ NO  **DESCRIBE:**

Sikorsky's practice of providing notice to subcontractors for misrepresentation is compliant with FAR 52.219-9(e)(5).

u. **FAR 52.219-9(e)(6). Is the Contractor providing notice to inform each unsuccessful small business offeror in writing of the name and location of the apparent successful offeror prior to award of the contract in which a small business concern received a small business preference for subcontracts over the Simplified Acquisition Threshold?** ☐ YES ☐ NO ☑ N/A

v. **FAR 52.219-9(e)(7). Has each subcontract been assigned a NAICS code and corresponding size standard that best describes the principal purpose of the subcontract? [Field 36]** ☑ YES ☐ NO

2. **Other Regulatory Compliance**

a. **FAR 52.219-8(b). Has the Contractor provided the maximum practicable opportunity to participate in performing contracts let by any Federal agency, including contracts and subcontracts for subsystems, assemblies, components, and related services for major systems for small business concerns, veteran-owned small business concerns, service-disabled veteran-owned small business concerns, HUBZone small business concerns, small disadvantaged business concerns, and women-owned small business concerns? [Field 39]** ☑ YES ☐ NO  **DESCRIBE:**

This review covers only DoD contracts, no factors were discovered that could hinder maximum practicable opportunities offered to small businesses and its subcategories.

LMC0001504-A

SUPP001173

b. **FAR 52.219-8(b).  Has the Contractor established procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns? [Field 32] ☑ YES  ☐ NO**
**Is the contractor ensuring timely payment of subcontractors? [Field 32]  ☑ YES  ☐ NO**
**DESCRIBE:**

The SBP's is not aware of any formal or informal complaint from Sikorsky's small business suppliers as it relates to not being paid on time. ████████████████████████████████████

S korsky is compliant with FAR 52.219-8(b).

c. **FAR 52.232-40. Providing Accelerated Payments to Small Business Subcontractors. If this clause is included in their prime contract(s) is the Contractor making the required accelerated payments to their small business subcontractor(s), as prescribed? [Field 23] ☐ YES ☐ NO ☑ N/A**

d. **Has the Contractor adequately addressed all previous Corrective Action Plans (CAPs)? [Field 24]  ☐ YES ☐ NO ☑ N/A**
**If applicable, describe the previous findings/deficiencies and the corrective actions implemented.**

NA

3. **Additional Program Administration**

   a. **Has a company-wide small business policy statement been issued by current senior management and disseminated throughout the company?  [Field 25] ☑ YES ☐ NO**

   **Issued By:** ████████          **Title:** ████████          **Date:** ████████

   b. **SBLO appointment/authority placement in the organization:**

      (1) **Has the SBLO been formally appointed by senior level management to effectively administer the program? [Field 26]  ☑ YES  ☐ NO**

      (2) **SBLO is a: ☐ Corporate ☑ Division (if a division SBLO, describe the relationship between this division and the corporate SBLO).  DESCRIBE:**

      ████████████████████████████████████
      ████████████████████████████████████

      (3) **Is there an organization chart that displays the position of the SBLO within the organization? [Field 27] ☑ YES  ☐ NO**

LMC0001505

c. **Monitoring small business program performance and requirements:**

(1) **Are senior management and staff briefed regularly on achievement and/or program deficiencies? [Field 28]** ☑ YES   ☐ NO

Copies of the presentations to                                                                                       were
shared with the DCMA SBP.

(2) **What does the Contractor do to improve subcontracting performance if goals are not being met? [Field 29]**

d. **Small Business Subcontracting Procedures**

(1) **Does the Contractor have company policies or procedures in place for the small business subcontracting program? [Field 30]** ☑ YES   ☐ NO  **DESCRIBE:**

. A copy of the                                was
provided and reviewed by the DCMA SBP.

(2) **Do the policies or procedures promote participation of small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns?** ☑ YES   ☐ NO ☐ N/A   **DESCRIBE:**

The DCMA SBP review of the procedures make no exception on promoting participation of small business concerns.

**Part IV – Comprehensive Subcontracting Plan (CSP) Test**
**Program Applies to CSP Only - If not applicable skip to Part V**

1. **Describe the efforts the firm uses to achieve all negotiated initiatives.**

   This initiative was on track through third quarter of FY17 when Sikorsky's
   as such this initiative was not met. Because of the late notice to cancel this

   Is the firm making adequate progress to meet all milestones for all negotiated initiatives?
   ☐ YES  ☑ NO

2. **TARGET INDUSTRIES**
   Has the contractor met, or are they on track to meet all selected industry category goals?
   ☑ YES  ☐ NO

   Describe the method the firm uses to improve performance by small business in the selected industry categories.

3. **List the major programs(s) the firm is monitoring as requested by the customer.**

| Program Name | Discuss: | Add/Remove | |
|---|---|---|---|
| NA | | ☐ Add | ☐ Remove |
| | | ☐ Add | ☐ Remove |
| | | ☐ Add | ☐ Remove |
| | | ☐ Add | ☐ Remove |

4. **Did the firm fully comply with the request to provide program specific information as requested by the customer?**   ☑ YES ☐ NO

5. **PERFORM INTERIM ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN**
   Indicate by analysis and contractor concurrence, one or more of the plan's goals may not be attained by end of performance.

## Part IV – Comprehensive Subcontracting Plan (CSP) Test
## Program Applies to CSP Only - If not applicable skip to Part V

1. Describe the efforts the firm uses to achieve all negotiated initiatives.

██████████████████████████ as such this initiative was not met. Because of the late notice to cancel this requirement, the SBLO was not able to replace or substitute this initiative ██████████

██████████████████████████████████████████

Is the firm making adequate progress to meet all milestones for all negotiated initiatives?
☐ YES  ✓ NO

**2. TARGET INDUSTRIES**
Has the contractor met, or are they on track to meet all selected industry category goals?
✓ YES  ☐ NO

Describe the method the firm uses to improve performance by small business in the selected industry categories.

██████████████████████████

██████, Sikorsky was able to exceed the goals for ██████████ for this
NAICS. ██████

3. List the major programs(s) the firm is monitoring as requested by the customer.

| Program Name | Discuss: | Add/Remove | |
|---|---|---|---|
| NA | | ☐ Add | ☐ Remove |
| | | ☐ Add | ☐ Remove |
| | | ☐ Add | ☐ Remove |
| | | ☐ Add | ☐ Remove |

4. Did the firm fully comply with the request to provide program specific information as requested by the customer?   ✓ YES ☐ NO

5. PERFORM INTERIM ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN
Indicate by analysis and contractor concurrence, one or more of the plan's goals may not be attained by end of performance.

SUPP001177

## Part IV – Comprehensive Subcontracting Plan (CSP) Test
## Program Applies to CSP Only - If not applicable skip to Part V

1. **Describe the efforts the firm uses to achieve all negotiated initiatives.**



   This initiative was on track through third quarter of FY17 when Sikorsky's _____ as such this initiative was not met. Because of the late notice to cancel this ⊞

   Is the firm making adequate progress to meet all milestones for all negotiated initiatives?
   ☐ YES  ✓ NO

2. **TARGET INDUSTRIES**
   Has the contractor met, or are they on track to meet all selected industry category goals?
   ✓ YES  ☐ NO

   Describe the method the firm uses to improve performance by small business in the selected industry categories.



   _____ , Sikorsky was able to exceed the goals for _____ for this NAICS. _____

   The SBP's validation of FY18 records support awards made for a total of _____

3. **List the major programs(s) the firm is monitoring as requested by the customer.**

| Program Name | Discuss: | Add/Remove | |
|---|---|---|---|
| NA | | ☐ Add | ☐ Remove |
| | | ☐ Add | ☐ Remove |
| | | ☐ Add | ☐ Remove |
| | | ☐ Add | ☐ Remove |

4. **Did the firm fully comply with the request to provide program specific information as requested by the customer?**   ✓ YES  ☐ NO

5. **PERFORM INTERIM ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN**
   Indicate by analysis and contractor concurrence, one or more of the plan's goals may not be attained by end of performance.

LMC0001507-B

| COMPREHENSIVE PLAN | Goals May Not Be Met – Check Box(es) where goals may not be met | | | | | | Demonstrated Good Faith Efforts |
|---|---|---|---|---|---|---|---|
| | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | |
| Midyear SSR Date Range: | ☐ | ☐ | ☐ | ✓ | ☐ | ☐ | ✓ Yes ☐ No |

**Recommended Action:**

As of mid-year FY17 review, Sikorsky was meeting five out of six of its negotiated goals and was falling short in meeting the HUBZone goal. The DCMA SBP assessment was that the variance of ▮ from the ▮ HUBZone goal was not significant as there were six more months left of procurements and assurances were made by the SBLO on their ability to meet this goal based on ▮ On the other hand, the SBP's mid-year review assessed the risk on not meeting their 2nd negotiated initiative to ▮ as moderate but the status provided by the contractor mentioned the ▮ was on track. During the review of Sikorsky's 3rd quarter report, the SBP requested via email on August 3, 2018 an updated status on meeting this initiative but no factors hindering the ▮ was ▣

## 6. PERFORM FINAL ANALYSIS OF COMPREHENSIVE SUBCONTRACTIN

| COMPREHENSIVE PLAN | All Goals Were Met | Goals Not Met – Check Box(es) | | | | | | Demonstrated Good Faith Efforts |
|---|---|---|---|---|---|---|---|---|
| | | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | |
| Year End SSR Date Range: | ✓ Yes ☐ No | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ YES ☐ No |

**Recommended Action:**

Sikorsky's FY17 negotiated goals and actual performance:

▮▮▮

---

### Part V – Program Rating Determination

The DCMA Small Business Programs Compliance rating scale below is a modified version of FAR 42.1503-Contractor Performance Information, Procedures, and Table 42-2—Evaluation Ratings Definitions.

Evaluation Ratings Definitions (for the Small Business Subcontracting Evaluation Factor, when FAR clause 52.219-9 is used).

| Rating | Definition | Note |
|---|---|---|
| ☐ Exceptional | Performance meets Very Good rating and exceeds many subcontracting program elements to the Government's benefit. There should have been NO weaknesses identified. Identify multiple significant events that were exceptional and state how they were benefits to the Government. | To justify an Exceptional rating, identify multiple documented successes that exceed the subcontracting plan requirements. State how they were a benefit to small business utilization. An Exceptional rating signifies that the company has an exemplary program or practices that could be used as a model by other contractors in similar industries. There is no action taken or planned action to be taken for compliance with |

| COMPREHENSIVE PLAN | Goals May Not Be Met – Check Box(es) where goals may not be met | | | | | | Demonstrated Good Faith Efforts |
|---|---|---|---|---|---|---|---|
| | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | |
| Midyear SSR Date Range: | ☐ | ☐ | ☐ | ☑ | ☐ | ☐ | ☑ Yes ☐ No |

**Recommended Action:**

more months left of procurements and assurances were made by the SBLO on their ability to meet this goal based on ▮▮▮ On the other hand, the SBP's mid-year review assessed the risk on not meeting their 2nd negotiated initiative to ▮▮▮ as moderate but the status provided by the contractor mentioned the ▮▮▮ was on track. During the review of Sikorsky's 3rd quarter report, the SBP requested via email on August 3, 2018 an updated status on meeting this initiative but no factors hindering the ▮▮▮ was communicated to the SBP at that time, accordingly it was expressed that the ▮▮▮ was on track be placed in Q4.

## 6. PERFORM FINAL ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN

| COMPREHENSIVE PLAN | All Goals Were Met | Goals Not Met – Check Box(es) | | | | | | Demonstrated Good Faith Efforts |
|---|---|---|---|---|---|---|---|---|
| | | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | |
| Year End SSR Date Range: | ☑ Yes ☐ No | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ YES ☐ No |

**Recommended Action:**

Sikorsky's FY17 negotiated goals and actual performance:

▮▮▮

### Part V – Program Rating Determination

The DCMA Small Business Programs Compliance rating scale below is a modified version of FAR 42.1503-Contractor Performance Information, Procedures, and Table 42-2—Evaluation Ratings Definitions.

Evaluation Ratings Definitions (for the Small Business Subcontracting Evaluation Factor, when FAR clause 52.219-9 is used).

| Rating | Definition | Note |
|---|---|---|
| ☐ Exceptional | Performance meets Very Good rating and exceeds many subcontracting program elements to the Government's benefit. There should have been NO weaknesses identified. Identify multiple significant events that were exceptional and state how they were benefits to the Government. | To justify an Exceptional rating, identify multiple documented successes that exceed the subcontracting plan requirements. State how they were a benefit to small business utilization. An Exceptional rating signifies that the company has an exemplary program or practices that could be used as a model by other contractors in similar industries. There is no action taken or planned action to be taken for compliance with |

48 CFR 52.219-8, 13 CFR 125.3 & 48 CFR 52.219-9.

☑ **Very Good** | **Performance meets Satisfactory rating and exceeds one subcontracting program element to the Government's benefit. There should have been NO weaknesses identified. Identify at least one significant event and state how it was a benefit to the Government.**

To justify a Very Good rating, identify a significant documented success of exceeding one or more subcontracting plan elements. State how it was a benefit to small business utilization. Provided documentation of achievements and success stories to support efforts demonstrated. There is no action taken or planned action to be taken for compliance with 48 CFR 52.219-8, 13 CFR 125.3 & 48 CFR 52.219-9.

☐ **Satisfactory** | **Performance meets the subcontracting program elements to the Government's benefit. The performance of the subcontracting plan requirement's elements or sub-elements being evaluated was accomplished with only minor problems or major problems the contractor recovered from without impact to the contract/order or subcontracting program elements. The corrective actions taken by the contractor were highly effective. Also, there should have been NO weaknesses identified. A fundamental principle of assigning this rating is that the contractor will not be evaluated with a rating lower than Satisfactory solely for not performing beyond the requirements of the subcontracting plan elements.**

Examples of meeting the subcontracting program elements: Meet or on track to meet all goals as negotiated per contract. The contractor met subcontracting plan(s) elements, instituting initiatives to assist, promote, and utilize SB, SDB, WOSB, HUBZone, VOSB, and SDVOSB. The contractor complied with 48 CFR 52.219-8, Utilization of Small Business Concerns which is inclusive of the requirement for a large business to get a written size self-certification from each small business subcontractor accurately reflecting the firm's socio-economic status. The contractor met any other small business participation requirements incorporated in the contract(s)/order(s). The contractor fulfilled the requirements of the Federal Government's Subcontracting program as outlined in 13 CFR 125.3 & 48 CFR 52.219-9. The contractor accurately completed and submitted Individual Subcontract Reports and/or Summary Subcontract Reports. The contractor responded to rejected reports within 30 days of rejection notice. Reviewed and accepted or rejected their other than small business (OTSB) lower tier subcontractors' Individual Subcontract Reports within 60 days of submittal. Ensured their OTSB responded to rejected reports within 30 days of rejection notice. The contractor ensured that all levels of OTSB subcontractor flow down the requirement to submit all of their Individual Subcontract Reports and/or Summary Subcontract Reports as required by regulation. Ensured that all levels of OTSB subcontractor flow down

the requirement to review and accept or reject their OTSB Individual Subcontract Reports within 60 days of submittal and respond to rejected reports within 30 days of rejection notice.

Note: To justify a Satisfactory rating, there are multiple documented successes to identify meeting or on track to meet the negotiated goals for each contract. Identify multiple documented successes of meeting subcontracting plan elements. There is no action taken or planned action to be taken for compliance with 48 CFR 52.219-8, 13 CFR 125.3 & 48 CFR 52.219-9.

☐ Marginal | Performance does not meet some subcontracting program elements and contractual requirements. The contractual performance of the element or sub-element being evaluated reflects a serious problem for which the contractor has not yet identified corrective actions. The contractor's proposed actions appear only marginally effective or were not fully implemented.

Examples of marginally meeting the subcontracting program elements: Demonstrated a good faith effort to meet all of the negotiated subcontracting goals per contract. The contractor demonstrated a good faith effort to meet all of the subcontracting plan(s) elements, instituting initiatives to assist, promote, and utilize SB, SDB, WOSB, HUBZone, VOSB, and SDVOSB. Complied with 48 CFR 52.219-8, Utilization of Small Business Concerns is inclusive of the requirement for a large business to get a written size self-certification from each small business subcontractor accurately reflecting the firm's socio-economic status. The contractor demonstrated a good faith effort to meet any other small business participation requirements in the contract/order. Submitted Individual Subcontract Reports and/or Summary Subcontract Reports but not within the time frame required by regulation. The contractor has consulted DCMA and SBA for assistance. Demonstrated a good faith effort to review and accept or reject their OTSB lower tier subcontractors' Individual Subcontract Reports within 60 days of submittal. Demonstrated a good faith effort to ensure their OTSB responded to rejected reports within 30 days of rejection notice. The contractor demonstrated a good faith effort to ensure that all levels of OTSB subcontractor flow down the requirement to submit all of their Individual Subcontract Reports and/or Summary Subcontract Reports as required by regulation. Demonstrated a good faith effort to ensure that all levels of OTSB

subcontractor flow down the requirement to review and accept or reject their OTSB Individual Subcontract Reports within 60 days of submittal and respond to rejected reports within 30 days of rejection notice.

Note: To justify Marginal performance, identify a significant event in each category that the contractor had trouble overcoming and state how it impacted the Government and small business utilization.  A Marginal rating should be supported by referencing the good faith effort to correct the deficiency. Identify multiple documented concerns of not meeting other subcontracting plan elements. There is evidenced action and planned action to be taken that demonstrated non-compliance pursuant to 48 CFR 52.219-8, 13 CFR 125.3 & 48 CFR 52.219-9. Explain the good faith effort taken by the OTSB to overcome the challenge and describe how it impacted small business utilization.  The DCMA Small Business Professional (SBP) will notify the Administrative Contracting Officer (ACO) and will notify SBA's applicable Area Director in the SBA Area in which the firm business resides.

☐  Unsatisfactory – Performance does not meet most subcontracting program element requirements and recovery is not likely in a timely manner. The contractual performance of the element or sub-element contains a serious problem(s) for which the contractor's corrective actions appear or were ineffective.

Examples of Unsatisfactory performance of meeting the subcontracting program elements: A good faith effort was not demonstrated to meet all of the negotiated subcontracting goals per contract.  A good faith effort was not demonstrated to meet all of the negotiated initiatives to assist, promote and utilize SB, SDB, WOSB, HUBZone, VOSB, and SDVOSB. A good faith effort was not demonstrated to comply with FAR 52.219-8, Utilization of Small Business Concerns which is inclusive of the requirement for a large business to get a written size self-certification from each small business subcontractor accurately reflecting the firm's socio-economic status.  A good faith effort was not demonstrated to comply with any other small business participation requirements in the contract/order. A good faith effort was not demonstrated to review and accept or reject their OTSB lower tier subcontractors' Individual Subcontract Reports within 60 days of submittal.  A good faith effort was not demonstrated to ensure that all levels of OTSB subcontractor flow down the requirement to review and accept or reject their OTSB Individual Subcontract Reports within 60 days of submittal and respond to rejected reports within 30 days of rejection notice.

**NOTE:** To justify an Unsatisfactory rating, identify multiple significant events in each category that the contractor had trouble overcoming and state how it impacted the Government. A singular problem, however, could be of such serious magnitude that it alone constitutes an unsatisfactory rating. An Unsatisfactory rating should be supported by referencing where there was no documentation to identify good faith effort to meet the subcontracting program elements. There is evidenced action and planned action to be taken that demonstrated non-compliance pursuant to 48 CFR , FAR 52.219-8, 13 CFR 125.3 & 48 CFR, FAR 52.219-9. Explain how they did not show a good faith effort to overcome the challenge and describe how it impacted small business utilization. The DCMA SBP will notify the ACO and SBA's applicable Area Director in the SBA Area in which the business firm resides.  *"Negotiated goals" refers to the dollar and percentage goals in the approved subcontracting plan. (For rating purposes, the reviewer will compare the percentage goals to the percentage achievements).

---

1.  **Exceptional Rating Justification**

    For an "Exceptional" rating, identify multiple documented successes that exceed the subcontracting plan requirements. State how they were a benefit to small business utilization. An Exceptional rating signifies that the company has an exemplary program or practices that could be used as a model by other contractors in similar industries.  There is no action taken or planned action to be taken for compliance with 48 CFR 52.219-8, 13 CFR 125.3 & 48 CFR 52.219-9. [Field 38]   DESCRIBE:

2.  **Very Good Rating Justification**

    For a "Very Good" rating, identify a significant documented success of exceeding one or more subcontracting plan elements. State how it was a benefit to small business utilization. Provided documentation of achievements and success stories to support efforts demonstrated. There is no action taken or planned action to be taken for compliance with 48 CFR 52.219-8, 13 CFR 125.3 & 48 CFR 52.219-9.  [Field 38]  DESCRIBE:

    Sikorsky's exceeded 5 out of 6 FY17 negotiated goals for SB, SDB, WOSB, HUBZone and VOSB which merit them a Very Good Rating . They also met their SDVOSB goal.

    

    Additionally, Sikorsky has been proactive in ensuring DCMA recommendations are address by ███████████
    ███████████          Finally, Sikorsky's ███████████████
    ███████    is considered noteworthy.

SUPP001184

## PART VI –Summary

**1. Program Rating:** Very Good

**2. Areas that are noncompliant with the FAR, ISR, or SSR instructions.**

None

**3. Recommendations: (NOTE: A recommendation is an area to improve the program that is not required by regulation.)**

S korsky failed to notify DCMA that their initiative to ███████████████████████████████ will not be met and provide a mitigation plan. DCMA recommends that Sikorsky promptly notifies the DCMA SPB whenever there is a change that will impact their performance. This notification should include a mitigation plan. Further, it is important that contractors negotiate attainable and measurable initiatives and target industry goals as part of their CSP plan.

**SUPP001185**

**4. Additional Remarks:**

**5. Methodology for selection of contracts reviewed.**

This review was based on 1___ DCMA administered contracts with small business subcontracting plans out of a total population of ▮___ DCMA administered contracts with small business subcontracting plans for the review period. Exhibit III.

This review was based on 15___ subcon▮cts with large businesses over $700,000, as applicable, out of a total population of ▮_ subcontracts with large businesses over $700,000, as applicable, for the review period. Exhibit I Part 1.

This review was based on 25___ subcontracts over $150,000 out of a total population of ▮ subcontracts over $150,000 for the review period. Exhibit I Part 2.

The review was based on 81___ subcontracts out of a total population of ▮ subcontracts for the review period. Exhibit I Part 3.

The subcontracts were randomly selected. If a sampling methodology other than random was used state how the sample was selected.

**6. Exit Interview Participants:**

| Government: | Contractor: |
|---|---|
| 1. Luz M. Vasquez | 1. Martha Crawford |
| 2. Shelly Thomas | 2. Amy Johnson |
| 3. Kimberly Gaskins | 3. Pat DeSanto |
| 4. Michael Turnyanszki | 4. Owen Whitehurst |
| 5. | 5. M ke Ciocca |
| 6. | 6. Keith Richardson |

**7. DCMA Small Business Professional Signature:**

VASQUEZ.LUZ.MARIA.1182397349    Digitally signed by VASQUEZ.LUZ.MARIA.1182397349
Date: 2018.04.12 13:37:07 -05'00'

**8. DCMA Small Business Center Supervisor Signature:**

THOMAS.SHELLY.S.1201284615    Digitally signed by THOMAS.SHELLY.S.1201284615
DN: c=US, o=U.S. Government, ou=DoD, ou=PKI, ou=DCMA,
cn=THOMAS.SHELLY.S.1201284615
Date: 2018.04.13 10:36:59 -04'00'

**LMC0001514**

# EXHIBIT E-4

**SUPP001139**

## DEFENSE CONTRACT MANAGEMENT AGENCY (DCMA)
## REVIEW OF CONTRACTOR'S COMPREHENSIVE SUBCONTRACTING PROGRAM

### PART I – GENERAL INFORMATION

| | |
|---|---|
| 1. CONTRACTOR:<br>Name: Sikorsky Aircraft Corporation (SAC)<br>Address 1: 6900 Main Street<br>Address 2:<br>City/State/Zip: Stratford, CT 06615<br>CAGE: 78286    DUNS: 835551474 | 1.a. SMALL BUSINESS LIAISON OFFICER (SBLO)<br>Name: Martha Crawford<br>Phone: (b) (6)    FAX:<br>E-mail: (b) (6)<br>1.b. ALTERNATE SMALL BUSINESS LIAISON OFFICER (SBLO)<br>Name:<br>Phone:    FAX:<br>E-mail: |
| 2. PROGRAM MANAGER, COMPREHENSIVE SUBCONTRACTING PROGRAM<br><br>Name: Micole Stephens<br>Phone: (b) (6)    FAX:<br>E-mail: (b) (6) | 3. DIVISION CHIEF, COMPREHENSIVE SUBCONTRACTING PROGRAM<br>Name: Margarette Trimble-Williams<br>Phone: (b) (6)    FAX:<br>E-mail: (b) (6) |
| 4. SMALL BUSINESS ADMINISTRATION (SBA) COMMERCIAL<br>MARKETING REPRESENTATIVE (CMR) http://www.sba.gov/GC/cmr.html<br>Name: Sandy Liu<br>Phone:    FAX:<br>E-mail: | 5. ADMINISTRATIVE CONTRACTING OFFICER<br>Name: Kimberly Gaskins<br>Phone: (b) (6)    FAX:<br>E-mail: (b) (6) |

DCMA/SMALL BUSINESS ADMINISTRATION (SBA), JOINT REVIEW:
☒ Yes    ☐ No IF NOT, WHY NOT:

Was this an on-site review?  ☐ YES ☒ NO    Or, a virtual review? ☒ YES ☐ NO

| 6. PERIOD COVERED BY THIS REVIEW:<br>6.a.From: 1 October 2013 | 7.a. DATE OF THIS REVIEW: | 8.a. DATE OF LAST REVIEW DATA:  April 28-May 1, 2015 |
|---|---|---|
| | 7.b. TYPE OF REVIEW:<br>Virtual Review | 8.b. TYPE OF LAST REVIEW DATA:<br>Virtual Review |
| 6.b. To:  30 September 2014 | 7.c. RATING OF THIS REVIEW DATA:<br>Marginal | 8.c. RATING OF LAST REVIEW DATA:<br>Outstanding |
| | 7.d. RISK OF THIS REVIEW DATA:<br>High | 8.d. RISK OF LAST REVIEW DATA<br>Moderate |

9. DOD RATIOS:
   a. Total Annual Company Sales: ▉

   b. Total dollar value of contracts that are with DoD (including those without plans): $ ▉

10. TYPE OF SUBCONTRACT PLAN(S):

☐ Individual Plan(s): Number of plans:
☐ Commercial Plan: Approving authority:          Period Covered From:          Period Covered To:
☒ Comprehensive Plan: Approving authority:        Period Covered From: October 1, 2013    Period Covered To: September 30, 2014
☐ Master Plan: Approving authority:               Period Covered From:          Period Covered To:
☐ Other: Specify Type:

11. List Contracts Awarded with a Deficient Subcontracting Plan: Not applicable to comprehensive subcontracting plan participants.

Number of Plans:          Total Face Value: $
Noted Discrepancies – Contract Number:          Delivery Order:          Total Face Value $
Contract Deficiency Report created?    ☐ Yes    ☐ No (retain DD1716)
Remarks:
Contract Deficiency Report (DD1716) ☐ Delete ☐ Add

12. List Contracts Awarded without a Subcontracting Plan, when a Plan was required: Not applicable to comprehensive subcontracting plan participants.
Number of Plans:          Total Face Value: $
Noted Discrepancies – Contract Number:          Delivery Order:          Total Face Value $
Contract Deficiency Report created?    ☐ Yes    ☐ No (retain DD1716)
Remarks:
Contract Deficiency Report (DD1716) ☐ Delete ☐ Add

DCMA Form 640 July 2013 revision          **FOR OFFICAL USE ONLY**          Page 1 of 20

Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001473**

SUPP001140

# PART II – CONTRACTOR'S COMPREHENSIVE SUBCONTRACTING PERFORMANCE
## SUBCONTRACTING PERFORMANCE FACTORS
*Compliance with FAR requirements in this part establish the basic requirements for an acceptable rating*

1. OVERALL SUBCONTRACTING PERFORMANCE – SUMMARY SUBCONTRACTING REPORT (SSR) SUBMISSION (FAR 52-219-9(d) (1), (2) & (10) (iii) & (iv)

   a. WERE SSR REPORTS SUBMITTED IN ACCORDANCE WITH FAR REQUIREMENTS AND SSR INSTRUCTIONS?
    ☐ YES  ☒ NO.   Identify deficiencies:

The purchases sampled over $650K in support of the SSR included internal purchases within UTC and Sikorsky.  Per the guidance that governs the completion of the SSR that state, eSRS should exclude purchases from a corporation, company, or subdivision that is an affiliate of the prime/subcontractor (reference esrs.symplicity.com User Guides) in its SSR report.  DCMA was unable to determine if the internal purchases were included in the FY14 SSR.  It is recommended that Sikorsky provide assurances that internal purchases are not included in the SSR's.

████████████████████████████  It is recommended that the SSR reported to DoD include only dollars attributed to DoD.  Reference the esrs.symplicity.com site, User Guides for items to be excluded from this report.

The Allocation Rate was applied as the Indirect subcontracting rate on the FY14 SSR.  ████████████████████████. It is recommended that the ████████████ be removed from the DoD allocation rate.  Sikorsky has an internal SBLO manual and Standard Work Instructions that correctly describes the application of the Indirect Subcontracting Rate.  After review, it was determined that Sikorsky did not follow the instructions provided in their manual.  It is recommended that the correct application of the indirect rate be applied to the dollars reported on the SSR or elect not to include indirect subcontracting in your subcontracting plan.

When the SSR was completed, the information was not preserved at the time of submission.  As a result, transactions made after that date had an impact on the purchase orders that are a part of the FY14 SSR.  Sikorsky was unable to go reproduce a report that displays the dollar amounts reported on the FY14 SSR.  It is Recommend that Sikorsky take a snapshot of the Purchase order file the moment that the SSR is completed, so that the SSR can be duplicated.

Purchases in support of Speculative Sales are included in the dollars reported on the SSR.  It is recommended that Sikorsky attribute a DoD prime/subcontract contract number for all dollars counted toward DoD performance goals.  Reference the esrs.symplicity.com site, User Guides for items that should be excluded from this report.

DCMA will reject your FY14 based on these findings.

   b. VERIFY ACCURACY OF SSR REPORTS:
  Sikorsky was unable to provide supporting documentation to DCMA to verify the accuracy of the FY14 SSR.

   c. PERFORM TREND ANALYSIS OF PAST PERFORMANCE (*Last 5 years, if available*) AND DISCUSS TRENDS, POSITIVE OR NEGATIVE:

NOTE:  Local spreadsheets, databases that contain the information are acceptable as attachment.

DISCUSS:

DCMA Form 640 July 2013 revision        FOR OFFICAL USE ONLY        Page 2 of 20
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001474

SUPP001141

| Fiscal Year | Total Subcontracting Dollars (per the SSR) | | Small Business | | | |
|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | $ Goal | $ Actual | % Goal | % Actual |
| | | | | | | |

| Fiscal Year | Small Disadvantaged Business | | | | Women-Owned Small Business | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| | | | | | | | | |

| Fiscal Year | HBCU/MI | | | | Hub-Zone Businesses | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| | | | | | | | | |

| Fiscal Year | Veteran-Owned Small Business | | | | Service Disabled Veteran-Owned Small Business | | | |
|---|---|---|---|---|---|---|---|---|
| | $ Goal | $ Actual | % Goal | % Actual | $ Goal | $ Actual | % Goal | % Actual |
| | | | | | | | | |

2. INDIVIDUAL SUBCONTRACT REPORT (ISR) – (Not applicable to Commercial or Comprehensive Plans)
   a. WERE ISR REPORTS SUBMITTED IN ACCORDANCE WITH FAR REGULATIONS AND ISR INSTRUCTIONS?
      ☐ YES   ☐ NO.   Identify deficiencies: ☒ Not applicable to Comprehensive Plans

   b. WERE THE ISR REPORTS ACCURATE?
      ☐ YES   ☐ NO.   Identify deficiencies: ☒ Not applicable to Comprehensive Plans

   c. PERFORM ANALYSIS OF ALL ACTIVE CONTRACTS WITH SUBCONTRACTING PLANS: - (Not applicable to Comprehensive Plans)   List contracts with Plans, which by analysis and contractor concurrence, indicate one or more of the plan goals **may not** be attained by end of performance.

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001475

| Contract Number | Goal May Not Be Met – Check Box(es) Where goals may not be met | | | | | | Demonstrated Good Faith Effort | Rationale/Recommendations/ Customer Coordination? |
|---|---|---|---|---|---|---|---|---|
| | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | | |
| N/A | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ YES ☐ No | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ YES ☐ No | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ YES ☐ No | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ YES ☐ No | |
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ YES ☐ No | |
| Total: | | | | | | | | |

See Attached, if necessary. ☐ Yes ☐ No

d. PERFORM ANALYSIS OF COMPLETED SUBCONTRACTING PLANS (FINAL SF 294) FOR THIS REVIEW PERIOD.

| COMPLETED CONTRACTS | All Goals Were Met | Goals Not Met – Check Box(es) | | | | | | Demonstrated Good Faith Effort | Recommended Action |
|---|---|---|---|---|---|---|---|---|---|
| | | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | | |
| N/A | ☐ YES ☐ No | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ YES ☐ No | |
| | ☐ YES ☐ No | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ YES ☐ No | |
| Total: | | | | | | | | | |

See Attached, if necessary. ☐ Yes ☐ No

3. **FOR COMPREHENSIVE SUBCONTRACTING PLANS ONLY INITIATIVES:**

a. Describe the efforts the firm uses to achieve all negotiated initiatives? Describe:

████████████████████████████████

████████████████████████ Sikorsky achieved the goal in this Initiative by ████

████████████████████████████████

Is the firm making adequate progress to meet all milestones for all negotiated initiatives? ☒ Yes ☐ No

b. TARGET INDUSTRIES:
Has the contractor met, or are they on track to meet all selected industry category goals? ☒ Yes ☐ No

DCMA Form 640 July 2013 revision    FOR OFFICAL USE ONLY    Page 4 of 20
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001476

| Target Industries | | | | |
|---|---|---|---|---|
| SB Concern Category | Commodity | Goal | Achievement | Remarks |
| ███ | ███ | ███ | ███ | ███ |

Sikorsky increased its efforts to foster growth in the two selected industry categories listed above in FY14. ███ Sikorsky reported achievement over and above the planned increase. ███

███

Describe the method the firm uses to improve performance by small business in the selected industry categories?
Were all goals achieved or not achieved?  What is rationale?

Sikorsky achieved all FY14 Initiative goals and Target Industries.  The SBLO meets with procurement groups on a quarterly basis to identify issues or potential areas for opportunities.  Questions are asked pertaining to suppliers capabilities and or if new suppliers need to be sought.  An example of this activity is ███

c.   List the major programs (s) the firm is monitoring as requested by the customer.

| Program Name | Discuss: | Add/Remove |
|---|---|---|
| N/A | | ☐ Add ☐ Remove |
| | | ☐ Add ☐ Remove |
| | | ☐ Add ☐ Remove |
| | | ☐ Add ☐ Remove |

d.   Did the firm fully comply with the request to provide program specific information as requested by the customer?
☒ Yes ☐ No

Sikorsky does not have a requirement to provide this information.

e.   PERFORM **INTERIM** ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN (SF 295).
    Indicate by analysis and contractor concurrence, one or more of the plan's goals **may not be** attained by end of performance.

| COMPREHENSIVE PLAN | Goal May Not Be Met – Check Box(es) where goals may not be met | | | | | | Demonstrated Good Faith Effort |
|---|---|---|---|---|---|---|---|
| | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | |

DCMA Form 640 July 2013 revision          FOR OFFICAL USE ONLY                    Page 5 of 20
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001477

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Midyear SF295 Date Range: | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ Yes ☐ No |

Recommended Action:  Current fiscal year, FY15 Goals were not negotiated at the time of the FY14 review (Abnormal negotiation cycle).

f.   PERFORM FINAL ANALYSIS OF COMPREHENSIVE SUBCONTRACTING PLAN (SF 295).

| COMPREHENSIVE PLAN | All Goals Were Met | Goals Not Met – Check Box(es) | | | | | | Demonstrated Good Faith Effort |
|---|---|---|---|---|---|---|---|---|
| | | SB | SDB | WOSB | HUBZ | VOSB | SDVOSB | |
| Year End SF295 Date Range: | ☐ YES ☒ No | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ YES ☐ No |

Recommended Action:  The Small Business goal was no achieved.  Sikorsky achieved ▇▇▇ with a goal of ▇▇▇  **It is recommended that efforts to find additional Small Business suppliers continue.**

---

**PART III – CONTRACTOR'S COMPREHENSIVE SMALL BUSINESS PROGRAM ADMINISTRATION
PROGRAM ADMINISTRATION FACTORS**
*Compliance with FAR requirements in this part establish the basic requirements for an acceptable rating*

---

**REVIEW OF SMALL BUSINESS PROGRAM (FAR 52.219-9)**

1.  ARE THERE WRITTEN PROCEDURES IN PLACE REGARDING SMALL BUSINESS PROGRAM ADMINISTRATION FOR:

a. FAR 52.219-9 (d) (1) Does the firm express goals in terms of percentage of totals planned subcontracting dollars for each small business category, in all plans?  ☒ YES ☐ NO   DESCRIBE HERE:

Contained in Sikorsky Aircraft Corporation's FY14 Comprehensive Subcontracting Plan (CSP) page 3 Section 6,  describes how Sikorsky shows goals  in terms of percentage of totals planned subcontracting dollars for each small business category and does comply with FAR 52.219-9 (d)(1). Included in the description is the basis of the current goal. The goals for FY14 were SB ▇▇▇  SDB ▇▇▇ WOSB ▇▇▇, HUBZone ▇▇▇ , VOSB ▇▇▇), and SDVOSB ▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇.  DCMA finds the process and procedure described in the manual and FY14 CSP acceptable.

b. FAR 52.219-9 (d) (2) Are there statements of total dollars planned to be subcontracted for each small business category in all plans?  ☒ YES ☐ NO   DESCRIBE HERE:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Sikorsky's FY14 Comprehensive Subcontracting Plan (CSP) ▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and does comply with FAR 52.219-9 (d)(1).
▇▇▇▇▇▇  DCMA finds the process and procedure described in the manual and FY14 CSP acceptable.

c. FAR 52.219-9 (d) (3) Is there a description of the principal types of supplies and services to be subcontracted for each small business category?  ☒ YES ☐ NO   DESCRIBE HERE:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

DCMA Form 640 July 2013 revision          FOR OFFICAL USE ONLY                    Page 6 of 20
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001478

**SUPP001145**

███████████████████████████████████████████████████████████
██████████████████████████████████████████ DCMA has concluded that the supporting
documentation does substantiate compliance with FAR 52.219-9(d)(3). DCMA finds this to be acceptable.

    d. FAR 52.219-9 (d) (4) Briefly describe and analyze the methodology used by the firm to develop subcontracting goals.
        Is the firm adhering to the method described in the plan to develop subcontracting goals?  ☒ YES ☐ NO
        DESCRIBE HERE:

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
█████████████████████████████████ and does
comply with FAR 52.219-9 (d)(4). DCMA finds this to be acceptable.

    e. FAR 52.219-9 (d) (5) Briefly describe and analyze the methodology utilized by the firm to identify small business sources.
        Is the firm adhering to the method described in the plan to develop small business sources?  ☒ YES ☐ NO
        DESCRIBE HERE:

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

Sikorsky complies with FAR 52.219-9 (d) (5). DCMA finds this be acceptable.

    f. FAR 52.219-9 (d) (6) Briefly describe and analyze the methodology utilized by the firm to determine and allocate indirect
        subcontracting dollars for the SF295 (and the SF 294, if applicable).   Are they adhering to the policy, and or the
        method described in the plan to determine indirect costs?  ☒ YES ☐ NO   DESCRIBE HERE:

Sikorsky is adhering to the method described in the FY14 CSP. ████████████████████████
████████████████████████████████████████████████████████████
█████████████████████████████ The method as stated is not the indirect
subcontracting and this formula must be corrected in future Subcontracting Plans.

████████████████████████████████ record keeping must be corrected so that correct dollars are reported
to each Executive Agency.

███████████████████████████████████████████████████████████
███████████████████████. **DCMA recommends that Sikorsky amend the method that it is
used to determine indirect subcontracting spend that is applied to the SSR. Additionally, assure that** ███████████ **are
reported to DoD.**

Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001479**

**SUPP001146**

g.  FAR 52.219-9 (d) (7) Briefly describe and analyze the small business related duties of the individual who administers the subcontracting program/plan.   Are they fulfilling the small business duties as described in the plan ?
☒ YES ☐ NO    DESCRIBE HERE:

The DCMA Program Manager finds this to be acceptable.

h.  FAR 52.219-9 (d) (8) Briefly describe and analyze the efforts by the firm to ensure equitable subcontracting opportunities exist for small businesses.  Is the firm adhering to the method described in the plan to assure equitable subcontracting opportunities exist for small business? ☒ YES ☐ NO    DESCRIBE HERE:

. The DCMA Program Manager finds this to be acceptable.

i.  FAR 52.219-9 (d) (9)  Briefly describe and analyze the methodology utilized by the firm for maintaining records of purchases over $650,000, ($1.5M for construction) with large businesses that require subcontracting plans..  Is the firm adhering to the method described in the plan?  ☒ YES ☐ NO    DESCRIBE HERE:

Notes on how Sikorsky is appropriately maintaining records are recorded on the Exhibit 1 of this report.  A sample of "flow-down" compliance with FAR 52.219-9 clause was requested.  Evidence of the flow-down clause was demonstrated by Sikorsky providing Subcontracting Plans in support of the review.  DCMA finds this acceptable.

j.  FAR 52.219-9 (d) (10) Does the firm cooperate in studies or surveys as may be required, submit periodic reports to determine extent of compliance to plans.  Submit ISR, Subcontracting Report for Individual Contracts, and/or SSR, Summary Subcontract Report, in accordance with 52.219-9, and ensure that its subcontractors agree to submit ISR and SSR.  ☐
YES ☒ NO    DESCRIBE HERE

. However the execution of what was stated in the manual and the plan were not carried through.  Compliance with this FAR element was not demonstrated.  Sikorsky was unable to fully support records of ISR in eSRS as required, by ensuring  that their subcontractors who received/receives a subcontract of $650,000 or over submits ISR via eSRS for review and approval of the SBLO.  Sikorsky had difficulty locating supporting contract numbers.  Therefore DCMA found Sikorsky non-compliant with FAR 52.219-9 (d) (10). DCMA does not find this acceptable. **It is recommended that Sikorsky maintain capability to provide supporting documentation to ensure the subcontractors with applicable Small Business Plans are submitting ISRs in accordance with FAR.  This finding was also issued as a result of the FY13 review.  (Reference Exhibit 1)**

k.  FAR 52.219-9 (d) (11) (i) Briefly describe and analyze the Source lists (e.g. CCR), guides, and other data the firm uses to identify small businesses.  Is the firm adhering to the method described in the plan?    ☒ YES ☐ NO
DESCRIBE HERE:

DCMA Form 640 July 2013 revision          FOR OFFICAL USE ONLY                    Page 8 of 20
Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001480**

SUPP001147

During the review the SBLO was able to demonstrate the ability to navigate www.sam.gov, Small Business Dynamic Search in addition to Sikorsky's internal data base and Supplier information forms. Sikorsky does comply with FAR 52.219-9 (d)(11)(i). DCMA finds this acceptable.

l.    FAR 52.219-9 (d) (11) (ii) List organizations that are contacted by the firm in an attempt to locate sources that are small businesses. Is the firm utilizing the list of organizations described in the plan?  ☒ YES ☐ NO   DESCRIBE HERE:

██████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████████ .

m.   FAR 52.219-9 (d) (11) (iii) Briefly describe and analyze the methodology utilized by the firm for maintaining records of purchases over $150,000.   Are they adhering to the method described in the plan?  ☒ YES ☐ NO
      DESCRIBE HERE:
The DCMA Program Manager reviewed supporting documentation for compliance against this FAR element, and determined that adequate information is collected to support purchases of $150K or greater.  Sikorsky is appropriately maintaining records and complies with FAR 52.219-9 (d) (11)(iii).  DCMA finds this to be acceptable.

n.    FAR 52.219-9 (d) (11) (iv) Briefly describe and analyze the records the firm maintains to document outreach efforts with trade associations business development organizations, conferences, trade fairs, and veteran service organizations, to locate small businesses.  Is the firm maintaining records as described in the plan?  ☒ YES ☐ NO

DESCRIBE HERE:

████████████████████████████████████████████████████████████
█████████████████ . Sikorsky is compliant with FAR 52.219-9 (d)(11). DCMA finds this acceptable.

o. FAR 52.219-9 (d) (11) (v) Briefly describe and analyze the records the firm maintains to document internal guidance and encouragement to buyers through  (A) workshops, seminars, training, etc. and (B) monitoring performance to evaluate compliance with program requirements.   Are they maintaining records as described in the plan?   ☒ YES ☐ NO
      DESCRIBE HERE:

█████████████████████████████████████████████████████████████
█████████████████████ DCMA considers the process contained in the CSP and SAC Handbook as compliant with FAR 52.219-9(d)(11)(v). DCMA finds this to be acceptable.

p.    FAR 52.219-9 (d) (11) (vi) Briefly describe and analyze the methodology the firm uses, on a contract-by-contract basis, to record support award data, including the name, address, and business size of each subcontractor.   Contractors having commercial plans need not comply with this requirement.   Are they maintaining records as described in the plan? ☒ YES ☐ NO   DESCRIBE HERE:

██████████████████████████████████████████████████████████████
█████████████████████ . **It is recommended that Sikorsky add the definitions of all small business concerns so that the supplier knows that they are signing and held accountable for, and include the penalty as stated in FAR 52.219-1 to its suppliers.  These changes should be a part of the update to form SA1048.**

q.    FAR 52.219-9 (e) (1)  Briefly describe and analyze the methodology utilized by the firm to assist small businesses by arranging solicitations, time for  the preparation of bids, quantities, specifications, and delivery schedules so as to facilitate the participation by such concerns.  Are they adhering to the method described in the plan?
      ☒ YES ☐ NO   DESCRIBE HERE:

Source Selection Instruction PUR02-02-016 states that an evaluation preference may be used in competitive acquisitions where award is based on price or price related factors. Offers are evaluated by adding a 10% factor to the prices of all offers except offers from Small Disadvantaged Businesses and HUBZone Small Businesses. An evaluation adjustment shall be used in competitive acquisitions $100K

DCMA Form 640 July 2013 revision          FOR OFFICAL USE ONLY                    Page 9 of 20
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001481

SUPP001148

and/or over.  The use of this instruction was demonstrated by Sikorsky competitively bid the purchase of power with both Large and Small Business concerns. ███████████████████████████████████████████████████

███████████████ Sikorsky complies with FAR 52.219-9 (e)(1). DCMA finds this be acceptable.

r.    FAR 52.219-9 (e) (2) Briefly describe and analyze the methodology utilized by the firm to provide adequate and timely consideration of small businesses in all "make-or-buy" decisions.   Is the firm adhering to the method described in the plan?   ☒ YES ☐ NO

DESCRIBE HERE:

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████  The DCMA Program Manager finds this to be acceptable.

s.    FAR 52.219-9 (e) (3) Briefly describe and analyze the methodology utilized by the firm to counsel and discuss subcontracting opportunities with small businesses. Is the firm adhering to the method described in the plan?    ☒ YES ☐ NO
DESCRIBE HERE:

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████████████████████.  The DCMA Program Manager finds this to be acceptable.

t.    FAR 52.219-9 (e) (4)  Briefly describe and analyze the methodology utilized by the firm to provide notice to subcontractors concerning penalties and remedies for misrepresentations of business status as a small business for the purpose of obtaining a subcontract.   Is the firm adhering to the method described in the plan?   ☒ YES ☐ NO
DESCRIBE HERE:

Yes notice is provided.  However, **it is recommended that Sikorsky update their manual that addresses penalties for small business concerns misrepresenting their status.  Furthermore it is recommended that Sikorsky adopt the definitions listed in FAR part 19 without reference.  Contractors should see what they are signing as without having to refer to an additional site.   Penalties are mentioned in the SBLO manual and the FORM SA1048 and it is stated that the penalties are similar.  It is recommended that FAR clause 52.219-1 is used as Sikorsky's small business representation and or update SA1048. Furthermore Sikorsky's procedures mirror what is stated in the FAR by definition and penalty statement.  Sikorsky did not demonstrate that Purchase orders include NAICS codes.  However Small Business Certifications included the information but there is no cross reference. It is recommended that Sikorsky include NAICS codes on their purchase orders.**

u.    FAR 19.702  It is the policy of the United States that its prime contractors establish procedures to ensure the timely payment of amounts due pursuant to the terms of their subcontracts with small business, veteran-owned small business, service-disabled veteran-owned small business, HUBZone small business, small disadvantaged business, and women-owned small business concerns.   Describe the method utilized by the firm to ensure timely payment of subcontractors.   Has the firm been adhering to this policy?   ☒ YES ☐ NO

DESCRIBE HERE:

████████████████████████████████████████████████████████████
████████████████████████.  DCMA finds this acceptable.

v.    Has the firm adequately addressed all previous Corrective Action Plans?   ☐ YES ☒ NO

Follow-up, Corrective Action indicated in FY13 Review was that Sikorsky provide supporting documentation to ensure the subcontractors with applicable Small Business Plans are submitting ISRs in accordance with FAR 52.219-9 (d) (10).  There was difficulty tying the purchase order to the contract.  Currently, Sikorsky is working on system improvements to improve this capability ██████████████. (Reference Exhibit 1, subcontract number not identified and ISR's not accepted).

2.  COMPLIANCE WITH RECORD KEEPING:

a.    REVIEW A REPRESENTATIVE SAMPLE OF PURCHASE ORDERS AWARDED TO LARGE BUSINESS, INCLUDING PURCHASE ORDERS OVER $650,000.

FOR OFFICAL USE ONLY

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001482

SUPP001149

See below.

| SUBCONTRACTING PURCHASE ORDER REVIEW CHECKLIST DCMA FORM 640 EXHIBIT 1 | | | | | | | |
|---|---|---|---|---|---|---|---|
| DCMA FORM 640 EXHIBIT 1 *(for more rows click outside the right side of the row on the form and hit "enter")* | | | | | | | |

| CONTRACTOR: | SIKORSKY AIRCRAFT CORPORATION | | PERIOD COVERED: FY14 | | October 1, 2013 Thru September 30, 2014 | | |
|---|---|---|---|---|---|---|---|
| SAMPLING OF AWARDS TO LARGE BUSINESS OVER $150,000 AND $650,000; AND SAMPLES OF P.O. TO SMALL BUSINESS TO VERIFY CERTIFICATION | | | | | | | |
| SUB-CONTRACTS WITH LARGE BUSINESSES = or > $650,000           FAR 52.219-9(d)(9) | | | | | | | |
| Prime Contract | Date | Vendor Name | $ Amount | Subcontract Number | SB Plan In Place? | ISR Input? | Remarks |
|  |  |  |  |  |  |  | SBLO is unable to validate a contract number tied to this purchase; SIK has no way to approve the ISR. |

PURCHASE ORDERS/SUB-CONTRACTS TO LARGE BUSINESS = OR > $150,000           FAR 52.219-9(d)(11)(iii)

| Size | P.O. # | Date | Vendor Name | $ Amount | Item Procured | Reason Code | Remarks |
|---|---|---|---|---|---|---|---|

DCMA Form 640 July 2013 revision          FOR OFFICAL USE ONLY          Page 11 of 20

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001483

SUPP001150

Affiliate purchases should
not be included in the SSR

n SIK success story

| SAMPLES OF P.O. TO SMALL BUSINESS TO VERIFY CERTIFICATION | | | | | | FAR 52.219-9(e)(4i) | |
|---|---|---|---|---|---|---|---|
| Size | P.O. # | Date | Vendor Name | $ Amount | Item Procured | Sys Shows | Self-Certification Shows |

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001484

SUPP001151

FY 14 Cert was incomplete only 2 pages FY 13 cert was complete

REASON CODES FOR SB/SDB/WOSB/HUBZone/SDVOSB NOT SELECTED/SOLICITED: (1) SOLE SOURCE / (2) SINGLE SOURCE / (3) SOURCE CONTROLLED DRAWING / (4) CUSTOMER DIRECTED / (5) NO KNOWN SB SOURCE / (6) SB SOLICITED, NOT SELECTED

b. FAR 52.219-26  IDENTIFY ANY ACTIVE CONTRACTS OVER $500,000 THAT CONTAIN AN INCENTIVE FEE CLAUSE  [Identify contract number(s)]?  ☐ YES.  If yes, identify Contract Numbers: N/A for Comprehensive Plans

**PART IV – SUPPLEMENTAL DATA**
**VALIDATION OF INFORMATION IN THIS PART MAY BE USED TO JUSTIFY HIGHER RATINGS**

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001485

1. HAS A COMPANY-WIDE SB POLICY STATEMENT BEEN ISSUED BY CURRENT SENIOR MANAGEMENT AND
   DISSEMINATED THROUGHOUT THE COMPANY?
   ☒ YES.  Issued By: ▮▮▮▮▮▮          Title: ▮▮▮▮▮▮▮▮▮          Date: ▮▮▮▮▮▮

   ☐ NO.  COMMENTS:

   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

   On April 1, 2015 Sikorsky President Mick Maur was replaced by Bob Ludec.  DCMA recognizes that the change took place in
   2015, however it is recommended that the new president disseminated a formal policy letter throughout the company advertising
   its commitment to the Small Business program and goals.

2. SBLO APPOINTMENT/AUTHORITY PLACEMENT IN THE ORGANIZATION:

   a. HAS THE SBLO BEEN FORMALLY APPOINTED BY SENIOR LEVEL MANAGEMENT?
      ☒ YES.

      Where are the duties and responsibilities defined?

      ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

      ☐ NO.  COMMENTS:

   b. IS THE SBLO APPOINTED AT AN APPROPRIATE LEVEL TO EFFECTIVELY ADMINISTER THE PROGRAM?
      ☒ YES.  DESCRIBE:

      ☐ NO.  COMMENTS

   c. TO WHOM DOES THE SBLO REPORT?  Name: ▮▮▮▮▮▮          Title: ▮▮▮▮▮▮▮▮▮

   d. SBLO IS A: ☐ Corporate ☒ Division *(if a division SBLO, describe the relationship between this division and the corporate
      SBLO)*.

   e. IS THERE AN ORGANIZATION CHART THAT DISPLAYS THE POSITION OF THE SBLO WITHIN THE
      ORGANIZATION?

   ☒ YES.

   ☐ NO.  COMMENTS:

   Several organizational changes have recently occurred since the FY 13 Small business compliance review.
   Mick Maurer was replaced by Bob Leduc as President of Sikorsky Aircraft. Senior Vice President of Operations, Shane Eddy
   was replaced by John Palumbo.  Martha Crawford replaced Francisco Vasquez, as the new SBLO for Sikorsky.

DCMA Form 640 July 2013 revision          FOR OFFICAL USE ONLY                    Page 14 of 20
Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001486

SUPP001153

3. MONITORING SB PROGRAM PERFORMANCE AND REQUIREMENTS:

   a. ARE SENIOR MANAGEMENT AND STAFF BRIEFED REGULARLY ON ACHIEVEMENT AND/OR PROGRAM DEFICIENCIES?

   ☒ YES.  COMMENTS:

   ☐ NO.  COMMENTS:

   b. WHAT DOES CONTRACTOR DO TO IMPROVE OVERALL PROGRAM PERFORMANCE IF OVERALL PROGRAM GOALS ARE NOT BEING MET? *(Identify any Corrective Action Plan(s) implemented)*

   Sikorsky achieved most of the FY14 goals.

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001487

SUPP001154

## 4. SUPPLEMENTAL INFORMATION

a. Discuss the firm's use of strategic sourcing teams or other groups within the firm that may assist the SBLO in the development of business subcontracting sources and the goal setting process. (If so, define its role in goal development and its role during plan performance). DESCRIBE:

b. Discuss any successes the firm has made in subcontracting opportunities, those which were normally awarded to a large business, that have been redirected to a small business. DESCRIBE:

c. Discuss any procurement actions the firm may have reserved for small business. DESCRIBE:

d. Discuss the firm's use of Corporate, Blanket and Long Term Agreements and how they may affect small business dollars. DESCRIBE:

d. Discuss the extent of use and the firm's internal written guidance for credit card purchases. DESCRIBE:

f. Discuss the firm's use of the internet or web-site as tools to advertise its ongoing and future procurement requirements. DESCRIBE:

g. Discuss the firm's use of Mentor/Protégé agreements to increase small business subcontracting opportunities. If the firm is not participating in the Mentor Protégé program, are they considering participating in the program? DESCRIBE:

h. Discuss the firm's initiatives/accomplishments made to ensure more small businesses are able to compete in more "high-tech" procurements. DESCRIBE:

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001488

**SUPP001155**

█████████████████████████

i.  Discuss how the firm monitors its individual subcontracting goals/plans and readjusts its internal focus in achieving goals that may be in doubt of being attained.   DESCRIBE:

███████████████████████████

j.  Discuss any planned procurement actions, or procurement actions, or procurements addressed specifically within subcontracting plan that had to be redirected to another business size category.  DESCRIBE:

████████████████████████

---

5. NOTEWORTHY ACTIVITIES TO JUSTIFY A HIGHLY SUCCESSFUL OR OUTSTANDING RATING:

REVIEW AND DISCUSS CONTRACTOR'S ACTIVITIES THAT ARE CONSIDERED NOTEWORTHY TO JUSTIFY A HIGHLY SUCCESSFUL OR OUTSTANDING.

6. ADDITIONAL REMARKS.  DESCRIBE IN DETAIL HOW A CONTRACTOR HAS MET THE CRITERIA TO JUSTIFY A RATING THAT IS HIGHER THAN ACCEPTABLE.

<u>Outstanding</u> – Describe how the contractor has had exceptional success with initiatives to assist, promote and utilize small business (SB), small disadvantaged business (SDB), women-owned small business (WOSB), HUBZone small business, veteran-owned small business (VOSB), and service-disabled VOSB (SD/VOSB).  Describe how the contractor has an exemplary program that could be used as a model by other contractors in similar industries.

<u>Highly Successful</u> – Describe how the contractor has had significant success with initiatives to assist, promote, and utilize SB, SDB, WOSB, HUBZone small business, VOSB, and SD/VOSB.  Describe how the contractor has gone <u>above and beyond</u> the required elements of the program.  Provide documentation and stories to support such efforts.

### PART V – SUMMARY AND RECOMMENDATIONS

**1. PROGRAM RATING:**

The following rating criteria should be used to determine the contractor's rating.  Note that the rating criteria are the same as SBA per the November 12, 2009 DCMA/SBA Memorandum of Understanding.

☐ **Outstanding - Exceeds** the negotiated small business goal and 2 additional category goals on 90% or more of the subcontracting plans reported for the fiscal year under review. Has exceptional success with numerous specific initiatives to assist, promote and utilize Small Business (SB), Small Disadvantaged Business (SDB), Women-Owned Small Business (WOSB), HUBZone Small Business (HUBZone), Veteran-Owned Small Business (VOSB), Service-Disabled Veteran Own Small Business (SDVQSB); Alaska Native Corporations (ANC's) and Tribal Native American concerns, except in instances where the Large Prime Contractor (LPC) can provide a reason the Commercial Marketing Representative (CMR) or DCMA representative deems justifiable as to why the LPC has not had exceptional success in those categories.

☐ **Highly Successful - Met or exceeded** the negotiated goals in three small business categories on 80% of the subcontracting plans reported for the fiscal year under review. Has moderate success with some initiatives to assist, promote and utilize SB, SDB, WOSB, HUBZone, VOSB, and SDVOSB as described above in the criteria for a rating of Outstanding. Demonstrates focused efforts to go above and beyond the required elements of the subcontracting program and provides documentation of achievements and success stories to support such efforts. The contractor demonstrates existing policies and process that ensures 85% on-time and accurate submission of

Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001489**

SUPP001156

required reports in eSRS as a prime contractor and 80% on-time submission of reports from their subcontractors.

☐ **Acceptable** – **Always** demonstrates a good-faith effort to meet **all** of its goals on subcontracting plans reported for the fiscal year being reviewed, but falls short of thresholds to receive a rating of Highly Successful. Provides reasonable and supportable explanations why certain goals could not be achieved. Demonstrates compliance with the mandatory elements of their subcontracting plans and implementing regulations. ISRs and SSRs submitted accurately within 30 days after the end of applicable reporting periods 70% of the time.

☒ **Marginal** - **Deficient** in meeting key subcontracting plan elements or the contractor has failed to satisfy one or more requirements of a corrective action plan from the prior review. Fail to comply with the submission requirements in eSRS on the majority of their contracts with subcontracting plans and no evidence of flow-down to applicable subcontractors. There is evidence of corporate and/or senior management commitment to bring their subcontracting program to an acceptable level and has demonstrated a commitment to apply the necessary resources to do so. A corrective action plan is required, and the Administrative Contracting Officer(s) (ACO) and SBA CMR(s) must be notified.

☐ **Unsatisfactory** – **Noncompliant** with the contractual requirements of DFARS and FAR 52.219-8 and 52.219-9. Contractor's management shows little interest in bringing its program to an acceptable level or is generally uncooperative. For example, recommendations made by SBA or DCMA on previous reviews have never been implemented. A corrective action plan is required, and the ACO(s) and SBA CMR(s) must be notified

**2. RISK RATING:**

The following rating criteria should be used to determine the contractor's rating.

☒ **High** - High Risk is assigned when the contractor is not meeting contract negotiated and DoD goals.

☐ **Moderate** - Moderate Risk may be assigned when the contractor is meeting contract negotiated goals but not DoD goals.

☐ **Low** – Low Risk may be assigned when the contractor is meeting contract negotiated and DoD goals.

3. RATINGS SUMMARY, RECOMMENDATIONS, AND FOLLOW-UP OF CORRECTIVE ACTIONS(S):

1 "Negotiated goals" refers to the dollar and percentage goals in the approved subcontracting plan. (For rating purposes, the reviewer will compare the percentage goals to the percentage achievements.)
2 Examples of such initiatives include, but are not limited to, participating in a Mentor-Protégé program, performing compliance reviews at subcontractors' sites, administering a buyer incentive program, participating in trade fairs, promoting registration in the CCR, and contracting suppliers to encourage SDB and HUBZone certification.
3 For example, recommendations made by SBA or DCMA on previous reviews have never been implemented.

DISCUSS:
    Risk Rating:

- Accuracy of the SSR-███████████████████████████████████ DCMA was unable to determine if the internal purchases were included in the FY14 SSR. It is recommended that Sikorsky provide assurances that internal purchases are not included in the SSR's.

DCMA Form 640 July 2013 revision          FOR OFFICAL USE ONLY          Page 18 of 20

Distribution of this document is prohibited outside the Government unless expressly authorized.

LMC0001490

**SUPP001157**

- ████████████████████████████████████████████████████████████████ . It is recommended that the SSR reported to DoD include only dollars attributed to DoD.

- When the SSR was completed, the information was not preserved at the time of submission. As a result, transactions made after that date had an impact on the purchase orders that are a part of the FY14 SSR. Sikorsky was unable to go reproduce a report that displays the dollar amounts reported on the FY14 SSR. It is Recommend that Sikorsky take a snapshot of the Purchase order file the moment that the SSR is completed, so that the SSR can be duplicated.

- ████████████████████████████████████████████████████ It is recommended that Sikorsky attribute a DoD prime/subcontract contract number for all dollars counted toward DoD performance goals.

- Allocation Rate versus Indirect Subcontracting- Sikorsky is adhering to the method described in the FY14 CSP. The Allocation rate stated in the SBLO procedural manual differs from the FY14 CSP. ████████████████████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████ The method as stated is not the indirect subcontracting and this formula must be corrected in future Subcontracting Plans.

- ███████████████████████████████████████████████████████████ . It is recommended that the non DoD spend be removed from the DoD allocation rate. ██████████████████████████████ After review, it was determined that Sikorsky did not follow the instructions provided in their manual. It is recommended that the correct application of the indirect rate be applied to the dollars reported on the SSR or elect not to include indirect subcontracting in your subcontracting plan ████████████████████████████████████████████████████ record keeping must be corrected so that correct dollars are reported to each Executive Agency. ██████████████████████████████████████████ DCMA recommends that Sikorsky amend the method that it is used to determine indirect subcontracting spend that is applied to the SSR. Additionally, assure that only DoD dollars are reported to DoD.

- ISR Submission for Subcontractors- ████████████████████████████████████ ██████████ However the execution of what was stated in the manual and the plan were not carried through. Compliance with this FAR element was not demonstrated. Sikorsky was unable to fully support records of ISR in eSRS as required, by ensuring that their subcontractors who received/receives a subcontract of $650,000 or over submits ISR via eSRS for review and approval of the SBLO. Sikorsky had difficulty locating supporting contract numbers. Therefore DCMA found Sikorsky non-compliant with FAR 52.219-9 (d) (10). DCMA does not find this acceptable. It is recommended that Sikorsky maintain capability to provide supporting documentation to ensure the subcontractors with applicable Small Business Plans are submitting ISRs in accordance with FAR. This finding was also issued as a result of the FY13 review. (Reference Exhibit 1)

- Subcontractor Size- ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████ It is recommended that Sikorsky add the definitions of all small business concerns so that the supplier knows that they are signing and held accountable for, and include the penalty as stated in FAR 52.219-1 to its suppliers. These changes should be a part of the update to form SA1048.

- A Penalty for Misrepresentation-It is recommended that Sikorsky update their manual that addresses penalties for small business concerns misrepresenting their status. Furthermore it is recommended that Sikorsky adopt the definitions listed in FAR part 19 without reference. Contractors should see what they are signing as without having to refer to an additional site. ██████████████████████████████████████████████ . It is recommended that FAR clause 52.219-1 is used as Sikorsky's small business representation and or update SA1048. Furthermore Sikorsky's procedures mirror what is stated in the FAR by definition and penalty statement. Sikorsky did not demonstrate that Purchase orders include NAICS codes. However Small Business Certifications included the information but there is no cross reference. It is recommended that Sikorsky include NAICS codes on their purchase orders

FOR OFFICAL USE ONLY
Distribution of this document is prohibited outside the Government unless expressly authorized.

**LMC0001491**

- Follow-up on previously issued Corrective Actions- Follow-up, Corrective Action indicated in FY13 Review was that Sikorsky provide supporting documentation to ensure the subcontractors with applicable Small Business Plans are submitting ISRs in accordance with FAR 52.219-9 (d) (10). There was difficulty tying the purchase order to the contract. Currently, Sikorsky is working on system improvements to improve this capability ████████. (Reference Exhibit 1, subcontract number not identified and ISR's not accepted). Please address this in the FY14 Corrective Action Plan.

**4. EXIT INTERVIEW PARTICIPANTS:**

| Government: | Contractor: |
|---|---|
| 1. Micole Stephens-Mack | 1. Martha Crawford |
| 2. | 2. Keith Richardson |
| 3. | 3. |

**5. REVIEW STATUS:**
Indicate the status of this 640 Review. Once a review is closed, you'll need to create a new review.

☒ **Open**

☐ **Closed**

**6. NAME of SMALL BUSINESS SPECIALIST:**    **7. DATE:**

STEPHENS.MICOLE.1230430061    Digitally signed by STEPHENS.MICOLE.1230430612
DN: c=US, o=U.S. Government, ou=DoD, ou=PKI, ou=DCMA,
cn=STEPHENS.MICOLE.1230430612
Date: 2015.07.07 16:22:58 -05'00'

SIGNATURE: 2 _____

DCMA Form 640 July 2013 revision    FOR OFFICAL USE ONLY    Page 20 of 20
Distribution of this document is prohibited outside the Government unless expressly authorized.
LMC0001492

# EXHIBIT F-1

**ASBL v. DOD**
**USDC #14CV2166**
**USCA #15-15121**
**Vaughn Index**
**July 26, 2018 - First DOD Production**

| | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000179 | MSJ000179 | USA0001 | USA0001 | 11/6/2014 | Herrington, Mark | Richardson, Keith | (b)(5), (b)(6) | b(5) Common interest/consultant corollary/joint defense/attorney work product.  Communications between DoD and Sikorsky Counsel regarding litigation strategy including the issue of what information could be released, which was an issue of common interest.  b(6) Contact information of DoD attorney to avoid clearly unwarranted invasion of privacy. |
| Redacted | MSJ000185 | MSJ000211 | USA0007 | USA0033 | FY2013 | Vasquez, Francisco | | (b)(6) | b(6) Contact information of and signatures of Sikorsky employees to avoid clearly unwarranted invasion of privacy. |
| Redacted | MSJ000212 | MSJ000213 | USA0034 | USA0035 | 11/10/2014 | Herrington, Mark | Richardson, Keith | (b)(5), (b)(6) | b(5) Common interest/consultant corollary/joint defense/attorney work product.  Communications between DoD and Sikorsky Counsel regarding litigation strategy including the issue of what information could be released and next steps, which were issues of common interest.  b(6) Contact information of DoD attorney to avoid clearly unwarranted invasion of privacy. |
| Redacted | MSJ000214 | MSJ000215 | USA0036 | USA0037 | 11/14/2014 | Lamvol, Alexander | Herrington, Mark; Richardson, Keith | (b)(5), (b)(6) | b(5) Common interest/consultant corollary/joint defense/attorney work product.  Communications between DoD and Sikorsky Counsel regarding litigation strategy, including the issue of what information could be released and next steps, which were issues of common interest.  b(6) Contact information of DoD attorney to avoid clearly unwarranted invasion of privacy. |
| Redacted | MSJ000216 | MSJ000216 | USA0038 | USA0038 | | | | (b)(5) | b(5) Common interest/consultant corollary/joint defense/attorney work product.  Unsigned draft declaration of Sikorsky employee Amy Johnson as part of discussions regarding litigation strategy on issues of common interest. |

| Redacted | MSJ000217 | MSJ000217 | USA0039 | USA0039 | FY2013 | | | (b)(5) | b(5) Common interest/consultant corollary/joint defense/attorney work product. A highlighted version of Bates 7-33, with proposed redactions from Sikorsky's counsel as part of discussions regarding litigation strategy on issues of common interest. |
|---|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000218 | MSJ000219 | USA0040 | USA0041 | 11/14/2014 | Herrington, Mark | Lamvol, Alexander; Richardson, Keith | (b)(5), (b)(6) | b(5) Common interest/consultant corollary/joint defense/attorney work product. Communications between DoD and Sikorsky Counsel regarding litigation strategy, including the issue of what information could be released and next steps, which were issues of common interest.<br><br>b(6) Contact information of DoD attorney to avoid clearly unwarranted invasion of privacy. |
| Redacted | MSJ000220 | MSJ000221 | USA0042 | USA0043 | 11/17/2014 | Lamvol, Alexander | Herrington, Mark; Richardson, Keith | (b)(5), (b)(6) | b(5) Common interest/consultant corollary/joint defense/attorney work product. Communications between DoD and Sikorsky Counsel regarding litigation strategy, including the issue of what information could be released and next steps, which were issues of common interest.<br><br>b(6) Contact information of DoD attorney to avoid clearly unwarranted invasion of privacy. |
| Redacted | MSJ000222 | MSJ000222 | USA0044 | USA0044 | | | | (b)(5) | b(5) Common interest/consultant corollary/joint defense/attorney work product. Draft legal argument to be considered for court filing from Sikorsky counsel as part of discussions regarding litigation strategy on issues of common interest. |
| Redacted | MSJ000223 | MSJ000225 | USA0045 | USA0047 | 11/17/2014 | Herrington, Mark | Lamvol, Alexander; Richardson, Keith | (b)(5), (b)(6) | b(5) Common interest/consultant corollary/joint defense/attorney work product. Communications between DoD and Sikorsky Counsel regarding litigation strategy, including the issue of what information could be released and next steps, which were issues of common interest.<br><br>b(6) Contact information of DoD attorney to avoid clearly unwarranted invasion of privacy. |

2 of 3

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Redacted** | MSJ000226 | MSJ000252 | USA0048 | USA0074 | FY2013 | Vasquez, Francisco | | (b)(4), (b)(6) | Released as it existed in the attachment to Bates USA0045-47 (MSJ000223-225), which included redactions under b(4).  A less redacted version of the document was released as Bates USA0007-33 (MSJ000185-211).<br><br> Redactions that remain are proper under b(6): Contact information of and signatures of Sikorsky employees to avoid clearly unwarranted invasion of privacy. |
| **Redacted** | MSJ000253 | MSJ000255 | USA0075 | USA0077 | 11/18/2014 | Herrington, Mark | Lamvol, Alexander; Richardson, Keith | (b)(5), (b)(6) | b(5) Common interest/consultant corollary/joint defense/attorney work product.  Communications between DoD and Sikorsky Counsel regarding litigation strategy, including the issue of what information could be released and next steps, which were issues of common interest.<br><br>b(6) Contact information of DoD attorney to avoid clearly unwarranted invasion of privacy. |
| **Redacted** | MSJ000256 | MSJ000259 | USA0078 | USA0081 | 11/20/2014 | Herrington, Mark | Lamvol, Alexander; Richardson, Keith; Simmons, Abraham | (b)(5), (b)(6) | b(5) Common interest/consultant corollary/joint defense/attorney work product.  Communications between DoD and Sikorsky Counsel regarding litigation strategy, including the issue of what information could be released and next steps, which were issues of common interest.<br><br>b(6) Contact information of DoD attorney to avoid clearly unwarranted invasion of privacy. |
| **Redacted** | MSJ000267 | MSJ000268 | USA0089 | USA0091 | 8/19/2014 | Buffler, Janice | Richardson, Keith; Hiltz, Julia | (b)(6) | b(6) Contact information of DoD employee to avoid clearly unwarranted invasion of privacy. |
| **Redacted** | MSJ000271 | MSJ000271 | USA0094 | USA0094 | 8/19/2014 | Buffler, Janice | Richardson, Keith; Hiltz, Julia | (b)(6) | b(6) Contact information of DoD employee to avoid clearly unwarranted invasion of privacy. |

**ASBL v. DOD**
**USDC #14CV2166**
**USCA #15-15121**
**Vaughn Index**
**September 4, 2018 - Second DOD Production**

| | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000274 | MSJ000274 | USA00001 | USA00001 | 1/8/2018 | Raheb, Susannah L | Galvin, James J Jr;  Evelyn-Bellamy; Tatia M., Vasquez, Luz; Buffler, Janice; Goslin, Philip E; Harrer, Gary; Richardson, Keith; Crawford, Martha; Ravenfeld, Kurt R; Johnson, Amy | (b)(6) | The information withheld under the authority of (b)(6) is the e-mail address of an individual that, if disclosed, could cause the unwarranted invasion of privacy.  There is no public interest in the individual's personal contact information, such as email addresses. The redacted information is protected to avoid potential unsolicited e-mails or other contact. The harm to the individuals as a result of the disclosure clearly outweighs the public interest in such disclosure. |
| Redacted | MSJ000275 | MSJ000275 | USA00009 | USA00009 | 1/8/2018 | Raheb, Susannah L | Galvin, James J Jr;  Evelyn-Bellamy; Tatia M., Vasquez, Luz; Buffler, Janice; Goslin, Philip E; Harrer, Gary; Richardson, Keith; Crawford, Martha; Ravenfeld, Kurt R; Johnson, Amy | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000276 | MSJ000276 | USA00010 | USA00010 | 1/26/2015 | Evelyn-Bellamy, Tatia M. | Deskins, Nancy; Buffler, Janice; Trimble-Williams, Margarette | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000277 | MSJ000277 | USA00011 | USA00011 | 1/27/2015 | Raheb, Susannah L | Evelyn-Bellamy, Tatia M.; Trimble-Williams, Margarette | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000278 | MSJ000279 | USA00012 | USA00013 | 1/26/2015 | Evelyn-Bellamy, Tatia M. | Deskins, Nancy; Buffler, Janice; Trimble-Williams, Margarette | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000280 | MSJ000280 | USA00014 | USA00014 | 3/30/2015 | Raheb, Susannah L | Evelyn-Bellamy, Tatia M.; Trimble-Williams, Margarette; Buffler, Janice | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000283 | MSJ000283 | USA00017 | USA00017 | 4/17/2018 | Raheb, Susannah L | Thomas, Shelly S.; Vasquez, Luz; Bellamy-Vaughan, Tatia M. | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000284 | MSJ000284 | USA00018 | USA00018 | 4/14/2016 | Raheb, Susannah L | Evelyn-Bellamy, Tatia M.; Vasquez, Luz; Buffler, Janice; Desanto, Pasquale | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000285 | MSJ000286 | USA00024 | USA00025 | 5/9/2014 | Vasquez, Luz | Evelyn-Bellamy, Tatia M.; Trimble-Williams, Margarette | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000287 | MSJ000288 | USA00026 | USA00027 | 5/30/2014 | Deskins, Nancy | Trimble-Williams, Margarette; Evelyn-Bellamy, Tatia M.; Raheb, Susannah L; Vasquez, Luz; Tanksley, Jim J | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000289 | MSJ000292 | USA00028 | USA00031 | 6/23/2017 | Raheb, Susannah L | Evelyn-Bellamy, Tatia M.; Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000293 | MSJ000296 | USA00032 | USA00035 | 6/26/2017 | Raheb, Susannah L | Evelyn-Bellamy, Tatia M.; Vasquez, Luz; Buffler, Janice; Dilworth, Georgette | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000297 | MSJ000299 | USA00036 | USA00038 | 7/7/2014 | Deskins, Nancy | Evelyn-Bellamy, Tatia M.; Raheb, Susannah L; Vasquez, Luz; Tanksley, Jim J; Trimble-Williams, Margarette | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000300 | MSJ000300 | USA00039 | USA00039 | 7/11/2014 | Deskins, Nancy | Evelyn-Bellamy, Tatia M.; Raheb, Susannah L | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000301 | MSJ000301 | USA00040 | USA00040 | 7/11/2014 | Evelyn-Bellamy, Tatia M. | Deskins, Nancy H;  Raheb, Susannah L | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000302 | MSJ000302 | USA00041 | USA00041 | 7/16/2014 | Evelyn-Bellamy, Tatia M. | Deskins, Nancy H; Raheb, Susannah L; Vasquez, Luz; Tanksley, Jim J; Trimble-Williams, Margarette; Buffler, Janice | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000303 | MSJ000304 | USA00042 | USA00043 | 8/22/2014 | Deskins, Nancy | Trimble-Williams, Margarette; Evelyn-Bellamy, Tatia M.; Buffler, Janice; Raheb, Susannah L; Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000305 | MSJ000305 | USA00044 | USA00044 | 9/17/2014 | Deskins, Nancy | Evelyn-Bellamy, Tatia M. | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000306 | MSJ000306 | USA00045 | USA00045 | 9/3/2014 | Deskins, Nancy | Trimble-Williams, Margarette; Vasquez, Luz; Evelyn-Bellamy, Tatia M.; Buffler, Janice; Sunderlin, Patrick; Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000307 | MSJ000307 | USA00046 | USA00046 | 9/17/2014 | Evelyn-Bellamy, Tatia M. | Deskins, Nancy | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000309 | MSJ000309 | USA00056 | USA00056 | 10/1/2015 | Evelyn-Bellamy, Tatia M. | Raheb, Susannah; Buffler, Janice; Galvin, James J Jr; Pugh, Anthony; Sharp, Charles; Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000310 | MSJ000310 | USA00057 | USA00057 | 10/20/2014 | Deskins, Nancy | Evelyn-Bellamy, Tatia M.; Vasquez, Luz; Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000311 | MSJ000311 | USA00058 | USA00058 | 10/28/2015 | Raheb, Susannah L | Evelyn-Bellamy, Tatia M.; Vasquez, Luz; Sharp, Charles; Ravenfeld, Kurt R; Sorenson, Lee | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000312 | MSJ000312 | USA00060 | USA00060 | 11/20/2015 | Raheb, Susannah L | Evelyn-Bellamy, Tatia M.; Vasquez, Luz; Sharp, Charles; Ravenfeld, Kurt R | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000313 | MSJ000316 | USA00062 | USA00062 | 12/14/2017 | Raheb, Susannah L | Buffler, Janice; Galvin, James J Jr; Vasquez, Luz; Crawford, Martha; Evelyn-Bellamy, Tatia M.; Waldon, Sean | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000317 | MSJ000319 | USA00158 | USA00159 | 10/1/2015 | Evelyn-Bellamy, Tatia M. | Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000320 | MSJ000321 | USA00154 | USA00154 | 2/4/2015 | Evelyn-Bellamy, Tatia M. | | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000322 | MSJ000323 | USA00163 | USA00164 | 1/26/2015 | Evelyn-Bellamy, Tatia M. | | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000324 | MSJ000324 | USA00165 | USA00165 | 7/10/2015 | Raheb, Susannah L; Sorenson, Lee; Evelyn-Bellamy, Tatia; Sharp, Charles | | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000325 | MSJ000325 | USA00166 | USA00166 | 1/14/2015 | Deskins, Nancy | Evelyn-Bellamy, Tatia M.; Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000326 | MSJ000326 | USA00310 | USA00310 | | Raheb, Susannah | Evelyn-Bellamy, Tatia | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000327 | MSJ000329 | USA00311 | USA00313 | 2/13/2018 | Crawford, Martha | Thomas, Shelly | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000330 | MSJ000331 | USA00314 | USA00315 | 3/12/2018 | Crawford, Martha | Gainer, Stephanie A.; Thomas, Shelly S.; Johnson, Amy | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000332 | MSJ000333 | USA00316 | USA00317 | 1/25/2018 | Crawford, Martha | Thomas, Shelly S.; Vasquez, Luz; Buffler, Janice | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000334 | MSJ000335 | USA00318 | USA00319 | 1/7/2015 | Evelyn-Bellamy, Tatia M. | Deskins, Nancy | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000336 | MSJ000336 | USA00320 | USA00320 | 8/21/2015 | Raheb, Susannah | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000337 | MSJ000337 | USA00321 | USA00321 | 2/13/2018 | Thomas, Shelly | Crawford, Martha; Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000338 | MSJ000338 | USA00322 | USA00322 | 2/13/2018 | Thomas, Shelly | Raheb, Susannah; Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000339 | MSJ000339 | USA00323 | USA00323 | 2/13/2018 | Thomas, Shelly | Raheb, Susannah; Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000340 | MSJ000340 | USA00326 | USA00326 | 1/25/2018 | Thomas, Shelly | Raheb, Susannah; Vasquez, Luz; Buffler, Janice | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000341 | MSJ000341 | USA00327 | USA00327 | 7/16/2014 | Evelyn-Bellamy, Tatia M. | Deskins, Nancy | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000342 | MSJ000342 | USA00328 | USA00328 | 11/7/2017 | Vasquez, Luz | Crawford, Martha; Johnson, Amy; Whitehurst, Owen; Gaskins, Kimberly | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000343 | MSJ000344 | USA00329 | USA00330 | 3/13/2018 | Lehew, Dawn | Raheb, Susannah L; Vasquez, Luz; Baumann, Lisa; Desanto, Pasquale | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000345 | MSJ000346 | USA00331 | USA00332 | 8/22/2014 | Deskins, Nancy | Trimble-Williams, Margarette; Evelyn-Bellamy, Tatia M.; Buffler, Janice; Raheb, Susannah L; Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

**ASBL v. DOD**
**USDC #14CV2166**
**USCA #15-15121**
**Vaughn Index**
**September 26, 2018 - Third DOD Production**

| | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000354 | MSJ000354 | USA00019 | USA00019 | 4/19/2016 | Raheb, Susannah | Evelyn-Bellamy, Tatia; Vasquez, Luz; Buffler, Janice; Desanto, Pasquale; Gowder, Amy; Ravenfeld, Kurt; Goslin, Philip | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. There is no public interest in the individual's personal contact information, such as email addresses. The redacted information is protected to avoid potential unsolicited e-mails or other contact. The harm to the individuals as a result of the disclosure clearly outweighs the public interest in such disclosure.<br><br>The information withheld under the authority of (b)(4) is a forecasted base number. This goal setting information is competition sensitive. |
| Redacted | MSJ000356 | MSJ000358 | USA00021 | USA00023 | 5/5/2016 | Raheb, Susannah | Vasquez, Luz; Tatia Evelyn-Bellamy | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is strategy discussion for divestiture by segment and a spend analysis. This business strategy information is competition sensitive. |
| Redacted | MSJ000359 | MSJ000360 | USA00026 | USA00027 | 5/30/2014 | Deskins, Nancy | Trimble-Williams, Margarette; Evelyn-Bellamy, Tatia; Raheb, Susannah; Vasquez, Luz; Tanksley, Jim | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000361 | MSJ000361 | USA00499 | USA00499 | 5/28/2014 | Deskins, Nancy | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000362 | MSJ000365 | USA00028 | USA00031 | 6/23/2017 | Raheb, Susannah | Evelyn-Bellamy, Tatia; Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000367 | MSJ000369 | USA00048 | USA00050 | 10/1/2015 | Raheb, Susannah | Evelyn-Bellamy, Tatia; Sharp, Charles; Vasquez, Luz; Buffler, Janice | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is the identifying information for a competitive proposal. This competitive proposal information is competition sensitive. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000370 | MSJ000374 | USA00051 | USA00055 | 10/1/2015 | Raheb, Susannah | Evelyn-Bellamy, Tatia; Sharp, Charles; Vasquez, Luz; Buffler, Janice | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is the identifying information for a competitive proposal. This competitive proposal information is competition sensitive. |
| Redacted | MSJ000375 | MSJ000375 | USA00059 | USA00059 | | Raheb, Susannah | Evelyn-Bellamy, Tatia | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000376 | MSJ000376 | USA00061 | USA00061 | 12/12/2017 | Raheb, Susannah | Evelyn-Bellamy, Tatia; Galvin, James Jr; Vasquez, Luz; Crawford, Martha; Buffler, Janice | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000377 | MSJ000378 | USA00063 | USA00064 | 12/13/2017 | Galvin, James J. Jr. | Raheb, Susannah; Evelyn-Bellamy, Tatia; Vasquez, Luz; Crawford, Martha; Buffler, Janice | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000379 | MSJ000381 | USA00065 | USA00067 | 12/19/2017 | Raheb, Susannah | Galvin, James Jr; Buffler, Janice; Vasquez, Luz; Crawford, Martha; Evelyn-Bellamy, Tatia; Waldon, Sean | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000382 | MSJ000468 | USA00068 | USA00150 | 5/5/2016 | Evelyn-Bellamy, Tatia; Gowder, Amy; Raheb, Susannah | | (b)(3), (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) describes company goals for growth, target industries, and forecasted goals by business area. This business strategy information is competition sensitive.<br><br>The information withheld under the authority of (b)(3) and 41 U.S.C. §2102 describes actual subcontracting performance by business area. This actual subcontracting performance information is competition sensitive. |
| Redacted | MSJ000469 | MSJ000470 | USA00161 | USA00162 | 2/4/2015 | Deskins, Nancy | Evelyn-Bellamy, Tatia; Trimble-Williams, Margarette; Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000471 | MSJ000471 | USA00501 | USA00501 | 2/4/2015 | Evelyn-Bellamy, Tatia | | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000472 | MSJ000529 | USA00167 | USA00225 | 7/9/2015 | Raheb, Susannah; Sorenson, Lee; Suderlin, Patrick | | (b)(3), (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) describes forecasts for growth, business area analysis, and methodology for establishing goals. This business strategy information is competition sensitive.<br><br>The information withheld under the authority of (b)(3) and 41 U.S.C. §2102 describes actual subcontracting performance by business area. This performance information is competition sensitive. |
| Redacted | MSJ000530 | MSJ000612 | USA00226 | USA00309 | 4/8/2016 | Raheb, Susannah | | (b)(3), (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) describes forecasts for growth, business area analysis, and methodology for establishing goals. This business strategy information is competition sensitive.<br><br>The information withheld under the authority of (b)(3) and 41 U.S.C. §2102 describes actual subcontracting performance by business area. This performance information is competition sensitive. |
| Redacted | MSJ000613 | MSJ000614 | | | 4/11/2016 | Raheb, Susannah | Buffler, Janice; Vasquez, Luz; Evelyn-Bellamy, Tatia; Galvin, James; Pugh, Anthony | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000615 | MSJ000615 | USA00311 | USA00311 | 2/13/2018 | Crawford, Martha | Thomas, Shelly | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000619 | MSJ000620 | USA00314 | USA00315 | 3/12/2018 | Crawford, Martha | Gainer, Stephanie; Thomas, Shelly; Johnson, Amy | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000621 | MSJ000622 | USA00505 | USA00506 | 2/28/2018 | Thomas, Shelly | Crawford, Martha | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000623 | MSJ000623 | USA00320 | USA00320 | 8/21/2015 | Raheb, Susannah | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000624 | MSJ000625 | USA00507 | USA00508 | | | | (b)(4) | The information withheld under the authority of (b)(4) is a corrective action matrix. This business strategy information is competition sensitive. |
| Redacted | MSJ000626 | MSJ000627 | USA00324 | USA00325 | 10/1/2015 | Evelyn-Bellamy, Tatia | Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000628 | MSJ000628 | USA00328 | USA00328 | 11/7/2017 | Vasquez, Luz | Crawford, Martha; Johnson, Amy; Whitehurst, Owen; Gaskins, Kimberly | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000629 | MSJ000630 | USA00509 | USA00510 | 11/7/2017 | Vasquez, Luz | Schultz, Dan | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000631 | MSJ000632 | USA00329 | USA00330 | 3/13/2018 | Lehew, Dawn | Raheb, Susannah; Vasquez, Luz; Baumann, Lisa; Desanto, Pasquale | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000633 | MSJ000633 | USA00511 | USA00511 | | | | (b)(4) | The information withheld under the authority of (b)(4) is detailed subcontracting information, including specific subcontractors and monetary amounts. This contract information is competition sensitive. |
| Redacted | MSJ000634 | MSJ000635 | USA00333 | USA00334 | 12/12/2014 | Raheb, Susannah | Vasquez, Luz; Deskins, Nancy | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is a discussion about the performance of a program. This business strategy information is competition sensitive. |
| Redacted | MSJ000636 | MSJ000636 | USA00512 | USA00512 | 12/10/2014 | | | (b)(4) | The information withheld under the authority of (b)(4) is detailed information about the performance of a program by business area. This business strategy information is competition sensitive. |
| Redacted | MSJ000637 | MSJ000637 | USA00335 | USA00335 | 2/15/2018 | Crawford, Martha | Vasquez, Luz | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) describes a specific target entity in the discussion about goals. This business strategy information is competition sensitive. |
| Redacted | MSJ000638 | MSJ000638 | USA00336 | USA00336 | 2/15/2018 | Crawford, Martha | Vasquez, Luz | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) describes a specific target entity in the discussion about goals. This business strategy information is competition sensitive. |
| Redacted | MSJ000639 | MSJ000640 | USA00337 | USA00338 | 9/15/2017 | Crawford, Martha | Vasquez, Luz; Johnson, Amy | (b)(3), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(3) and 41 U.S.C. §2102 describes actual performance by segment. This performance information is competition sensitive. |
| Redacted | MSJ000641 | MSJ000643 | USA00339 | USA00341 | 8/31/2017 | Vasquez, Luz | Crawford, Martha; Johnson, Amy | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) describes target industries and goals. This business strategy information is competition sensitive. |
| Redacted | MSJ000644 | MSJ000645 | USA00342 | USA00343 | 11/7/2017 | Vasquez, Luz | Crawford, Martha | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000646 | MSJ000646 | USA00344 | USA00344 | 9/13/2017 | Vasquez, Luz | Crawford, Martha; Johnson, Amy | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000647 | MSJ000651 | USA00345 | USA00349 | 1/13/2017 | Crawford, Martha | Vasquez, Luz; Richardson, Keith | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Privileged | MSJ000652 | MSJ000652 | USA00513 | | | | | (b)(4) | The information withheld under the authority of (b)(4) is detailed purchase order information, listing specific suppliers and monetary amounts, that is competition sensitive. |
| Redacted | MSJ000654 | MSJ00069 | USA00351 | USA00356 | 9/26/2017 | Vasquez, Luz | Crawford, Martha; Johnson, Amy; Richardson, Keith | (b)(3), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.  The information withheld under the authority of (b)(3) and 41 U.S.C. §2102 describes actual performance by segment. This performance information is competition sensitive. |
| Redacted | MSJ000660 | MSJ000661 | USA00357 | USA00358 | 3/29/2018 | Crawford, Martha | Vasquez, Luz; Richardson, Keith | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000662 | MSJ000663 | USA00359 | USA00360 | 3/29/2018 | Crawford, Martha | Vasquez, Luz; Richardson, Keith | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000664 | MSJ000665 | USA00361 | USA00362 | 12/14/2017 | Vasquez, Luz | Crawford, Martha | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Privileged | MSJ000666 | MSJ000666 | USA00514 | | | | | (b)(4) | The information withheld under the authority of (b)(4) is detailed purchase order information, listing specific suppliers and monetary amounts, that is competition sensitive. |
| Redacted | MSJ000667 | MSJ000667 | USA00363 | USA00363 | 10/10/2017 | Crawford, Martha | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000668 | MSJ000668 | USA00364 | USA00364 | 6/18/2018 | Raheb, Susannah | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000669 | MSJ000670 | USA00365 | USA00366 | 11/6/2017 | Crawford, Martha | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000671 | MSJ000672 | USA00367 | USA00368 | 12/21/2015 | Stephens-Mack, Micole | Schultz, Dan | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000673 | MSJ000674 | USA00369 | USA00370 | 12/14/2016 | Vasquez, Luz | Schultz, Dan | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000675 | MSJ000694 | USA00371 | USA00390 | 8/4/2015 | Duffy, Janet | Stephens-Mack, Micole | (b)(4) | The information withheld under the authority of (b)(4) is a review of the small business program and corrective action recommendations. This evaluation information is competition sensitive. |
| Redacted | MSJ000695 | MSJ000695 | USA00391 | USA00391 | 5/1/2014 | Deskins, Nancy | Vasquez, Luz; Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

| Redacted | MSJ000696 | MSJ000696 | USA00515 | USA00515 | 5/1/2014 | Deskins, Nancy | Vasquez, Luz | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is a corrective action matrix. This business strategy information is competition sensitive. |
| Redacted | MSJ000697 | MSJ000697 | USA00392 | USA00392 | 5/28/2014 | Deskins, Nancy | Vasquez, Luz; Raheb, Susannah; Tanksley, Jim | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000698 | MSJ000699 | USA00393 | USA00394 | 6/3/2014 | Deskins, Nancy | Vasquez, Luz; Raheb, Susannah; Tanksley, Jim | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) identifies specific target suppliers. This business strategy information is competition sensitive. |
| Redacted | MSJ000700 | MSJ000700 | USA00395 | USA00395 | 4/5/2018 | Roberts, Bonnie | Peterson, Jay | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000701 | MSJ000702 | USA00396 | USA00397 | 3/22/2018 | Raheb, Susannah | Vasquez, Luz; Ford, Burt; McHugh, Patricia; Desanto, Pasquale | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000703 | MSJ000704 | USA00398 | USA00399 | 6/16/2014 | Deskins, Nancy | Vasquez, Luz; Raheb, Susannah | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is a corrective action matrix. This business strategy information is competition sensitive. |
| Redacted | MSJ000705 | MSJ000707 | USA00400 | USA00402 | 1/26/2015 | Deskins, Nancy | Vasquez, Luz; Raheb, Susannah | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is a corrective action matrix. This business strategy information is competition sensitive. |
| Redacted | MSJ000708 | MSJ000709 | USA00403 | USA00404 | 8/1/2014 | Deskins, Nancy | Vasquez, Luz; Raheb, Susannah | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is a corrective action matrix. This business strategy information is competition sensitive. |
| Redacted | MSJ000710 | MSJ000711 | USA00405 | USA00406 | 12/2/2014 | Raheb, Susannah | Vasquez, Luz; Deskins, Nancy | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is the review of a small business program. This evaluation information is competition sensitive. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000712 | MSJ000712 | USA00516 | USA00516 | 10/27/2014 | | | (b)(4) | The information withheld under the authority of (b)(4) is the review of a small business program. This evaluation information is competition sensitive. |
| Redacted | MSJ000713 | MSJ000714 | USA00407 | USA00408 | 12/2/2014 | Raheb, Susannah | Vasquez, Luz; Deskins, Nancy | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. The information withheld under the authority of (b)(4) is the review of a small business program. This evaluation information is competition sensitive. |
| Redacted | MSJ000715 | MSJ000715 | USA00409 | USA00409 | 10/16/2014 | Raheb, Susannah | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000721 | MSJ000721 | USA00410 | USA00410 | 10/16/2014 | Raheb, Susannah | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000722 | MSJ000722 | USA00411 | USA00411 | | Raheb, Susannah | Evelyn-Bellamy, Tatia | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000724 | MSJ000725 | USA00522 | USA00523 | 8/24/2017 | Turner, Ron | Liptak, John | (b)(4) | The information withheld under the authority of (b)(4) is detailed purchase order information, listing specific suppliers and monetary amounts, that is competition sensitive. |
| Redacted | MSJ000726 | MSJ000727 | USA00413 | USA00414 | | Raheb, Susannah | Evelyn-Bellamy, Tatia | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000728 | MSJ000728 | USA00415 | USA00415 | 3/13/2018 | Raheb, Susannah | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000729 | MSJ000729 | USA00416 | USA00416 | 11/17/2015 | Raheb, Susannah | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000730 | MSJ000730 | USA00417 | USA00417 | 4/21/2015 | Raheb, Susannah | Vasquez, Luz | (b)(4) | The information withheld under the authority of (b)(4) is a review of the performance and goals for a small business program. This evaluation information is competition sensitive. |
| Redacted | MSJ000731 | MSJ000734 | USA00418 | USA00421 | 10/14/2014 | Deskins, Nancy | Vasquez, Luz; Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000735 | MSJ000738 | USA00422 | USA00425 | 10/14/2014 | Deskins, Nancy | Vasquez, Luz; Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000739 | MSJ000739 | USA00426 | USA00426 | 3/29/2018 | Thomas, Shelly | Raheb, Susannah; Galvin, James Jr.; Evelyn-Bellamy, Tatia; Vasquez, Luz; Johnson, Amy; Crawford, Martha; Desanto, Pasquale; Ravenfeld, Kurt; Richardson, Keith; Buffler, Janice | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000740 | MSJ000740 | USA00427 | USA00427 | 9/24/2014 | Evelyn-Bellamy, Tatia | Deskins, Nancy | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000741 | MSJ000741 | USA00428 | USA00428 | 10/28/2015 | Raheb, Susannah | Evelyn-Bellamy, Tatia; Vasquez, Luz; Sharp, Charles; Ravenfeld, Kurt; Sorenson, Lee | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000742 | MSJ000742 | USA00429 | USA00429 | 4/16/2018 | Thomas, Shelly | Hewson, Marillyn; Raheb, Susannah; Vasquez, Luz; Gaskins, Kimberly; Roberts, Bonnie | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Privileged | MSJ000743 | MSJ000743 | USA00524 | USA00524 | | | | (b)(3), (b)(4) | The information withheld under the authority of (b)(3) and 41 U.S.C. §2102 and (b)(4) is a compliance review. This business strategy information is competition sensitive. |
| Redacted | MSJ000744 | MSJ000744 | USA00525 | USA00525 | 4/16/2018 | Thomas, Shelly | Hewson, Marillyn | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000745 | MSJ000745 | USA00430 | USA00430 | 11/20/2015 | Raheb, Susannah | Evelyn-Bellamy, Tatia; Vasquez, Luz; Sharp, Charles; Ravenfeld, Kurt | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000746 | MSJ000746 | USA00431 | USA00431 | 2/22/2015 | Deskins, Nancy | Dodds, Kenneth, Vasquez, Luz; Raheb Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000747 | MSJ000747 | USA00432 | USA00432 | 9/3/2014 | Deskins, Nancy | Trimble-Williams, Margarette; Vasquez, Luz; Evelyn-Bellamy, Tatia; Buffler, Janice; Sunderlin, Patrick; Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000748 | MSJ000748 | USA00433 | USA00433 | 4/19/2018 | Thomas, Shelly | Buffler, Janice; Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000749 | MSJ000750 | USA00434 | USA00435 | 6/15/2018 | Thomas, Shelly | Woode, Carol; Raheb, Susannah; Varga; Tenore, Marianne; Crawford, Martha; Moss, Alton; Petro, Alexi; Sammon, R; Clever, Bethani; Bellamy-Vaughan, Tatia; Buffler, Janice; Waldon, Sean; Harrington, Elizabeth | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000830 | MSJ000832 | USA00608 | USA00610 | 6/5/2018 | Thomas, Shelly | | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000833 | MSJ000836 | USA00436 | USA00439 | 9/25/2015 | Crawford, Martha | Stephens-Mack, Micole | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is a description of the Blank Spend initiative for purchase strategy. This business strategy information is competition sensitive. |
| Redacted | MSJ000837 | MSJ000837 | USA00440 | USA00440 | 8/4/2015 | Leduc, Robert | Stephens-Mack, Micole | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

| Status | | | | | Date | From | To | Exemption | Description |
|---|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000845 | MSJ000845 | USA00448 | USA00448 | 4/16/2018 | Thomas, Shelly | Schultz, Daniel; Crawford, Martha; Vasquez, Luz; Gaskins, Kimberly | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Privileged | MSJ000846 | MSJ000846 | USA00611 | USA00611 | | | | (b)(3), (b)(4) | The information withheld under the authority of (b)(3) and 41 U.S.C. §2102 and (b)(4) is a compliance review. This business strategy information is competition sensitive. |
| Redacted | MSJ000847 | MSJ000848 | USA00449 | USA00450 | 8/18/2017 | Vasquez, Luz | Crawford, Martha | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) describes target industries and goals. This business strategy information is competition sensitive. |
| Redacted | MSJ000849 | MSJ000849 | USA00451 | USA00451 | 9/29/2017 | Crawford, Martha | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000850 | MSJ000851 | USA00452 | USA00453 | 2/7/2017 | Crawford, Martha | Vasquez, Luz; Richardson, Keith | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Privileged | MSJ000852 | MSJ000852 | USA00612 | USA00612 | | | | (b)(4) | The information withheld under the authority of (b)(4) is detailed purchase order information, listing specific suppliers and monetary amounts, that is competition sensitive. |
| Redacted | MSJ000853 | MSJ000854 | USA00454 | USA00455 | 11/7/2017 | Crawford, Martha | Vasquez, Luz; Richardson, Keith | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000854 | MSJ000858 | USA00456 | USA00459 | 12/20/2016 | Stephens-Mack, Micole | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000859 | MSJ000861 | USA00460 | USA00462 | 12/20/2016 | Stephens-Mack, Micole | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000862 | MSJ000862 | USA00463 | USA00463 | 7/20/2017 | Cotton, Bill | Vasquez, Luz; Richardson, Keith; Crawford, Martha; Johnson, Amy | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000864 | MSJ000865 | USA00465 | USA00466 | 9/12/2017 | Crawford, Martha | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000866 | MSJ000868 | USA00467 | USA00469 | 8/6/2009 | Loesch, Kevin | Altieri, Albert | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is the analysis of and response to a corrective action matrix. This business strategy information is competition sensitive. |
| Redacted | MSJ000869 | MSJ000869 | USA00470 | USA00470 | 9/13/2017 | Crawford, Martha | Vasquez, Luz; Johnson, Amy | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000870 | MSJ000870 | USA00471 | USA00471 | 1/30/2018 | Crawford, Martha | Vasquez, Luz; Richardson, Keith | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Redacted | MSJ000871 | MSJ000877 | USA00613 | USA00619 | | | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) describes progress towards goals by business area and categories for development. This business strategy information is competition sensitive. |
| Redacted | MSJ000878 | MSJ000878 | USA00472 | USA00472 | 1/30/2018 | Crawford, Martha | Vasquez, Luz; Richardson, Keith | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000884 | MSJ000884 | USA00478 | USA00478 | 9/6/2017 | Crawford, Martha | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000885 | MSJ000888 | USA00479 | USA00482 | 4/5/2018 | Crawford, Martha | Vasquez, Luz; Richardson, Keith | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) describes specific target industries. This business strategy information is competition sensitive. |
| Redacted | MSJ000889 | MSJ000890 | USA00483 | USA00484 | 8/18/2017 | Crawford, Martha | Vasquez, Luz | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) describes target industries and goals. This business strategy information is competition sensitive. |
| Redacted | MSJ000891 | MSJ000896 | USA00485 | USA00490 | 9/25/2017 | Vasquez, Luz | Crawford, Martha; Johnson, Amy; Richardson, Keith | (b)(3), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(3) and 41 U.S.C. §2102 describes actual performance by segment. This performance information is competition sensitive. |
| Redacted | MSJ000897 | MSJ000898 | USA00491 | USA00492 | 11/16/2017 | Crawford, Martha | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| Redacted | MSJ000899 | MSJ000903 | USA00493 | USA00496 | 8/31/2017 | Crawford, Martha | Vasquez, Luz; Johnson, Amy | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) describes target industries and goals. This business strategy information is competition sensitive. |
| Privileged | MSJ000900 | MSJ000900 | USA00620 | USA00620 | | | | (b)(4) | The information withheld under the authority of (b)(4) is detailed purchase order information, listing specific suppliers and monetary amounts, that is competition sensitive. |

| Redacted | MSJ000904 | MSJ000905 | USA00497 | USA00498 | 8/3/2017 | Crawford, Martha | Vasquez, Luz | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. The information withheld under the authority of (b)(4) describes target industries and goals. This business strategy information is competition sensitive. |
|---|---|---|---|---|---|---|---|---|---|

# EXHIBIT F-2

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 4/30/2019 | Redacted | MSJ001642 | MSJ001643 | LMC_00000259 | LMC_00000260 | 9/19/2016 | Vasquez, Luz | Herry, Arlene | (b)(6) | The information withheld under the authority of (b)(6) is the e-mail address of an individual that, if disclosed, could cause the unwarranted invasion of privacy. There is no public interest in the individual's personal contact information, such as email addresses. The redacted information is protected to avoid potential unsolicited e-mails or other contact. The harm to the individuals as a result of the disclosure clearly outweighs the public interest in such disclosure. |
| 4/30/2019 | Redacted | MSJ001644 | | LMC_00000261 | | 7/8/2016 | Evelyn-Bellamy, Tatia | Evelyn-Bellamy, Tatia; Lima, Steven; Clever, Bethani; Bagni, Andrew; Raheb, Susannah; Crawford, Martha; Varga, Thosie; Fortner, B; Samman, Rhonda; Walker, Voltaire; Moss, Alton | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001645 | MSJ001646 | LMC_00000262 | LMC_00000263 | 2/7/2018 | Raheb, Susannah | Vazquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001647 | | LMC_00000264 | | 10/16/2014 | Raheb, Susannah | Vazquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001648 | MSJ001649 | LMC_00000265 | LMC_00000266 | 12/21/2015 | Stephens-Mack, Micole | Schultz, Dan | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001650 | MSJ001651 | LMC_00000267 | LMC_00000268 | 12/14/2016 | Vasquez, Luz | Schultz, Dan | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001652 | MSJ001653 | LMC_00000269 | LMC_00000270 | 11/7/2017 | Vasquez, Luz | Schultz, Dan | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001654 | MSJ001655 | LMC_00000271 | LMC_00000272 | 11/7/2017 | Vasquez, Luz | Schultz, Dan | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001656 | MSJ001657 | LMC_00000273 | LMC_00000274 | 12/19/2016 | Vasquez, Luz | Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001658 | MSJ001659 | LMC_00000275 | LMC_00000276 | 11/14/2017 | Vasquez, Luz | Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 4/30/2019 | Redacted | MSJ001660 | | LMC_00000277 | | 9/30/2016 | Vasquez, Luz | Raheb, Susannah | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001661 | | LMC_00000278 | | 8/3/2015 | Raheb, Susannah | | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001662 | | LMC_00000281 | | 6/27/2016 | Raheb, Susannah | | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001663 | MSJ001664 | LMC_00000282 | LMC_00000283 | 6/21/2016 | Evelyn-Bellamy, Tatia | | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001813 | MSJ001814 | LMC_00000453 | LMC_00000454 | 9/30/2017 | Goslin, Philip; Raheb, Susannah | | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001815 | | LMC_00000460 | | 7/9/2015 | Raheb, Susannah; Sorenson, Lee | | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001952 | MSJ001955 | LMC_00000622 | LMC_00000625 | 12/20/2016 | Stephens-Mack, Micole | Vazquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 4/30/2019 | Redacted | MSJ001956 | MSJ001958 | LMC_00000626 | LMC_00000628 | 12/21/2016 | Stephens-Mack, Micole | Vazquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 5/16/2019 | Redacted | MSJ002000 | | USA00115 (MSJ00429) | | | | | (b)(4) | The information withheld under the authority of (b)(4) in Exhibit 4, Corporate Historical Subcontracting Performance, is historical performance data. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 5/16/2019 | Redacted | MSJ002001 | | USA00194 (MSJ000499) | | | | | (b)(4) | The information withheld under the authority of (b)(4) is a discussion of target industry categories. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 5/16/2019 | Redacted | MSJ002002 | | USA00214 (MSJ000519) | | | | | (b)(4) | The information withheld under the authority of (b)(4) in Exhibit 4, Corporate Historical Subcontracting Performance, is historical performance data. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 5/16/2019 | Redacted | MSJ002003 | | USA00239 (MSJ000544) | | | | | (b)(4) | The information withheld under the authority of (b)(4) in the Lockheed Martin Aeronautics Company Summary of Fenced Large Business by Program is program-specific data estimates. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 5/16/2019 | Redacted | MSJ002004 | | USA00272 (MSJ000577) | | | | | (b)(4) | The information withheld under the authority of (b)(4) in Exhibit 4, Corporate Historical Subcontracting Performance, is historical performance data. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 5/16/2019 | Redacted | MSJ002005 | | USA00337 (MSJ000639) | | 9/15/2017 | Crawford, Martha | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the e-mail address of an individual that, if disclosed, could cause the unwarranted invasion of privacy.  There is no public interest in the individual's personal contact information, such as email addresses.  The redacted information is protected to avoid potential unsolicited e-mails or other contact. The harm to the individuals as a result of the disclosure clearly outweighs the public interest in such disclosure. |
| 5/16/2019 | Redacted | MSJ002006 | | USA00353 (MSJ000656) | | 9/21/2017 | Vasquez, Luz | | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 5/16/2019 | Redacted | MSJ002007 | MSJ002008 | USA00355 (MSJ000658) | USA00356 (MSJ000659) | 9/15/2017 | Vasquez, Luz | Crawford, Martha | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 5/16/2019 | Redacted | MSJ002009 | | USA00486 (MSJ000892) | | 9/22/2017 | Vasquez, Luz | Crawford, Martha | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 5/16/2019 | Redacted | MSJ002010 | | USA00489 (MSJ000895) | | 9/15/2017 | | Crawford, Martha | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/18/2019 | Redacted | MSJ002011 | MSJ002036 | LMC0000675 | LMC0000695 | 2/22/2018 | Vasquez, Luz | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. There is no public interest in the individual's personal contact information, such as email addresses. The redacted information is protected to avoid potential unsolicited e-mails or other contact. The harm to the individuals as a result of the disclosure clearly outweighs the public interest in such disclosure.

The information withheld under the authority of (b)(4) in the DCMA Small Business Subcontracting Program Compliance Review is performance data and target information. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002037 | MSJ002038 | LMC0000696 | LMC0000697 | 9/29/2017 | Evelyn-Bellamy, Tatia | Raheb, Susannah | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) is a discussion about subcontracting plan negotiations. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002039 | | LMC0000698 | | 4/16/2018 | Thomas, Shelly | Hewson, Marilyn | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 6/18/2019 | Redacted | MSJ002040 | | LMC0000699 | | 4/14/2017 | Evelyn-Bellamy, Tatia | Hewson, Marilyn | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 6/18/2019 | Redacted | MSJ002041 | MSJ002078 | LMC0000700 | LMC0000724 | 2/7/2017 | Vasquez, Luz | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the DCMA Small Business Subcontracting Program Compliance Review is performance data and target information. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/18/2019 | Redacted | MSJ002079 | MSJ002080 | LMC0000750 | LMC0000751 | 6/21/2015 | Trimble-Williams, Margaret | Hewson, Marilyn | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.  The information withheld under the authority of (b)(4) is a final rating.  This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002081 | MSJ002104 | LMC0000752 | LMC0000775 | 5/18/2015 | Vasquez, Luz | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.  The information withheld under the authority of (b)(4) in the DCMA Small Business Subcontracting Program Compliance Review is performance data and target information.  This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002105 | MSJ002120 | LMC0000802 | LMC0000817 | 9/30/2016 | Buchan, Orysia | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.  The information withheld under the authority of (b)(4) in the DoD Mentor-Protégé Program Semiannual Report includes a breakdown of subcontracts by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002121 | MSJ002124 | LMC0000818 | LMC0000821 | 4/29/2016 | Raheb, Susannah | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.  The information withheld under the authority of (b)(4) in the eSRS Summary Subcontract Report includes a breakdown of subcontracting dollars by sector.  This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002125 | MSJ002126 | LMC0000822 | LMC0000823 | 9/28/2016 | Raheb, Susannah | Vasquez, Luz | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/18/2019 | Redacted | MSJ002127 | MSJ002155 | LMC0000834 | LMC0000862 | 3/31/2017 | Buchan, Orysia | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the DoD Mentor-Protégé Program Semiannual Report includes a breakdown of subcontracts by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002156 | MSJ002169 | LMC0000864 | LMC0000877 | 4/1/2017 | Snyder, Robyn | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the DoD Mentor-Protégé Program Semiannual Report includes a breakdown of subcontracts by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002170 | MSJ002171 | LMC0000878 | LMC0000879 | 8/22/2012 | Trimble-Williams, Margaret | Deskins, Nancy | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) is a discussion about subcontracting plan target industry categories. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002172 | MSJ002173 | LMC0000880 | LMC0000881 | 4/17/2014 | Trimble-Williams, Margaret | Hewson, Marilyn | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) is a final rating and corrective action plan. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002174 | MSJ002175 | LMC0000882 | LMC0000883 | 5/1/2016 | Evelyn-Bellamy, Tatia | Hewson, Marilyn | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/18/2019 | Redacted | MSJ002176 | MSJ002211 | LMC0000884 | LMC0000908 | 1/25/2016 | Vasquez, Luz | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.  The information withheld under the authority of (b)(4) in the DCMA Small Business Subcontracting Program Compliance Review is performance data and target information. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002212 | MSJ002248 | LMC0000909 | LMC0000945 | 9/30/2016 | Evelyn-Bellamy, Tatia | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.  The information withheld under the authority of (b)(4) in the Comprehensive Subcontracting Test Program Fiscal Year 2017 Plan Agreement includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002249 | MSJ002252 | LMC0000946 | LMC0000949 | 4/29/2014 | Deskins, Nancy | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.  The information withheld under the authority of (b)(4) in the Summary Subcontract Report includes a breakdown of subcontracts by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002253 | MSJ002256 | LMC0000950 | LMC0000953 | 10/30/2013 | Deskins, Nancy | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.  The information withheld under the authority of (b)(4) in the Summary Subcontract Report includes a breakdown of subcontracts by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/18/2019 | Redacted | MSJ002257 | MSJ002260 | LMC0000954 | LMC0000957 | 4/30/2013 | Deskins, Nancy | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the Summary Subcontract Report includes a breakdown of subcontracts by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002261 | MSJ002322 | LMC0000958 | LMC0001019 | 10/23/2013 | Deskins, Nancy | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the GFY 2014 Comprehensive Small Business Subcontracting Plan includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002323 | MSJ002326 | LMC0001020 | LMC0001023 | 7/13/2015 | Raheb, Susannah | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the Summary Subcontract Report includes a breakdown of subcontracts by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002327 | MSJ002330 | LMC0001024 | LMC0001027 | 10/30/2015 | Raheb, Susannah | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the Summary Subcontract Report includes a breakdown of subcontracts by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/18/2019 | Redacted | MSJ002331 | MSJ002334 | LMC0001028 | LMC0001031 | 4/29/2015 | Raheb, Susannah | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the Summary Subcontract Report includes a breakdown of subcontracts by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002335 | MSJ002337 | LMC0001032 | LMC0001034 | 4/26/2018 | Raheb, Susannah | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the Summary Subcontract Report includes a breakdown of subcontracts by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002338 | MSJ002395 | LMC0001035 | LMC0001092 | 7/9/2015 | Raheb, Susannah | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the GFY 2015 Comprehensive Small Business Subcontracting Plan Agreement includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002396 | MSJ002448 | LMC0001093 | LMC0001145 | 9/21/2012 | Deskins, Nancy | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the GFY 2013 Comprehensive Small Business Subcontracting Plan Agreement includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/18/2019 | Redacted | MSJ002449 | MSJ002512 | LMC0001146 | LMC0001209 | 8/15/2014 | Deskins, Nancy | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the GFY 2015 Comprehensive Small Business Subcontracting Plan Agreement includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002513 | MSJ002547 | LMC0001210 | LMC0001244 | 8/16/2016 | Evelyn-Bellamy, Tatia | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the Comprehensive Subcontracting Test Program Fiscal Year 2017 Plan Agreement includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002548 | MSJ002582 | LMC0001245 | LMC0001279 | 9/27/2016 | Evelyn-Bellamy, Tatia | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the Comprehensive Subcontracting Test Program Fiscal Year 2017 Plan Agreement includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002583 | MSJ002624 | LMC0001280 | LMC0001321 | 9/30/2017 | Evelyn-Bellamy, Tatia | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the Comprehensive Subcontracting Test Program Fiscal Year 2018 Plan Agreement includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/18/2019 | Redacted | MSJ002625 | MSJ002658 | LMC0001322 | LMC0001346 | 1/25/2016 | Vasquez, Luz | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the DCMA Small Business Subcontracting Program Compliance Review is performance data and target information. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002659 | MSJ002741 | LMC0001347 | LMC0001429 | 5/5/2016 | Evelyn-Bellamy, Tatia | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the Comprehensive Subcontracting Test Program Fiscal Year 2016 Plan Agreement includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/18/2019 | Redacted | MSJ002742 | MSJ002784 | LMC0001430 | LMC0001472 | 10/3/2017 | Evelyn-Bellamy, Tatia | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the Test Program for Comprehensive Small Business Subcontracting Plans Fiscal Year 2018 Plan Agreement includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Redacted | MSJ002785 | | LMC0001493 | | 4/17/2017 | Evelyn-Bellamy, Tatia | Schultz, Dan | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. There is no public interest in the individual's personal contact information, such as email addresses. The redacted information is protected to avoid potential unsolicited e-mails or other contact. The harm to the individuals as a result of the disclosure clearly outweighs the public interest in such disclosure.

The information withheld under the authority of (b)(4) is a final rating. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/2019 | Redacted | MSJ002786 | MSJ002822 | LMC0001520 | LMC0001556 | 2/7/2019 | Sharp, Charles | Thomas, Shelly | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) is strategy discussion for inclusion of a specific target in a subcontracting plan. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Redacted | MSJ002823 | | LMC0001557 | | 5/1/2016 | Evelyn-Bellamy, Tatia | Schultz, Dan | (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy. |
| 6/28/2019 | Redacted | MSJ002824 | MSJ002825 | LMC0001583 | LMC0001584 | 7/2/2015 | Trimble-Williams, Margerette | Leduc, Bob | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) is a final rating. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Privileged | | | LMC0001473 | LMC0001492 | 9/30/2014 | Trimble-Williams, Margerette | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the DCMA Review of Contractor's Comprehensive Subcontracting Program is performance data and target information.  This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Privileged | | | LMC0001494 | LMC0001514 | 3/6/2018 | Vasquez, Luz | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.

The information withheld under the authority of (b)(4) in the DCMA Small Business Subcontracting Program Compliance Review is performance data and target information.  This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/2019 | Privileged | | | LMC0001515 | | 4/28/2017 | Crawford, Martha | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the eSRS Summary Subcontract Report includes a breakdown of subcontracting dollars by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Privileged | | | LMC0001558 | LMC0001582 | 2/22/2016 | Stephens-Mack, Micole | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the DCMA Small Business Subcontracting Program Compliance Review is performance data and target information. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Privileged | | | LMC0001585 | LMC0001607 | 3/7/2014 | Trimble-Williams, Margerette | Maurer, Mick | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is a final rating and the DCMA Review of Contractor's Comprehensive Subcontracting Program. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Privileged | | | LMC0001608 | LMC0001632 | 2/22/2017 | Vasquez, Luz | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the DCMA Small Business Subcontracting Program Compliance Review is performance data and target information. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/2019 | Privileged | | | LMC0001633 | LMC0001637 | 10/27/2017 | Crawford, Martha | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the eSRS Summary Subcontract Report includes a breakdown of subcontracting dollars by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Privileged | | | LMC0001638 | LMC0001639 | 11/14/2016 | Stephens-Mack, Micole | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the eSRS Summary Subcontract Report includes a breakdown of subcontracting dollars by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Privileged | | | LMC0001640 | LMC0001662 | 8/7/2017 | Evelyn-Bellamy, Tatia | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the Comprehensive Subcontracting Test Program Fiscal Year 2018 Plan Agreement includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Privileged | | | LMC0001663 | LMC0001684 | 9/30/2016 | Crawford, Martha | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the Comprehensive Small Business Subcontracting Plan for Fiscal Year 2016 includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/2019 | Privileged | | | LMC0001685 | LMC0001688 | 9/25/2015 | Crawford, Martha | Stephens, Micole | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is an explanation of the Blank Spend program. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Privileged | | | LMC0001689 | | 5/1/2016 | Evelyn-Bellamy, Tatia | Schultz, Daniel | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) is a final rating. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Privileged | | | LMC0001690 | LMC0001696 | | | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the Q1 Progress Report for Fiscal Year 2018 includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |
| 6/28/2019 | Privileged | | | LMC0001697 | LMC0001719 | 10/1/2015 | Evelyn-Bellamy, Tatia | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the Comprehensive Subcontracting Test Program Fiscal Year 2016 Plan Agreement includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

ASBL v. DOD
USDC #18CV1979
Vaughn Index
Updated 7/11/2019

| Production Date | | MSJ Bates Number Begin | MSJ Bates Number End | Bates Number Begin | Bates Number End | Date Sent | Author/From | To | Exemption | Description of withheld information |
|---|---|---|---|---|---|---|---|---|---|---|
| 6/28/2019 | Privileged | | | LMC0001720 | LMC0001726 | | | | (b)(4), (b)(6) | The information withheld under the authority of (b)(6) is the contact information of an individual that, if disclosed, could cause the unwarranted invasion of privacy.<br><br>The information withheld under the authority of (b)(4) in the Supplemental eSRS Q1 Supplemental Submission for Fiscal Year 2017 includes target industries and historical performance by sector. This information is customarily and actually treated as private by the company and was provided to the government under an assurance of privacy. |

# EXHIBIT F-3



*United States Attorney*
*Northern District of California*

---

*9th Floor, Federal Building*
*450 Golden Gate Ave., Box 36055*
*San Francisco, CA 94102-3495*

*(415) 436-7288*
*FAX (415) 436-7169*

January 6, 2020

Via Email
Karl Olson
Cannata O'Toole, Fickes & Almazan LLP
100 Pine Street, Suite 350
San Francisco, CA 94111

Re:    *American Small Business League v. Dep't of Defense*
       Case No.: 18-CV-1979-WHA

Dear Mr. Olson:

Please find enclosed a production of documents from the Department of Defense, which includes all of the documents previously redacted or withheld pursuant to Exemption 4, and includes the changes made to the production in accordance with the Court's November 24, 2019 Order (ECF No. 153). The Bates range of this production is SUPP000001 through SUPP001362. We have not produced two documents previously withheld in full (MSJ000743 and MSJ000846) because they are exact duplicates of documents already contained in the production (SUPP000367-92 and SUPP001159-85, respectively). As a courtesy, we are enclosing a chart identifying all pages that were updated following the government's review of all documents at issue in this matter.

Very truly yours,

DAVID L. ANDERSON
United States Attorney

*/s/ Ellen London*_____
ELLEN LONDON
SAVITH IYENGAR
Assistant U.S. Attorneys

Enclosure

| page | Previous treatment |
|------|--------------------|
| MSJ000356 | Produced |
| MSJ000624 | Produced |
| MSJ000625 | Produced |
| MSJ000675 | Produced |
| MSJ000676 | Produced |
| MSJ000677 | Produced |
| MSJ000678 | Produced |
| MSJ000679 | Produced |
| MSJ000680 | Produced |
| MSJ000681 | Produced |
| MSJ000682 | Produced |
| MSJ000683 | Produced |
| MSJ000684 | Produced |
| MSJ000685 | Produced |
| MSJ000686 | Produced |
| MSJ000687 | Produced |
| MSJ000688 | Produced |
| MSJ000689 | Produced |
| MSJ000690 | Produced |
| MSJ000692 | Produced |
| MSJ000696 | Produced |
| MSJ000703 | Produced |
| MSJ000705 | Produced |
| MSJ000706 | Produced |
| MSJ000707 | Produced |
| MSJ000708 | Produced |
| MSJ000709 | Produced |
| MSJ000866 | Produced |
| MSJ000867 | Produced |
| MSJ000868 | Produced |
| MSJ002015 | Produced |
| MSJ002016 | Produced |
| MSJ002017 | Produced |
| MSJ002025 | Produced |
| MSJ002026 | Produced |
| MSJ002027 | Produced |
| MSJ002028 | Produced |
| MSJ002033 | Produced |
| MSJ002034 | Produced |
| MSJ002037 | Produced |
| MSJ002043 | Produced |
| MSJ002046 | Produced |

| page | Previous treatment |
|------|--------------------|
| MSJ002047 | Produced |
| MSJ002048 | Produced |
| MSJ002049 | Produced |
| MSJ002050 | Produced |
| MSJ002059 | Produced |
| MSJ002061 | Produced |
| MSJ002062 | Produced |
| MSJ002063 | Produced |
| MSJ002064 | Produced |
| MSJ002065 | Produced |
| MSJ002070 | Produced |
| MSJ002071 | Produced |
| MSJ002079 | Produced |
| MSJ002081 | Produced |
| MSJ002082 | Produced |
| MSJ002084 | Produced |
| MSJ002085 | Produced |
| MSJ002087 | Produced |
| MSJ002088 | Produced |
| MSJ002089 | Produced |
| MSJ002090 | Produced |
| MSJ002092 | Produced |
| MSJ002103 | Produced |
| MSJ002104 | Produced |
| MSJ002172 | Produced |
| MSJ002176 | Produced |
| MSJ002180 | Produced |
| MSJ002181 | Produced |
| MSJ002182 | Produced |
| MSJ002183 | Produced |
| MSJ002184 | Produced |
| MSJ002185 | Produced |
| MSJ002186 | Produced |
| MSJ002190 | Produced |
| MSJ002194 | Produced |
| MSJ002195 | Produced |
| MSJ002196 | Produced |
| MSJ002197 | Produced |
| MSJ002198 | Produced |
| MSJ002202 | Produced |
| MSJ002203 | Produced |
| MSJ002205 | Produced |
| MSJ002210 | Produced |
| MSJ002785 | Produced |
| MSJ002824 | Produced |

| page | Previous treatment |
|---|---|
| LMC0001473 | Previously withheld in full |
| LMC0001474 | Previously withheld in full |
| LMC0001475 | Previously withheld in full |
| LMC0001476 | Previously withheld in full |
| LMC0001477 | Previously withheld in full |
| LMC0001478 | Previously withheld in full |
| LMC0001479 | Previously withheld in full |
| LMC0001480 | Previously withheld in full |
| LMC0001481 | Previously withheld in full |
| LMC0001482 | Previously withheld in full |
| LMC0001483 | Previously withheld in full |
| LMC0001484 | Previously withheld in full |
| LMC0001485 | Previously withheld in full |
| LMC0001486 | Previously withheld in full |
| LMC0001487 | Previously withheld in full |
| LMC0001488 | Previously withheld in full |
| LMC0001489 | Previously withheld in full |
| LMC0001490 | Previously withheld in full |
| LMC0001491 | Previously withheld in full |
| LMC0001492 | Previously withheld in full |
| LMC0001494 | Previously withheld in full |
| LMC0001495 | Previously withheld in full |

| page | Previous treatment |
|---|---|
| LMC0001496 | Previously withheld in full |
| LMC0001497 | Previously withheld in full |
| LMC0001498 | Previously withheld in full |
| LMC0001498-A | Previously withheld in full |
| LMC0001499 | Previously withheld in full |
| LMC0001500 | Previously withheld in full |
| LMC0001500-A | Previously withheld in full |
| LMC0001501 | Previously withheld in full |
| LMC0001502 | Previously withheld in full |
| LMC0001503 | Previously withheld in full |
| LMC0001504 | Previously withheld in full |
| LMC0001504-A | Previously withheld in full |
| LMC0001505 | Previously withheld in full |
| LMC0001506 | Previously withheld in full |
| LMC0001507 | Previously withheld in full |
| LMC0001507-A | Previously withheld in full |
| LMC0001507-B | Previously withheld in full |
| LMC0001508 | Previously withheld in full |
| LMC0001508-A | Previously withheld in full |
| LMC0001509 | Previously withheld in full |
| LMC0001510 | Previously withheld in full |
| LMC0001511 | Previously withheld in full |

| page | Previous treatment |
|------|--------------------|
| LMC0001512 | Previously withheld in full |
| LMC0001513 | Previously withheld in full |
| LMC0001514 | Previously withheld in full |
| LMC0001515 | Previously withheld in full |
| LMC0001516 | Previously withheld in full |
| LMC0001517 | Previously withheld in full |
| LMC0001518 | Previously withheld in full |
| LMC0001519 | Previously withheld in full |
| LMC0001558 | Previously withheld in full |
| LMC0001559 | Previously withheld in full |
| LMC0001560 | Previously withheld in full |
| LMC0001561 | Previously withheld in full |
| LMC0001562 | Previously withheld in full |
| LMC0001563 | Previously withheld in full |
| LMC0001564 | Previously withheld in full |
| LMC0001565 | Previously withheld in full |
| LMC0001566 | Previously withheld in full |
| LMC0001567 | Previously withheld in full |
| LMC0001568 | Previously withheld in full |
| LMC0001569 | Previously withheld in full |
| LMC0001570 | Previously withheld in full |
| LMC0001571 | Previously withheld in full |

| page | Previous treatment |
|------|--------------------|
| LMC0001572 | Previously withheld in full |
| LMC0001573 | Previously withheld in full |
| LMC0001574 | Previously withheld in full |
| LMC0001575 | Previously withheld in full |
| LMC0001576 | Previously withheld in full |
| LMC0001577 | Previously withheld in full |
| LMC0001578 | Previously withheld in full |
| LMC0001579 | Previously withheld in full |
| LMC0001580 | Previously withheld in full |
| LMC0001581 | Previously withheld in full |
| LMC0001582 | Previously withheld in full |
| LMC0001585 | Previously withheld in full |
| LMC0001586 | Previously withheld in full |
| LMC0001587 | Previously withheld in full |
| LMC0001588 | Previously withheld in full |
| LMC0001589 | Previously withheld in full |
| LMC0001590 | Previously withheld in full |
| LMC0001591 | Previously withheld in full |
| LMC0001592 | Previously withheld in full |
| LMC0001593 | Previously withheld in full |
| LMC0001594 | Previously withheld in full |
| LMC0001595 | Previously withheld in full |

| page | Previous treatment |
|---|---|
| LMC0001596 | Previously withheld in full |
| LMC0001597 | Previously withheld in full |
| LMC0001598 | Previously withheld in full |
| LMC0001599 | Previously withheld in full |
| LMC0001600 | Previously withheld in full |
| LMC0001601 | Previously withheld in full |
| LMC0001602 | Previously withheld in full |
| LMC0001603 | Previously withheld in full |
| LMC0001604 | Previously withheld in full |
| LMC0001605 | Previously withheld in full |
| LMC0001606 | Previously withheld in full |
| LMC0001607 | Previously withheld in full |
| LMC0001608 | Previously withheld in full |
| LMC0001609 | Previously withheld in full |
| LMC0001610 | Previously withheld in full |
| LMC0001610-A | Previously withheld in full |
| LMC0001610-B | Previously withheld in full |
| LMC0001611 | Previously withheld in full |
| LMC0001612 | Previously withheld in full |
| LMC0001613 | Previously withheld in full |
| LMC0001614 | Previously withheld in full |
| LMC0001615 | Previously withheld in full |

| page | Previous treatment |
|---|---|
| LMC0001616 | Previously withheld in full |
| LMC0001616-A | Previously withheld in full |
| LMC0001617 | Previously withheld in full |
| LMC0001617-A | Previously withheld in full |
| LMC0001618 | Previously withheld in full |
| LMC0001619 | Previously withheld in full |
| LMC0001620 | Previously withheld in full |
| LMC0001621 | Previously withheld in full |
| LMC0001621-A | Previously withheld in full |
| LMC0001622 | Previously withheld in full |
| LMC0001623 | Previously withheld in full |
| LMC0001624 | Previously withheld in full |
| LMC0001625 | Previously withheld in full |
| LMC0001626 | Previously withheld in full |
| LMC0001627 | Previously withheld in full |
| LMC0001628 | Previously withheld in full |
| LMC0001629 | Previously withheld in full |
| LMC0001630 | Previously withheld in full |
| LMC0001631 | Previously withheld in full |
| LMC0001632 | Previously withheld in full |
| LMC0001633 | Previously withheld in full |
| LMC0001634 | Previously withheld in full |

| page | Previous treatment |
|---|---|
| LMC0001635 | Previously withheld in full |
| LMC0001636 | Previously withheld in full |
| LMC0001637 | Previously withheld in full |
| LMC0001638 | Previously withheld in full |
| LMC0001639 | Previously withheld in full |
| LMC0001685 | Previously withheld in full |
| LMC0001686 | Previously withheld in full |
| LMC0001687 | Previously withheld in full |
| LMC0001688 | Previously withheld in full |
| LMC0001689 | Previously withheld in full |
| LMC0001690 | Previously withheld in full |
| LMC0001691 | Previously withheld in full |
| LMC0001692 | Previously withheld in full |
| LMC0001693 | Previously withheld in full |
| LMC0001694 | Previously withheld in full |
| LMC0001695 | Previously withheld in full |
| LMC0001696 | Previously withheld in full |
| LMC0001720 | Previously withheld in full |
| LMC0001721 | Previously withheld in full |
| LMC0001722 | Previously withheld in full |
| LMC0001723 | Previously withheld in full |
| LMC0001724 | Previously withheld in full |

| page | Previous treatment |
|---|---|
| LMC0001725 | Previously withheld in full |
| LMC0001726 | Previously withheld in full |

# EXHIBIT G

Pages 1 - 22

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE WILLIAM H. ALSUP, JUDGE

| | |
|---|---|
| AMERICAN SMALL BUSINESS ) | |
| LEAGUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| VS. ) | **No. C 18-1979 WHA** |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| DEFENSE AND UNITED STATES ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendant. ) | |
| _____) | San Francisco, California |
| | Thursday, January 31, 2019 |

TRANSCRIPT OF PROCEEDINGS

**APPEARANCES**:

For Plaintiff:          CANNATA O'TOOLE FICKES & OLSON LLP
                        100 Pine Street, Suite 350
                        San Francisco, California 94111
                   BY:  **KARL OLSON, ESQ.**
                        **QWALYNE L. LAWSON, ESQ.**
                        **AARON R. FIELD, ESQ.**


For Defendants:         DAVID L. ANDERSON
                        United States Attorney
                        Civil Division
                        450 Golden Gate Avenue, Box 36055
                        San Francisco, California 94102
                   BY:  **ELLEN LONDON**
                        **ASSISTANT UNITED STATES ATTORNEY**




**Reported By:  Katherine Powell Sullivan, CSR No. 5812, RMR, CRR**
               **Official Reporter**

```
 1   Thursday - January 31, 2019                    8:04 a.m.

 2                      P R O C E E D I N G S

 3                         ---oOo---

 4        THE CLERK:  Calling Civil Action 18-1979, American

 5   Small Business League versus Department of Defense.

 6        Counsel, please step forward and state your appearances

 7   for the record.

 8        MR. OLSON:  Good morning, Your Honor.  Karl Olson for

 9   plaintiff American Small Business League.

10        THE COURT:  Okay.  Welcome to you.

11        MS. LONDON:  Good morning, Your Honor.  Ellen London,

12   Assistant United States Attorney, here on behalf of the

13   government.

14        THE COURT:  Okay.  Welcome to you.

15        Who are those people?

16        MR. OLSON:  Aaron Field and Qwalyne Lawson, my

17   associates.

18        THE COURT:  Okay.  Why don't you two get to make your

19   own appearance?  Say something on the record.  Come up here and

20   do that.

21        What's your name?

22        MR. FIELD:  Aaron Field, Your Honor, for plaintiff

23   American Small Business League.  Thank you.

24        THE COURT:  Thank you.

25        MS. LAWSON:  Good morning, Your Honor.  Qwalyne
```

 1   Lawson, also for plaintiff American Small Business League.

 2            **THE COURT:**  Thank you.  Welcome to you too.

 3        So you're all alone.  It's 3 to 1.  I guess you lose.

 4            **MS. LONDON:**  Hopefully not, Your Honor.

 5            **THE COURT:**  Now, listen, how many more of these

 6   American Small Business cases do I have to have?

 7        This is just like a daisy chain, Mr. Olson.  Every time

 8   you get some relief, then you want to go to the next one.  At

 9   some point it's got to end.  I'm doing nothing but working on

10   Karl Olson cases.

11            **MR. OLSON:**  Well, Your Honor, I wasn't in the last

12   one, but one would have thought that your decision in the last

13   one would have resolved everything.

14        And we -- when we were here for a CMC about six months

15   ago, we thought they were going to produce everything.  But in

16   your words, in the ASBL 1 case, you have, quote, Mr. Sikorsky

17   whispering in their ear, and whispering in their ear pretty

18   loud, and basically getting them, the government, our tax

19   dollars to provide free legal help to them to defend their

20   rather untenable claim of trade secrets.

21        And, of course, now they've added a couple new claims,

22   like Exemption 3, which they didn't invoke last time.  And then

23   we also have an issue over Exemption 5, where they're claiming

24   that when they communicate with the defense contractor's lawyer

25   that they have a common interest, which, of course, we think is

```
 1   contrary to the Supreme Court's decision in the Klamath Water
 2   case.
 3           THE COURT:  All right.  We're getting too much into
 4   the merits.
 5       The government is the one who is trying to preserve
 6   exemptions here.  So I don't have time for every -- I'll let
 7   each one of you make one good point, and then I've got to move
 8   on to other cases.  Everything else has been adequately
 9   briefed.
10       Are you here in town or are you from D.C.?
11           MS. LONDON:  I'm here in town, Your Honor.
12           THE COURT:  If you were out of town, I'd give you two
13   points.
14           MS. LONDON:  I understand.
15           THE COURT:  One point if you're from in town.
16       Okay.  What point do you feel deserves to be verbalized?
17           MS. LONDON:  Your Honor, the prior case did not
18   resolve any of the issues in this case.  The facts of that
19   case --
20           THE COURT:  I understand.
21           MS. LONDON:  Okay.
22           THE COURT:  But, nevertheless, it relates to the prior
23   case.
24           MS. LONDON:  Yes, Your Honor.
25       I would just note that this case involves probably over
```

1    2,000 pages at the end of the day.  Each of the redactions and

2    withholdings have been carefully made under the exemptions.

3         A ruling that doesn't allow the government to enter into

4    joint defense agreements, as it did in this case, would have

5    staggering consequences going forward, provided --

6              THE COURT:  But when did you actually enter in -- see,

7    I'm sympathetic to that argument, but I'm also sympathetic

8    to -- if you're going -- there is no such thing as a joint

9    defense privilege.  Let's be very clear on that.  It's just a

10   way to avoid waiver.

11             MS. LONDON:  Correct, Your Honor.

12             THE COURT:  And if you don't dot your I's and cross

13   your T's, you are out of luck.  So if you entered into the

14   agreement on Monday -- I'm sorry, on Sunday -- let's say

15   Friday, take Friday, then that doesn't cover anything on

16   Monday, Tuesday, Wednesday, Thursday, in my view.

17        So next time you better dot your I's and cross your T's,

18   but I am inclined to rule the Fourth Circuit is correct that if

19   you do it right, you get to preserve those under the exemption.

20   Otherwise, Karl Olson would just go to town and you could never

21   keep anything secret even when there was a legitimate joint

22   defense.  And that's just not fair.

23        I can't believe the Supreme Court would sustain Mr. Olson,

24   though he's a great lawyer and he might convince them.

25        So did you do it right in this case?

```
 1        MS. LONDON:  Your Honor, we didn't have a formal
 2   agreement at all times --
 3        THE COURT:  Okay.  Maybe you didn't do it right then.
 4        MS. LONDON:  Your Honor, there's --
 5        THE COURT:  No formal agreement.
 6      Where is that Sikorsky lawyer?  Is he out there somewhere?
 7   That's a big firm.  They should have done it right if they
 8   wanted these things to be secret.
 9        MS. LONDON:  Your Honor, there's case law saying that
10   it doesn't have to be a formal written agreement as long as the
11   facts support that there was a common interest, which this was.
12        THE COURT:  You know what they always do?  I've seen
13   it.  I practiced for 25 years too, you know, and then I get
14   this job.
15      Here's what happens.  They start working together, but
16   they don't really have -- nobody wants to say yet whether or
17   not it's going to be joint defense because somebody might say,
18   do we really want to do it?  So they kind of test the waters.
19   Then, eventually, they say, okay, let's have a joint defense.
20   Then they want to roll into it everything that happened before.
21   It doesn't work that way.  You only get it from that point
22   forward.  That's the way I feel about it.
23      Now, maybe the Ninth Circuit would say I'm wrong, but I
24   feel like if you're going to do a joint defense, you've got --
25   and all you other lawyers out there, you better take to heart
```

1    this lesson.

2         If you want joint defense, dot your I's, cross your T's,

3    and do not try to backdate something.  That gets referred to

4    the U.S. Attorney if you backdate it.

5              MS. LONDON:  There are no backdated documents.

6              THE COURT:  I know you wouldn't do that, but maybe one

7    of those lawyers back there, that's the first thing they

8    thought of, oh, we can backdate it.  I know you did.  But, no,

9    you can't backdate a document.

10        All right.  Mr. Olson, I'm going to rule for the Fourth

11   Circuit, sometimes known as the Ninth Circuit on the other

12   political spectrum.  But I think in this case they're correct.

13             MR. OLSON:  Your Honor, if I can be heard on a couple

14   of points.

15             THE COURT:  Please go ahead.

16             MR. OLSON:  I think *Klamath Water* makes it clear that

17   you have to have two conditions.  It's got to be interagency or

18   intra-agency.  And it's not here, because, obviously --

19             THE COURT:  It's in fraud, because it's the Justice

20   Department.

21             MR. OLSON:  But they're communicating with Sikorsky,

22   and Sikorsky is not a government agency.  We're not looking for

23   Ms. London's communications with her boss, Ms. Friday.  We're

24   looking for her communications with Mr. Heinky, the Sikorsky

25   lawyers who were whispering in her ear.

Case 3:18-cv-01979-WHA   Document 166-1   Filed 05/23/19   Page 209 of 237

1          **THE COURT:**  They're whispering in her ear, and it's

2     okay to do that if they really did have a joint defense.

3     Otherwise, it would be so unfair -- you could have a joint

4     defense, but they could not have a joint defense.

5          **MR. OLSON:**  And they didn't.  So on the factual part,

6     as I think you --

7          **THE COURT:**  Well, that part you may win on.

8          **MR. OLSON:**  Yeah.

9          **THE COURT:**  But I think if -- but on the legal thing,

10    *Klamath Falls*, I don't think you're right about that.  I think

11    it's a different fact pattern.

12       Okay.  All right.  So that's your point.

13       Which exemption do you want to bring up?

14         **MR. OLSON:**  Well, I've been discussing Exemption 5.

15         **THE COURT:**  Isn't it very unfair?  To me, it just

16    offends me, just stepping back.  After almost 50 years of this

17    business, it offends me that you would think that you have --

18    you get to see what Sikorsky was telling -- Sikorsky is not

19    even in it anymore.  You got different people in.  That case is

20    over.

21       It offends me that you want to look over the shoulder of

22    your opponent lawyer and say, aha, here's what they were saying

23    to their codefendant, aha.  You know that's not fair.

24       Does that strike you as fair?

25         **MR. OLSON:**  That case is over, and I think it's

 1   important, because look at what ended up happening is they

 2   ended up telling Sikorsky, you're just dead wrong.  You know,

 3   there's nothing secret about --

 4          **THE COURT:**  I'm sure they did.

 5          **MR. OLSON:**  So where --

 6          **THE COURT:**  They were dead wrong all along.  I was

 7   right from day one.  I was right from day one.  I got reversed

 8   by the Ninth Circuit because they were so good, I guess

 9   somebody -- but then when it came back down, the Justice

10   Department realized I had been right all along, and they caved

11   in.  You don't have to agree to that.

12        And it was because Sikorsky was whispering in their ear,

13   I'm sure.  But, still, I feel like they've got a right to have

14   some communications if they dot their I's and cross their T's.

15          **MR. OLSON:**  Which they didn't, because, I mean --

16          **THE COURT:**  Maybe you're right on that part.

17          **MR. OLSON:**  They're withholding stuff from 2014.  Even

18   if you credit their evidence on this point, they had a

19   one-month deal that started in 2017.

20          **THE COURT:**  That's a good point.  That point you're

21   probably going to win on.

22        But I still have to go through the whole -- see, the rest

23   of you lawyers, I have to go through a stack of documents in

24   chambers.  So businesses can do this.  Okay, that's the FOIA.

25        But, all of you, that means I have to take time away from

1    your case out there in order to do Karl Olson's case and go

2    through it so you can see what Sikorsky was whispering in their

3    ear.  I'm going to do it, but it's a lot of work.  You can't

4    imagine how much work that is.

5        All right.  Let's go to your -- I want to give you a

6    chance to argue about something other than that exemption.

7        If you have a point you want to bring up, let's hear your

8    point.

9        **MR. OLSON:**  Briefly, if I could talk about Exemption

10   3, which is their newly-invoked exemption.  That doesn't apply.

11   First of all, the Procurement Integrity Act does not, quote,

12   require that matters be withheld from the public in such a

13   manner as to leave no discretion.  So they don't meet the first

14   requirement there.

15       The PIA also, quote, does not establish particular

16   criteria for withholding or refer to particular types of

17   matters to be withheld, at least as to 41 U.S.C. Section

18   2101(7)(J).  So they flunk that part of the test too.

19       Third, we're not talking about pre-award documents here.

20   The PIA was intended, in the words of the *Pikes Peak* court, to

21   protect a government employee from leaking a bid to a rival

22   bidder in a situation where he wants to go to work for this

23   rival bidder or getting compensation like a bribe.

24       That's not at all what we're talking about here in

25   relation to the types of documents that they're withholding,

 1   which are compliance reviews which show that they're really not

 2   making -- they're not keeping the promises that they made in

 3   the subcontracting plans.  So the PIA clearly -- Exemption 3

 4   does not apply in this situation.

 5        Also, as a technical matter, and they're making a

 6   technical argument, they didn't mark this.  And that's another

 7   requirement to invoke it, so --

 8        **THE COURT:**  When you say "they" didn't mark it, do you

 9   mean Sikorsky?  Who didn't mark it?

10        **MR. OLSON:**  The government did not mark it.

11        And, really, what you have here is Exemption 3 was

12   intended to say that when Congress wants something to be

13   exempt, okay, you can invoke that.

14        But here, this is an administrative agency, the executive

15   branch, that's trying to say, well, we think that this stuff

16   should always be withheld.

17        And the (7)(j), which is what they're invoking, speaks of

18   a, quote, case-by-case determination.  And that's not what they

19   did.  You have Ms. Buffler saying, "We always do it this way.

20   We always want it to be exempt."  So they have not met their

21   burden of establishing Exemption 3.

22        And if you would like me to address Exemption 4, obviously

23   we think that the *GC Micro* case is directly on point.  It

24   involved the same kind of information.

25        And the Ninth Circuit rejected the conclusory and

 1   generalized declarations there.  They reversed the grant of

 2   summary judgment to the government and directed entry of

 3   summary judgment in favor of the requester.  So we think that

 4   the same result is appropriate here under the *GC Micro* case.

 5          **THE COURT:**  You worked in two exemptions instead of

 6   one.  You've got 3 and 4.

 7          Okay.  Go ahead.  What's your response to both 3 and 4?

 8          **MS. LONDON:**  Thank you, Your Honor.

 9          As to 3, this information has always been treated by the

10   government as source selection information.  And access is

11   restricted internally and by regulation to people who have a

12   need to know.  And this information is information that's

13   directly used and goes into the system used by contracting

14   officials.

15          **THE COURT:**  Wait, that sentence went by me too fast.

16   This information is -- I missed the rest of it.

17          **MS. LONDON:**  Is input into the system that contracting

18   officials use in making their determination for future awards.

19   So it is directly relevant to making decisions as to contracts

20   in the future.

21          **THE COURT:**  Well, remind me, what is the information?

22   Does it relate to earlier deals?

23          **MS. LONDON:**  So it is --

24          **THE COURT:**  Like how well they did on the earlier

25   deal?

1          **MS. LONDON:**  Correct.  So it's compliance with past

2    contracts in terms of small business performance, which is a

3    factor that is often, if not always, used in future decisions

4    in looking at the small business factor.

5          **THE COURT:**  Can I just see if I understand what's

6    going on here.

7          American Small Business League, that's you, right?

8          **MR. OLSON:**  (Nods head.)

9          **THE COURT:**  Your interest here is to see if the

10   federal agency is complying with certain laws that Congress has

11   passed that are supposed to benefit small business; namely,

12   that in the defense department, one of the factors they're

13   supposed to take into account is subcontracts that go to small

14   businesses.  Now, let me stop there.

15         Am I right so far?  How far off is that?

16         **MR. OLSON:**  You're certainly right that we want to

17   know whether they're given the money to small businesses.

18         **THE COURT:**  Right.

19         **MR. OLSON:**  And what we have here are the compliance

20   reviews that the government does --

21         **THE COURT:**  Right.

22         **MR. OLSON:**  -- to say, hey, you really didn't keep

23   those promises.

24         **THE COURT:**  Right.  So they promise upfront.  Like

25   with all bidders, they say, We will do great things.  We will

Case 3:18-cv-01979-WHA   Document 78-1   Filed 05/23/19   Page 16 of 95

```
 1  give millions of dollars to small business contracts.  Then
 2  they do the -- they get the bid.  Years go by.  At some point,
 3  there's a compliance review.  Then it turns out, well, they
 4  didn't give very many of these to the small business because
 5  they got excuses.  I can imagine them right now.  Oh, we
 6  couldn't find any qualified small businesses.
 7       And then, so, they say, You promised us a million, but you
 8  only gave us a hundred.  And then you want to get your hands on
 9  that document so you can go back to Congress and say, Look,
10  they're not doing what you said.  Put some more teeth in the
11  law, or something like that.
12       Is that what's going on here?
13       These people out there having to listen to this, they'd
14  like to know what's really at stake here.
15         MR. OLSON:  That's what's going on here, Your Honor.
16       And, ironically enough, the DOD itself said, you know,
17  this program really isn't working.  This, quote, test program
18  that's been going on for 30 years has actually resulted in
19  small businesses getting less in the way of the subcontracts.
20         THE COURT:  Maybe they should just repeal that law
21  then.
22       Anyway, all right.  So there's a legitimate -- the
23  information would be of legitimate value to the Small Business
24  League, and maybe even to Congress, to know how well this is
25  being -- their laws are being implemented.
```

```
 1        Okay.  I interrupted you.  And you were saying "this has
 2   always been treated..."  You know, but I've heard that too.
 3        It's not stamped as such; right?  It's not designated as
 4   such.  It's just after the fact some lawyer says this is the
 5   way we've always treated it.  That's kind of weak, isn't it?
 6        MS. LONDON:  No, Your Honor.  The DOD has -- I believe
 7   I can confirm this -- a regulation saying it's restricted.  It
 8   is well understood within the agency that there's a restricted
 9   access to the information --
10        THE COURT:  Is that written down somewhere?
11        MS. LONDON:  I believe it is.  I don't have the -- I
12   can follow up with the specific cite for that.
13        THE COURT:  Okay.
14        MS. LONDON:  And the relevant guidance document, which
15   is the Contractor Performance Rating System, which is known as
16   CPRS, states in it that this information is privileged
17   source-selection information.  So it's written in the CPRS, and
18   I believe there's further guidance within DOD --
19        THE COURT:  Why would that be the case, just from a
20   public policy point of view?  Why wouldn't we want that to be
21   public information, how well somebody is complying with what
22   they promised upfront?
23        Why wouldn't -- so, what's the need to keep that secret?
24        MS. LONDON:  Because it would give a serious
25   disadvantage going forward to competitors, and because this is
```

Case 3:18-cv-01979-WHA Document 66-1 Filed 05/23/20 Page 20 of 85

1    the type of information that's being used by contracting

2    officials in making their decisions.

3         And Congress has decided, under the Procurement Integrity

4    Act, that information that's used by contracting officials in

5    selecting and providing bids is supposed to be confidential.

6         **THE COURT:**  Maybe.  Has any other -- has any circuit

7    court ruled on this PIA point yet?

8         **MS. LONDON:**  I don't believe so, Your Honor.

9         **THE COURT:**  How about district court?

10        **MS. LONDON:**  There's the *Laser*, which is out of the

11   Eastern District of -- the Eastern District of California,

12   which held that the PIA was a nondisclosure statute under

13   Exemption 3.  So that's helpful to us.

14        And then they did rule against the government based on the

15   lack of a marking on the documents.  And they said it was a

16   post hoc, as you were saying, Your Honor.

17        **THE COURT:**  What was the -- what judge was that?

18        **MS. LONDON:**  I'm sorry?

19        **THE COURT:**  Which judge was that in the Eastern

20   District.

21        **MR. OLSON:**  I want to say it was Judge Shubb.  I'm not

22   exactly sure about that, Your Honor.

23        **MS. LONDON:**  I have it, Your Honor.  Shubb.

24        **THE COURT:**  Okay.

25        **MR. OLSON:**  Your Honor, if I may, on Exemption 3,

1  they're saying we've always done it this way, as in the

2  executive agency.  But it's got to be Congress that's got to

3  make the determination for Exemption 3 to apply.

4      Again, Congress says you have to have a statute that

5  requires that matters be withheld from the public in such a

6  manner as to leave no discretion.  And they are the ones that

7  are exercising their discretion saying, We always do it this

8  way.  This is the way we like to do it.  We like to keep it

9  secret.

10     But that's not a Congressional determination.  That's an

11 agency determination.

12         **THE COURT:**  Well, where does it say that it has to be

13 a Congressional determination?

14         **MR. OLSON:**  In (b)(3)(A)(1).  And, also --

15         **THE COURT:**  Read that part to me, (b)(3)(A)(1).

16         **MR. OLSON:**  So (b)(3) says there's an exemption for

17 things that are, quote, specifically exempted from disclosure

18 by a statute if that statute -- and then this is (A)(1) --

19 quote, requires that the matters be withheld from the public in

20 such a manner as to leave no discretion on the issue; or, (2),

21 establishes particular criteria for withholding or refers to

22 particular types of matters to be withheld.

23     And then there's a (B), which says that if it's enacted

24 after the date of the open FOIA act, that the open FOIA act

25 specifically cite -- that the statute specifically cites to

```
 1   this paragraph.  And they flunk on that too.
 2           THE COURT:  Well, PIA was before or after?
 3           MR. OLSON:  PIA, in its current form, was enacted
 4   after the Open FOIA Act, and it doesn't say anything about the
 5   Open FOIA Act.
 6       You asked for a circuit court case, and although this is
 7   not on PIA specifically, I think the words of the D.C. Circuit
 8   in American Jewish Congress versus Kreps, 574 F.2d, 624, at
 9   628-29 are apt here.  They say:
10           "Exemption 3A, quote, is too rigorous to tolerate any
11       decision-making on the administrative level.  It embraces
12       only those statutes incorporating a Congressional mandate
13       of confidentiality that, however general, is absolute and
14       without exception."
15       So if you look at what the D.C. Circuit said about what
16   you need to invoke Exemption 3, they flunk on their invocation
17   of the PIA because all they're doing is making an
18   administrative determination that we want to keep this stuff
19   confidential.  But Congress never said anything about keeping
20   it confidential.
21           THE COURT:  Who is the -- is it still Sikorsky that
22   we're fighting over?  Is that it, or is it somebody else too?
23           MR. OLSON:  There is a Sikorsky document.  And, in
24   fact, on the subject of in-camera review, which the Court
25   indicated earlier might be appropriate, Exhibit J to my
```

```
 1    declaration is a document.  It's the kind of document that
 2    we're talking about.  It's like Sikorsky's response to the
 3    compliance review, which has these incredibly general topics
 4    like, you know, "our concerns with your methodology" or
 5    something like that.  And they're saying, oh, this is top
 6    secret, can't be disclosed.
 7         And, of course, I haven't seen it, but I suspect that if
 8    you look at it, Your Honor, in camera, you'll say, oh, this
 9    really isn't the kind of thing that should be kept secret at
10    all.  It's just so general.
11         And we're talking post award again.  So none of the
12    policies of PIA apply here.
13         THE COURT:  All right.  The government gets the last
14    word, and then I've got to go to the next case.  So you
15    literally get the last word.
16         Mr. Olson, you can't say anything more.
17         MS. LONDON:  Your Honor, as Judge Shubb held in the
18    Laser case, the PIA is the exact type of specific language that
19    is covered by Exemption 3.  It delineates the definition of
20    source selection information and, thus, that information should
21    be treated as confidential.
22         There is a clear policy here of contracting officials
23    being able to maintain this information as confidential, the
24    government being able to maintain it as confidential.
25         As I said, the government has always taken great care with
```

1    this information, and this is not a post hoc rationalization.

2    This is the policy as set forth in the CPRS guidance document I

3    mentioned.

4              **THE COURT:**  All right.

5              **MS. LONDON:**  Your Honor --

6              **THE COURT:**  Yes.

7              **MS. LONDON:**  -- before we wrap up, I just found out

8    this morning there is an error in one of the declarations about

9    our -- the DOD search, that we'll have to be correcting.  I

10   don't know if you want to get into it now, but I did want to

11   alert the Court.

12             **THE COURT:**  What's that?

13             **MS. LONDON:**  We were told that a document was found in

14   a pile of hard-copy documents that --

15             **THE COURT:**  Say that again.  I missed the last

16   sentence.

17             **MS. LONDON:**  Sure.

18      We were told that a Sikorsky document that we were trying

19   to locate was found in a file pile of hard-copy documents.  And

20   it was found in, actually, an electronic source.

21             **THE COURT:**  So what did you say in the declaration

22   that's incorrect?

23             **MS. LONDON:**  That it was found in a pile of hard-copy

24   documents.

25             **THE COURT:**  So it was actually found --

1      MS. LONDON:  Through a file.

2      THE COURT:  -- in an electronic pile?

3      MS. LONDON:  Right.  So we will be correcting that.

4      THE COURT:  You should make -- since it's under oath,

5  you ought to correct that.

6      MS. LONDON:  And we might be offering to do some

7  further searching in light of that, but I just want -- I assume

8  Your Honor doesn't want to get into the details, but I did just

9  want to alert the Court.

10      THE COURT:  You should definitely -- if this calls

11  into question the integrity of the search and what you've

12  represented, you should definitely make another search.

13      MS. LONDON:  Of course, Your Honor.

14      THE COURT:  What if I were to -- which I could, and

15  I'm considering.  What if I were to require a 2-hour deposition

16  from somebody at DOD and somebody at DOJ, which I could do, to

17  see if that search was adequate?

18      Then it could turn out maybe the agency would be

19  embarrassed.  So you --

20      MS. LONDON:  I think --

21      THE COURT:  -- you ought -- we have to depend on the

22  government to do a thorough job that has integrity.  We depend

23  on you so much.  So, please, do what you've got to do to make

24  it right.

25      MS. LONDON:  Understood, Your Honor.  We will.

```
1          THE COURT:  All right.  Under submission.  Thank you.

2          MS. LONDON:  Thank you.

3          MR. OLSON:  Thank you, Your Honor.

4          MR. FIELD:  Thank you, Your Honor.

5          MS. LAWSON:  Thank you.

6       (At 8:32 a.m. the proceedings were adjourned.)

7                         -   -   -   -

8

9                    CERTIFICATE OF REPORTER

10         I certify that the foregoing is a correct transcript

11   from the record of proceedings in the above-entitled matter.

12

13   DATE:   Friday, March 8, 2019

14

15

16

17   _____

18        Katherine Powell Sullivan, CSR #5812, RMR, CRR
                   U.S. Court Reporter
19

20

21

22

23

24

25
```

# EXHIBIT H

| | |
|---|---|
| **From:** | London, Ellen (USACAN) </O=USA/OU=MAIL/CN=RECIPIENTS/CN=ELONDON> |
| **Sent:** | Wednesday, September 13, 2017 9:50 AM |
| **To:** | Weisel, Jessica M. <jweisel@AkinGump.com>; Heinke, Rex S. <rheinke@AkinGump.com> |
| **Cc:** | Friday, Kimberly (USACAN) <kfriday1@usa.doj.gov> |
| **Subject:** | RE: Expert |
| **Attach:** | Joint Defense Agreement.9.13.17 (USAO edits).DOCX |

Jessica and Rex,

Redacted

Please let us know if you have any comments/questions.        Redacted

Redacted

Thanks,
Ellen

-----Original Message-----
From: Weisel, Jessica M. [mailto:jweisel@AkinGump.com]
Sent: Tuesday, September 12, 2017 6:00 PM
To: Heinke, Rex S. <rheinke@AkinGump.com>
Cc: Friday, Kimberly (USACAN) <kfriday1@usa.doj.gov>; London, Ellen (USACAN) <elondon@usa.doj.gov>
Subject: Re: Expert

For me as well

> On Sep 12, 2017, at 5:47 PM, Heinke, Rex S. <rheinke@AkinGump.com> wrote:
>
> 4:30 is fine.
>
> -----Original Message-----
> From: Friday, Kimberly (USACAN) [mailto:Kimberly.Friday@usdoj.gov]
> Sent: Tuesday, September 12, 2017 5:43 PM
> To: London, Ellen (USACAN); Heinke, Rex S.
> Cc: Weisel, Jessica M.
> Subject: RE: Expert
>
> Any time is fine with me.
>
> -----Original Message-----
> From: London, Ellen (USACAN)
> Sent: Tuesday, September 12, 2017 5:41 PM
> To: Heinke, Rex S. <rheinke@AkinGump.com>
> Cc: Weisel, Jessica M. <jweisel@AkinGump.com>; Friday, Kimberly (USACAN) <kfriday1@usa.doj.gov>
> Subject: Re: Expert
>
> How late can people do tomorrow?  I have an appointment that will likely last until 4:30 but free after that.
>
> Sent from my iPhone
>
>> On Sep 12, 2017, at 5:39 PM, Heinke, Rex S. <rheinke@AkinGump.com> wrote:
>>
>> Only free after 2:30 tomorrow.  Free pretty much anytime on Thursday.
>>

>> -----Original Message-----
>> From: London, Ellen (USACAN) [mailto:Ellen.London@usdoj.gov]
>> Sent: Tuesday, September 12, 2017 4:52 PM
>> To: Heinke, Rex S.; Weisel, Jessica M.
>> Cc: Friday, Kimberly (USACAN)
>> Subject: Expert
>>
>> Rex and Jessica, are you free for a call tomorrow morning  **Redacted**  We are free except from 10-11:30.
>>
>> Sent from my iPhone
>> The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named
above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.
>>

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named
above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

MSJ000072

# EXHIBIT I

| | |
|---|---|
| **From:** | Heinke, Rex S. <rheinke@AkinGump.com> |
| **Sent:** | Wednesday, October 11, 2017 10:34 AM |
| **To:** | London, Ellen (USACAN) <elondon@usa.doj.gov>; Weisel, Jessica M. <jweisel@AkinGump.com> |
| **Cc:** | Friday, Kimberly (USACAN) <kfriday1@usa.doj.gov> |
| **Subject:** | RE: Letter regarding JDA |

Us too.

**From:** London, Ellen (USACAN) [mailto:Ellen.London@usdoj.gov]
**Sent:** Wednesday, October 11, 2017 10:21 AM
**To:** Heinke, Rex S.; Weisel, Jessica M.
**Cc:** Friday, Kimberly (USACAN)
**Subject:** Letter regarding JDA

Rex and Jessica,

As we discussed yesterday, we are formally withdrawing from the JDA, per the attached letter, given the current posture of the case.

This does not mean we cannot continue to discuss issues as helpful going forward of course, and we hope to keep open a dialogue with you.

Thanks,
Ellen


Ellen London
Assistant U.S. Attorney
U.S. Attorney's Office – NDCA
450 Golden Gate Avenue
San Francisco, CA 94102
T: (415) 436-7288
F: (415) 436-7169

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

**MSJ000090**

# EXHIBIT J



**DEPARTMENT OF DEFENSE**
FREEDOM OF INFORMATION DIVISION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

Ref: (N.D. Cal.) No. 14-cv-2166

THROUGH COUNSEL

Rex S. Heinke
Akin Gump Strauss Hauer & Feld LLP
1999 Avenue of the Stars
Suite 600
Los Angeles, CA 90067-3010

Nov 7, 2017

SUBJECT:  Impending Release of Additional Information in Response to FOIA Request

Mr. Heinke:

The Department of Defense ("DoD") responds to your November 3, 2017 letter sent on behalf of your client Sikorsky Aircraft Corporation ("Sikorsky").  In this letter, you respond to DoD's letter of October 12, 2017 notifying Sikorsky pursuant to 32 C.F.R. § 286.10(g) of the intended release of currently redacted information in Sikorsky's FY2013 Comprehensive Small Business Subcontracting Plan (the "Plan").  Sikorsky objects to the release of almost all of the information that DoD plans to release.  While DoD has no obligation under the regulations to respond to objections submitted after notice sent pursuant to § 286.10(g), it does so in this case, which is in active litigation, to erase any doubt as to whether Sikorsky's objections have been addressed.  DoD stands by its original decision to release the information, with very limited exceptions regarding individuals' contact information, and by this letter again notifies Sikorsky pursuant to § 286.10(g) that it will release the information described in Exhibit A on November 10, 2017.  Pursuant to an agreement reached by counsel for Sikorsky and DoD, Sikorsky will not assert that it was not given "reasonable time" pursuant to § 286.10(g)(3).

DoD originally withheld the redacted information in the Plan pursuant to FOIA Exemptions 4 and 6.  *ASBL v. DoD*, 674 Fed. App'x 675, 676 (9th Cir. 2017).  In making its determination as to whether to withhold or redact the information in the Plan, DoD must assess whether it can meet its burden under the applicable legal standard.  *See GC Micro Corp. v. DLA*, 33 F.3d 1109, 1115 (9th Cir. 1994) (government bears the burden).  The test for whether commercial information is "confidential" such that it is exempt under Exemption 4 is whether "'there is (1) actual competition in the relevant market, and (2) a likelihood of substantial competitive injury if the information were released.'"  *ASBL*, 674 Fed. App'x at 676 (citing *Lion Raisins v. U.S. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004)).  In making the assessment, the court "must balance the strong public interest in favor of disclosure against the right of private businesses to protect sensitive information."  *GC Micro*, 33 F.3d at 1115.  In *GC Micro*, the Ninth Circuit required the government to demonstrate precisely how data could cause substantial competitive harm.  *GC Micro*, 33 F.3d at 1114-15.  In the pending litigation regarding this Plan, the district court has raised particular concerns, including the following questions:

1

[H]ow stale is the information in the requested document; (2) has any part of the requested document's content been disclosed in any other setting; (3) what steps has Sikorsky taken to maintain the confidentiality of the requested document's content, including its actions with its own employees; and (4) how does suppression of the requested document square with the Small Business Act's mandate to encourage government contractors to subcontract to small disadvantaged businesses?

*ASBL v. DOD*, No. C 14-02166 WHA, 2014 WL 6662427, at *2 (N.D. Cal. Nov. 23, 2014).

With regard to Exemption 4, DoD withheld information in the Plan on the basis of testimony from Sikorsky employee Amy M. Johnson. The Ninth Circuit held that this testimony "at least created a genuine issue of fact as to whether most of its redactions qualified for Exemption 4." *ASBL*, 674 Fed. App'x at 676. Because there was a genuine issue of fact, the parties subsequently engaged in discovery. The discovery involved the depositions of Ms. Johnson, as well as two additional Sikorsky witnesses (in addition to one witness for DoD). This discovery revealed that at least for some of the information that had been redacted, the Company's witnesses were unable to establish that there is a likelihood of substantial competitive injury in the relevant market, which has been defined by the Ninth Circuit as "government defense contracts." *Id*. This failure is particularly acute given that the information in the Plan is now over five years old.

First, Ms. Johnson, Sikorksy's supply chain executive, was unable to provide any detailed information regarding the subcontracts at issue during her deposition. She could not recall the details of any non-disclosure provisions used by Sikorsky to limit dissemination of information. Johnson Depo. at 34:3-35:8. She did not know whether Sikorsky's contracts with suppliers required exclusivity. *Id*. at 37:23-38:24. Prior to reaching her conclusion that disclosure would harm Sikorsky's competitive interests, she did not check whether Sikorsky is currently still using any of the subcontractors, and when asked, did not know with certainty. *Id*. at 56-13:58:20 (identifying that "two for sure" of the four subcontractors on page 19, "five for sure" of the fifteen subcontractors on page 20, and "five for sure" of the seven subcontractors on page 21 were still being used). When asked how she reached her determination that disclosure of information in the Plan would harm Sikorksy's competitive position, she stated that she relied entirely on her "experience" with "sourcing and sourcing strategies" *Id*. at 40:22-41:24. When probed about her experience, she failed to supply any additional information to support her assertions. She listed Bell as a competitor that could benefit from the information, but admitted that she was "not familiar" with either Bell's product line or its customers. *Id*. at 106:16-107:11. Similarly, she stated that Boeing was a competitor, but, again, did not know whether Boeing manufactures combat capable helicopters or sells helicopters to the United States government. *Id*. at 107:12-18; *see also id*. at 107:19-108:19, 111 :13-112:22, 116:3-23 (same answers for five other competitors listed by Johnson in her declaration). Ultimately, Ms. Johnson was asked whether she was aware of whether *any* of the companies she listed in her declaration as competitors were providing helicopters to the Department of Defense, and she admitted that she "was not aware." *Id*. at 118:3-7. She also professed no knowledge about whether Sikorksy's contracts with the government were single source or competitive. *Id*. at 126:21-23.

2

MSJ000113

Mr. Driver, Sikorsky's Senior Manager of Strategy, was unable to fill in many of the blanks left by Ms. Johnson's testimony. He did not know whether Sikorksy's contracts with subcontractors have nondisclosure provisions or otherwise prohibit suppliers from discussing the work they do with Sikorsky, and admitted that he has seen subcontractors advertise that they are suppliers to Sikorksy. Driver Depo. at 11:10-16, 12:9-16, 60-:8-25. In particular, he testified:

> Q: What steps does Sikorsky take to eliminate or minimize competitive harm that would come through the disclosure of their suppliers?
> A: Try to prevent the disclosure of who our suppliers are.
> Q: You try to prevent the disclosure?
> A: I don't know. Sorry, I apologize. I don't know the policy or process.
> Q: Well, instead of the policy or process, what steps do you take?
> A: Agreements with suppliers, nondisclosure agreements, things like that.
> Q: But you can't tell me as you sit here today whether any of the suppliers that are mentioned in the document we're discussing have nondisclosure agreements that prevent them from saying they're a contractor with Sikorsky; isn't that correct?
> A: I do not know.
> Q: You don't know. Okay. And do you know who at Sikorsky would know?
> A: No.

*Id.* at 72:22-73:23.

Mr. Driver made a wholesale conclusion that release of the information in the Plan could harm Sikorsky, but in reaching this conclusion he did not evaluate whether any of the information was already publicly disclosed, or whether the subcontractors listed in the Plan are current suppliers to Sikorsky. *Id.* at 123:11-16; 126:13-16; 127:5-12; *see generally id.* at 136:17-139:12. He admitted that he made no effort to determine whether the companies listed in the Plan are current subcontractors, despite his opinion that the names of past (as opposed to current) subcontractors are not sensitive. *Id.* at 126:2-127:1.

Finally, with regard to Martha Crawford, Sikorsky's Small Business Liaison Officer, she testified that revealing the information *could* cause harm. Crawford Depo at 71:24-72:2 ("Q: Would revelation of the names provide a competitor with a possible competitive advantage? A: It could."); *see also id.* at 146:9-149:19 (information "could help a competitor" and "could be a competitive advantage", but also agreeing that it is possible the disclosure would not harm Sikorsky). This does not meet the requirement under Exemption 4 that there be a "likelihood" of substantial competitive injury. Sikorsky's attempt to provide context to her testimony is unconvincing and will be ineffective at a hearing. First, Ms. Crawford's new declaration, attached to the November 3 letter, notes that Sikorsky "may, at its discretion, release the name of some suppliers for a variety of reasons," without any further explanation as to how this impacts the supposed confidential nature of the names of the suppliers. Declaration of Martha Crawford dated October 30, 2017, at ¶ 8. ("Crawford Decl."). *C.f.* Crawford Depo. at 72:3-5 and 141:4-12 (agreeing that Sikorsky sometimes makes the names of subcontractors public, but having no knowledge about who makes that decision).

Ms. Crawford also asserts that release of the "entire Plan" would cause harm to Sikorsky, without any elaboration as to whether any subset of information in the Plan could be released without

3

causing harm. Crawford Decl. at ¶ 9. In particular, she does not address why the release of the name of a subcontractor would cause harm when that particular subcontractor's work with Sikorsky is publicly known and/or the work has been completed. Crawford states that the "information reveals the identity of the qualified small business subcontractors with which we work," implying that Sikorsky still is working with each of the subcontractors listed in the 2013 Plan. However, the limited testimony provided by Sikorsky on this point established that there are at least some subcontractors from the 2013 Plan that are no longer working with Sikorsky (meaning that the information about these subcontractors would be stale). *See* Johnson Depo. at 56-58. Sikorsky has failed to provide any further detail about which of the subcontractors still are working with the company in spite of DoD's repeated requests for such information. Finally, Sikorsky's argument that disclosing information "*in the context of the Plan*," Nov. 3 letter at 3, still does not explain why this disclosure likely would cause substantial competitive harm beyond generic statements to that effect. A simple list of the subcontractors does not show anything about Sikorsky's methods, contrary to the assertions to this effect by Crawford and the other Sikorsky witnesses. And as noted below, the information in the plan about Sikorsky's methods are in many cases publicly known and/or generic in nature.

In particular, Sikorsky has failed to provide any evidence that there is a likelihood of substantial competitive harm in light of the fact that much of the redacted information is publicly available. Once DoD became aware that information might be publicly available, it undertook a thorough review of the scope of such information.[1] We note that the government shared some of its detailed findings with Sikorsky several weeks before notifying Sikorsky of its final decision to release the information, yet Sikorsky still has failed to address DoD's findings in this regard. Instead, in its objections to release, Sikorsky chose only to address two databases that plaintiff ASBL has noted as relevant. The information that DoD has found reveals, *inter alia*, that (i) certain of Sikorsky's internal training methods are listed on multiple employees' LinkedIn profiles;[2] (ii) some of the work described with specific subcontractors has been profiled in such sources as the New York Times;[3] (iii) some of the projects that are redacted have been described in Sikorsky-issued press releases; (iv) several of the subcontractors list the fact that they are Sikorsky suppliers on their websites; and (v) that at least some of the programs that are discussed in the redacted sections have been completed or were cancelled more than five years ago. The fact that information is publicly available certainly does not necessarily mean that it must be disclosed under the FOIA (and often will not mean that), but in the context of this case, and particularly in light of the concerns articulated by the district court, it undercuts Sikorsky's claim of harm from the release of the information. It also demonstrates that much of the redacted information would be considered stale, under the district court's analysis.

---

[1] Mr. Driver testified that to determine the identity of competitors' subcontractors he used "public sources of information" including the "Internet, press releases, [and] trade shows." Driver Depo. at 45:10-18.

[2] *E.g.*, https://www.linkedin.com/search/results/index/?keywords=Sikorsky%20Aircraft%20Supply%20Management%20University

[3] *E.g.*, http://www.nytimes.com/2012/05/19/us/politics/behind-armys-17000-drip-pan-harold-rogerss-earmark.html; http://www.thefabricator.com/article/bending/press-brake-bending-forming-long-and-skinny.

MSJ000115

Finally, DoD's careful review has shown that some of the information, even if not publicly available, is sufficiently generic that it would not provide information such that a competitor could somehow use it against Sikorsky.  This is highlighted by Sikorsky's purported rationale for withholding information, namely that it would "reveal Sikorsky's non-public operations and development of methods to comply with [the Plan]."  The standard under Exemption 4 is not whether a company would prefer to keep its operations confidential, but whether there is a likelihood of substantial competitive harm. Generic information, even if it reveals operations or methods of Sikorsky, would not cause such harm, particularly when the information relates to operations and methods in place over five years ago.

As to the Exemption 6 information, DoD will agree to keep redacted those employees' phone numbers and email addresses that are not currently publicly available.  *See ASBL*, 674 Fed. App'x at 677 ("Although the employees' privacy interests in that information are small, they are not trivial because culprits could use the information for such purposes as harassment or forgery.").

In conclusion, DoD has conducted a careful analysis of Sikorsky's objections, not only in response to the November 3 letter but throughout the course of this litigation.  The agency made this decision based upon information learned in discovery as well as the government's independent research. The administrative record, which includes the deposition transcripts and the websites that DoD has found, supports the decision to release.  *See Pac. Architects & Engineers Inc. v. Dep't of State*, 906 F.2d 1345, 1348 (9th Cir. 1990) (holding that the agency's decision to release information that a private company claimed was covered by Exemption 4 was not arbitrary and capricious, noting that the "record reflects that the State Department gave careful consideration to [the submitter's] objections").  Sikorsky notes that a concern on the part of DoD as to paying attorneys' fees as a result of the litigation with plaintiff ASBL "cannot be the basis for disclosing otherwise exempt information."  This is not the basis for DoD's decision; DoD is releasing information that it does not believe meets the legal standard under Exemption 4.  It would be improper for the government to continue to litigate a position that it does not believe is legally supportable.

DoD emphasizes that this case presents unique circumstances, in particular the number of years that have passed and the testimony given by Sikorsky's employees, and these circumstances informed its fact-based decision regarding release.  The agency's position as to this particular plan does not mean that DoD will take the same position as to information contained in other similar plans or other documents.

If you have questions, please contact Ellen London at the Northern District of California U.S. Attorney's Office at (415) 436-7288 or Ellen.London@usdoj.gov.

Sincerely,

*Paul J. Jacobsmeyer*

Paul J. Jacobsmeyer
Chief

5

# EXHIBIT K



**DEPARTMENT OF DEFENSE**
FREEDOM OF INFORMATION DIVISION
1155 DEFENSE PENTAGON
WASHINGTON, DC 20301-1155

Ref: (N.D. Cal.) No. 14-cv-2166
March 14, 2018

THROUGH COUNSEL

Rex S. Heinke
Akin Gump Strauss Hauer & Feld LLP
1999 Avenue of the Stars
Suite 600
Los Angeles, CA 90067-3010

SUBJECT:  Impending Release of Additional Information in Response to FOIA Request

Mr. Heinke:

This letter responds to your correspondence of March 14, 2018 ("March 14 Letter"), which sets forth Sikorsky's continued objection to the release of currently redacted information in Sikorsky's Comprehensive Small Business Subcontracting Plan for Fiscal Year 2013.

The March 14 Letter inaccurately states that "[n]othing has changed since the Government filed its [summary judgment] reply two months ago." Letter at 2. In January, the Court held a hearing on the summary judgment motion. During that hearing, the Court voiced repeated and extensive concerns about the redacted information being "stale," *i.e.*, no longer commercially sensitive. The Court also questioned whether any of the information at issue was in the most recent Comprehensive Small Business Subcontracting Plan that Sikorsky submitted to the Department of Defense ("DoD"). Furthermore, the Court explained that it found the declarations of Sikorsky's witnesses to be generic and generally unpersuasive. As you know, the Court then denied the motion for summary judgment. Following the hearing, the Government reviewed Sikorsky's FY2018 Plan, and on January 19, 2018, expressed its concerns to Sikorsky regarding the lack of overlap between the FY2013 and FY2018 Plans and the potential staleness of information in the FY2013 Plan. The Government attempted to engage Sikorsky on this issue for the next several weeks. Ultimately, the only evidence Sikorsky proffered in response to this concern was a spreadsheet of suppliers who are in the company's vendor database, without any confirmation that the vendors have current contracts with Sikorsky, or, indeed, are even still small businesses. There is no compelling evidence, either in the FY2018 Plan or from Sikorsky, that Sikorsky has current contracts with any of the subcontractors listed in the FY2013 Plan. Accordingly, given the witnesses that are designated and the evidence available, the Government will not be able to prove at an evidentiary hearing that release of the dollar amount of the subcontracts would result in a likelihood of substantial competitive harm, as required by *GC Micro*. *GC Micro Corp. v. DLA*, 33 F.3d 1109 (9th Cir. 1994). This determination is specific to the facts of this case, and should not be interpreted to have any significance with regard to other FOIA requests to the DoD that involve Exemption 4.

**MSJ000173**

Sikorsky's other objections in the March 14 Letter also lack merit. As you note, the DoD regulations provide that designations of confidential commercial information automatically expire after ten years, absent justification for a longer designation period. 32 C.F.R. § 286.10(b). However, nothing in the regulations requires DoD to maintain the designation for ten years despite the absence of evidence that the information remains commercially sensitive. You also note that Sikorsky has chosen not to provide the amounts it is currently paying to individual subcontractors in the FY2018 Plan. Putting aside the fact that specific payment amounts in subcontracts are listed on pages 22 and 23 of the FY2018 Plan, this argument suggests that Sikorsky has already determined that it will provide less specific financial information in its submissions to the Government, without regard to the Government's actions in this case.

Review of the vendor database spreadsheet, the FY2018 Plan, and the testimony from Sikorsky's witnesses has led to DoD's determination that the information in the FY2013 Plan does not currently warrant protection from disclosure under Exemption 4 of the FOIA. At no point has the Government suggested that its decision is based upon its potential liability for attorneys' fees. Rather, DoD is releasing information that it believes no longer meets the legal standard under 5 U.S.C. § 552(b)(4).

This letter confirms our notice of March 7, 2018, that DoD intends to release the less redacted version of the FY2013 Plan to ASBL on March 15, 2018. We will release the information by e-mail to ASBL's counsel at 5:00 p.m. Pacific, absent a statement from you that you have taken court action to enjoin the release.

If you have questions, please contact Kim Friday at the Northern District of California U.S. Attorney's Office at (415) 436-7102 or kimberly.friday@usdoj.gov.

Sincerely,

JACOBSMEYER.PA
UL.J.1176897631
Digitally signed by
JACOBSMEYER.PAUL.J.117689
7631
Date: 2018.03.14 21:55:32
-04'00'

Paul J. Jacobsmeyer
Chief

MSJ000174