UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN SMALL BUSINESS LEAGUE,<br><br>　　Plaintiff,<br><br>　v.<br><br>DEPARTMENT OF DEFENSE,<br><br>　　Defendant. | No. C 18-01979 WHA<br><br>**ORDER GRANTING IN PART MOTION TO COMPEL** |

## INTRODUCTION

This order reviews government compliance with two prior summary judgment orders under the Freedom of Information Act. Plaintiff moves to compel production of documents withheld under Exemptions 4 and 5. Because the government's redactions remain overbroad, the motion is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Two prior orders recite the facts here. *American Small Business League v. United States Dep't of Def.*, 372 F. Supp. 3d 1018 (N.D. Cal. 2019) (Dkt. No. 58) ("March Order"); 411 F. Supp. 3d 824 (N.D. Cal. 2019) (Dkt. No. 153) ("November Order"). In brief, non-profit plaintiff American Small Business League promotes small business interests. To encourage subcontracting to small businesses, the Small Business Act requires government prime contract bidders to submit subcontracting plans. In 1990, Congress authorized the Department of Defense's Comprehensive Subcontracting Plan Test Program, a voluntary program that lets

government prime contractors submit a single comprehensive plan for subcontracting to small businesses. The Defense Contract Management Agency of the DOD reviews prime contract compliance with the submitted plans (Dkt. No. 107-1 ¶¶ 4–5, 8).

In relevant part here, plaintiff submitted several FOIA requests about Lockheed Martin and Sikorsky Aircraft's subcontractor plan compliance and communications between the government and Sikorsky during their (sometimes) joint-defense of a prior FOIA case, *American Small Business League v. Dep't of Defense*, Case No. C 14-02166 WHA, 2014 WL 6662427 (N.D. Cal. Nov. 23, 2014) ("*ASBL I* "). The government withheld and redacted many documents in the first category under FOIA Exemption 4 and in the second under Exemption 5. Plaintiff sued, won partial victories on Exemptions 4 and 5 after two rounds of summary judgment, and now contends the government's subsequent productions remain deficient. This order follows full briefing, *in camera* review of five documents, and a hearing held telephonically due to the COVID-19 pandemic.

**ANALYSIS**

This order will not relitigate issues. The only question is whether the government complied with the plain language of the March and November summary judgment orders.

**1.   EXEMPTION 4.**

"Exemption 4 excepts from disclosure, as relevant here, commercial or financial information obtained from a person and privileged or confidential." Following ASBL's FOIA request, the government withheld reports evaluating Lockheed and Sikorsky's compliance with its subcontracting plans. In the November order, this Court found the exemption covered "only information originating from the companies themselves." The order explained:

> [G]overnment assessments and evaluations cannot be considered "confidential" information for purposes of Exemption 4. This includes, for example, the government's evaluations of a contractor's compliance with regulatory requirements, ratings, assessments of a contractor report's accuracy, and recommendations — *e.g.*, a finding that an SSR report was "considered not accurate" (*e.g.*, MSJ002082); that a company's suppliers were "not validating their size at time of award" (*e.g.*, *ibid.*); that an "SB goal" was "[n]ot met" because that company "failed to meet the SB goal by" a certain percentage (*e.g.*, MSJ002087); and that the rating of a review was "[e]xceptional"

2

> (*e.g.*, MSJ000743).  Such information *stemmed from the government*, not the companies.  No one can reasonably argue that those evaluations by the government constituted information that belonged to the companies rather than the government.

So, the November order directed the government to "release updated redacted versions" of the compliance reports at issue.  It then explained:

> Any reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt.  To this end, an agency must provide the court with its *reasons* — as opposed to its simple conclusion — for its inability to segregate non-exempt portions of the documents, and also to provide the court with a description of what proportion of the information in a document is non-exempt, and how that material is dispersed throughout the document.  It is not, however, required to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content.

411 F. Supp. 3d at 828–30, 836–37 (quotations and citations omitted).  In sum, information taken unaltered from Sikorsky's submissions may be redacted; government information and analysis must be disclosed.  And, though the government need not redact word by word, any reasonably segregable government information must be disclosed.

Plaintiff wants the compliance reviews completely disclosed and selected one Lockheed and three Sikorsky compliance reviews for *in camera* review.  Upon review, this order concludes the government's redactions remain, in part, overbroad.

Now, plenty of information within the compliance reviews does appear to be bare company information.  Lockheed's fiscal year 2014 review (SUPP000435–58), provided with both redactions and recent disclosures marked, illustrates this.  It includes, for example, tables listing subcontracting spending for different small business categories year over year (SUPP000437), specific spending goals in each category (SUPP000441), and specific expenditures including dates, small business names, and contract values (SUPP000447–450).  Though much company data comes as hard data, some comes as prose.  The report recites specific Lockheed practices (SUPP000436, 443–44, 454) and specific activity (SUPP000438–49, 441–442, 446–47, 452–55, 457).  The government appropriately redacted this information.

Other compliance reports both hit and miss this mark.  For example, Sikorsky's fiscal year 2013 review appropriately redacts several pages plainly reciting Sikorsky's internal procedures

3

1  for accomplishing its small business subcontracting goals, though disclosing the resulting
2  government evaluations (SUPP001223–30, 1234–36). It also appropriately redacts tables
3  listing specific subcontracts (SUPP001230–32), and subcontracting in various categories year-
4  over-year (SUPP001219).

But other portions of that review should be disclosed. Recall that evaluations — *e.g.*, a finding that "that an SB goal was [n]ot met because that company failed to meet the SB goal by a certain percentage" — remain the government's. *See id.* at 830 (quotation omitted). Take, for example, this clipping from Part II, Section 1, of Sikorsky's fiscal year 2013 review:



(SUPP001220). Though the conclusions of the government's own evaluations have been disclosed, it appears most of the government's analysis remains redacted. This cannot be.

The quantitative values, the amount of money flowing through Sikorsky to small businesses (whether given in absolute dollars or percentages of total revenue) remains company information. But the qualitative assessments of the hard data remain the *government's* evaluation of Sikorsky. So, the current redactions unnecessarily shield valuable, *qualitative* government assessments. The November order's recognition that the government need not painstakingly redact word by word did not invite lackadaisical over-redaction. As noted, "[a]ny reasonably segregable" government information must be disclosed — the primary guide being the term "reasonabl[e]." The company's numbers and the governments' analysis remain segregable with reasonable effort. For example, a more reasonable redaction would read:

> Small Business:
> SAC's subcontracting to small business fluctuated from ▅▅▅% to ▅▅% over the past four years. It has steadily been increasing from FY10 to FY13. SAC's overall negotiated 4-year average goal is ▅▅% for SB. SAC's 4-year actual subcontracting

> average is ▮▮▮▮%. SAC has continued to meet and exceed all negotiated small business subcontracting goals since FY12. SAC's SB actual subcontracting performance for FY13 reported achievement of ▮▮▮▮% against a ▮▮▮▮% goal. SAC did meet and exceed their SB goal.

Sikorsky's bare data would remain redacted, and government analysis would be disclosed. Compared to the government's, these more limited redactions provide valuable insight into the government's evaluation of the companies at, as far as this order discerns from the briefing, no greater cost. Thus, reasonably, the government ought to limit its redactions accordingly.

Similarly, Sikorsky's fiscal year 2014 review over-redacts some conclusions. For example, following the heading "Risk Rating" in the summary and recommendations portion, the government redacted:

> DCMA assigned Sikorsky a High Risk Rating. DCMA was unable to validate the dollars reported on the FY14 SSR.
>
> Performance Rating: In summary, Sikorsky has displayed "Good Faith Effort" when it comes to supporting Small Business concerns. Sikorsky performed well against making their goals on their FY14 Initiatives and Industry Targets. DCMA applauds Sikorsky for their efforts in this area of their Small Business Subcontracting Program. However, after thorough review, DCMA has identified a number of areas that need to be improved. Throughout the annotations are made stating recommendations. A summary of those recommendations are listed below. A corrective action plan is required thirty days after the receipt of this form.

It is hard to classify this language as anything other than the government's evaluation of Sikorsky's compliance. Thus, it must be disclosed (SUPP001156).

As a final note, plaintiff cites some inconsistent redaction as evidence that the reports should be further released. Specifically, the government previously released a table of Lockheed's small business expenditures year-over-year but has kept similar tables in other reports redacted (*compare* SUPP000437 *with* SUPP001219, SUPP001141). Subcontract expenditures are company data and, thus, not the sort of government-created information at issue here. Regardless, the government explains the differences stem from information disclosed previously (and not re-redacted) under the Exemption 4's competitive harm test, since rejected by *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. ___, 139 S. Ct. 2356 (2019).

The government shall release updated versions of the compliance reports, redacted as demonstrated above. But, because portions of bare company information remain in the reports, they will not be ordered disclosed in their entirety, at least in this order

**2. EXEMPTION 5.**

Exemption 5 "protects from disclosure interagency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Earlier in this case, the government withheld its communications with Sikorsky during *ASBL I*. The March order found "that communications between the government and Sikorsky during *ASBL I* concerning a joint litigation strategy were 'intra-agency' for the purposes of Exemption 5" and, thus, might be withheld. But, "[w]hile th[at] order f[ound] that the common interest doctrine applie[d] to Exemption 5, it d[id] not blindly bless the government's mere invocation of a common interest." Thus, the order warned, "[d]ocuments exchanged before a common interest agreement [was] established are not protected from disclosure." Application of the doctrine thus required the "determination of the point in time when the government decided to partner with Sikorsky in pursuing the Exemption 4 redactions and when the partnership ended." 372 F. Supp. 3d at 1028, 1031–32 (quotation omitted).

As of the March order, the only joint-defense agreement submitted covered the one month between September and October 2017, but the government sought to withhold communications falling well outside those dates. Though the order recognized "a joint strategy agreement is not required to be reduced to writing," it stated just as plainly that the agreement "must actually have been made." Simply:

> "For the doctrine to apply, an agency must show that it had agreed to help another party prevail on its legal claims at the time of the communications at issue because doing so was in the public interest . . . "[M]ere 'indicia' of joint strategy as of a particular point in time are insufficient to demonstrate that a common interest agreement ha[d] been formed."

Thus, the order directed, "the government shall release all communications that were not legitimately made pursuant to a joint-defense agreement (unless protected by another FOIA

6

exemption).'" *Id.* at 1032 (quoting *Hunton & Williams v. United States Dep't of Just.*, 590 F.3d 272, 285–87 (4th Cir. 2010)).

Some fundamentals, unstated in the March order, appear to require articulation. Yes, an agreement does not require a written instrument. But mere parallel conduct does not make an agreement. And, the parties' subjective understandings don't cut it. Conduct only implies an agreement when, from the circumstances, an objective observer would conclude one was formed. *Baltimore & O.R. Co. v. United States*, 261 U.S. 592, 598 (1923); *Retired Emps. Ass'n Orange Cty., Inc. v. County of Orange*, 266 P.3d 287, 290 (Cal. 2011); REST. 2d CONT. § 53.

To summarize: the government and Sikorsky don't need a written agreement (though careful lawyers would always have one). But to withhold or redact communications, they must prove up an *agreement existed* to *jointly defend* the case. Simply working together isn't enough. An agreement requires one party to offer, "let's work together to defend against plaintiff's claims" and acceptance, "yes, let's do that. Agreed" or some objective manifestation of assent via conduct. There must be a clear start date and a clear end date, both marked by a decision. And there must be some articulation of the public interest justifying the agreement. All of this must precede the communications to be protected.

Plaintiff complains the government's continued redaction of communications between November 17 to 23, 2014, January 21, 2015 to March 30, 2017, September 11 to October 11, 2017, and November 15, 2017 to March 5, 2018, violate the order. This is partially correct.

The government has never established that a joint-defense agreement began on November 17, 2014. To start, at least one of the government's own declarants admitted no agreement existed until September 2017 (Dkt. No. 44-5 at ¶ 9). The government only says that in November 2014 it agreed to the scope of redactions with Sikorsky. But parties with divergent interests agree all the time — it's called a compromise, not a joint defense. The government then concludes, without offering any underlying facts, that it worked in "in concert" with Sikorsky to defend the redaction scope. The Court already said mere indicia of a joint strategy remain insufficient. Moreover, no *agreement* appears. Review of the record reveals that Sikorsky sent the government an outline for a response they might draft together. What became

7

1    of this outline remains unclear.  Regardless, the government does not allege it construed the

2    outline as an offer to jointly defend the case with Sikorsky.  No more than indicia of joint

3    strategy appearing, communications redacted during this time period shall be produced in full

4    (Dkt. Nos. 167 at 10–11; 167-1, Ex. E).

5        Nor has the government established a joint-defense agreement beginning on January 21,

6    2015.  As before, the government contends that when it and Sikorsky both appealed in *ASBL I*,

7    they "acted in concert and pursuant to their common interest to appeal."  Again, indicia of a

8    joint strategy remain insufficient.  The two must have reached *an agreement* to jointly appeal.

9    And, once again, the government points to no offer to jointly appeal and no acceptance of that

10   offer.  Without both, no agreement can exist.  Communications from this period must also be

11   disclosed (Dkt. No. 167 at 11–12).

12       As the prior order recognized, and *in camera* review of the agreement confirms,

13   "government and Sikorsky waited until September 2017 to enter into a formal joint-defense

14   agreement and withdrew from the agreement just a month later in October 2017" (Dkt. Nos. 44-

15   5 at ¶ 9, 64-3 at ¶ 12).  372 F. Supp. 3d at 1032.  Government declarants explained that the

16   public interest favored the joint-defense because if the government's assurances of

17   confidentiality rang hollow, the companies would withdraw from the voluntary Test Program.

18   Thus, the *companies'* own satisfaction with FOIA disclosures ensured continued viability of the

19   Test Program more than the government's own satisfaction with the disclosures (Dkt. No. 167

20   at 15).  A legitimate joint-defense agreement backed by the public interest existing,

21   communications during this period may remain redacted.

22       Last, the government has adequately demonstrated a joint-defense agreement existed from

23   November 15, 2017, to March 5, 2018.  On November 15, the government sent Sikorsky a joint-

24   defense agreement for the purposes of defending the remainder of the government's

25   withholdings under Exemption 4.  Though Sikorsky did not sign the plan, it *performed*.

26   Sikorsky and the government jointly planned discovery and jointly drafted a motion for

27   summary judgment.  Moreover, the motion drafts included the headers "PRIVILEGED AND

28   CONFIDENTIAL" and "SUBJECT TO JOINT DEFENSE AGREEMENT" (Dkt. No. 64-3 ¶

13). That manifests assent to a joint defense. Plaintiff noted at the hearing that Sikorsky submitted no declarations, in opposition to the motion, to prove an agreement's existence. But, as above, Sikorsky's subjective understanding of the circumstances don't matter because the existence of the agreement turns on objective manifestations of assent. Those manifestations here imply the agreement.

Confirming the existence of the agreement, the government affirmatively decided to end the joint-defense agreement and release all documents still being withheld on March 5. As above, government declarants established that the joint defense served the public interest because the continuation of the Test Program depended heavily on the companies' continued faith in the government's confidentiality assurances (Dkt. No. 167 at 13–15). A legitimate unwritten joint-defense agreement appearing, communications from this period may remain redacted.

## CONCLUSION

The motion is **GRANTED IN PART AND DENIED IN PART**. The government shall disclose updated redacted compliance reports according to the examples above. The government shall again disclose communications not actually subject to a legitimate joint-defense agreement. These disclosures shall be completed by **July 2**.

**IT IS SO ORDERED.**

Dated: June 5, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE